# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re TRANS UNION CORP. PRIVACY
LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

) Lead Case No. 00 CV 4729
)
) MDL Docket No. 1350
)
) Hon. Robert W. Gettleman
)
)
)
)

## SECOND AMENDED CONSOLIDATED COMPLAINT

1.      Plaintiffs Cynthia Albert, Jeffrey Beadle, Cecilia Comstock, Dawn DeRonde,

David Feige, Megan Gogerty, Victoria Scott Kearley, Geri Mann, Marci Martinelli, Lawrence

and Joan Palazzolo, Heather Payne, Boris and Alla Rozenblitt, Randall J. Stein, Elizabeth H.

Turner, Alan Wayne, Nancy M. Winkelmann and Nancy M. Woods (collectively, "Plaintiffs"),

individually and on behalf of all persons similarly situated, by their attorneys, make the following

allegations for their First Amended Consolidated Complaint.  Plaintiffs make these allegations

with knowledge as to their own acts, respectively, and upon information and belief and

investigation of counsel as to the acts of others, believing such allegations have evidentiary

support or are likely to have evidentiary support after a reasonable opportunity for further

investigation or discovery.

1

## NATURE OF THE ACTION

2.      Defendant Trans Union LLC ("Trans Union") is a credit bureau which is now, and has, for a number of years, been engaged in an unlawful scheme of distribution and sale of private and detailed financial, credit and other confidential information of hundreds of thousands of Americans.  As part of this illegal scheme, Trans Union retrieves private credit and other financial information from its credit databases, generates lists of consumers who meet certain targeted financial criteria, and sells those lists to target marketing and advertising firms for a substantial profit.  Trans Union has been aided and abetted in this scheme by defendant Acxiom Corporation ("Acxiom"), in which Trans Union held a substantial ownership interest during the relevant time period, and who acted as Trans Union's agent with respect to the unlawful conduct alleged herein.  During the 1990s, Acxiom was integrally involved in the operation of Trans Union's target marketing business, and engaged in the disclosure and sale of consumer reports in the form of the Master File, target marketing lists, and other similar products and services as alleged herein, and substantially profited from the sale and disclosure of consumers' private credit and other financial information.  Through the acts alleged herein, Trans Union, Acxiom and the other defendants identified herein have trampled and violated the privacy rights and expectations of consumers, violated federal and state laws prohibiting such conduct, and have been unjustly enriched by such unlawful conduct and privacy intrusions.  Plaintiffs and the plaintiff classes defined herein seek, inter alia, to enjoin the defendants' unlawful conduct, and to recover actual, statutory, punitive and all other damages provided for by law for defendants' repeated unlawful acts and conduct.  Plaintiffs also seek the disgorgement of all unjust gains

defendants have received as a result of the unlawful conduct alleged herein, along with their

attorneys' fees and costs.

PARTIES

3.      Plaintiff Cynthia Albert is a resident of this District.

4.      Plaintiff Jeffrey Beadle is a resident of West Hartford, Connecticut.

5.      Plaintiff Cecilia E. Comstock is a resident of Phoenix, Arizona.

6.      Plaintiff Dawn DeRonde is a resident of City of Orange, New Jersey.

7.      Plaintiff David Feige is a resident of New York, New York.

8.      Plaintiff Megan Gogerty is an Illinois citizen whose primary residence has been, at

all relevant times, this District.

9.      Plaintiff Victoria Scott Kearley is a resident of Montgomery, Alabama.

10.     Plaintiff Geri Mann is a resident of this District.

11.     Plaintiff Marci Martinelli is a California citizen whose primary residence has

been, at all relevant times, within the Northern District of California.

12.     Plaintiffs Lawrence Palazzolo and Joan E. Palazzolo are residents of New Britain,

Pennsylvania.

13.     Plaintiff Heather Payne is a resident of this District.

14.     Plaintiffs Boris Rozenblitt and Alla Rozenblitt are residents of Cherry Hill, New

Jersey.

15.     Plaintiff Randall J. Stein is a resident of San Diego, California.

16.     Plaintiff Elizabeth H. Turner is a resident of St. Clair County, Illinois.

17.     Plaintiff Alan Wayne is a resident of Los Angeles, California.

3

18.    Plaintiff Nancy Winkelmann is a resident of Omaha, Nebraska.

19.    Plaintiff Nancy M. Woods is a resident of St. Clair County, Illinois.

20.    Each of the Plaintiffs has had multiple credit or loan accounts, each satisfies the "Minimum Criteria" for inclusion in Trans Union's Master File hereinafter "List Master File" or "Master File"), and each was included in Trans Union's List Master File during the relevant time period. As a result, each of the Plaintiffs has had his or her credit reports and private financial, credit and other confidential information, sold and/or disclosed by Trans Union or its agents to third parties, through the disclosure or sale of its List Master File, target marketing lists, and similar products and services during the relevant time period, without each Plaintiff's authorization or consent, in violation of the Fair Credit Reporting Act (5 U.S.C. §1681 et seq. ("FCRA") and applicable state privacy laws as alleged herein.

21.    As a result of defendants' violations of the FCRA and privacy laws as alleged herein, each of the Plaintiffs have been damaged thereby, including, but not limited to, (i) the monetary value of Plaintiffs' private information the defendants unlawfully sold, which value was determined by defendants when they sold the information at a certain price per thousand names, or at a certain price per name, depending on the amount of private information that was sold with the name; and (ii) the costs and expenses incurred as a result of investigating defendants' conduct and Plaintiffs' legal rights and remedies with respect to defendants' conduct as alleged herein, as well as retaining legal counsel to pursue those rights and remedies. These costs and expenses include, but are not limited to telephone calls, postage, copying costs, and certain other miscellaneous items, including lost time.

4

22.    As a further result of defendants' violations of the FCRA and privacy laws as alleged herein, Plaintiffs have also experienced some or all of the following forms of mental distress as a result of the conduct of defendants as alleged in herein including, but not limited to, harassment, anger, annoyance, vexation, frustration, aggravation, irritation, and exasperation by the fact that, among other things: (i) Plaintiffs' legal rights under the FCRA and other laws have been repeatedly violated by defendants; (ii) Plaintiffs' rights to privacy have been repeatedly violated by defendants by unlawfully disclosing Plaintiffs' private financial, credit, and other personal information; (iii) Plaintiffs' intangible personal property, in the form of Plaintiffs' private financial, credit and other personal information, has been repeatedly and unlawfully misappropriated and sold by defendants for their own financial gain to the detriment of Plaintiffs; and (iv) Plaintiffs have received enormous amounts of annoying and unsolicited junk mail and telephone calls over the last several years, in large part as a result of defendants' unlawful conduct as alleged herein, all of which has also interrupted and wasted significant amounts of Plaintiffs' valuable time.

23.    Trans Union is a Delaware limited liability company with its headquarters located in Chicago, Illinois. Trans Union conducts business throughout the United States. Trans Union owns and/or controls, has owned and/or controlled, or has or had a substantial ownership interest in a number of other entities that have also engaged in the unlawful conduct alleged herein, or have assisted, aided and abetted, and/or conspired with Trans Union in committing the unlawful conduct alleged herein, including PerformanceData and Acxiom.

