**FILED**

JAN 1 3 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Judge Robert W. Gettleman
United States District Court

| | | |
|---|---|---|
| In Re TRANS UNION CORP. PRIVACY LITIGATION | ) ) ) | |
| | ) | Lead Case No. 00 cv 4729 |
| THIS DOCUMENT RELATES TO: | ) ) | MDL Docket No. 1350 |
| | ) | Judge Robert W. Gettleman |
| ALL ACTIONS | ) ) | |

JAN 1 5 2003

**<u>NOTICE OF MOTION</u>**

To:    All Counsel of Record (See attached Service List)

PLEASE TAKE NOTICE that on **Tuesday, January 14, 2003** at **9:15 a.m.** or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Judge Robert W. Gettleman or before any judge sitting in his stead, in Courtroom 1703, in the Dirksen Building, 219 South Dearborn, Chicago, Illinois, to present for hearing **Trans Union LLC's Motion To Dismiss**, a copy of which is attached and hereby served upon you.

PIPER RUDNICK

By: _____

One of the attorneys for Trans Union, LLC

Roger L. Longtin (ARDC No. 01689185)
Michael O'Neil (ARDC No. 06201736)
PIPER RUDNICK
203 N. LaSalle Street ,Suite 1800
Chicago, IL  60601-1293
(312) 368-4000

John H. Beisner
Brian P. Brooks
O'MELVENY & MYERS LLP
555 13th Street, N.W.
Washington, D.C.  20004-1109
Tel: (202) 383-5300
Fax: (202) 383-5414

~CHGO1:30236795.v1

**FILED**

JAN 1 3 2003

Judge Robert W. Gettleman
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re TRANS UNION CORP.            )
PRIVACY LITIGATION                 )
_____)
                                   )    Lead Case No. 00 cv 4729
THIS DOCUMENT RELATES TO:          )    MDL Docket No. 1350
                                   )    Judge Robert W. Gettleman
        ALL ACTIONS                )
_____)

## MOTION TO DISMISS

Defendant, Trans Union LLC ("Trans Union"), by its counsel, pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, moves this Court to dismiss plaintiffs' Second Amended

Consolidated Complaint ("SACC"). In support hereof, Trans Union states as follows:

1.      On November 1, 2002, plaintiffs filed their Second Amended Consolidated

Complaint. In seven (7) separate counts, plaintiffs challenge Trans Union's disclosure of

consumer information to its customers in target marketing lists and in prescreening for firm

offers of credit or insurance. Plaintiffs allege that Trans Union's practices violate the Fair Credit

Reporting Act ("FCRA") as well as the laws of nine (9) different states. Each cause of action

alleged in the Second Amended Consolidated Complaint should be dismissed for one or more of

the following reasons.

2.      First, plaintiffs' claims based upon the alleged disclosure of consumer reports in

the form of target marketing lists should be dismissed in light of the FTC proceeding against

Trans Union which addressed the same conduct. The FTC proceeding resulted in the entry of a

cease-and-desist order against Trans Union, thereby mooting plaintiffs' requests for injunctive



relief under any theory of liability.

3.     Plaintiffs' claims for monetary relief under the FCRA for the allegedly unlawful disclosure of target marketing lists (which is sought only for allegedly willful violations) also fail, at least with respect to all such claims relating to disclosures made prior to February 2000. Because there was no settled standard under the FCRA with respect to the lawfulness of Trans Union's target marketing activities, Trans Union cannot be held liable for willfully violating the FCRA prior to February 2000.

4.     Plaintiffs' separate FCRA claims based upon disclosures of certain types of consumer information in firm offer prescreening (Counts V and VI) fail to state a claim under the FCRA, 15 U.S.C. § 1681b(c)(2). That section specifically authorizes consumer reporting agencies to disclose consumer reports in firm offer prescreening (*id.* at § 1681b(c)(1)(B)), and identifies the types of information a person may receive for the purpose of making a firm offer. (*Id.* at § 1681b(c)(2)). Plaintiffs fail to allege any facts to bring the complained-of disclosures within the prohibitions of § 1681b(c)(2).

5.     Plaintiffs' state law claims for invasion of privacy and unjust enrichment (Counts III and IV) also must be dismissed for failure to state a claim. These claims reflect no substantive change from those which the Court dismissed from plaintiffs' [first] Consolidated Amended Complaint.

6.     Moreover, plaintiffs' allegations not only fail to satisfy the particular requirements of the state laws under which plaintiffs' claims are brought, but also fail to state a claim for invasion of privacy under the Restatement's general formulation of invasion of privacy under intrusion into seclusion or appropriation of name or likeness theories. Plaintiffs fail to

2

identify an actionable intrusion, any harm resulting therefrom, or facts to suggest that the alleged intrusion was highly offensive. Plaintiffs also fail to allege facts to support a claim that the information allegedly disclosed by Trans Union had measurable value to plaintiffs which was somehow impaired by Trans Union's conduct. For these same reasons, plaintiffs' claim for unjust enrichment (Count IV) fails.

7.    Finally, the state law claims fail because plaintiffs' failure to request actual or compensatory damages indicates that they suffered no legally cognizable injury.

8.    In further support of this motion, Trans Union has filed Trans Union LLC's Memorandum In Support Of Motion To Dismiss.

WHEREFORE, defendant, Trans Union LLC, respectfully requests that the Court enter an Order dismissing the Second Amended Consolidated Complaint.

PIPER RUDNICK

By: _____
One of the attorneys for Trans Union, LLC

Roger L. Longtin (ARDC No. 01689185)
Michael O'Neil (ARDC No. 06201736)
PIPER RUDNICK
203 N. LaSalle Street ,Suite 1800
Chicago, IL 60601-1293
(312) 368-4000

John H. Beisner
Brian P. Brooks
O'MELVENY & MYERS LLP
555 13th Street, N.W.
Washington, D.C. 20004-1109
Tel: (202) 383-5300
Fax: (202) 383-5414

3

--CHGO1:30236814.v1

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **Notice of Motion and Motion to Dismiss** have been served on this **9th** day of January, 2003, upon All Counsel of Record via First Class U.S. Mail, postage prepaid, or by hand delivery as indicated below.

Mr. Jon W. Borderud
PRONGAY & BORDERUD
12121 Wilshire Blvd.
Suite 400
Los Angeles, California  90025

Mr. Matthew Righetti
RIGHETTI & WYNNE
456 Montgomery Street
Suite 1400
San Francisco, California  94104

Mr. Frank Janecek, Jr.
MILBERG, WEISS, BERSHAD, HYNES
 & LERACH, LLP
401 B Street, Suite 1700
San Diego, California 92101

Ms. Amy Stewart
ROSE LAW FIRM
120 East Fourth Street
Little Rock, Arkansas 72201

Ms. Terry Rose Saunders
Law Offices of Terry Rose Saunders
33 N. Dearborn Street
Suite 1302
Chicago, Illinois  60602
*(Via Hand Delivery)*

Mr. Ross B. Bricker
JENNER & BLOCK
One IBM Plaza
47th Floor
Chicago, Illinois  60611

Christopher Micheletti
Zelle, Hofmann, Voelvel, Mason & Gette LLP
44 Montgomery Street, Suite 3400
San Francisco, California  94104

Roger L. Longtin

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 1 3 2003

Judge Robert W. Gettleman
United States District Court

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) |

THIS DOCUMENT RELATED TO
ALL ACTIONS

Lead Case No. 00 cv 4729
MDL Docket No. 1350
Judge Robert W. Gettleman

JAN

## MEMORANDUM IN SUPPORT OF TRANS UNION LLC'S
## MOTION TO DISMISS

John H. Beisner
Brian P. Brooks
O'MELVENY & MYERS LLP
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Roger L. Longtin
Michael O'Neil
PIPER RUDNICK
203 N. LaSalle Street
Suite 1800
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516



# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.     THE FEDERAL TRADE COMMISSION PROCEEDING
INVOKED BY PLAINTIFFS IN THE SECOND AMENDED
CONSOLIDATED COMPLAINT, AND BY THIS COURT IN
ITS SEPTEMBER 10, 2002 ORDER, DICTATES THAT
PLAINTIFFS' CLAIMS BE DIMSISSED .......................................................... 3

     A.    The FTC's Resolution Of The Challenged Conduct Renders
Plaintiffs' Claims For Injunctive Relief Moot. ........................................... 3

     B.    The FTC Proceeding Further Requires Dismissal Of Plaintiffs'
Claims Based On Alleged "Willful" FCRA Violations Through
Target Marketing.. ..................................................................................... 6

     C.    The FTC Proceeding Demonstrates That The Challenged
Conduct Was Not Actually Unlawful Until At Least February
2000, Necessitating Dismissal Of Claims Predicated On
Conduct Before That Date. ........................................................................ 10

     D.    Plaintiffs' Claims Of FCRA Violations In Firm Offer
Prescreening Should Be Dismissed. .......................................................... 12

II.    THE STATE LAW COUNTS OF THE COMPLAINT FAIL TO
STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED .......................... 13

     A.    Plaintiffs Have Failed To Allege Facts Sufficient To
Support Privacy Or Unjust Enrichment Claims .......................................... 13

          1.    Plaintiffs' Pleading Amendments Do Nothing To Cure
The Defects Identified In The Court's Order Dismissing
Their Privacy And Unjust Enrichment Claims. ............................... 14

          2.    In Other Respects As Well, Plaintiffs Fail To State Any
Privacy Or Unjust Enrichment Claim. ............................................ 15

               a.    Plaintiffs Cannot Proceed On An Intrusion-
Into Seclusion Theory ....................................................... 15

(1) Plaintiffs Fail To Allege Any Actionable Intrusion ................................................................16

(2) Plaintiffs Cannot Allege Facts Sufficient To Show That, In Accessing Their Credit Files, Trans Union Acted In A Highly Offensive Way Or Caused Any Damages Whatever..............18

(3) The Named Plaintiffs' Claims Are Particularly Untenable Under Certain States' Laws..................19

b. Plaintiffs Fail To State A Claim For Misappropriation. ....20

B. Plaintiffs Have Failed To Allege Any Legally Cognizable Injury That Is Redressable Under State Law. ............................................22

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adkins v. Kelly Springfield Tire Co.,*
    No. 97 C 50381, 1998 U.S. Dist. LEXIS 16816 (N.D. Ill. Oct. 14, 1998) ..................18

*Bakker v. McKinnon,*
    152 F.3d 1007 (8th Cir. 1998) ..........................................................................6

*Bisbee v. John C. Conover Agency, Inc.,*
    452 A.2d 689 (N.J. Super. 1982) ..............................................................17

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964)............................................................................11

*Braband v. Beech Aircraft Corp.,*
    367 N.E.2d 118 (Ill. App. 1st Dist. 1977)...................................................22

*Cedars-Sinai Medical Center v. Superior Court,*
    74 Cal. Rptr. 2d 248 (Cal. 1998)..............................................................22

*Condon v. A.H. Robins Co., Inc.,*
    349 N.W.2d 622 (Neb. 1984)...................................................................23

*Cousin v. Trans Union Corp.,*
    246 F.3d 359 (5th Cir. 2001) ...................................................................6

*Cox v. Hatch,*
    761 P.2d 556 (Utah 1988).......................................................................22

*Creel v. I.C.E. & Assoc.,*
    771 N.E.2d 1276 (Ind. App. 2002) ...........................................................19

*Criscuolo v. Shaheen,*
    736 A.2d 947 (Conn. Sup. Ct. 1999) .........................................................22

*Dawson v. Bunker Hill Plaza Associates,*
    673 A.2d 847 (N.J. Super. 1996) ..............................................................22

*Doe v. Dyer-Goode,*
    566 A.2d 889 (Pa. Super. 1989)...............................................................17

*Donovan v. ABC-NACO Inc.,*
2002 U.S. Dist. LEXIS 12797 (N.D. Ill. Jul. 12, 2002)............................................14

*Duncan v. Handmaker,*
149 F.3d 424 (6th Cir. 1998) ........................................................................7

*Dwyer v. American Express Co.,*
652 N.E.2d 1351 (Ill. App. 1st Dist. 1995).........................................17, 21, 22

*Frankel v. Warwick Hotel,*
881 F. Supp. 183 (E.D. Pa. 1995) ..................................................................16

*Godbehere v. Phoenix Newspapers, Inc.,*
783 P.2d 781 (Ariz. 1989)..............................................................................20

*Grunseth v. Marriott Corp.,*
872 F. Supp. 1069 (D.D.C. 1995 ....................................................................19

*Henry v. Forbes,*
433 F. Supp. 5 (D. Minn. 1976)........................................................................7

*Hinton v. Monsanto Co.,*
813 So.2d 827 (Ala. Sup. Ct. 2001)................................................................22

*Houghton v. New Jersey Mfrs. Ins. Co.,*
795 F.2d 1144 (3d Cir. 1986)............................................................................7

*Hovater v. Equifax, Inc.,*
823 F.2d 413 (11th Cir. 1987) .......................................................................7

*Howell v. New York Post Co.,*
612 N.E.2d 699 (N.Y. App. 1993)..................................................................20

*In re Trans Union Corp. Privacy Litig.,*
2002 U.S. Dist. LEXIS 17209 (N.D. Ill. Sept. 20, 2002) .........................1, 5, 7, 14-16

*Ippolito v. WNS, Inc.,*
864 F.2d 440 (7th Cir. 1988) ........................................................................7

*Johnson v. Sawyer,*
47 F.3d 716 (5th Cir. 1995) .........................................................................19

*Jones v. Reagan,*
696 F.2d 551 (7th Cir. 1983) .......................................................................22

*Jones v. Valvoline Co.,*
    No. CIV A 98-0557, 1999 WL 319215 (E.D. La. May 20, 1999)..................................4

*Kronos, Inc. v. AVX Corp.,*
    81 N.Y.2d 90 (1993)..................................................................................................23

*Levas and Levas v. Village of Antioch,*
    984 F.2d 446 (7th Cir. 1982) ...................................................................................9

*Logan v. Sears, Roebuck & Co.,*
    466 So. 2d 121 (Ala. 1985)......................................................................................20

*Lovgren v. Citizens First Nat'l Bank of Princeton,*
    534 N.E.2d 987 (Ill. 1989)........................................................................................18

*Lucien v. Priener,*
    967 F.2d 1166 (7th Cir. 1992) ................................................................................14

*Mason General Hosp. v. Secretary, Dept. of Health & Human Svcs.,*
    809 F.2d 1220 (6th Cir. 1987) ...............................................................................11

*Matter of Trans Union Corp.,*
    Docket No. 9255 (June 3, 1993) .................................................................................1

*Matter of Trans Union Corp.,*
    Docket No. 9255 (Feb. 10, 2000) ..........................................................................1, 5

*Matthews v. Wozencraft,*
    15 F.3d 432 (5th Cir. 1994) ...................................................................................21

*Miller v. Motorola, Inc,.*
    560 N.E.2d 900 (Ill. App. 1st Dist. 1990)..............................................................16

*Moore v. Sam's Club,*
    55 F. Supp. 2d 177 (S.D.N.Y. 1999)........................................................................20

*Mucklow v. John Marshall Law School,*
    531 N.E.2d 941 (Ill. App. 1st Dist. 1988)..............................................................17

*Piner v. Superior Court,*
    962 P.2d 909 (Ariz. 1998)........................................................................................22