24.    Acxiom is a Delaware corporation with its corporate headquarters located in Conway, Arkansas. Acxiom has owned or currently owns entities that have purchased and used

5

target marketing lists, products or other similar services supplied by Trans Union and/or Acxiom, and that contain the private credit or other financial information of consumers. During all relevant times, Trans Union is or has been the single largest shareholder of Acxiom, and is or has been Acxiom's second largest customer. During all relevant times, Acxiom has operated as a consumer credit reporting agency, and is subject to the FCRA. Together, Trans Union and Acxiom have unlawfully disclosed consumer reports and credit information on millions of Americans. As a result, Acxiom has actively participated in, has acted as Trans Union's agent, and has and aided and abetted and conspired with Trans Union in the unlawful conduct alleged herein.

25.     MCI WorldCom Communications, Inc. ("MCI") was a defendant in Plaintiffs' Amended Consolidated Complaint. Plaintiffs have received notice from MCI that the automatic stay provided for in the U.S. Bankruptcy Code applies to MCI. As a result, Plaintiffs are not prosecuting their claims against MCI in this amended complaint. This should not be constituted as a waiver of any of Plaintiffs' claims against MCI in the event it is determined that the automatic stay does not extend to MCI.

26.     Any applicable statutes of limitations which may apply to Plaintiffs' claims or Causes of Action, began to run, if at all, only shortly before Plaintiffs' claims were filed, because Plaintiffs were previously unaware that Trans Union had been disclosing their consumer reports and private credit and other confidential information as alleged herein. Members of the Plaintiff Classes continue to be unaware that Trans Union has unlawfully sold, leased, and/or disclosed such information. In addition, or alternatively, the applicable statutes of limitations which may apply to the Plaintiffs' and Class members' claims have been equitably tolled because Plaintiffs

6

were unaware of defendants' unlawful conduct until shortly before they filed their claims against

defendants, and most Class members are still unaware of defendants' unlawful conduct as

alleged herein, and defendants have concealed, and continue to conceal, the unlawful conduct

alleged herein.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over this matter pursuant to the Fair Credit Reporting

Act ("FCRA"), 15 U.S.C. §1681p and 28 U.S.C. §1331, as it arises under the consumer credit

laws of the United States set forth in the FCRA, 15 U.S.C. §1681 et seq., and under 28 U.S.C.

§1332.

28.     This Court has supplemental jurisdiction over the state law claims set forth herein

under 28 U.S.C. §1367, as those claims are joined with related claims under the FCRA and/or

with claims over which this Court has jurisdiction under 28 U.S.C. §1332.

29.     Venue is proper in this Court under the FCRA, 15 U.S.C. §1681p, and because

one or more defendants reside here within the meaning of 28 U.S.C. §1391(b) and (c) and have

contacts within this district sufficient to subject them to personal jurisdiction herein.

## CLASS ALLEGATIONS

30.     This action is brought and may properly be maintained as a class action pursuant

to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1)–(3).  Plaintiffs

seek certification of the following classes and/or subclasses:

## FCRA Classes/Subclasses.

(a)     All persons in the United States whose consumer reports were disclosed by Trans
        Union or its agents to an unaffiliated third party, without authorization by the
        consumer, through the transfer or sale of Trans Union's List Master File, target

7

marketing lists, or similar products and services, between January 28, 1997 and the present.

(a)(1)    All persons in the United States whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and October 1, 1997.

(a)(2)    All residents of the State of Nebraska whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and the present.

(a)(3)    All residents of Douglas County, in the State of Nebraska, whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and the present.

(a)(4)    All residents of St. Clair County, in the State of Illinois, whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and the present.

<u>FCRA Firm Offer Class/Subclass</u>

(b)    All persons in the United States who, at any time between September 30, 1997 and the present, have had their telephone number and/or their private financial, credit or other confidential information disclosed by Trans Union or its agents in connection with a "firm offer of credit or insurance."

<u>State Law Privacy/Misappropriation Classes/Subclasses</u>

(c)    As a separate class for each state, all residents of Arizona, Alabama, California, Connecticut, Illinois, Nebraska, New Jersey, Pennsylvania, and New York, whose private financial, credit or other confidential information was disclosed by Trans Union or its agents, without the individual's permission, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products or services, at any time between September 28, 1995 and the present.

State Law Unjust Enrichment Classes/Subclasses

(d)     As a separate class for each state, all residents in Arizona, Alabama, California, Connecticut, Illinois, Nebraska, New Jersey, Pennsylvania, and New York, whose private financial, credit or other confidential information was disclosed by Trans Union or its agents, without the individual's permission, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products or services, at any time between September 28, 1995 and the present.

California Unfair Competition Class/Subclass

(e)     All residents of California who, at any time between January 28, 1995 and the present, have had their private financial, credit or other confidential information disclosed by Trans Union or its agents through the transfer or sale of its List Master File, target marketing lists, or similar products or services.

31.     Excluded from each of the above classes and subclasses (the "Plaintiff Classes") are defendants, any person or other entity employed by, related to, or affiliated with defendants, the judge assigned to this case and his staff, and counsel of record for Plaintiffs. Also, as used in the above class definitions, "target marketing list" shall not include "firm offers of credit or insurance."

32.     Plaintiffs specifically reserve the right to amend or change the definition or scope of any of the alleged Plaintiff Classes set forth herein, and further reserve the right to add or delete classes or subclasses, depending on the development of the facts and the state of the law at the time Plaintiffs bring a motion to certify a class or classes.

33.     The Plaintiff Classes satisfy all of the requirements for certifying a class, including the requirements of numerosity, commonality, typicality, adequacy, and predominance. The members of the Plaintiff Classes are so numerous and geographically dispersed that joinder of all class members is clearly impracticable.

9

34.    Questions of fact and law are common to each member of the Plaintiff Classes.

Common questions of fact and law include, among others:

a.    Whether defendants' disclosure of class members' credit information in its Master File, target marketing lists, or similar products or services constitutes noncompliance with and/or violations of the FCRA;

b.    Whether defendants' acts of noncompliance with the FCRA were willful;

c.    Whether defendants' acts of noncompliance with the FCRA were knowing, intentional or reckless acts undertaken in disregard of the rights of class members;

d.    Whether defendants' acts of noncompliance with the FCRA were negligent;

e.    The nature and extent of injunctive relief to which the class members are entitled;

f.    Whether, as a result of defendants' acts of noncompliance with the FCRA, Plaintiffs and members of the appropriate Plaintiff Classes are entitled to any damages, including actual damages, statutory damages, nominal damages, punitive damages and/or attorneys' fees under the FCRA;

g.    Whether, as a result of defendants' acts of wrongful conduct and/or noncompliance with the FCRA, Plaintiffs and the Plaintiff Classes are entitled to actual damages;

h.    Whether, as a result of the wrongful conduct of defendants, Plaintiffs and the Plaintiff Classes are entitled to exemplary and/or punitive damages; and

i.    Whether defendants were unjustly enriched by their unlawful conduct as alleged herein, and the extent of their unjust enrichment.

35.    The respective claims of the Plaintiffs are typical of such claims of the members of the Plaintiff Classes. Plaintiffs and all members of the Plaintiff Classes have been similarly affected by defendants' conduct and the members of the Plaintiff Classes have the same claims against the defendants. The claims of all of the members of the Plaintiff Classes depend on a showing of the wrongful conduct described herein, which give Plaintiffs, individually and as class representatives, the right to seek the relief sought herein.