*Richmond Medical Center for Women v. Gilmore,*
    55 F. Supp. 2d 441 (E.D. Va. 1999) .......................................................................10

*Saft v. Upper Duplin Township*,
  636 A.2d 284 (Pa. Commw. 1994) ..................................................................................23

*Salyers v. Secretary of Health & Human Services*,
  798 F.2d 897 (6th Cir. 1986) .........................................................................................4

*Schifano v. Greene Cty Greyhound Park, Inc.*,
  624 So. 2d 178 (Ala. 1993) ...........................................................................................21

*Schwartz v. Royal*,
  1996 Conn. Super. LEXIS 1316 (May 20, 1996) ........................................................20

*Shibley v. Time, Inc.*,
  341 N.E.2d 337 (Ohio App. 1975)................................................................................21

*St. Anthony's Medical Center v. H.S.H.*,
  974 S.W.2d 606 (Mo. App. 1998) ................................................................................17

*Stern v. Great Western Bank*,
  959 F. Supp. 478 (N.D. Ill. 1997) ................................................................................19

*Stevenson v. TRW, Inc.*,
  987 F.2d 288 (5th Cir. 1993) .........................................................................................6

*Stotts v. Community Unit Sch. Dist. No. 1*,
  230 F.3d 989 (7th Cir. 2000) .........................................................................................3

*Trans Union Corp. v. FTC*,
  81 F.3d 228 (D.C. Cir. 1996).................................................................................`8-10

*Trans Union Corp. v. FTC*,
  245 F.3d 809 (D.C. Cir. 2001) ......................................................................................9

*Verizon Telephone Cos. v. FCC*,
  269 F.3d 1098 (D.C. Cir. 2001) ..................................................................................11

*Village of Hoffman Estates v. Flipside, Hoffman Estates*,
  455 U.S. 489 (1982)......................................................................................................11

*Wilkinson v. Methodist, Richard Young Hosp.*,
  612 N.W.2d 213 (Neb. 2000)........................................................................................17

## Statutes, Rules and Regulations

16 C.F.R. § 313.11(a)(1)(iii) ......................................................................................................4

Fair Credit Reporting Act,
    15 U.S.C. § 1681 ......................................................................................................... passim

Gramm-Leach-Bliley Act,
    15 U.S.C. § 6802(c) .....................................................................................................4

Neb. Rev. Stat. § 20-203 ..........................................................................................................17

New York Civ. Rights Law, §§ 50, 51 ......................................................................................20

## Other Materials

116 Cong. Rec. 36574-76 (Oct. 13, 1970) ...............................................................................7

Restatement (Second) Torts, §§ 652A-E (1977)......................................................................15

Restatement (Second) Torts, §§ 652B (1977)..................................................................16, 18

Restatement (Second) Torts, §§ 652C (1977).........................................................................21

## INTRODUCTION

As the Court recognized in its September 10, 2002 dismissal order, the very conduct plaintiffs challenge in the Second Amended Consolidated Complaint ("SACC") has already been specifically addressed and resolved in a lengthy Federal Trade Commission ("FTC") proceeding. The result of that proceeding was a settlement of the FTC's investigation of Trans Union's "prescreening" activities[1]; a cease-and-desist order that currently prohibits defendant Trans Union LLC ("Trans Union") from distributing or selling most forms of target marketing lists; and a refusal to impose monetary sanctions that were available to the FTC under the Fair Credit Reporting Act ("FCRA"). After considering the significance of the FTC proceeding and other relevant legal issues, this Court dismissed many of plaintiffs' claims, and concluded on the broader question of class certification that "regulation by the FTC, coupled with individual actions for damages . . . is superior to a class action" as a means of resolving the challenged conduct. *In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *71 (N.D. Ill. Sept. 20, 2002). Plaintiffs' most recent complaint – which does little more than reassert claims this Court previously found wanting – cannot survive scrutiny in light of the Court's dismissal order.

---

[1]    "Prescreening" refers to consumer information products and services provided to companies to facilitate the extension of firm offers of credit or insurance, as permitted under the Fair Credit Reporting Act ("FCRA"). *See* 15 U.S.C. § 1681b(c)(1). The Court's September 10 order assumed that the FTC proceeding "did not address Trans Union's prescreening business." *See In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *11 n.4 (N.D. Ill. Sept. 10, 2002). In fact, the original FTC proceeding included a prescreening component, which was settled in a consent agreement early in the proceeding. (*See Matter of Trans Union Corp.*, Docket No. 9255 (June 3, 1993), and portions of the FTC's complaint referred to therein (attached at Tab 1).) Moreover, the FTC's Final Order specifically recognized that Trans Union would be permitted to continue its prescreening business, stating that Trans Union is permitted to distribute and sell consumer reports to users that "intend[] to use the consumer report for purposes authorized under Section 604 of the FCRA" – the FCRA provision covering credit and insurance prescreening. (*See Matter of Trans Union Corp.*, Docket No. 9255 (Feb. 10, 2000) (attached at Tab 2).)

The Second Amended Consolidated Complaint is fatally flawed in two distinct respects. *First*, the claims plaintiffs assert under the FCRA, California's Unfair Competition Law, and nine different states' unjust enrichment doctrines, as well as their claims for injunctive relief under various state privacy laws, are all untenable in light of the FTC proceeding which plaintiffs themselves acknowledge is central to this action. As an initial matter, their claims for injunctive relief – whether premised on federal or state law or equitable principles – are plainly moot, since Trans Union is already enjoined from engaging in the challenged conduct by virtue of the FTC's cease-and-desist order. (*See* Section I.A *infra*.) Their claims for monetary relief based on Trans Union's allegedly "willful" conduct in distributing target marketing lists fare no better. It is clear from the course of the FTC proceeding that the challenged conduct could not have been considered unlawful at all until February 2000 at the earliest, and Trans Union therefore could not have had the requisite scienter to "willfully" violate the FCRA. (*See* Section I.B *infra*.) That same change in the law necessitates dismissal of all of plaintiffs' claims to the extent they are predicated on the assertion that Trans Union's conduct prior to February 2000 violated the FCRA. (*See* Section I.C *infra*.) Though separate from the FTC proceeding, plaintiffs' FCRA claims based on disclosures in firm offer prescreening simply fail to state a claim. (*See* Section I.D *infra*.)

*Second*, the claims plaintiffs assert under the state tort and equitable regimes of the nine states in which they reside must be dismissed for independent reasons. For one thing, their privacy and unjust enrichment claims contain the same defect that led this Court to dismiss them before: Plaintiffs have entirely failed to allege any facts from which the Court could conclude that Trans Union's alleged conduct was sufficiently outrageous, and plaintiffs' resulting injury sufficiently severe, to satisfy the requirements for liability under either privacy or unjust

2

enrichment theories. Indeed, the only change plaintiffs have made to the privacy and unjust

enrichment counts of their complaint since this Court's prior dismissal order is to add the adverb

"highly" to the preexisting adjective "offensive." This kind of language game is inadequate to

save their claims; absent sufficient factual allegations, their claims must be dismissed. In other

respects as well, none of the named plaintiffs has alleged facts sufficient to satisfy the elements

of a privacy or unjust enrichment claim under the law of his or her home state. (*See* Section II.A

*infra*.) In addition, plaintiffs' have failed to allege any legally cognizable injury sufficient to

support a finding of liability under any of their state law theories. (*See* Section II.B *infra*.)

Plaintiffs have now had repeated opportunities to allege claims sufficient to survive Rule

12 scrutiny. It is now clear beyond doubt that plaintiffs are unable to state any claim on which

relief could be granted. Accordingly, the Court should dismiss their complaint in its entirety,

with prejudice.