10

36.    There are no irreconcilable conflicts as between Plaintiffs and the other members of the Plaintiff Classes with respect to this action or the claims for relief.

37.    Plaintiffs and their attorneys are able to, and will, fairly and adequately protect the interests of the Plaintiff Classes.  Plaintiffs know and understand their asserted rights and their role as class representatives.  Plaintiffs have no conflicts of interest with the proposed class members.  Plaintiffs' attorneys are experienced class action litigators who are well able, and possess the resources needed, to conduct the proposed litigation.  Plaintiffs' attorneys can vigorously prosecute the rights of the class members of the proposed Plaintiff Classes.

38.    Prosecution of separate actions by individual class members may create the risk of inconsistent and varying adjudications and may establish incompatible standards of conduct for defendants in that different courts may order different equitable or other relief or take other inconsistent actions.

39.    Prosecution of separate actions by individual Plaintiffs will, as a practical matter, be dispositive of the interests of other proposed class members not party to the adjudications or will substantially impair or impede such person's ability to protect their interests in that, for example, Trans Union and other defendants may exhaust their available funds in satisfying the claims of earlier plaintiffs to the detriment of later plaintiffs.

40.    Trans Union and other defendants have acted and/or refused to act on grounds generally applicable to the proposed class, making final injunctive relief and corresponding declaratory relief appropriate with respect to members of the Plaintiff Classes as a whole in that Trans Union and other defendants have unlawfully disclosed private financial, credit and other

11

confidential information of members of the proposed Plaintiff Classes and have been unjustly enriched.

41.    Common questions of law and fact predominate over any individual issues pertaining to the class members. All of these claims depend on proving that defendants are liable for unlawfully disclosing private financial, credit and other confidential information of members of the proposed Plaintiff Classes. The proposed evidentiary showings for the claims of each member of the proposed classes would be based on the same documents and testimony concerning defendants' actions.

42.    A class action is superior to the other available methods for the fair, just and efficient group-wide adjudication of the controversy. Plaintiffs and members of the Plaintiff Classes have no interest in individually controlling the prosecution of separate actions. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system. The class action device allows a court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Plaintiffs' claims in a single (or limited) forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and preserves the rights of each class member. Furthermore, for most class members, a class action is the only feasible mechanism that allows them an opportunity to obtain full legal redress and justice.

43.    Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving hundreds of thousands of class members. Plaintiffs are not

aware of any difficulty that would be encountered in the management of Plaintiffs' claims which would preclude their certification as class claims.

44.      Certification of the Plaintiff Classes is appropriate under Federal Rule of Civil Procedure 23(a) and also under Federal Rules of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3).

### FACTS COMMON TO ALL COUNTS

#### Trans Union And Its Consumer Credit Databases

45.      Trans Union engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, but only as permitted under the FCRA.

46.      Trans Union maintains large computer databases of consumer credit information for use in generating such consumer reports. These databases include the credit activity of every credit-active individual in the United States. The information on these databases is collected by Trans Union from credit grantors such as banks, mortgage companies, credit unions, automobile dealers, collection agencies and other entities. Trans Union also receives information on student loans and child support information.

47.      Trans Union's database system for furnishing consumer reports is called CRONUS. A "record" in CRONUS includes the name of a consumer and his or her address. Additional individual-level consumer credit information is listed in CRONUS in a "tradeline." A "tradeline" is a segment of a consumer report that reflects a credit relationship between a consumer and a creditor—usually a debt or a potential debt owed by the consumer to the credit grantor. "Tradeline" information includes, inter alia, a customer's account number, telephone

13

number, social security number, and any generational suffix; the open date of the account; the subscriber's (credit grantor's) name and code, and its kind of business; the verified date on the account; the type of loan; the credit limit assigned by the credit grantor; payment history and the closed date of the account, if any. A consumer's credit "file" includes all tradelines for that consumer in CRONUS.

48.    The consumer reports furnished by Trans Union (1) communicate information bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living; and (2) are used or expected to be used for, inter alia, the purpose of serving as a factor in establishing the consumer's eligibility for personal, family or household credit or insurance (hereinafter referred to collectively as "credit information" or "consumer report"). This credit information and the consumer reports furnished by Trans Union constitute "consumer reports" within the meaning of the FCRA, 15 U.S.C. §1681a(d).

49.    Trans Union furnishes these consumer reports in exchange for monetary fees or dues. Trans Union furnishes consumer reports in interstate commerce. Trans Union is a "consumer reporting agency" ("CRA") within the meaning of the FCRA, 15 U.S.C. §1681a(f).

50.    Trans Union is or has been the single largest shareholder of Acxiom and is or has been Acxiom's second largest customer. During the 1990s, Acxiom has operated as a consumer credit reporting agency, and as Trans Union's agent. Together, Trans Union and Acxiom have gathered and furnished credit data on millions of Americans. As alleged herein, Trans Union and Acxiom have unlawfully disclosed consumer reports to unaffiliated third parties for purposes of selling Trans Union's Master File, target marketing lists, and similar products and services. As a

14

result, Acxiom has actively participated in, acted as Trans Union's agent, and aided and abetted Trans Union's violations of law, with respect to the unlawful conduct alleged herein against Trans Union.

51.     Trans Union and Acxiom may lawfully furnish a consumer report only for a "permissible purpose" as defined in the FCRA, §15 U.S.C. 1681b.  These permissible purposes are limited by the FCRA and include, for example, furnishing a consumer report in response to a court order, or in accordance with written instructions of the consumer.

<u>Trans Union's Target Marketing Business</u>

52.     Performance Data is a division of Trans Union that distributes, sells, leases and/or rents (hereinafter referred to collectively as "distributes") "target marketing" lists to third parties. Performance Data was previously known as TransMark, then as Trans Union Lists; its name was changed to Performance Data in 1997.  Trans Union and Performance Data (and its predecessors in name) are referred to herein collectively as "Trans Union."

53.     Target marketing involves selling or advertising goods and services directly to consumers by mail or telephone.  Consumers are picked by, among other criteria, targeted financial or credit-related criteria, and demographic traits.  Trans Union's target marketing business uses consumer credit information from its consumer credit data bases to prepare lists on computer tape of consumers who meet certain credit-related and other criteria.

54.     Trans Union sells and distributes its target marketing lists throughout the United States to target marketing and other firms for use in soliciting consumers.  Trans Union's target marketing customers include, among others, catalogue companies, newspaper and magazine subscription vendors, firms using mail solicitations or telemarketing, as well as target marketing

15

list brokers, managers and wholesalers. In 1997 alone, Trans Union's gross revenues through Performance Data's sale of target marketing lists were about $34 million, and Trans Union has been selling such lists since at least 1992.

55.     Trans Union retrieves and uses consumer information stored in CRONUS to create two primary databases called the Master File and the Standard Characteristics database. Since the mid-1990s, the Master File has had other names, including the "Base List." The use by Trans Union of its CRONUS information to develop lists for its target marketing business allows Trans Union to sell information that is far richer and more detailed than the data collected and used by non-CRA competitors which sell target marketing lists.

56.     In order to include a CRONUS consumer file in the Master File, Trans Union specifies that the consumer file must satisfy several minimum criteria. Prior to January 1998, each CRONUS consumer file had to show at least two open tradelines, with one of the tradelines verified -- i.e., that some reported activity took place -- during the preceding 12 months. In addition, a qualifying tradeline could not be closed or be an account about which there was a consumer dispute, and could not be a collection record or public record ("pre-1998 Minimum Criteria").