**ARGUMENT**

I.      **THE FEDERAL TRADE COMMISSION PROCEEDING INVOKED BY
        PLAINTIFFS IN THE SECOND AMENDED CONSOLIDATED
        COMPLAINT, AND BY THIS COURT IN ITS SEPTEMBER 10, 2002
        ORDER, DICTATES THAT PLAINTIFFS' CLAIMS BE DISMISSED.**

   A.   **THE FTC'S RESOLUTION OF THE CHALLENGED CONDUCT RENDERS
        PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF MOOT.**

Inasmuch as plaintiffs themselves acknowledge that the FTC has "ordered that Trans

Union cease and desist from" the alleged conduct at the heart of this lawsuit (SACC ¶ 74), they

can scarcely dispute that the claims for injunctive relief advanced in the Second Amended

Consolidated Complaint are now moot. "A case is moot when the issues presented are no longer

"live" or the parties lack a legally cognizable interest in the outcome." *Stotts v. Community Unit

Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000). In cases such as this, where the requested

3

injunction is moot, the complaint "must be dismissed" because a further judicial decree

prohibiting the already-enjoined conduct would have "no practical impact" on the parties. *Id.*

The federal courts have long recognized that agency action addressing particular conduct

has the capacity to moot private litigants' claims for relief. *See, e.g., Salyers v. Secretary of*

*Health & Human Services,* 798 F.2d 897, 901 (6th Cir. 1986) (finding claims for injunctive relief

moot because, in light of "intervening judicial and administrative developments," "the very

reasons that prompted the plaintiffs' action for declaratory and injunctive relief on a class-wide

basis have now been resolved.") Indeed, at least one district court has specifically recognized

that where "the Federal Trade Commission [has] issued an order in which defendants were

ordered to cease and desist the activities which plaintiffs sought to enjoin," plaintiffs' claims for

injunctive relief are moot. *Jones v. Valvoline Co.,* No. CIV A 98-0557, 1999 WL 319215 (E.D.

La. May 20, 1999).

There can be little question that the FTC's cease-and-desist order moots plaintiffs' claims

for injunctive relief, as a comparison of the plaintiffs' claims for injunctive relief with the scope

of the FTC's order makes clear.[2] In the Second Consolidated Complaint, plaintiffs seek an order

enjoining Trans Union from "disclosing consumer reports in the form of target marketing lists to

any person unless defendants have reason to believe that such person intends to use such lists for

a permissible purpose as required by law." (SACC, Prayer for Relief ¶ 2.) Further, plaintiffs

seek an order enjoining Trans Union from "the misappropriation and/or invasion of privacy right

of Plaintiffs and of the members of the appropriate Plaintiff Classes through the disclosure of

their private financial, credit and other confidential information without their informed written

---

[2]    While the cease-and-desist order does not address Trans Union's use of certain consumer
information received from financial institutions, i.e., identifying information and aggregated data, for
target marketing, the Gramm-Leach-Bliley Act and regulations promulgated thereunder prohibit such use.
*See* 15 U.S.C. § 6802(c); 16 C.F.R. § 313.11(a)(1)(iii) (attached at Tab 3).

consent;" and an order "requiring defendants to notifies all members of the appropriate Plaintiff Classes of their right to be excluded from defendants' target marketing lists and of the manner in which such exclusion may be sought." (*Id.* ¶¶ 3-4.)

The FTC's order clearly encompasses the conduct of which plaintiffs complain. The FTC ordered Trans Union to stop "distributing or selling consumer reports, including those in the form of target marketing lists, to any person unless respondent has reason to believe that such person intends to use the consumer report for purposes authorized under Section 604 of the FCRA." (*Matter of Trans Union Corporation*, Docket No. 9255 (Feb. 10, 2000) (attached at Tab 2).) The language of the FTC's order is substantively identical to the injunction requested in Paragraph 2 of plaintiffs' most recent prayer for relief, which seeks "an order enjoining [Trans Union] from disclosing consumer reports in the form of target marketing lists to any person unless [Trans Union has] a reason to believe that such person intends to use such lists for a permissible purpose as required by law." The FTC order also extends to the relief plaintiffs request in Paragraphs 3 and 4 of the Second Amended Consolidated Complaint, since its incorporation of Section 604 of the FCRA includes the provisions for written consumer consent and exclusion from consumer information lists that plaintiffs request. *Compare* 15 U.S.C. §§ 1681b(a)(2) and 1681b(e) *with* SACC, Prayer for Relief ¶¶ 3-4. Indeed, this Court has already recognized as much, holding that the FTC's order halting the very practices challenged by plaintiffs renders further class litigation an inferior method of addressing the challenged conduct. *In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *70. In short, since the conduct plaintiffs challenge – the distribution of consumer information except for purposes

5

specifically permitted by the FCRA – has already been enjoined by federal administrative order, plaintiffs' private claims for injunctive relief must be dismissed as moot.[3]

### B. THE FTC PROCEEDING FURTHER REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS BASED ON ALLEGED "WILLFUL" FCRA VIOLATIONS THROUGH TARGET MARKETING.

Plaintiffs assert in Count I that Trans Union "willfully" violated the FCRA by distributing target marketing and prescreening lists between January 28, 1997 and the present. (*E.g.*, SACC ¶¶ 30, 89-91.) Yet until at least February 2000 there was no authoritative ruling from which Trans Union could have ascertained that its target marketing activities were unlawful. Indeed, as explained below, a federal appeals court specifically ruled in 1996 that there was no basis for concluding that Trans Union's target market activities raised legal concerns under the FCRA. In these circumstances, Trans Union cannot be held liable for "willful" FCRA violations in target marketing, and Count I therefore must be dismissed.

Claims of "willful" FCRA violations require a showing of scienter – in other words, a showing that the defendant acted in conscious disregard of its legal obligations. In one formulation, the plaintiffs' burden is to allege and prove that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001); *see also Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998); *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993). As one federal appellate court squarely held, there can be no finding of willfulness where a defendant had reason for believing that the challenged conduct was permissible under the FCRA. *See*

---

[3]     Because the conduct plaintiffs challenge has been ordered stopped by the FTC, plaintiffs' requests for injunctive relief must be dismissed as moot regardless of whether the requests themselves are premised on federal or state law theories. To the extent that they are premised on the FCRA, of course, they are subject to dismissal for the independent reason that – as this Court held in its earlier dismissal

*Duncan v. Handmaker*, 149 F.3d 424, 428 (6th Cir. 1998) (holding that defendants could not be held civilly liable for obtaining reports for what they believed was a proper purpose, but which a court later ruled to be impermissible).

Trans Union could not possibly have "willfully" violated the FCRA during the time period when plaintiffs' claims purportedly arose, since until at least February 2000 there was no reason for believing its conduct was open to serious legal question. For most of the 30-year history of the FCRA, its definition of "consumer report" – and therefore the scope of its substantive prohibitions – was notoriously vague. Even members of the Congress that enacted the FCRA commented on the vagueness of the "consumer report" concept. *See* 116 Cong. Rec. 36574-76 (Oct. 13, 1970) (attached at Tab 4). Not only was the definition vague, its application over time necessarily made it a very elastic concept, defined by reference to how customers of consumer reporting agencies use the information *after* they have received it. *See* 15 U.S.C. § 1681a(d)(1). Customers' use of the information depends upon a variety of factors and is apt to change over time. Lacking any guidance from the FTC, some courts concluded that reports that were not used for a purpose permitted under the FCRA were not consumer reports. *See e.g., Hovater v. Equifax, Inc.*, 823 F.2d 413 (11th Cir. 1987); *Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144, 1148-49 (3d Cir. 1986); *Henry v. Forbes*, 433 F. Supp. 5, 17-19 (D. Minn. 1976). Other courts took different approaches. Under the analysis that long prevailed in the Seventh Circuit, the very conduct for which plaintiffs now attack Trans Union would have constituted distribution of consumer reports, but likely would have been regarded as having a permissible purpose. *See Ippolito v. WNS, Inc.*, 864 F.2d 440, 451-52 n.11 (7th Cir. 1988). FTC commentary issued in 1990, along with statutory amendments adopted in 1996, only added to the

---

order – only the FTC, and not any private litigant, is entitled to seek injunctive relief under the FCRA. *See In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *28-29.

confusion over what constituted a "consumer report" under FCRA, and complicated the analysis of the permissible purposes for which consumer reports could be distributed to third parties.