57.     In January 1998, in order to be included in the Master File, Trans Union began to require CRONUS consumer files to contain two tradelines active within the last six months or one tradeline active in the last six months with an address confirmed by an outside source (hereinafter "post-1997 Minimum Criteria" and both sets are referred to collectively as the "Minimum Criteria"). As with the pre-1998 Minimum Criteria, the qualifying tradeline could not be a collection record or a public record. Trans Union's promotions state that the Master File is a

16

list of "135 million financially active individuals," that "[a]ny adult with at least two active tradelines is represented," and that a person with no activity in a 12-month period -- i.e., making payments or establishing credit -- is dropped from the Master File.

58.    The Master File is frequently enhanced with the addition of other personal, often credit-related, financial information on each individual.  The criteria Trans Union uses to create these subsets are called "indicators" or "selects."  Trans Union generates approximately half of these subsets from its consumer reporting database CRONUS.  In order to generate the foregoing selects or indicators, as well as other financial estimates, Trans Union obtains information from CRONUS and incorporates that information into the Master File.

59.    Trans Union offers its third party vendors at least two ways to utilize the information contained in its Master File products.  Some vendors provide a list of consumers to Trans Union and purchase the Master File credit-related or financial information regarding those customers.  Other vendors request that Trans Union extract from the Master File the names and address of those consumers who satisfy pre-selected criteria chosen by the customer.  Trans Union's target marketing customers can choose from a menu of selects and ask for a tailored list of consumers' names and addresses who, for example, have a bank card or an open mortgage, but never have obtained short term (30/60/90 day) financing.  Trans Union sells these lists for one-time use by its customers either by rental or by license and charges a "base price" per thousand names, with additional charges per thousand based on the "selects" that the vendor has chosen.

17

<u>Trans Union's Target Marketing Lists, Products And Services</u>

60.    Trans Union has sold, distributed and otherwise disclosed target marketing lists

identifying Plaintiffs and other members of the Plaintiff Classes.  These lists were created

utilizing one or more of the following indicators, selects and/or estimates, among others:

a.    Open automobile loans; auto loan type (<u>e.g.</u>, lease, refinanced loan, equity transfer loan, automobile loan); open dates and expiration dates for the auto lease or loan; the high credit amount of current loans/leases;

b.    Open bank card; open premium bank card (<u>i.e.</u>, bank card with credit limit of $10,000 or higher); open date of the most recent bank or premium bank card;

c.    Open department store card; open date of the most recent department store trade;

d.    Open finance trade; open date of the most recent finance loan; a "30/60/90 day" finance trade (<u>i.e.</u>, a loan due in 30, 60 or 90 days);

e.    Head of household (<u>i.e.</u>, the person with the highest number of trades in a household);

f.    Open mortgage; open second mortgage; mortgage type; open and closed dates and high credit amounts of mortgages; estimated home value and home equity (as derived from mortgage balances and other credit information);

g.    Mail order buyers—based on identifying tradelines such as Spiegel's, L.L. Bean, Eddie Bauer;

h.    Single persons—based on credit accounts not being joint accounts; and

i.    Open student loan; open date of most recent student loan; aggregate high credit of all of a person's student loans; a closed student loan; and open upscale retail credit card;

61.    Trans Union has sold, distributed and otherwise disclosed a number of other target

marketing lists premised on other selects, indicators and estimates.

62.    Trans Union's "Standard Characteristics" or "Attribute" file is a second database

Trans Union maintains on consumers.  This database contains 313 attributes on each CRONUS

consumer who meets the Master File Minimum Criteria. Trans Union uses this personal credit

information to create certain models that it offered to target marketers until at least October 1997.

These models assign a value or score to each consumer file in the following ways through the

following products thereby disclosing sensitive financial information regarding consumers:

> a.   E-VAL. A scoring system that, using information in the Standard Characteristics
> file, estimates the amount of equity available in a consumer's home. A Trans
> Union customer can purchase a consumer's E-VAL "score" showing: (1) the
> estimated actual amount of equity in the consumer's home; (2) the percentage of
> equity over home value; and (3) the home value range.

> b.   TIE. The TIE scoring system provides a consumer's estimated income within a
> $5,000 range (culminating in an over $100,000 category). TIE estimates income
> by modeling 23 attributes in the Standard Characteristics file.

> c.   SOLO. The SOLO model places consumers into one of 40 "clusters," based on a
> modeling of 35 attributes in the Standard Characteristics file. SOLO evaluates
> individual behavior and describes tendencies based on how individuals are using
> credit. Examples of SOLO cluster categories are: "Urban Ethnics," "Urban
> Upscale," "Empty Nesters," "Single Strugglers," "Kids and Cars."

> d.   P$YCLE. This model also assigns people to one of 60 "buckets" that are intended
> to estimate a consumer's income producing assets. Categories of buckets include,
> "Elite Pre-Retired Spenders," "Affluent Renters," "Inner City Strugglers."

> e.   PIC. The PIC product used the Standard Characteristics file to model the
> likelihood that a person owns financial service products. On the Master File, the
> PIC option will indicate whether there is a negative or positive propensity to
> purchase, among other things, a home equity loan, a mutual fund, and installment
> loan or term life insurance.

> 63.   In addition to its Master File/Selects product and the Standard Characteristics

models, during at least part of the relevant time period, Trans Union has offered several other

products derived from CRONUS, including:

> a.   TransLink/Reverse Append. This product provides merchants with names and
> addresses of bank card holders. The merchant submits to Trans Union a list of
> bank card numbers that were used to make purchases from the merchant. Trans
> Union then retrieves from CRONUS the name and address of the primary

cardholder. While a customer name is presumably already available to the merchant, the address is not. By purchasing TransLink, merchants obtain a useful list of names and addresses without asking their customers for this information. TransLink is among Trans Union's largest selling target marketing services and Trans Union is the only CRA that provides this type of "reverse append" service.

b.  <u>New Issues File</u>. This file contains names and addresses of individuals who received credit within the last 90 days. It also discloses when an individual obtained the credit and the type of credit issued.

c.  <u>Emerging Consumers File</u>. This file included individuals with only one tradeline from the prior twelve months. To qualify, the tradeline must be open.

64.    Trans Union also sells a "driver" list which comprises persons with an auto loan tradeline or a gas card tradeline.

<u>Trans Union's Promotion Of Its Target Marketing Lists, Products And Services</u>

65.    Trans Union promotes its Master File and target marketing products as a unique source of credit-based marketing information from CRONUS. As set out in detail below, Trans Union acknowledges in its promotional materials that its target marketing lists are premised on consumer credit information.

66.    Trans Union advertises that its use of credit information or "credit based data" provides a competitive advantage over other credit reporting agencies that do not use such information in generating target marketing lists. Trans Union similarly promotes advantages over other target marketing list providers who rely on survey data directly from individuals, as opposed to the confidential credit and other financial information upon which Trans Union relies in generating its target marketing lists. Trans Union knows that its target marketing lists are consumer reports because it, in essence, promotes them as "credit based" marketing tools.