It was in this context that the FTC, in December 1992, commenced its proceeding concerning Trans Union's target marketing and prescreening activities. Never having previously found target marketing lists to be prohibited under the FCRA, the FTC summarily decided that Trans Union's lists were consumer reports that could not be distributed except as expressly permitted under the FCRA. This decision was reversed in April 1996, when the U.S. Court of Appeals for the D.C. Circuit held that Trans Union had "raised an issue of material fact precluding the Commission's summary decision that Trans Union's lists are consumer reports." *Trans Union Corp. v. FTC*, 81 F.3d 228, 230 (D.C. Cir. 1996). The appellate court's outright reversal in mid-1996 of the FTC's FCRA interpretation clearly demonstrates that, as of that date, Trans Union had no reason to believe that its conduct was unlawful. The language of the D.C. Circuit's opinion strongly suggested the contrary: In that court's view, "the Commission had offered nothing to support its view, precluding summary action in its favor regardless of Trans Union's evidence." *Id.* at 233. The court concluded by declining to decide the "serious" First Amendment issue Trans Union raised because "of the very serious doubt whether Trans Union's lists are covered by the [FCRA] at all." *Id.* at 235.

In addition, the FTC's initial conclusion with respect to Trans Union was fundamentally inconsistent with its prior ruling in a similar case – demonstrating all the more clearly that Trans Union could not have anticipated the legal rule on which plaintiffs now rely. As the D.C. Circuit noted, the FTC in 1992 had entered into a settlement agreement with TRW, a Trans Union competitor, which "permitted TRW to market lists from its credit reporting database based on such 'identifying information' as name, zip code, age, social security number or 'substantially

8

similar identifiers.'" *Trans Union Corp.*, 81 F.3d at 232. In direct opposition to that position,

however, the FTC's summary decision against Trans Union ruled that essentially all of Trans

Union's target marketing lists were "consumer reports" that could not be distributed to third

parties except in certain narrowly defined circumstances. The D.C. Circuit rejected the FTC's

attempt to distinguish its Trans Union ruling from its earlier ruling, stating that "[n]ot only is the

Commission's identification-credit divide without inherent conceptual support, but its

application as between Trans Union and TRW, is flawed." *Trans Union Corp.*, 81 F.3d at 232.

The court observed that the FTC permitted TRW to transmit zip codes, for example, which

"seem to have at least as much creditworthiness value as knowing simply that a person once

borrowed money, with the repayment record unknown." *Id.* Not until February 2000 did the

FTC hand down an interpretation of FCRA applicable to Trans Union's challenged conduct that

was upheld on review. [4] *See Trans Union Corp. v. FTC*, 245 F.3d 809 (D.C. Cir. 2001) ("*Trans Union II*").[5]

In light of this history, Trans Union cannot have had the scienter required to violate the

FCRA "willfully," if its conduct could have constituted a violation at all.[6] As the Seventh

Circuit has held, statutory scienter requirements "envision not only a knowing of what is done

but a knowing that what is done is unlawful, or at least, so wrong that it is probably unlawful."

*Levas and Levas v. Village of Antioch*, 984 F.2d 446, 453 (7th Cir. 1982) (quoting Amsterdam,

---

[4]     Even this interpretation was inconsistent with the FTC's prior position on what constitutes a
consumer report. For example, in the February 2000 ruling, the FTC included within the definition of a
consumer report the criteria used in prescreening; however, a consumer's name and address are included
in these criteria, but are not, according to the FTC, a consumer report. This inconsistency, recognized by
the D.C. Circuit in *Trans Union II*, 245 F.3d at 816, simply underscores the confusion over the definition
of a consumer report in the context of target marketing.
[5]     Though it is not necessary to decide in the context of this motion to dismiss, Trans Union does
not concede that the FTC's and D.C. Circuit's determinations should be binding in this action under
collateral estoppel principles.
[6]     As explained below, even plaintiffs' claims for negligent FCRA violations fail as a matter of law.

"The Void-for-Vagueness Doctrine In The Supreme Court," 109 U. Pa. L. Rev. 67, 87 n. 98 (1960)). *A fortiori*, a company like Trans Union cannot willfully or knowingly violate a vague or unknowable legal standard. *See Richmond Medical Center for Women v. Gilmore*, 55 F. Supp. 2d 441, 499 (E.D. Va. 1999) ("when the law is vague or highly debatable, a defendant . . . lacks the requisite intent to violate it.") (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974)). Consequently, plaintiffs' claims based on allegedly "willful" FCRA violations must be dismissed.

### C. THE FTC PROCEEDING DEMONSTRATES THAT THE CHALLENGED CONDUCT WAS NOT ACTUALLY UNLAWFUL UNTIL AT LEAST FEBRUARY 2000, NECESSITATING DISMISSAL OF CLAIMS PREDICATED ON CONDUCT BEFORE THAT DATE.

Beyond the question of remedies, the FTC proceeding and resulting cease-and-desist order demonstrate that Trans Union's challenged conduct was not unlawful *at all* prior to at least February 2000. As explained above, the FTC's February 2000 order was a significant departure from preexisting law as previously interpreted by the FTC. The D.C. Circuit's 1996 decision underscored the point, holding that the FTC had not carried its burden of justifying its departure from past practice. *See Trans Union Corp.*, 81 F.3d at 232. And the FTC's own decision concerning a proper remedy is decisive: Rather than imposing a retrospective monetary penalty, the FTC imposed only a prospective cease-and-desist remedy. All the evidence, in short, demonstrates that the law prior to at least February 2000 did not actually prohibit the conduct for which plaintiffs now seek to hold Trans Union liable.

Given the significant change in FCRA law and practice represented by the FTC's February 2000 order, permitting plaintiffs to pursue monetary relief for Trans Union's pre-February 2000 conduct based on a legal standard that did not exist at the time would violate due process principles. When there is a "'substitution of new law for old law that was reasonably

clear,' a decision to deny retroactive effect is uncontroversial." *Verizon Telephone Cos. v. FCC*, 269 F.3d 1098, 1109 (D.C. Cir. 2001) (*quoting Epilepsy Found. Of N.E. Ohio v. NLRB*, 268 F.3d 1095 (D.C. Cir. 2001)). In that circumstance, "the new rule may justifiably be given prospective-only effect in order to 'protect the settled expectations of those who had relied on the preexisting rule.'" *Id.* (quoting *Williams Natural Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993)). Indeed, there is "a robust doctrinal mechanism for alleviating hardships that may befall regulated parties who rely on "quasi-judicial" determinations that are altered by subsequent agency action." *Id.* The Supreme Court has held that retroactive application of agency decisions to alter prior legal interpretations is limited, and that the "'law should avoid retroactivity as much as possible.'" *Mason General Hosp. v. Secretary, Dept. of Health & Human Svcs.*, 809 F.2d 1220, 1226 (6th Cir. 1987) (quoting *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 619-620 (1944)).