20

67.    Specifically, Trans Union has represented in its advertising materials promoting

its target marketing lists that, among other things:

a.    "We Can Tell You More About The 150,000,000 People On Our List Than Forbes Can Tell You About The 500 On Theirs";

b.    "It's Easier To Acquire Individuals' Money If You Know Where They Keep It";

c.    "Tap Into The Richest Source Of Individual-Level Financial Data In America";

d.    "PerformanceData's MasterFile, one of the largest databases of U.S. consumers, covering nearly every adult in the country. And a great source of behavioral and demographic data";

e.    "To lift response rates, you need the power of individual-level data . . . Our individual-level data includes over 45 million known direct response buyers of magazines, books, and other programs. Add to this the best behavioral data available -- including new movers, homeowners, bank card holders -- and the result is higher response rates and greater profits";

f.    "What they're buying is only a beginning. We can tell you a lot about your best prospects. To assure that you invest in only the most qualified prospects, our direct response buyer data is segmented into six major categories and seventy-two different sub-categories. In addition to areas of interest, you can select from the following variables: Total dollars ever ordered, total dollar amount from most recent order, month and year of most recent activity, most recent activity in months, source of the order . . . In addition, Performance Data offers you a wealth of individual-level data to further segment and target prospects";

g.    The Master File is the "richest source of individual-level financial data available," and its database is "kept fresh and current by nearly two billion updates supplied by credit grantors every month, and is maintained for accuracy and quality";

h.    Its Master File is "without equal" and its information is "highly accurate" and is "based on actual behavior -- not self-reported or neighborhood values";

i.    The Master File is "the freshest and most comprehensive" data due to its "robust and extensive source of original credit based information";

j.    The Master File is "living and breathing data," "the most comprehensive available in terms of observed behavior" and the "only source of individual-level financial data" that is "individual and behavioral";

21

k.   "Trans Union is a unique provider of credit-based marketing information.  Our database is unmatched when compared to traditional direct marketing vehicles on the market today";

l.   Trans Union's Standard Characteristics correlate highly with "lending activity";

m.   Trans Union data is "highly predictive in response modeling and profiling, especially with financial offers";

n.   Trans Union's finance trade select provides consumers who have "generally had trouble with their credit in the past and are highly responsive to credit offers";

o.   Trans Union information contains "spending, payment and demographic data" that is "highly predictive and cost effective"; and

p.   Trans Union distinguishes itself from "its traditional competitors within the credit reporting industry," who have not pursued Trans Union's "open policy" regarding the use of credit information by target marketers.

Trans Union's Disclosure of Consumer Reports
For An Impermissible Purpose

68.   Trans Union's target marketing products and lists reflecting the selects, indicators and estimates described above are consumer reports because the lists and products disclose confidential financial and credit information culled from the same Trans Union consumer reporting database that is also used by credit grantors in making credit eligibility determinations. The presence or absence of a tradeline, bank card, retail account, finance loan, auto loan, collection account or a mortgage, and other types of financial information described above, is used in credit scoring by credit grantors, and in the determination of consumers' eligibility for personal, family or household credit or insurance. Consumers have a strong expectation of privacy and privacy interest in the use of the above confidential financial information from their credit files.

22

69.     During the 1990s and continuing to the present, Trans Union has disclosed consumer reports regarding Plaintiffs and members of the Plaintiff Classes in the form of the target marketing products and lists described above to target marketers and other unaffiliated third parties that did not have a permissible purpose for receipt and use thereof.  Trans Union has done so without the class members' authorization or consent, and this practice is ongoing.  As a result, Trans Union has invaded the right to privacy and privacy expectations of Plaintiffs and members of the Plaintiff Classes.

70.     Plaintiffs and members of the Plaintiff Classes are persons who have been harmed, and injured in fact within the meaning of Article III of the United States Constitution in that they have, or have had, multiple credit or loan accounts; their names, addresses, and private financial, credit and other confidential information were, and are, included within Trans Union's Master File and other databases used for target marketing; and their names, addresses and private financial, credit and other confidential information were unlawfully misappropriated, disclosed, rented, leased and/or sold by Trans Union to unaffiliated third parties in violation of, among other things, Plaintiffs', and members of the Plaintiff Classes' rights under the FCRA and rights of privacy, as alleged herein.

71.     Trans Union either knew or reasonably should have known that its target marketing lists and products constituted consumer reports within the meaning of the FCRA and that those reports were not being used by third parties for a permissible purpose under the FCRA. Trans Union nevertheless disclosed, and continues to disclose, such information in violation of the FCRA and the privacy rights of Plaintiffs and the members of Plaintiff Classes.  Trans Union has acted willfully, recklessly and/or in conscious disregard for Plaintiffs' rights and the rights of

23

the members of the Plaintiff Classes. Trans Union has derived substantial profits from the unlawful disclosure of consumer information in its target marketing lists and other products.

72. In or around October 1997, Trans Union changed the types of credit information it sells to target marketers. Trans Union did so out of concern that amendments to the FCRA provided for substantial monetary penalties for violations. Prior thereto, Trans Union was unconcerned with whether or not its disclosure of target marketing lists violated the FCRA because it believed that the only liability it faced was an order to discontinue disclosing such information. Trans Union therefore knew that it was violating the FCRA by disclosing this information, but was unconcerned because it believed that the worst that could happen would be that it would have to stop selling the lists.

73. Since October 1997, Trans Union has knowingly and intentionally continued to disclose consumer reports regarding Plaintiffs and members of the Plaintiff Classes to target marketers and other unaffiliated third parties that did not have a permissible purpose for the receipt and use of such information. It has done so in conscious disregard of the rights of Plaintiffs and members of the Plaintiff Classes, and in a continuing effort to generate revenue and profits at the expense of consumers' privacy rights. Trans Union has earned and continues to earn substantial revenue and profits from this unlawful activity.

74. In a decision dated July 31, 1998, an Administrative Law Judge ("ALJ") of the Federal Trade Commission ruled in a matter styled *In the matter of Trans Union Corporation*, Docket No. 9255, that Trans Union assembles information on consumers to furnish consumer reports to subscribers and consumers; Trans Union is a consumer reporting agency; Trans Union's target marketing lists are consumer reports; and Trans Union furnishes consumer report

information in target marketing lists to persons who do not have a permissible purpose under the

FCRA. The ALJ ruled that, by this conduct, Trans Union violates the FCRA. The ALJ ordered

that Trans Union cease and desist from the sale of such consumer reports in the absence of a

permissible purpose.

75.     On February 10, 2000, after reviewing a full trial record, the FTC affirmed the

ALJ's July 1998 findings and conclusions. The FTC specifically found that:

> Trans Union's target marketing lists are indeed consumer reports
> under the FCRA because they contain information that bears on the
> factors set forth in Section 603(d)(l) and is used or expected to be
> used as a factor in determining a consumer's eligibility for credit.
> By selling these lists to target marketers without a permissible
> purpose, Trans Union violates the FCRA. This conclusion applies
> to Trans Union's Master File/Selects; proprietary models; and
> TransLink/reverse append products.
>
> Trans Union's disclosure to target marketers of information on the
> existence of a tradeline violates the FCRA. Further, Trans Union's
> disclosure in its target marketing products of other information,
> such as the existence of a type of tradeline, open date of tradeline,
> home equity information, and income estimations, among other list
> criteria described above, also violates the Act.

76.     The FTC's Opinion and Order has been upheld on appeal to the D.C. Court of

Appeals, and Petition for a Writ of Certiori in the U.S. Supreme Court has been denied.