Here, not only is due process at issue, but important First Amendment concerns are implicated by plaintiffs' attempt to pursue monetary penalties, and thereby punish Trans Union, for alleged violations that occurred prior to February, 2000. Because the FCRA prohibits the disclosure of consumer reports for unauthorized purposes, it restricts speech. Greater specificity is required of statutes which interfere with constitutionally protected rights such as the right to free speech. *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982). Where a vague statute is concerned, the vagueness "can not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss." *Bouie v. City of Columbia*, 378 U.S. 347, 352-53 (1964) (citation omitted). Prior to the gloss of the FTC's February 2000 ruling, the FCRA's proscription of Trans Union's speech in target marketing lacked the requisite specificity to permit plaintiffs to

recover penalties for past violations.

It could scarcely be clearer that the FTC's February 2000 order represented a change in the law; indeed, the D.C. Circuit's 1996 decision expressly held as much. Whatever the propriety of prospective remedy prohibiting the challenged conduct in the future, anti-retroactivity principles preclude plaintiffs' claims for FCRA-based monetary relief. For this independent reason, plaintiffs' claims for monetary relief should be dismissed.

### D. PLAINTIFFS' CLAIMS OF FCRA VIOLATIONS IN FIRM OFFER PRESCREENING SHOULD BE DISMISSED.

Counts V and VI allege that Trans Union willfully or negligently failed to comply with the FCRA by "furnish[ing] information to unaffiliated third party vendors beyond that which is permitted by the FCRA." (SACC ¶¶ 108, 112). Specifically, plaintiffs complain that Trans Union's disclosure of plaintiffs' telephone numbers and other unspecified confidential information in products used for firm offers of credit or insurance violated 15 U.S.C. § 1681b(c). (*Id.* ¶¶ 109, 113).

The FCRA specifically permits consumer reporting agencies to furnish consumer reports in connection with firm offers of credit or insurance, on any consumer who has not formally notified the consumer reporting agency of his election not to have is information disclosed for such purposes. *See* 15 U.S.C. § 1681b(c)(1)(B). The only limitation on information so disclosed is a limitation on the information a person may receive in connection with making firm offers:

> A person may receive pursuant to paragraph (1)(B) only –
> (A)  the name and address of a consumer;
> (B)  an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and
> (C)  other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity.

*Id.* at § 1681b(c)(2).[7]

Plaintiffs' allegations fail to state a claim that Trans Union violated this section of the FCRA. Nowhere do plaintiffs allege that Trans Union disclosed unique identifiers or other information that identifies plaintiffs' relationships or experiences with respect to particular creditors. The alleged disclosure of telephone numbers and other "private financial, credit and/or other confidential information" is not prohibited in firm offer prescreening. Lacking any factual allegations of a disclosure that violates § 1681b(c), Counts V and VI fail to state a claim.

## II.   THE STATE LAW COUNTS OF THE COMPLAINT FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

### A.   PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO SUPPORT PRIVACY OR UNJUST ENRICHMENT CLAIMS.

Plaintiffs' privacy claims (like their unjust enrichment claims, which are entirely derivative of their privacy claims) are governed by the laws of the nine states where they reside: Alabama, Arizona, California, Connecticut, Illinois, Nebraska, New Jersey, New York, and Pennsylvania. As noted below, some of these states (*e.g.*, New York) do not even recognize a tort remedy for invasion of privacy. Other states (*e.g.*, Alabama and Arizona) impose a heightened pleading requirement with respect to damages in privacy cases, a requirement these named plaintiffs cannot satisfy. Still other states (*e.g.*, Connecticut) limit recovery for intrusion into seclusion to situations where a person's physical space has been invaded – a situation not presented here. But even in the respects in which applicable state laws are similar, plaintiffs' allegations do not satisfy basic pleading requirements, and must therefore be dismissed.

---

[7]   This statutory scheme suggests that the claim plaintiffs attempt to state in Counts V and VI might be actionable only against receivers of the information, i.e., third party vendors. Section 1681b(c)(1)(B) authorizes credit reporting agencies to disclose consumer reports for firm offers, while § 1681b(c)(2) specifies what information a person may receive for the purpose of making firm offers.

1.  **Plaintiffs' Pleading Amendments Do Nothing To Cure The Defects Identified In The Court's Order Dismissing Their Privacy And Unjust Enrichment Claims.**

In its September 10, 2002 order, this Court dismissed plaintiffs' privacy and unjust enrichment claims in their entirety because plaintiffs did not allege "sufficient facts which could establish that the information disclosed would have caused mental suffering shame, or humiliation to a person of ordinary sensibilities" – the irreducible minimum requirement for a privacy claim under any state's law. *In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *43. Reviewing plaintiffs' previous allegation that the alleged consumer information disclosures were "offensive," this Court noted that plaintiffs had presented no facts showing that that the alleged disclosures were sufficiently "highly offensive" to merit legal redress. *Id.* at *43-44. In response to the Court's prior analysis, plaintiffs offer no new facts at all; instead, they have merely inserted the word "highly" into their new pleading. (*See* SACC ¶ 98.)

The validity of a complaint turns on its factual allegations, not on its selective use of emphatic adverbs. In order to withstand a motion to dismiss, a complaint must allege *facts* sufficient to set forth the essential elements of the cause of action. *See, e.g., Lucien v. Priener,* 967 F.2d 1166, 1168 (7th Cir. 1992); *see also Donovan v. ABC-NACO Inc.*, 2002 U.S. Dist. LEXIS 12797, *10 (N.D. Ill. Jul. 12, 2002). This Court underscored as much in its dismissal order, noting that plaintiffs had failed to plead "sufficient *facts*" to support their privacy and unjust enrichment claims. *In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *43 (emphasis added). Since plaintiffs have not altered their factual allegations in any material way in response to the Court's earlier order, their privacy and unjust enrichment claims should be dismissed for the reasons set forth in that order.

2.   **In Other Respects As Well, Plaintiffs Fail To State Any Privacy Or Unjust Enrichment Claim.**

Beyond their failure to cure the pleading defects identified in the Court's dismissal order, plaintiffs have failed adequately to allege any state law privacy claim in numerous other respects as well.  Because plaintiffs' unjust enrichment claim is predicated on alleged privacy violations, *see In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. 17209, at *39-44 (treating unjustment enrichment claim as derivative of privacy claim), this pleading inadequacy requires that both Counts III and IV of the Second Amended Complaint be dismissed.

While state privacy laws vary significantly among the nine states where the named plaintiffs reside, as a general matter there are four categories of privacy torts: intrusion into the seclusion of another; appropriation of the image or name of another; public disclosure of private facts; and false light publicity.  *See* RESTATEMENT (SECOND) OF TORTS §§ 652A-E (1977) (setting forth the elements of the four torts).  Plaintiffs here only purport to assert claims under the intrusion-into-seclusion and misappropriation branches.  Yet their complaint allegations are insufficient to pass Rule 12 muster on either theory.

a.   ***Plaintiffs Cannot Proceed On An Intrusion-Into-Seclusion Theory.***

No reported decision has ever recognized a tort remedy for intrusion into seclusion in New York, and New York case law (discussed below) makes clear that New York generally does not recognize privacy torts.  For that reason alone, the intrusion-into-seclusion claim of plaintiff Feige must be dismissed.

While intrusion into seclusion is a recognized tort (or, in Nebraska, statutory claim) in the other relevant jurisdictions, the claims of the named plaintiffs residing in those states are



nonetheless meritless. Generally speaking,[8] the intrusion-into-seclusion branch of the privacy

tort is defined as follows:

> One who intrudes, physically or otherwise, upon the solitude or
> seclusion of another or his private affairs or concerns, is subject to
> liability to the other for invasion of privacy, if the intrusion would
> be highly offensive to a reasonable person.

RESTATEMENT (SECOND) OF TORTS § 652B. Under the laws of any of the states at issue,

plaintiffs' claim for intrusion into seclusion should be dismissed.