<u>Trans Union's "Firm Offers of Credit"</u>

77.     Information sold by Trans Union in its target marketing business is also used in

prescreening for transactions consisting of a "firm offer of credit or insurance."

78.     In general, a firm offer of credit or insurance is an offer of credit or insurance that

will be honored if the consumer is determined, based on information in a consumer report on the

consumer, to meet the specific criteria used to select the consumer for the offer. Such offers are sometimes characterized as "pre-approved" offers of credit or insurance.

79.     Pursuant to the FCRA, Trans Union may furnish information for purposes of a credit transaction if, among other things, the proposed transaction involves a "firm offer of credit" to the consumer. If all of the statutory requirements are met under the FCRA with respect to a firm offer of credit, a consumer reporting agency such as Trans Union may provide only the following information pursuant to a firm offer of credit transaction under Section 1681b(c) of the FCRA: (A) "the name and address of a consumer," (B) "an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer"; and (C) "other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity."

80.     Trans Union has also violated the FCRA by, among other things, (i) disclosing Plaintiffs' and class members' telephone numbers in violation of Section 1681b(c), and (ii) disclosing other information pertaining to a consumer that identifies the relationship or experience of the consumer with respect to a particular creditor or other entity as alleged herein.

81.     Any applicable statutes of limitations which may apply to Plaintiffs' Fifth and Sixth Causes of Action, began to run, if at all, in March of 1999 because Plaintiffs were previously unaware that Trans Union had been disclosing their telephone numbers and/or private financial, credit and/or other confidential information in connection with the sale, lease and/or disclosure of target marketing lists for firm offers of credit or insurance, and members of the Firm Offer Class continue to be unaware that Trans Union has unlawfully sold, leased, and/or disclosed such information. In addition, or alternatively, the applicable statutes of limitations

26

which may apply to the Plaintiffs' Fifth and Sixth Causes of Action, have been equitably tolled because Trans Union concealed, and continues to conceal, its unlawful disclosure of telephone numbers and/or private financial, credit and/or other confidential information in connection with the sale, lease and/or disclosure of target marketing lists for firm offers of credit or insurance, in violation of the FCRA, among other things.

MCI's Target Marketing Efforts

82.     Trans Union sold, leased or otherwise disclosed consumer reports, including a report on Comstock to MCI.  Such reports were provided without a permissible purpose.

83.     MCI intended to and did obtain Comstock's consumer report for the purpose of soliciting Comstock and other members of the Firm Offer Class to purchase wireless service.

84.     On or about March 13, 2000, Comstock received "An Exclusive Offer for Pre-Approved Wireless Service" from MCI WorldCom Wireless, which stated that she was targeted based on information Trans Union provided to MCI:

> Based on your excellent credit history, we are pleased to offer you
> *MCI WorldCom Wireless*™ *Platinum* complete with a very
> competitive rate plan and a **FREE LG 330 digital phone!**

In a footnote written in diminutive script, the solicitation also included the following statement, which was the only other information bearing on how Comstock was chosen for this offer:

> Your name was pre-released based on information obtained from
> Trans Union.  If at the time of the offer, you no longer meet the
> initial criteria, the offer will be revoked.  If you prefer that your
> name be omitted from future offers you may call 1-888-567-8688
> or write to Trans Union LLC, Marketing Opt Out, P.O. Box 97328,
> Jackson, MS 39288-7328.

85.    MCI sent identical letters to thousands of consumers located in Arizona and other states.

86.    Comstock did not solicit or seek wireless services from MCI or from other companies who have purchased consumer reports from Trans Union and used those reports to solicit such class members.

87.    15 U.S.C. §1681m(d) of the FCRA expressly requires any such unsolicited offers include in writing "clear and conspicuous statement[s]." The Section requires statements that the "information contained in the consumer's consumer report was used in connection with the transaction," that the consumer "received the offer [because the consumer] satisfied the criteria for credit worthiness ... under which [the consumer was] selected for the offer," and that the consumer has the "right to prohibit information contained in [the] consumer's file with any consumer reporting agency from being used in connection with any credit ... transaction" they do not initiate. These statements are missing from MCI's uniform communications to Comstock and other members of the Comstock Classes.

FIRST CAUSE OF ACTION<br>(Willful Noncompliance With the FCRA, 15 U.S.C. §§1681b, 1681n<br>By All Plaintiffs Against Trans Union and Acxiom)

88.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 87 as if the same were set forth herein.

89.    Through the disclosure, sale and/or lease of the target marketing lists, products and other similar services described herein, defendants have furnished and continue to furnish consumer reports regarding Plaintiffs and members of the Plaintiff Classes to unaffiliated target marketers and other third party vendors.

28

90.     Defendants' disclosure of the foregoing consumer reports was and is not made for a permissible purpose under the FCRA, 15 U.S.C. §1681b, and violates and/or violated the FCRA, 15 U.S.C. §1681 *et seq.*, including §1681b and §1681e(a).

91.     Defendants' disclosure of the foregoing consumer reports constitutes knowing and intentional acts in conscious disregard for the rights of Plaintiffs and members of the Plaintiff Classes under the FCRA, 15 U.S.C. §1681n. The Court should therefore award all appropriate relief as set forth in the Prayer For Relief.

### SECOND CAUSE OF ACTION
(Negligent Noncompliance With The FCRA, 15 U.S.C. §§1681b, 1681o
By All Plaintiffs Against Trans Union and Acxiom)

92.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 91 as if the same were set forth herein.

93.     Through the disclosure, sale and/or lease of the target marketing lists, products and other similar services described herein, defendants have furnished and continue to furnish consumer reports regarding Plaintiffs and members of the Plaintiff Classes to unaffiliated target marketers and other third party vendors.

94.     Defendants' disclosure of the foregoing consumer reports was and is not made for a permissible purpose under the FCRA, 15 U.S.C. §1681b, and violates and/or violated the FCRA, 15 U.S.C. §1681 *et seq.*, including §1681b and §1681e(a).

95.     Defendants' disclosure of the foregoing consumer reports constitutes a failure to use ordinary care and constitutes negligent noncompliance with the FCRA under 15 U.S.C. §1681o. The Court should therefore award all appropriate relief as set forth in the Prayer For Relief.

29

THIRD CAUSE OF ACTION
(Invasion of Privacy and Misappropriation
By Plaintiffs Against Trans Union and Acxiom)

96.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1

through 95 as if the same were set forth herein. This cause of action is being asserted by

Plaintiffs under the laws of the states in which Plaintiffs reside, and as separate state classes, as

alleged herein.

97.     Plaintiffs and members of the Plaintiff Classes have a legally protected privacy

interest in their private and confidential credit, financial and other personal information and a

reasonable expectation of privacy in such information. This right to privacy includes the right

not to have someone else profit by the misappropriation and sale of such private and confidential

financial information.

98.     As alleged herein, Trans Union and Acxiom made an unauthorized intrusion into

Plaintiffs' seclusion by accessing, disclosing and selling the private financial, credit, and other

confidential information of Plaintiffs and members of the Plaintiff Classes without such persons'

knowledge, authorization or consent. This unauthorized disclosure and sale of such private facts

and information is one that is highly offensive or objectionable to a reasonable person of ordinary

sensibilities and has caused mental anguish and suffering as alleged herein. Moreover, the

disclosure of such private facts and information as alleged herein does not include information

which is of a legitimate public concern.