### (1) Plaintiffs Fail To Allege Any Actionable Intrusion.

Plaintiffs' "intrusion" theory is that Trans Union supposedly "access[ed], disclos[ed] and

[sold] the private financial, credit, and other confidential information of Plaintiffs and members

of the Plaintiff Classes without such persons' knowledge, authorization, or consent." (SACC ¶

98.) But allegations about publication, use, disclosure, or sale of private information are

irrelevant in an intrusion-to-seclusion case. *See, e.g., Miller v. Motorola, Inc.*, 560 N.E.2d 900,

904 (Ill. App. 1st Dist. 1990) (allegations complaining of dissemination or publication of

information about plaintiff did not allege an unauthorized intrusion). Consequently, the only

allegation of intrusion on which plaintiffs could possibly hope to proceed is that Trans Union

"accessed" plaintiffs' information from its credit reporting database.

As a matter of law, however, Trans Union cannot be liable for intrusion based on a claim

that it accessed information in its own records and databases, for it is the collection or gathering

of information that constitutes the tort. *See Frankel v. Warwick Hotel*, 881 F. Supp. 183, 188

---

[8] As the Court observed in its dismissal order, the common law privacy tort differs substantially from state to state, rendering impossible any common judgments about the merits of the named plaintiffs' claims. *See In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *43. As explained herein, it is clear that none of these named plaintiffs can state a claim under any interpretation of

(E.D. Pa. 1995) ("the tort encompasses the physical or sensory penetration of a person's zone of seclusion in an attempt to collect private information"). It is well established that a company does not intrude upon a person's seclusion when the company accesses or reviews its own records. An Illinois appellate court made this clear in *Dwyer v. American Express Co.*, 652 N.E.2d 1351, 1354 (Ill. App. 1st Dist. 1995), where the court held that the defendant's compilation of lists from customer information contained in its own records did not support a claim of intrusion. *See also Mucklow v. John Marshall Law School*, 531 N.E.2d 941, 946 (Ill. App. 1st Dist. 1988) (dismissing student's claim of intrusion for professor accessing his student file); *St. Anthony's Medical Center v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. App. 1998) (no claim for intrusion was stated where hospital obtained defendant's medical records in the ordinary course of its business, and not through deception, illegal activity or other unreasonable methods). Similarly, in *Wilkinson v. Methodist, Richard Young Hospital*, 612 N.W.2d 213, 216 (Neb. 2000), the court dismissed plaintiff's claim for intrusion under Neb. Rev. Stat. § 20-203 which alleged that defendant had obtained plaintiff's information by accessing its own computer records.

Thus, plaintiffs' essential allegation – that Trans Union lawfully accessed plaintiffs' information from its files, but then wrongfully distributed that information to third parties – cannot support a claim for intrusion. *See Doe v. Dyer-Goode*, 566 A.2d 889, 891 (Pa. Super. 1989) (no intrusion for performing an unauthorized test on plaintiff's blood sample where plaintiff consented to defendant's extraction of the blood); *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. Super. 1982) (denying claim for intrusion where "[d]efendants did nothing wrongful in obtaining or compiling this information."). Significantly, plaintiffs do not

---

applicable privacy doctrines – but also clear, as explained below, that certain named plaintiffs' claims are particularly weak under the particular state laws governing their particular claims.

(and cannot) allege that Trans Union's **collection** of the data they allege was later wrongly distributed itself intruded upon their privacy. Indeed, plaintiffs affirmatively concede that Trans Union's "practice of assembling . . . consumer credit information" in the first instance is "permitted under the FCRA." (SACC ¶ 45.) Given this acknowledgement, plaintiffs cannot state a claim for intrusion into seclusion.

> (2)    **Plaintiffs Cannot Allege Facts Sufficient To Show That, In Accessing Their Credit Files, Trans Union Acted In A Highly Offensive Way Or Caused Any Damages Whatever.**

Plaintiffs' intrusion claim fails for the additional reason that they cannot allege any damages flowing from any act of intrusion (as opposed to acts of subsequent disclosure). Privacy law generally requires that the alleged intrusion itself be highly offensive to a reasonable person. RESTATEMENT (SECOND) TORTS, § 652B. The asserted offensiveness and claimed harm, therefore, must result from the intrusion itself, and not from other acts such as the disclosure, publication or use of the information. *See Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989) (where allegedly "offensive conduct and subsequent harm resulted from the defendants' act of publication, not from an act of prying," no claim for intrusion into seclusion could be maintained); *Adkins v. Kelly Springfield Tire Co.*, No. 97 C 50381, 1998 U.S. Dist. LEXIS 16816 (N.D. Ill. Oct. 14, 1998) (court dismissed privacy claim where "the majority of plaintiffs' allegations show alleged harm by publication," not by intrusion). Since plaintiffs' injury allegations relate to the alleged distribution of consumer information rather than the act of obtaining such information in the first place, their injury allegations fail as a matter of law for that reason alone.

Independently, however, it is clear from the face of the complaint that plaintiffs have not incurred any harm at all, let alone a "highly offensive" invasion of privacy. Plaintiffs allege that

the intrusion occurred "without [plaintiffs'] knowledge, authorization or consent." (*Id.* ¶¶ 81, 98.) Yet this very lack of knowledge dooms their claims for relief. *See, e.g., Creel v. I.C.E. & Assoc.*, 771 N.E.2d 1276, 1280-81 (Ind. App. 2002) (where plaintiffs "were unaware of the videotaping as it occurred, . . . they could not have suffered any emotional disturbance from being filmed."). Common sense dictates as much: An act of which a person is unaware obviously cannot be "highly offensive" to that person. And even to the extent that some named plaintiff actually *was* aware of the disclosure on which his claim is based (a fact not revealed by the pleadings, and which obviously could never be determined except based on individualized factfinding), case law makes clear that the kinds of information allegedly disclosed by Trans Union – names, addresses, telephone numbers, occupation and income information, and the like – were of a kind that could not be deemed "highly offensive" as a matter of law. *See, e.g., Stern v. Great Western Bank*, 959 F. Supp. 478, 483 (N.D. Ill. 1997) (dismissing privacy claim under Rule 12(b)(6) because financial information held by plaintiff's mortgage company was not "highly offensive to a reasonable person."); *Johnson v. Sawyer*, 47 F.3d 716, 732-33 (5th Cir. 1995) (disclosure of person's name, address, age and occupation was not highly offensive); *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1075-76 (D.D.C. 1995) (as a matter of law, disclosure of details contained in hotel bill, including date of stay and various services purchased by plaintiff, was not highly offensive).

(3)     **The Named Plaintiffs' Claims Are Particularly Untenable Under Certain States' Laws.**

While the complaint allegations make clear that no named plaintiff has a claim under even the most generous interpretation of privacy doctrine as set forth in the Restatement, the claims of particular named plaintiffs are even more starkly baseless when examined under the laws of the particular states under which they arise. New York law, for example, does not

19

recognize any common law claim for invasion of privacy at all. *See Howell v. New York Post Co.*, 612 N.E.2d 699, 703 (N.Y. App. 1993); *Moore v. Sam's Club*, 55 F. Supp. 2d 177, 186 (S.D.N.Y. 1999). While New York law provides for a limited statutory right to privacy, that right prohibits only the unauthorized use of a person's "name, portrait or picture" for the purposes of trade or advertising. N.Y. Civ. Rights Law, §§ 50, 51. Thus, the New York named plaintiff's privacy and unjust enrichment claims must be dismissed outright.

Separately, Arizona and Alabama law require that, to state a claim for intrusion upon seclusion with emotional damages, a plaintiff must plead and prove that the defendant's conduct was extreme and outrageous. *See Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 785 (Ariz. 1989); *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121, 123 (Ala. 1985). Though plaintiffs here seek emotional damages here (*see* SACC ¶ 98), the Second Amended Consolidated Complaint contains no allegation that Trans Union's conduct was extreme and outrageous (nor could it, given the lack of any authority holding it unlawful prior to February 2000). Thus, the privacy and unjust enrichment claims of the Arizona and Alabama named plaintiffs are independently subject to dismissal.