99.     Trans Union and Acxiom violated the rights of privacy of Plaintiffs and members

of the Plaintiff Classes by misappropriating and disclosing, selling and/or leasing their private

and confidential financial and other information without their consent. Each Plaintiffs' and Class

30

members' name and private and confidential financial and other information have value, and

defendants' unlawful use, disclosure and sale of that information, was made for their own benefit.

Trans Union and Acxiom derived millions of dollars of revenue through the unlawful

misappropriation of Plaintiffs' names and private and confidential financial and other

information.

100.    As a result of the unlawful conduct as alleged herein, the privacy rights of

Plaintiffs and the Plaintiff Classes have been violated, and Plaintiffs and Class members have

been harmed as a result thereof.

101.    As the unlawful conduct by Trans Union and Acxiom alleged herein was

intentional, fraudulent, oppressive and/or malicious, and Plaintiffs and members of the Plaintiff

Classes are entitled to exemplary damages, as well as all other appropriate relief as set forth in

the Prayer For Relief.

### FOURTH CAUSE OF ACTION
(Unjust Enrichment By all Plaintiffs
Against Trans Union and Acxiom)

102.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1

through 101 as if the same were set forth herein.  This cause of action is being asserted by

Plaintiffs under the laws of the states in which Plaintiffs reside, ans as separate state classes, as

alleged herein.

103.    Trans Union and Acxiom have been unjustly enriched by misappropriating and

selling the private financial, credit and other confidential information of Plaintiffs and members

of the Plaintiff Classes without each such person's knowledge, authorization or consent.

31

104.    By accessing, disclosing and selling Plaintiffs' and Class members' private and confidential financial information in violation of federal and state laws as alleged herein, Trans Union and Acxiom have been unjustly enriched to the detriment of Plaintiffs. Defendants' retention of these benefits, derived in violation of law, is unjust and contravenes the fundamental principles of justice, equity, and good conscience.

105.    Trans Union and Acxiom have capitalized on the unlawful sale and disclosure of private consumer credit and other information as alleged herein, and the benefits they have received are directly related to their exploitation of Plaintiffs' and Class members' privacy interests and rights.

106.    Plaintiffs and members of the Plaintiff Classes are entitled to restitution and/or disgorgement of all revenues Trans Union and Axciom have received by selling, leasing or otherwise disclosing such private information as alleged herein, as well as all other appropriate relief as set forth in the Prayer For Relief.

FIFTH CAUSE OF ACTION
(Willful Noncompliance With The FCRA, 15 U.S.C. §1681b(c)
By All Plaintiffs Against Trans Union and Axciom)

107.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 106 as if the same were set forth herein.

108.    Since October 1997, in connection with the sale, lease and/or disclosure of target marketing lists used for firm offers of credit or insurance, Trans Union and Axciom have furnished information to unaffiliated third party vendors beyond that which is permitted by the FCRA.

32

109.    Through the sale, lease and/or disclosure of the telephone numbers and/or private financial, credit and/or other confidential information of Plaintiffs and members of the Firm Offer Class, in Trans Union's Master File, target marketing lists, and similar products and services that were used for firm offers of credit or insurance, Trans Union and Axciom willfully failed to comply with 15 U.S.C. §1681b(c).

110.    Trans Union's and Axciom's disclosure of the foregoing information constitutes knowing and intentional acts in conscious disregard for the rights of Plaintiffs and the members of the Firm Offer Class under the FCRA, 15 U.S.C. §1681n. The Court should therefore award all appropriate relief as set forth in the Prayer For Relief.

SIXTH CAUSE OF ACTION
(Negligent Noncompliance With The FCRA, 15 U.S.C. §1681b(c)
By All Plaintiffs Against Trans Union and Acxiom)

111.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 110 as if the same were set forth herein.

112.    Since October 1997, in connection with sale, lease and/or disclosure of target marketing lists used for firm offers of credit or insurance, Trans Union and Acxiom have furnished information to their unaffiliated third party vendors beyond that which is permitted by the FCRA.

113.    Through the sale, lease and/or disclosure of the telephone numbers and/or private financial, credit and/or other confidential information of Plaintiffs and members of the Firm Offer Class, in Trans Union's Master File, target marketing lists, and similar products and services, which were used for firm offers of credit or insurance, Trans Union and Axciom have

33

negligently failed to comply with 15 U.S.C. §1681b(c).  The Court should therefore award all

appropriate relief as set forth in the Prayer For Relief.

**SEVENTH CAUSE OF ACTION**
(Violation of Cal. Bus. & Prof. Code §17200 et seq.
By Martinelli, Stein and Wayne Against Trans Union,
and by Martinelli Against Acxiom)

114.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1

through 113 as if the same were set forth herein.

115.    By virtue of Trans Union's and Acxiom's violation of the FCRA and their willful

or negligent noncompliance with the FCRA, their invasion of Plaintiffs' privacy and the other

wrongful conduct alleged in this complaint, Trans Union and Acxiom have engaged in unfair

competition through the course of unlawful business acts and practices, unfair business acts and

practices and fraudulent business acts and practices, all in violation of California Business &

Professions Code §17200 et seq.

116.    Trans Union and Acxiom have been unjustly enriched as a result of the acts of

unfair competition alleged herein.

117.    Pursuant to California Business & Professions Code §§17203 and 17204,

Plaintiffs Martinelli, Stein and Wayne are entitled to an order enjoining Trans Union and Acxiom

from and further violations of Section 17200, and requiring them to disgorge all revenue derived

from their acts of unfair competition as alleged herein to deter others from engaging in such

unlawful conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, on behalf of themselves and the Plaintiff Classes as

applicable, for all relief to which they are entitled under the FCRA, the applicable state laws as

34

alleged herein, and the court's equitable powers, including, but not limited to all of the following relief:

1.    An order certifying a class or classes on behalf of Plaintiffs as proposed in a yet to be filed motion or motions for certification of a class or classes;

2.    As permitted by state law and the Court's equitable powers, an order enjoining defendants from disclosing consumer reports in the form of target marketing lists to any person unless defendants have reason to believe that such person intends to use such lists for a permissible purpose as required by law;

3.    As permitted by state law and the Court's equitable powers, an order enjoining defendants from the misappropriation and/or invasion of the privacy rights of Plaintiffs and of the members of the appropriate Plaintiff Classes through the disclosure of their private financial, credit and other confidential information without their informed written consent;

4.    As permitted by state law and the Court's equitable powers, an order requiring defendants to notify all members of the appropriate Plaintiff Classes of their right to be excluded from defendants' target marketing lists and of the manner in which such exclusion may be sought;

5.    Statutory damages under the FCRA, 15 U.S.C. §1681n, of not less than $100 and not more than $1,000, for each instance of defendants' willful failure to comply with the FCRA, in an amount to be proven at trial;

6.    Punitive damages under the FCRA, 15 U.S.C. §1681n, or as otherwise permitted under state law, in an amount to be proven at trial;

7.  Nominal damages under the FCRA, 15 U.S.C. §1681n, for FCRA Subclass (a)(1), or as otherwise permitted under state law, in an amount to be proven at trial;

8.  Disgorgement by defendants of all monies, profits and any other unjust gains derived from their unlawful conduct or acts as herein alleged;