The Connecticut named plaintiff's claim is barred for the further reason that Connecticut law limits intrusion-into-seclusion claims to situations in which a defendant has intruded upon a plaintiff's **physical** seclusion or space. *See Schwartz v. Royal*, 1996 Conn. Super. LEXIS 1316, *10 (May 20, 1996) (noting that several superior courts have concluded that proof of an intentional physical intrusion is required). His claims are therefore separately subject to dismissal.

      b.    *Plaintiffs Fail To State A Claim For Misappropriation.*

Plaintiffs alternatively theorize that Trans Union has somehow "misappropriated" their

20

private information without proper consent. (*See* SACC ¶ 99.) As described in the Second

Amended Consolidated Complaint, plaintiff's misappropriation theory strains privacy law

beyond all recognition. The Restatement makes clear generally[9] that for a claim of

misappropriation to exist, the "defendant must have appropriated . . . the reputation, prestige,

social or economic standing, public interest or other values of plaintiffs' name or likeness."

RESTATEMENT (SECOND) TORTS, § 652C, cmt. d. Nothing of the sort is alleged here. Instead,

plaintiffs' allegation is that Trans Union's alleged act of compiling such information as names,

addresses, and occupation and income data constitutes misappropriation merely because Trans

Union allegedly was compensated for the service it provided in compiling the information.

There is no precedent for such a conclusion. The named plaintiffs do not allege that they have

any special protectible interest in their particular reputation, prestige, or social or economic

standing as to which Trans Union owes compensation. Instead, they merely allege that Trans

Union compiled completely prosaic information about them and provided it to third parties. As

other courts have recognized, that is insufficient to maintain a misappropriation-based privacy

claim. *See, e.g., Dwyer*, 652 N.E.2d at 1356. As the *Dwyer* court noted:

> [A] single, random cardholder's name has little or no intrinsic
> value to defendants (or a merchant). Rather, an individual name
> has value only when it is associated with one of defendants' lists.
> Defendants create value by categorizing and aggregating these
> names.

*Id.*[10] In addition, plaintiffs fail to allege that any value their names may have has been impaired

---

[9]     As with plaintiffs' intrusion theory, governing state law on misappropriation doctrine naturally
varies significantly across the nine states in which the named plaintiffs reside.

[10]     *See also Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio App. 1975) (sale of magazine subscription
lists which might thereby disclose personality profiles or shopping tendencies of the individuals listed did
not state claim for appropriation); *Matthews v. Wozencraft*, 15 F.3d 432, 433, 437, 439 (5th Cir. 1994)
(plaintiff's life story was not a "name or likeness" for purposes of applying misappropriation doctrine
because facts of an individual's life possess no intrinsic value that will deteriorate with repeated use.");
*Schifano v. Greene Cty Greyhound Park, Inc.*, 624 So. 2d 178, 179, 181 (Ala. 1993) (patrons of racetrack

by Trans Union's use or disclosure of the information.  *See id.* (noting that "defendants' practices do not deprive any of the cardholders [on the lists] of any value their individual names may possess.").  Plaintiffs' misappropriation-based privacy claims should therefore be dismissed.

### B.   PLAINTIFFS HAVE FAILED TO ALLEGE ANY LEGALLY COGNIZABLE INJURY THAT IS REDRESSABLE UNDER STATE LAW.

"[I]t is fundamental that a plaintiff who does not even allege a legally cognizable injury cannot obtain a tort judgment." *Jones v. Reagan*, 696 F.2d 551, 554 (7th Cir. 1983).  A plaintiff's failure even to request actual or compensatory damages indicates that he or she has "suffered no injury that a court of law would take cognizance of." *Id.* at 554.  Yet that is the case here: The Second Amended Consolidated Complaint contains no request for actual damages, and its factual allegations make clear that plaintiffs have incurred none.  For this independent reason, plaintiffs' state law claims must be dismissed.[11]

The state laws under which plaintiffs' claims arise clearly require an allegation of actual injury.  For example, Alabama requires a "manifest, present injury" before a plaintiff may recover in tort.  *Hinton v. Monsanto Co.*, 813 So.2d 827, 829 (Ala. Sup. Ct. 2001).  The laws of the other states in which the named plaintiffs reside are generally in accord.  *See Piner v. Superior Court*, 962 P.2d. 909, 912 (Ariz. 1998); *Cedars-Sinai Medical Center v. Superior Court*, 74 Cal. Rptr. 2d 248, 251-52 (Cal. 1998); *Braband v. Beech Aircraft Corp.*, 367 N.E.2d 118, 122 (Ill. App. 1st Dist. 1977); *Dawson v. Bunker Hill Plaza Associates*, 673 A.2d 847, 853 (N.J. Super. 1996); *Criscuolo v. Shaheen*, 736 A.2d 947, 950 (Conn. Sup. Ct. 1999); *Saft v.*

---

could not recover for appropriation because there was no unique quality or value in their likenesses); *Cox v. Hatch*, 761 P.2d 556, 564, 565 (Utah 1988) (appropriation claim was properly dismissed where plaintiffs' names and likenesses had no intrinsic value).

[11]   In response to Trans Union's motion to dismiss the (First) Consolidated Amended Complaint, plaintiffs argued that their prayer for relief could be amended at trial to seek actual damages.  Yet, with a clear opportunity to do so in the SACC, plaintiffs failed to assert a claim for actual damages.

*Upper Dublin Township*, 636 A.2d 284, 286  (Pa. Commw. Ct. 1994); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94  (1993); *Condon v. A.H. Robins Co., Inc.*, 349 N.W.2d 622, 627 (Neb. 1984).  For this additional reason, plaintiffs' state law claims must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant Trans Union LLC respectfully requests that plaintiffs' Second Amended Consolidated Complaint be dismissed in its entirety, with prejudice.

Respectfully submitted,

Roger L. Longtin
Michael O'Neil
PIPER RUDNICK
203 N. LaSalle Street
Suite 1800
Chicago, Illinois  60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

John H. Beisner
Brian P. Brooks
O'MELVENY & MYERS LLP
555 13th Street, N.W.
Suite 500 West
Washington, D.C.  20004
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

23

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **Memorandum In Support Of Trans Union LLC's Motion to Dismiss** have been served on this **9th** day of January, 2003, upon All Counsel of Record via First Class U.S. Mail, postage prepaid, or by hand delivery as indicated below.

Mr. Jon W. Borderud
PRONGAY & BORDERUD
12121 Wilshire Blvd.
Suite 400
Los Angeles, California 90025

Mr. Frank Janecek, Jr.
MILBERG, WEISS, BERSHAD, HYNES
& LERACH, LLP
401 B Street, Suite 1700
San Diego, California 92101

Ms. Terry Rose Saunders
Law Offices of Terry Rose Saunders
33 N. Dearborn Street
Suite 1302
Chicago, Illinois 60602
*(Via Hand Delivery)*

Christopher Micheletti
Zelle, Hofmann, Voelvel, Mason & Gette LLP
44 Montgomery Street, Suite 3400
San Francisco, California 94104

Mr. Matthew Righetti
RIGHETTI & WYNNE
456 Montgomery Street
Suite 1400
San Francisco, California 94104

Ms. Amy Stewart
ROSE LAW FIRM
120 East Fourth Street
Little Rock, Arkansas 72201

Mr. Ross B. Bricker
JENNER & BLOCK
One IBM Plaza
47th Floor
Chicago, Illinois 60611

_____
Roger L. Longtin

# *See Case File for Exhibits*