9.  Pre-judgment interest and post-judgment interest as permitted by law;

10. Attorneys' fees and costs; and/or

11. Such further legal and equitable relief as the court deems just.

## RESTATED JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

By: _____          November 1, 2002

Terry Rose Saunders                     Kevin Prongay
Thomas A. Doyle                         Jon W. Borderud
Saunders & Doyle                        Prongay & Borderud
33 North Dearborn Street, Suite 1302    11755 Wilshire Boulevard, Ste. 2140
Chicago, IL 60602                       Los Angeles, CA 90025
Telephone: (312) 551-0051               Telephone: (310) 207-2848
Fax: (312) 551-4467                     Fax: (310) 207-2748
**Liaison Counsel For Plaintiffs**     **Co-Lead Counsel For Plaintiffs**

Frank Janecek                           Matthew Righetti
Milberg Weiss Bershad Hynes             Righetti & Wynne
& Lerach LLP                            456 Montgomery Street, Suite 1400
600 West Broadway, Ste. 1800            San Francisco, CA 94101
San Diego, CA 92101                     Telephone: (415) 983-0900
Telephone: (619) 231-1058               Fax: (415) 397-9005
Fax: (619) 231-7423                     **Co-Lead Counsel For Plaintiffs**
**Co-Lead Counsel For Plaintiffs**

                                        *(Other Counsel For Plaintiffs Are
                                        Listed Below)*

36

Daniel S. Mason
Christopher T. Micheletti
Zelle, Hoffman, Voelbel, Mason & Gette,
LLP.
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Fax: (415) 693-0770

Kevin J. McInerney
McInerney & McInerney
18124 Wedge Parkway, #503
Reno, NV 89511
Telephone: (775) 849-3811
Fax: (775) 849-3866

Bruce J. Wecker
The Furth Firm
201 Sansome Street, Ste. 1000
San Francisco, CA 94104
Telephone: (415) 433-2070
Fax: (415) 982-2076

Mark C. Laughlin
Fraser, Stryker, Vaughn, Meusey, Olson,
Boyer & Bloch, P.C.
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102-2663
Telephone: (402) 978-5247
Fax: (402) 341-8290

Robert B. Roden
Shelby & Cartee
2956 Rhodes Circle
Birmingham, Alabama 35205
Telephone: (205) 933-8383
Fax: (501) 375-1309

Joe R. Whatley, Jr.
Whatley Drake, L.L.C.
1100 Financial Center
505 North 20th Street
Birmingham, AL 35203
Telephone: (205) 328-9576
Fax: (205) 328-9669

Alan Himmelfarb
3801 South Santa Fe Avenue
Vernon, California 90058
Telephone (323) 585-8696
Fax: (323) 585-6195

Taher Kameli
220 South State Street, #2026
Chicago, Illinois 60604
Telephone: (312) 427-4529
Fax: (312) 427-4531

John N. Zarian
Friedmann, O'Brian & Zarian, LLP
611 West Sixth Street, 16th Floor
Los Angeles, CA 90017
Telephone: (213) 861-7490
Fax: (213) 861-7491

Steven Barnhill
Barnhill & Vayernov, LLP
11755 Wilshire Boulevard, Suite 2140
Los Angeles, CA 90025
Telephone: (213) 637-0921
Fax: (213) 637-0199

Steve W. Berman
Hagens Berman L.L.P.
1301 Fifth Avenue, Ste. 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594

Steven C. Mitchell
Christopher A. O'Hara
Hagens Berman & Mitchell, P.L.L.C.
2425 East Camelback Road, Ste. 620
Phoenix, AZ 85016
Telephone: (602) 508-3200
Fax: (602) 840-3012

Joseph P. Danis
Carey & Danis
8182 Maryland Avenue, Ste. 1400
St. Louis, Missouri 63105
Telephone: (314) 725-7700
Fax: (314) 721-0905

Evan D. Buxner
8182 Maryland Avenue, Ste. 1400
St. Louis, MO 63105

Oren Giskan
Law Offices of James V. Bashian
500 Fifth Avenue
New York, N.Y. 10110
Telephone: (212) 921-4110
Fax: (212) 921-4249

Joseph LaSala
McElroy, Duetch & Mulvaney
1300 Mount Kembel Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Telephone: (973) 993-8100
Fax: (973) 425-0161

Jonathan Auerbach
Berger & Montague
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604

Joseph C. Kohn
Michael Boni
Kohn Swift & Graf
One South Broad Street, Ste. 2100
Philadelphia, Pennsylvania 19107
Telephone: (215) 238-1700
Fax: (215) 238-1968

Robert S. Waldman
Robert S. Waldman & Associates
1525 Locust Street
6th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215)
Fax: (215) 735-5659

John W. Jeffrey
Jeffrey & Dreher, LLP
Home Savings Tower
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619)230-8828
Fax: (619) 687-0136

Henry H. Rossbacher
James S. Cahill
Rossbacher & Associates
444 South Flower Street, Suite 2100
Los Angeles, CA 90070
Telephone: (213) 895-6500
Fax: (213) 895-6161

Kevin P. Roddy
Hagens Berman L.L.P.
611 West Sixth Street, 16th Floor
Los Angeles, CA 90017
Telephone: (213) 861-7454
Fax: (213) 861-7456

David B. Kahn
David B. Kahn & Associates
One Northfield Plaza, Suite 100
Northfield, IL 60093
Telephone: (847)
Fax: (847) 501-5086

Alan S. Kopit
Randy J. Hart
Mark D. Griffin
Hahn Loeser & Parks LLP
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114-2301
Telephone: (216) 621-0150
Fax: (216) 241-2824

Robert D. Gary
Thomas A. Downie
Gary, Naegle & Theado
446 Broadway Avenue
Lorain, Ohio 44052
Telephone: (440) 244-4809
Fax: (440) 244-3462

Brian J. Robbins
Cauley, Geller, Bowman & Coates, LLP
225 Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 702-7350
Fax: (619) 702-7351

Jonathan W. Cuneo
The Cuneo Law Group, P.C.
317 Massachusetts Avenue, N.E., Suite 300
Washington, D.C. 20002
Telephone: (202) 789-3960
Fax: (202) 789-1813

Steven E. Cauley
Cauley, Geller, Bowman & Coates, LLP
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Telephone: (501) 312-8500
Fax: (501) 312-8505

**Counsel For Plaintiffs**

<u>CERTIFICATE OF SERVICE</u>

I certify that, on November 1, 2002, I caused a copy of the foregoing document to be served on all counsel listed below, in the manner indicated for each.

*Representing Trans Union LLC*

Roger L. Longtin
Michael O'Neil
Piper Rudnick
203 North La Salle Street, Suite 1800
Chicago, IL 60601-1293
(By Messenger Delivery)

John H. Beisner
Brian P. Brooks
O'Melveny & Myers LLP
555 13th Street N.W.
Washington DC 20004
(By Overnight Express)

*Representing Acxiom Corp.*

Amy Lee Stweart
Rose Law Firm
120 East Fourth Street
Little Rock AK 72701
(By Overnight Express)

*Representing MCI WorldCom, Inc. and MCI Communications, Inc., d/b/a MCI Worldcom Wireless :*

Ross B. Bricker
Jenner & Block
One IBM Plaza
Chicago, Illinois 60611
(By Messenger Delivery)

Thomas A. Doyle