FILED

FEB 1 4 2003

Judge Robert W. Gettleman
United States District Court

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) Lead Case No. 00CV4729 ) ) MDL Docket No. 1350 |
| This Document Relates To: | ) ) Judge Robert W. Gettleman |
| ALL ACTIONS. | ) ) |

FEB 1 9 2003

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO TRANS UNION LLC'S MOTION TO DISMISS

123

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Plaintiffs Meet the Applicable Pleading Standard . . . . . . . . . . . . . . . 2

    B.   The FTC's Cease and Desist Order Does Not Moot Plaintiffs' Claims for
        Injunctive or Other Relief . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   Trans Union Fails to Mount a Cognizable Legal Challenge to Plaintiffs'
        Willful Noncompliance Claims . . . . . . . . . . . . . . . . . . . . . . . 5

        1.   The Court Cannot Determine Willfulness as a Matter of Law . . . . . . 6

            a.   Willfulness May Be Averred Generally . . . . . . . . . . . . 6

            b.   Trans Union's Willfulness Argument Raises Material
               Questions of Fact that Cannot Be Determined on its Motion
               to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.   Trans Union Had More Than Adequate Notice of the Illegality of
            Its Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.   The FTC and the D.C. Circuit Previously Rejected Trans Union's
            Vagueness Argument . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.   There Is No New Legal Standard to Be Applied Retroactively and the
        FCRA Does Not Impinge Trans Union's Constitutional Rights . . . . . . . . 11

    E.   Trans Union Has Injected a Broad Good Faith Defense into This Case . . . . . 12

        1.   Trans Union Has Waived Privilege as to All Evidence Concerning
            Trans Union's Asserted Good Faith Belief that its Target Marketing
            Practices Were Legal . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.   The Scope of Waiver Should Be Commensurate with the Breadth
            of Trans Union's Defense . . . . . . . . . . . . . . . . . . . . . . 13

    F.   Plaintiffs' Have Alleged Viable Firm Offer Prescreening Claims Under the
        FCRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    G.   Plaintiffs' Privacy Claims and Unjust Enrichment Claims Should Proceed . . . 15

        1.   Plaintiffs' Privacy Claims Meet All Pleading Requirements . . . . . . . 16

            a.   The Restatement (Second) of Torts §§652B and 652C . . . . . 16

            b.   Intrusion Upon Seclusion . . . . . . . . . . . . . . . . . . 17

**Page**

          c.     Appropriation of Name or Likeness . . . . . . . . . . . . . . . 19

          d.     Plaintiffs Have Sufficiently Alleged Injury . . . . . . . . . . . 21

      2.     Plaintiffs Have Stated a Cause of Action for Unjust Enrichment . . . . 22

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

**CASES**          **Page**

*Ainsworth v. Century Supply Co.,*
    693 N.E.2d 510 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 21

*BASF Corp. v. Old World Trading Co.,*
    41 F.3d 1081 (7th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . 23

*Beatty v. Guggenheim Exploration Co.,*
    122 N.E. 378 (N.Y. 1919) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bontkowski v. First Nat'l Bank,*
    998 F.2d 459 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 7

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bruce v. First U.S.A. Bank,*
    103 F. Supp. 2d 1135 (E.D. Mo. 2000) . . . . . . . . . . . . . . . 7

*Bush v. Kramer,*
    173 N.W.2d 367 (Neb. 1969) . . . . . . . . . . . . . . . . . . . . . . . 22

*C 9398,* 2002 U.S. Dist. LEXIS 7973 (N.D. Ill May 2, 2002) . . . . . . . . . . . . 7

*Caesar v. Chem. Bank,*
    460 N.Y.S.2d 235 (N.Y. Sup. 1983),
    *aff'd* 483 N.Y.S.2d 16 (1984) . . . . . . . . . . . . . . . . . . . . . . 20

*Cal. Fed. Bank v. Matreyek,*
    8 Cal. App. 4th 125 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 22

*City of Sierra Vista v. Cochise Enters.,*
    697 P.2d 1125 (Ariz. App. 1984) . . . . . . . . . . . . . . . . . . . 22

*Clay v. Am. Tobacco Co.,*
    188 F.R.D. 483 (S.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . 23

*Cmty. Guardian Bank v. Hamlin,*
    898 P.2d 1005 (Ariz. App. 1995) . . . . . . . . . . . . . . . . . . . 22

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.,*
    259 F.3d 1186 (9th Cir. 2001),
    *cert. denied, sub nom., Feltner v. Columbia Pictures TV, Inc.,*
    534 U.S. 1127 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Conley v. Gibson,*
    355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*County of Solano v. Vallejo Redevelopment Agency,*
    75 Cal. App. 4th 1262 (1999) . . . . . . . . . . . . . . . . . . . . . . 22

Page

*Cox v. Administrator United States Steel & Carnegie,*
17 F.3d 1386 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cushman v. Trans Union Corp.,*
920 F. Supp. 80 (E.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Day v. Moscow,*
955 F.2d 807 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*D'Ippolito v. Castoro,*
242 A.2d 617 (N.J. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Doe v. High-Tech Inst., Inc.,*
972 P.2d 1060 (Colo. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dornhecker v. Ameritech Corp.,*
99 F. Supp. 2d 918 (N.D. Ill 2000) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Dwyer v. Am. Express Co.,*
652 N.E.2d 1351 (Ill. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Elliott v. Thomas,*
937 F.2d 338 (7th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Estiverne v. Sak's Fifth Ave.,*
9 F.3d 1171 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fallstrom v. L.K. Comstock Co.,*
No. CV9901525835, 2001 Conn. Super. LEXIS 129
(Conn. Super. Jan. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fanelle v. LoJack Corp.,*
79 F. Supp. 2d 558 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . 20

*Farfaras v. Citizens Bank & Trust Co.,*
No. 01 C 8720, 2002 U.S. Dist. LEXIS 8705
(N.D. Ill. May 15, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Field v Trans Union LLC,*
No. 01 C 9398, 2002 U.S. Dist. LEXIS 7973
(N.D. Ill May 2, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*First Nationwide Sav. v. Perry,*
11 Cal. App. 4th 1657 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Frankel v Warwick Hotel,*
881 F. Supp. 183 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gaeta v. Home Box Office,*
645 N.Y.S.2d 707 (N.Y. Civ. 1996) . . . . . . . . . . . . . . . . . . . . . . . 20

*Gagne v. Vaccaro,*
766 A.2d 416 (Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Page

*Gee v. Eberle,*
    420 A.2d 1050 (Pa. Super. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Godbehere v. Phoenix Newspapers,*
    783 P.2d 781 (Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Goodrich v. Waterbury Republican-Am., Inc.,*
    448 A.2d 1317 (Conn. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.,*
    545 N.E.2d 672 (Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hall v. Harleysville Ins. Co.,*
    896 F. Supp. 478 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . 18

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.,*
    649 A.2d 518 (Conn. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Glenfed, Inc. Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Mid-Island Hosp., Inc.,*
    276 F.3d 123 (2nd Cir.),
    *cert. denied,* _ U.S. _, 123 S. Ct. 104 (2002) . . . . . . . . . . . . . . . 22

*In re Trans Union Corp.,*
    118 FTC 821 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Westinghouse Sec. Litig.,*
    No. 91-354, 1998 U.S. Dist. LEXIS 3033
    (W.D. Penn. Mar. 12, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jackson v. E.J. Brach Corp.,*
    176 F.3d 971 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Johnson v. K Mart Corp.,*
    723 N.E.2d 1192 (Ill. App. 2000) . . . . . . . . . . . . . . . . . . . . . . 17

*Joint Stock Soc'y v. UDV N. Am., Inc.,*
    266 F.3d 164 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jones v. Valvoline Co.,*
    No. 98-0557, 1999 U.S. Dist. LEXIS 7830
    (E.D. La. May 19, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jordan v. Mitchell,*
    705 So.2d 453 (Ala. Civ. App. 1997) . . . . . . . . . . . . . . . . . . . . 22

*Katz v. AT&T Corp.,*
    191 F.R.D. 433 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . 14

*Leaho v. Leninski,*
    484 A.2d 239 (Conn. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . 21

*Logan v. Sears, Roebuck & Co.,*
    466 So.2d 121 (Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lovgren v. Citizens First Nat'l Bank,*
    534 N.E.2d 987 (Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mangio v. Equifax, Inc.,*
    887 F. Supp. 283 (S.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . 4

*Marks v. Bell Tel. Co.,*
    331 A.2d 424 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCormick-Morgan, Inc. v. Teledyne Indus.,*
    765 F. Supp. 611 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . 14

*McGuire v. Shubert,*
    722 A.2d 1087 (Pa. Super. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Med. Lab. Mgmt Consultants v. ABC, Inc.,*
    30 F. Supp. 2d 1182 (D. Ariz. 1998),
    *aff'd,* 306 F.3d 806 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 19

*Nova Records, Inc. v. Sendak,*
    706 F.2d 782 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pennsylvania: AmeriPro Search, Inc. v. Fleming Steel Co.,*
    787 A.2d 988 (Pa. Super. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Promark Realty Group, Inc. v. B&W Assocs.,*
    Civ. A. No. 02-CV-1089, 2002 U.S. Dist. LEXIS 8016
    (E.D. Pa. May 1, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Rafferty v. Hartford Courant Co.,*
    416 A.2d 1215 (Conn. Super. 1980) . . . . . . . . . . . . . . . . . . . . . . 18

*Rohrbaugh v. Wal-Mart Stores, Inc.,*
    572 S.E.2d 881 (W. Va. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sabrina v. Willman,*
    540 N.W.2d 364 (Neb. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

*Salters v. Sec'y of Health & Human Servs.,*
    798 F.2d 897 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sanchez-Scott v. Alza Pharms.,*
    103 Cal. Rptr. 2d 410 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sanders v. Am. Broad. Cos.,*
    978 P.2d 67 (Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Page

*Schifano v. Greene County Greyhound Park, Inc.*,
   624 So.2d 178 (Ala. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Stapley v. Am. Bathtub Liners*,
   785 P.2d 84 (Ariz. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Stern v. Great W. Bank*,
   959 F. Supp. 478 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stevenson v TRW, Inc.*,
   987 F.2d 288 (5th Cir 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stewart v. Harris Structural Steel Co.*,
   486 A.2d 1265 (N.J. Super. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Stotts v. Cmty. Unit Sch. Dist. No. 1*,
   230 F.3d 989 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Tellado v. Time-Life Books, Inc.*,
   643 F. Supp. 904 (D.N.J. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Thermos Co. v. Starbucks Corp.*,
   No. 96 C3 833, 1998 U.S. Dist. LEXIS 17753
   (N.D. Ill. Nov. 3, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Trans Union Corp. v. FTC*,
   81 F.3d 228 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Trans Union Corp. v. FTC*,
   245 F.3d 809 (D.C. Cir. 2001),
   *cert denied*, _ U.S. _, 122 S. Ct. 2386 (2002) . . . . . . . . . . . . . . . . 11, 12

*Triad Assos. v. Robinson*,
   10 F.3d 492 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*United States v. Burnom*,
   27 F.3d 283 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Venturi v. Savitt, Inc.*,
   468 A.2d 933 (Conn. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Washington v. CSC Credit Servs. Inc.*,
   199 F.3d 263 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Wecht v PG Publishing Co.*,
   725 A.2d 788 (Pa. Super. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Page**

*Weld v. CVS Pharmacy, Inc.*,
    No. 98-0897F, 1999 WL 494114
    (Mass. Super. June 29, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zala v. Trans Union, L.L.C.*,
    No. 3:99-CV-0399-D, 2001 U.S. Dist. LEXIS 549
    (N.D. Tex. Jan. 17, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §1681a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    §1681a(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    §1681b(c)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    §1681n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9, 10

Federal Rules of Civil Procedure
    8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    54(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Business & Professions Code
    §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## SECONDARY AUTHORITIES

Restatement (Second) of Torts (1977)
    §652A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 23
    §652B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §652C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

Restatement (First) of Restitution (1937)
    §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

5 C. Wright & A. Miller,
    *Federal Practice and Procedure* §1202 (2d ed. 1990) . . . . . . . . . . . . . . . . . . 2

## I.   INTRODUCTION

Defendants ask this Court to: (1) ignore specific allegations in plaintiffs' Second Amended Complaint ("Complaint"); (2) ignore plaintiffs' prayer "for all relief to which they are entitled" under the law, including, but not limited to, actual, statutory and punitive damages, and attorneys' fees; (3) ignore the simplified notice pleading standards under Federal Rule of Civil Procedure 8; (4) ignore the legal presumption that plaintiffs' allegations and all reasonable influences must be presumed to be true; and (5) improperly and prematurely weigh evidence on a motion to dismiss. Defendant's motion is not a motion for summary judgment, and the Court should reject defendant's invitation to turn this, prematurely, into an evidentiary hearing.

Notwithstanding defendant's strained arguments, plaintiffs' claims satisfy the notice pleading standards under Fed. R. Civ. P. 8. Defendant's first argument, that plaintiffs' claims for injunctive relief are moot as a result of the Federal Trade Commission's ("FTC") cease and desist order, ignores the other forms of relief requested by plaintiffs, which are specifically provided for by law and ignores allegations of continuing violations.

Defendant's second argument, that the FTC proceeding "requires" dismissing plaintiffs' claims based on willful violations of the Fair Credit Reporting Act ("FCRA"), also fails. Plaintiffs adequately aver willfulness. Trans Union's invocation of a good faith reliance defense raises critical issues of fact entitling plaintiffs to discovery into that defense before Trans Union may bring a dispositive motion on the legality of its conduct.

Defendant's third argument, that the FTC proceeding requires dismissing claims predicated on conduct that occurred before February 2000, is without merit. Trans Union's recycled constitutional arguments were previously rejected by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") and far no better here.

Finally, plaintiffs adequately pled their privacy and other state law claims. Accordingly, defendant's motion to dismiss should be denied.

## II.    ARGUMENT

### A.    Plaintiffs Meet the Applicable Pleading Standard

Federal Rule of Civil Procedure 8(a)(2), provides that a complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).[1] This statement must simply "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).[2] Rule 8(a)'s simplified pleading standard applies to *all* civil actions, with few exceptions. *Swierkiewicz*, 534 U.S. at 513. Given this simplified standard "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514. The court must accept as true all facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999).

Rule 12(b)(6) is the appropriate procedural mechanism for dismissing an entire claim or complaint as legally insufficient, but *not individual allegations in support of it*. *In re Westinghouse Sec. Litig.*, No. 91-354, 1998 U.S. Dist. LEXIS 3033, at *10 (W.D. Penn. Mar. 12, 1998); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). To the extent Trans Union Corp. ("Trans Union") attempts to strike individual allegations, its motion necessarily fails. A motion to dismiss tests the procedural question of whether the plaintiff has properly stated a claim, not the substantive merits of the lawsuit. *Farfaras v. Citizens Bank & Trust Co.*, No. 01 C 8720, 2002 U.S. Dist. LEXIS 8705, at *5 (N.D. Ill. May 15, 2002).

---

[1] All emphasis is deemed added and citations and footnotes are deemed omitted, unless otherwise noted.

[2] As recently explained by the Supreme Court: "This simplified notice pleading standard relies on liberal discovery rules and summary judgement motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512-13 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* §1202, at 76 (2d ed. 1990)); *Conley*, 355 U.S. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

**B.     The FTC's Cease and Desist Order Does Not Moot Plaintiffs' Claims for Injunctive or Other Relief**

Trans Union argues: "The FTC's Resolution Of The Challenged Conduct Renders Plaintiffs' Claims For Injunctive Relief Moot."  Memorandum in Support of Trans Union LLC's Motion to Dismiss ("Def's Mem.") at 3.  Trans Union's argument fails for a number of reasons.[3]

First, Trans Union chose to file another motion to dismiss, not a motion for summary judgment or a motion to strike.  Thus, its motion is governed by Fed. R. Civ. P. 8 and the legal standards set forth above.  Even if Trans Union's assertion was true that, "the claims for injunctive relief advanced in the Second Amended Complaint are now moot," (*id.*) (which it is not) the availability of other forms of relief under plaintiffs' federal and state law claims undermines its argument.  Plaintiffs' claims cannot be dismissed based on a lack of injunctive relief when other forms of relief are clearly available to plaintiffs on each of their claims.  For example, in the Complaint, plaintiffs prayed "for all relief to which they are entitled" under the FCRA and their state law claims.  This relief sought includes, but is not limited to, actual, statutory, punitive damages and attorneys' fees.  ¶¶91, 95, 101, 106, 110, 113, 117, Prayer For Relief.[4]  These forms of relief are expressly provided for under the FCRA and plaintiffs specifically requested *all* relief to which they are entitled under the law in their prayer for relief.[5]  *Id.*  Moreover, in denying Trans Union's prior attempt to dismiss plaintiffs' Cal. Bus. & Prof. Code §§17200, *et seq.*, claim, which it also based on a purported lack of available remedies, this Court found that disgorgement is an available equitable remedy under the statute and denied dismissal.  Order at 26-29.  The Complaint's allegations clearly state claims upon which injunctive and other relief can be granted.  None of plaintiffs' claims are

---

[3] The Court has previously held that injunctive relief is not available to plaintiffs under their FCRA claims.  While plaintiffs do not agree with the Court's determination, and have filed an appeal of that issue, plaintiffs' opposition to Trans Union's argument on mootness does not depend on the availability of injunctive relief since there are other forms of relief available under the FCRA.

[4] All ¶__ references are to the Complaint.

[5] In response to a similar argument Trans Union made in its first motion to dismiss concerning a purported failure to request actual damages, this Court cited Fed. R. Civ. P. 54(c) and stated: "The court construes plaintiffs' request for all legal relief to include a claim for actual damages. Accordingly, the motion to dismiss Counts III, VII and X for failure to request actual damages is denied."  *See* Memorandum Opinion and Order dated Sept. 10, 2002 ("Order") at 19.

properly dismissed based on a purported lack of injunctive relief because other forms of relief are available.

Second, Trans Union argues that because the FTC brought an administrative action against Trans Union for violating the FCRA and obtained a cease and desist order against Trans Union for some of its unlawful conduct, all of plaintiffs' individual claims are therefore moot. This argument is disingenuous as it has absolutely no support under the FCRA, controlling precedent or logic. Tellingly, Trans Union cites no legal authority for this self-serving argument.[6] Here, plaintiffs' Complaint specifically alleges continuing and ongoing violations of the FCRA by Trans Union. ¶¶69, 73. These allegations must be accepted as true for purposes of this motion and is an issue that ultimately must be decided by the trier of fact. *Jackson*, 176 F.3d at 978-79. Based on these allegations alone, Trans Union's argument that plaintiffs' claims are moot because of the FTC order and must be dismissed is plainly wrong.

In addition, it has never been the law that an enforcement action by the FTC, which results in a cease and desist order, bars or moots the prosecution of private individual claims under the FCRA or prevents them from seeking all relief available under the statute. *See, e.g., Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000); *Mangio v. Equifax, Inc.*, 887 F. Supp. 283 (S.D. Fla. 1995). In fact, the opposite is true under the FCRA and numerous other laws.[7]

The cases cited by Trans Union in support of its argument that the FTC order moots plaintiffs' injunctive claims are inapposite and inapplicable. *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989 (7th Cir. 2000), involved a high school basketball player who was suspended from the team for having a tattoo in violation of "appearance guidelines." While the appeal was pending,

---

[6]Trans Union mischaracterizes this Court's reasoning for precluding certification of a statutory damage class based on the FTC's cease and desist order in an attempt to use this rationale as a basis for dismissing plaintiffs' claims. But as the Court also stated, "the court concludes that regulation by the FTC, coupled with individual actions for damages (and attorney fees), is superior to a class action for statutory damages by tens of millions of consumers who claim no actual economic loss." Order at 41-42. What is presently before the Court on Trans Union's motion is exactly that: "individual actions for damages (and attorney fees)."

[7]For example, private actions under the federal securities laws, as well as false advertising claims, have long proceeded in parallel with, or in response to, Securities and Exchange Commission ("SEC") and other governmental enforcement actions.

Stotts graduated from high school mooting his claim. This case has no factual application to defendant's motion to dismiss.

In *Salters v. Sec'y of Health & Human Servs.*, 798 F.2d 897 (6th Cir. 1986), the plaintiffs sought prospective injunctive relief only concerning the interpretation of certain agency regulations. While the litigation was pending, the agency and the Court of Appeals clarified the regulations that were at issue thereby mooting plaintiffs' claim for prospective injunctive relief only. Once again, this case has no factual application to the allegations in plaintiffs' complaint or defendant's motion to dismiss.

Finally, in *Jones v. Valvoline Co.*, No. 98-0557, 1999 U.S. Dist. LEXIS 7830 (E.D. La. May 19, 1999), plaintiffs sought to enjoin the defendant from any further fraudulent activity related to the advertising of its product. In *Jones*, "the parties agreed that the injunctive relief sought by plaintiffs is moot." *Id.* at *11. As a result, the court concluded that the injunctive relief sought by plaintiffs did not satisfy the jurisdiction amount required for diversity jurisdiction. Here, there is no agreement by the parties that the injunctive relief sought by plaintiffs is moot, and the Complaint alleges unlawful conduct beyond that addressed by the FTC's order. The case is inapplicable.

Third, to the extent Trans Union intended its motion to dismiss to act as a motion to strike under Fed. R. Civ. P. 12(f), it is procedurally defective. Even if it were a motion to dismiss, however, it would be redundant since the Court has already granted defendant's motion to strike plaintiffs' request for injunctive relief under the FCRA. In conclusion, defendant's arguments that all of plaintiffs' claims for injunctive relief must be dismissed because they are moot is contrary to the well-plead allegations in plaintiffs' Complaint and is not supported by the law.

## C.  Trans Union Fails to Mount a Cognizable Legal Challenge to Plaintiffs' Willful Noncompliance Claims

Trans Union asks this Court to dismiss plaintiffs' allegations that it willfully violated the FCRA, 15 U.S.C. §1681n, by selling consumers' private information to target marketers because – as a matter of law – Trans Union could not have known its conduct was illegal until February 2000. Trans Union's motion on this point is premature and attempts to turn this motion to dismiss into a judgment on the merits. Before this Court can assess whether Trans Union reasonably relied upon

- 5 -

the decision in *Trans Union Corp. v. FTC*, 81 F.3d 228 (D.C. Cir. 1996) ("*Trans Union I*"), and whether that reliance impacts plaintiffs' willful noncompliance claim, plaintiffs are entitled to discovery on Trans Union's good faith belief in the legality of its conduct.[8] Trans Union's argument also lacks merit because there is nothing in the record establishing that Trans Union reasonably relied upon *Trans Union I.* Trans Union has not shown, in any discovery, the factual underpinnings of its reasonable belief in the legality of its conduct. Such issues raise material questions of fact for a jury to decide.

Similarly, Trans Union's vagueness argument fails. The definition of "consumer report" under the FCRA is plain and simple; neither the FTC nor the Court of Appeals found that provision to be vague. Finally, the FTC did not articulate a new standard in its February 2000 opinion, but applied the same plain and unambiguous statutory provisions that had been in effect for years.

## 1.    The Court Cannot Determine Willfulness as a Matter of Law

Plaintiffs' willful noncompliance claims against Trans Union involve a fundamental question of intent that cannot be resolved at this stage of the litigation.[9] Plaintiffs adequately plead Trans Union's willful violations of the FCRA in their Complaint.

### a.    Willfulness May Be Averred Generally

In order to survive a motion to dismiss on the issue of intent, plaintiffs' allegations of the defendant's intent must merely satisfy Fed. R. Civ. P. 8 (notice pleading) and Fed. R. Civ. P. 9(b) (requirement that motive and intent be pleaded generally). *See Elliott v. Thomas*, 937 F.2d 338, 345 (7th Cir.1991); *Triad Assos. v. Robinson*, 10 F.3d 492, 497 (7th Cir.1993); *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) ("'Malice, intent, knowledge, and other condition of mind of a person may be averred generally.'"). To aver scienter generally, plaintiffs must simply allege scienter existed. *Id.* at 1547.

---

[8]Plaintiffs request the Court order Trans Union to produce all documents supporting its good faith belief that its target marketing practices were legal. *See* §E, *supra.*

[9]The parties previously briefed the issue of whether willfulness can be decided as a matter of law. *See* Plaintiffs' Reply to Trans Union's Brief Regarding Whether Willfulness Issue Can Be Decided as a Matter of Law, filed June 25, 2001; and Plaintiffs' Reply to Acxiom Corp.'s Brief Regarding Whether Willfulness Issue Can Be Decided as a Matter of Law, filed June 25, 2001.

To prove willfulness under the FCRA, a plaintiff need only establish that the defendant knowingly and intentionally acted "'in conscious disregard for the rights of others.'" *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931 (N.D. Ill 2000) (quoting *Stevenson v TRW, Inc.*, 987 F.2d 288, 293 (5th Cir 1993)); *Field v Trans Union LLC*, No. 01 C 9398, 2002 U.S. Dist. LEXIS 7973, at *21 (N.D. Ill May 2, 2002) (plaintiff need not show malice or evil intent to pursue a claim under §1681n). Intent may be deduced by circumstantial evidence. *E.g., Cushman v. Trans Union Corp.*, 920 F. Supp. 80 (E.D. Pa. 1996) (in theft of identity case, jury could conclude that credit reporting agency acted willfully by failing to adequately reinvestigate). *See Zala v. Trans Union, LLC*, No. 3:99-CV-0399-D, 2001 U.S. Dist. LEXIS 549 (N.D. Tex. Jan. 17, 2001) (policy of refusal to deal with credit repair clinic could show malice; for agency to send out credit reports with proof in hand of the errors shows reckless disregard); *Bruce v. First U.S.A. Bank*, 103 F. Supp. 2d 1135 (E.D. Mo. 2000). Thus, plaintiffs need not allege or prove that Trans Union knew that it was violating the FCRA, or that it engaged in willful misrepresentations and concealment.

**b.   Trans Union's Willfulness Argument Raises Material Questions of Fact that Cannot Be Determined on its Motion to Dismiss**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Dornhecker*, 99 F. Supp. 2d at 932; *Bontkowski v. First Nat'l Bank*, 998 F.2d 459, 461 (7th Cir. 1993). In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Id.* at 461.

Here, Trans Union does not even challenge the adequacy of plaintiffs' pleading. Instead, Trans Union seeks to have the Court dismiss plaintiffs' claims under FCRA, 15 U.S.C. §1681n, because, as a matter of law, it could not have acted "willfully." However, whether defendant acted "willfully" is a question of fact. Because the plaintiffs have properly pled intent, defendant's willfulness is not an appropriate issue for consideration on a motion to dismiss. *Dornhecker*, 99 F. Supp. 2d at 932. In *Dornhecker*, a recent FCRA case, the court refused to grant a motion to dismiss on grounds that the plaintiff had not established that the defendant's conduct was willful. The court found:

> [I]t is not necessary, nor is it possible, for the court to decide at this stage whether
> Plaintiffs will be able to establish proof of malice or willful intent on the part of
> Ameritech.  It is sufficient that Plaintiffs have made specific factual allegations
> regarding malice and willfulness.

*Id.*  Trans Union's motion as to willfulness should be denied.

While Trans Union argues that "there can be no finding of willfulness where a defendant had reason for believing that the challenged conduct was permissible," (Def's Mem. at 6) it presents no *evidence* that Trans Union's purported belief was in any way reasonable.  Nor is consideration of evidence appropriate at this stage of the pleadings.  *Trans Union I* provided no reasonable basis for Trans Union to conclude that its conduct did not violate the FCRA.  Moreover, Trans Union's alleged reliance on *Trans Union I* and the reasonableness of that reliance, if any, are questions of fact and are inappropriately raised in a motion to dismiss.  Moreover, after *Trans Union I*, there was the FTC's ongoing challenge to Trans Union's target marketing business, the trial of those issues in early 1998, Judge Timony's Initial Decision in July 1998, the FTC order in February 2000 and the D.C. Circuit's opinion in April 2001, *all* of which confirmed the illegality of Trans Union's conduct.  At the very least, those facts form a reasonable basis for plaintiffs' allegations that Trans Union acted in conscious disregard for the rights of the consumers whose private financial information it continued to disclose contrary to the protections of the FCRA.  Given Trans Union's invocation of a good faith reliance defense, plaintiffs are entitled to discovery into that defense before Trans Union may bring a dispositive motion on the legality of its conduct.

### 2.   Trans Union Had More Than Adequate Notice of the Illegality of Its Conduct

Trans Union claims that prior to the D.C. Circuit's February 2000 decision, there was "no authoritative ruling from which Trans Union could have ascertained that its target marketing activities were unlawful."  Def's Mem. at 6.  This argument has no merit.[10]

In the Complaint, plaintiffs allege that Trans Union sold detailed financial information it collected on consumers to marketing companies.  ¶40.  As a consumer reporting agency, Trans Union collects consumer credit information for the purposes of furnishing credit reports to third

---

[10]It defies logic that there must always be an "authoritative ruling" before one could be held liable for unlawful conduct proscribed by statute.

parties. ¶45. Trans Union obtains this sensitive information from credit grantors such as banks, mortgage companies, credit unions, automobile dealers, collection agencies and others. ¶46. Trans Union used its consumer credit databases to create target marketing lists. ¶47. These lists included names and contact information satisfying certain financial criteria and at times more revealing details pertaining to a consumer's annual income, mortgage or credit card limits.[11] ¶48. As a result of Trans Union's target marketing practices, plaintiffs allege that Trans Union committed willful violations of the FCRA under §1681n. ¶¶91, 110. Plaintiffs also alleged that Trans Union advertised its target marketing lists as credit-based marketing tools. Thus, Trans Union knew that the lists contained credit information, that they constituted consumer reports and that it violated the FCRA by disclosing them. ¶¶65-67.

Based on the above, the FTC filed an administrative complaint against Trans Union in December 1992. *See In re Trans Union Corp.*, No. 9255, Opinion of the Commission, at 2 (Feb. 10, 2000) ("FTC Opinion"). The Commission alleged that Trans Union violated the FCRA by "compil[ing], for sale to clients, lists of consumers, based in whole or in part on information contained in its consumer reporting database." *Id.* Faced with the prospect of similar actions, Trans Union's competitors stopped such practices. Trans Union did not and earned over $100 million in revenue by continuing to sell this sensitive information. *See* FTC Opinion at 2-5. On September 20, 1993, an Administrative Law Judge ("ALJ") entered a summary decision in favor of the FTC, which the Commission upheld.[12] *Id.* The Commission found that Trans Union's target marketing lists were "consumer reports" under the FCRA. *Id.* at 2-3 (citing *In re Trans Union Corp.*, 118 FTC 821, 869-70 (1994)).

After the Commission upheld the ALJ's decision, Trans Union appealed to the D.C. Circuit. FTC Opinion at 3. The D.C. Circuit agreed with the Commission that Trans Union's target

---

[11]Trans Union modified its target marketing practices in 1997 when the FCRA was amended to provide for minimum statutory damages per violation. Trans Union stopped selling some, but not all, consumer financial data. Trans Union's general counsel later admitted the change was due to risks associated with the new statutory penalties. ¶72.

[12]At this time, Trans Union was aware "that the courts of appeals have often given [FTC's] interpretations of the Act great deference." *Trans Union I*, 81 F.3d at 231; *Estiverne v. Sak's Fifth Ave.*, 9 F.3d 1171, 1173 (5th Cir. 1993).

marketing was not permissible under the FCRA, but found the Commission's use of summary procedures inappropriate because of outstanding issues of fact. *Id.* As a result, the D.C. Circuit remanded the case to the Commission to determine whether there was sufficient evidence to support the FTC's findings. *Id.* **On remand, the ALJ found substantial evidence that Trans Union's lists were consumer reports and that Trans Union's sale of such lists violated the FCRA.** *Id.* The FTC's final judgment was affirmed by the D.C. Circuit and denied *certiorari* by the United States Supreme Court. Although Trans Union had been put on notice, through the FTC's 1992 filing, that its conduct was unlawful, it continued to knowingly engage in such conduct.

### 3.    The FTC and the D.C. Circuit Previously Rejected Trans Union's Vagueness Argument

Trans Union re-hashes its "void for vagueness" argument – which the FTC and the D.C. Circuit previously rejected – and claims that "[it] could not have willfully or knowingly violated §1681b" because there was no cognizable standard to support such a claim.[13] Trans Union fails to cite any case law establishing vagueness in any provisions of the FCRA that would support a ruling that, as a matter of law, a defendant did not act willfully. Statutory language cannot be presumed vague simply because it is inconvenient for the defendant. This is especially true here where the defendant knew about the potential illegality of its conduct for a decade.

To attack the constitutionality of a statute for vagueness, Trans Union must show that the "law is impermissibly vague in all of its applications." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982); *see also Nova Records, Inc. v. Sendak*, 706 F.2d 782, 787 (7th Cir. 1983). On this basis alone, the Court should deny Trans Union's request to dismiss Count I of the Complaint. A plain reading of the definition of "consumer report" establishes that such a report reflects information used or collected for purposes of making credit eligibility determinations (*e.g.*, prior credit, credit limits, income estimates, home equity estimates). *See* 15 U.S.C. §1681a(d). No new standard was adopted by the FTC in its February 2000 order, or by either D.C. Circuit

---

[13]Since the FCRA's enactment, not a single court has ever held that claims under §1681n of the FCRA were unenforceable because a provision of the FCRA too "vague" or "very elastic." Def's Mem. at 7.

ruling.[14] Those decisions involved application of the plain meaning of the statutory definition. As a credit reporting agency, Trans Union is well-aware of what "factors" creditors rely upon in making credit eligibility determinations. Trans Union's vagueness challenge must be rejected, as must its effort to convince the Court to rule, as a matter of law, that it did not willfully fail to comply with the FCRA.

**D.     There Is No New Legal Standard to Be Applied Retroactively and the FCRA Does Not Impinge Trans Union's Constitutional Rights**

Once again Trans Union attempts to invoke constitutional arguments in support of its claim that Trans Union's due process and First Amendment rights are impinged by plaintiff's claims. The invocation of these unpersuasive constitutional arguments does not support Trans Unions request for dismissal of all claims prior to 1998 because the law has not materially changed and is not violative of due process or free speech.[15]  Trans Union made these same two constitutional arguments before the D.C. Circuit. The D.C. Circuit found both arguments meritless. *Trans Union Corp. v. FTC*, 245 F.3d 809, 811 (D.C. Cir. 2001), *cert denied*, _ U.S. _, 122 S. Ct. 2386 (2002) ("*Trans Union II*") ("we see no merit in Trans Union's vagueness argument ... [and] Trans Union's First Amendment challenge fares no better").

Trans Union cites to *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) for the proposition that subsequent enactment of law or judicial interpretation expanding the scope of the law may not apply retroactively to a defendant. These cases are factually and legally inapposite. *Bouie* dealt with an "admirably narrow and precise" statute that was dramatically expanded by judicial interpretation. In that case, the Supreme Court determined that the expanded interpretation of the statute was without support in prior case law and was "so clearly at variance with the statutory language" (*id.* at 356), that "petitioners had no fair warning of the criminal prohibition under which they now stand convicted." *Id.* at 361. Unlike *Bouie*, there has been no judicial expansion of or addition to the law

---

[14]On appeal the commission concluded that "the FCRA's definition of a "consumer report" is not too vague to provide adequate notice to Trans Union of the conduct proscribed under the FCRA." FTC Opinion at 52.

[15]Again, Trans Union attempts to raise First Amendment issues arguing "because the FCRA prohibits the disclosure of consumer reports for unauthorized purposes, it restricts speech." Def's Mem. at 11. However, Trans Union offers no legal support for this sweeping statement.

here. *Indeed, Trans Union was afforded notice over 10 years ago that its conduct violated the FCRA, but has chosen to gamble on litigation at its own peril.*

In *Trans Union II*, Trans Union did not raise any interpretive challenge to the FCRA's definition of "consumer report." 245 F.3d at 815 ("Trans Union has not challenged the Commission's interpretation of the statute"). Instead, like here, Trans Union claimed that "the FCRA is vague, thus running afoul of the due process clause of the Fifth Amendment." *Id.* at 816. The Court of Appeals, like the FTC before it, rejected that argument, acknowledging that "Trans Union simply does not face a due process risk of prosecution for conduct it could not have known to be illegal." *Id.* at 818.

The FTC's reliance on prescreening and credit scoring was not a new standard, but an application of the same standard and definition to the facts at hand. The opinion created no new law to which Trans Union may claim lack of notice.[16]

### E.    Trans Union Has Injected a Broad Good Faith Defense into This Case

Trans Union's assertion of a generalized defense of a good faith belief in the legality of its conduct at issue compels the production of all information bearing on its state of mind on that issue. Courts hold that when a defendant asserts a defense of reliance on its own good faith belief that its conduct was lawful, it waives the privilege that broadly applies to all evidence regarding the defendant's evaluation of its conduct. *See United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir. 1994). Plaintiffs move the Court for an order requiring Trans Union to produce all documents and information bearing on Trans Union's state of mind regarding its direct marketing practices.

### 1.    Trans Union Has Waived Privilege as to All Evidence Concerning Trans Union's Asserted Good Faith Belief that its Target Marketing Practices Were Legal

On numerous occasions, Trans Union has asserted that it acted in good faith at all relevant times with the belief that it had "no basis for concluding that Trans Union's target market activities

---

[16]Even if the D.C. Circuit had articulated new law (which it did not), Trans Union's retroactivity argument should still be rejected. *See United States v. Burnom*, 27 F.3d 283, 284-85 (7th Cir. 1994) ("*Bouie* applies only to unpredictable shifts in the law, not to the resolution of uncertainty that marks any evolving legal system.").

raised legal concerns under the FCRA." Def's Mem. at 6. Trans Union also claims that "since until at least February 2000 there was no reason for believing its conduct was open to serious legal question" and "Trans Union had no reason to believe that its conduct was unlawful." *Id.* at 7, 8. After discussing the procedural history of the FTC's case against Trans Union and other court decisions, Trans Union concludes: "In light of this history, Trans Union cannot have had the scienter required to violate the FCRA 'willfully', if its conduct could have constituted a violation at all." *Id.* at 9. Thus, it is apparent that Trans Union is asserting its good faith belief as a defense to this action. When a defendant injects its good faith into the lawsuit as a defense, it is only fair to allow the other side access to *all* information that bears on that defense in order to test the validity of the proffered defense. *See Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), *cert. denied, sub nom., Feltner v. Columbia Pictures TV, Inc.*, 534 U.S. 1127 (2002).

In *Cox*, 17 F.3d at 1418, the court held that where the defendant asserted a good faith belief in the legality of its leave-of-absence policy, it "injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege." *Id.* The Eleventh Circuit rejected defendant's argument that the waiver should be limited to the time period during which it was certain of its plan's legality and upheld the district court's order requiring disclosure of all communications bearing on its knowledge of the law relating to its leave of absence policy. *Id.*

**2.    The Scope of Waiver Should Be Commensurate with the Breadth of Trans Union's Defense**

Trans Union's assertion of its good faith belief in the legality of its conduct triggers a broad waiver. Plaintiffs seek an order requiring Trans Union to produce all documents and information relevant to Trans Union's state of mind relating to its target marketing practices. The assertion of a defense of good faith reliance results in subject matter waiver of the attorney-client privilege. Cases addressing the scope of such waiver indicate that the scope of the waiver depends on the scope of the good faith defense. Here, Trans Union asserts the defense in a broad manner to preclude – as a matter of law – liability under the FCRA. Thus, Trans Union's waiver is commensurately broad and disclosure of all evidence relevant to its state of mind on that issue including communications between inside and outside counsel and defendant is warranted.

- 13 -

In *McCormick-Morgan, Inc. v. Teledyne Indus.*, 765 F. Supp. 611 (N.D. Cal. 1991), the court ruled that the defendant's waiver of the attorney client privilege by their defense of good faith reliance on the lawfulness of their conduct could not be limited to the communications with the attorneys upon whose advice defendant relied, but also extended to all other communications on that topic. As the court found, such evidence "might show that MMI received advice which contradicted its initial opinion of counsel and would therefore show that MMI's suit was maintained, or the patent infringed, in bad faith. Such evidence could rebut MMI's good faith reliance defense." *Id.* at 614; *see also Katz v. AT&T Corp.*, 191 F.R.D. 433, 439 (E.D. Pa. 2000) ("[I]t would be fundamentally unfair to allow a party to disclose opinions which support its position and to simultaneously conceal those that are unfavorable or adverse to its position."); *Thermos Co. v. Starbucks Corp.*, No. 96 C3 833, 1998 U.S. Dist. LEXIS 17753, at *4 (N.D. Ill. Nov. 3, 1998).

In *Bilzerian*, 926 F.2d 1285, the Second Circuit held that where a defendant asserts the defense of reliance on its own good faith belief that its conduct was lawful, the scope of the waiver broadly applies to all evidence regarding the defendant's evaluation of the lawfulness of its own conduct:

> The waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, thus his intent.

*Id.* at 1292.

For these reasons, plaintiffs respectfully request that the Court deny Trans Union's motion to dismiss plaintiffs' claims for willful violations under the FCRA, find that Trans Union has waived any claim to attorney-client privilege with respect to Trans Union's good faith belief that its target marketing practices were legal, and order Trans Union to produce all documents relevant to its good faith defense.

### F.     Plaintiffs' Have Alleged Viable Firm Offer Prescreening Claims Under the FCRA

In their motion to dismiss, Trans Union asks this Court to dismiss plaintiffs' Firm Offer Prescreening claims by arguing that, "[n]owhere do plaintiffs allege that Trans Union disclosed

unique identifiers or other information that identifies plaintiffs' relationships or experiences with respect to particular creditors." Def's Mem. at 13. In making this argument, it cites the express language of the statute 15 U.S.C. §1681b(c)(1)(B). This argument has no merit.

In the Complaint, plaintiffs allege that Trans Union violated the FCRA "by, among other things, (i) disclosing Plaintiffs' and class members' telephone numbers in violation of Section 1681b(c), and (ii) disclosing other information pertaining to a consumer that identifies the relationship or experience of the consumer with respect to a particular creditor or other entity." ¶80. This satisfies the notice pleading requirement under Fed. R. Civ. P. 8. With respect to plaintiffs' prior firm offer allegations and defendant's motion to dismiss, this Court held that: "This argument fails because plaintiffs have alleged that their own personal information was in fact disclosed by Trans Union to third parties for use by the third party to determine whether to make an offer, and that in so doing, Trans Union disclosed too much information." Order at 9. But plaintiffs also allege more. In ¶¶60-64, plaintiffs specify the type of detailed information Trans Union disclosed. Paragraph 60(g), for example, alleges that defendant disclosed information concerning plaintiffs' mail order purchases "identifying tradelines such as Spiegel's, L.L. Bean, Eddie Bauer." ¶60(g). This identifies both the relationship *and* experience of the consumer with respect to a particular creditor or entity.

These firm offer allegations are more than enough to satisfy the notice pleading requirements under Rule 8 and should not be dismissed. Whether or not they can be proven is a question for the trier of fact to determine.

### G. Plaintiffs' Privacy Claims and Unjust Enrichment Claims Should Proceed

Plaintiffs' assert a claim for invasion of privacy under two separate theories, intrusion upon seclusion and misappropriation. ¶¶96-101. Each plaintiff also asserts an independent claim for unjust enrichment. ¶¶102-06. Plaintiffs' have met the pleading requirements for each of these claims.

In the portion of its September 10, 2002 Order addressing plaintiffs' common law claims, the Court first analyzed choice of law principles, and ruled that plaintiffs' claims would be governed by

the law of their respective states. The Court then dismissed plaintiffs' privacy claims on the grounds that plaintiffs failed to allege that Trans Union's privacy invasion was "highly" offensive or sufficient to cause "'mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" Order at 26. While the Court dismissed plaintiffs' unjust enrichment claim, it did not discuss it at all, and did not note any pleading deficiencies. Thus, contrary to Trans Union's assertion, the Court made no determination that plaintiffs' unjust enrichment claims are derivative of their privacy claims.

As set out below, analysis of the states' laws applicable to plaintiffs' privacy and unjust enrichment claims establishes that plaintiffs have satisfied all necessary pleading requirements under Counts 3 and 4.

### 1. Plaintiffs' Privacy Claims Meet All Pleading Requirements

#### a. The Restatement (Second) of Torts §§652B and 652C

The Restatement (Second) of Torts ("Restatement") §652A (1977), provides that one's right to privacy is invaded by an "unreasonable intrusion upon the seclusion of another," or by "appropriation of the other's name or likeness." "Intrusion upon seclusion" occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." Restatement §652B. Invasion of privacy also occurs where one "appropriates to his own use or benefit the name or likeness of another." §652C. Virtually every state at issue here has adopted the Restatement's invasion of privacy principles under case or analogous statutory authority.[17]

---

[17] Sections 652B and 652C have been adopted in Alabama (*see Schifano v. Greene County Greyhound Park, Inc.*, 624 So.2d 178, 180 (Ala. 1993)), Arizona (*Godbehere v. Phoenix Newspapers*, 783 P.2d 781, 784 (Ariz. 1989)), California (*Sanders v. Am. Broad. Cos.*, 978 P.2d 67, 71 (Cal. 1999) (addressing §652B)); and *Sanchez-Scott v. Alza Pharms.*, 103 Cal. Rptr. 2d 410, 415 (2001) (addressing §§652B and 652C); Connecticut (*Venturi v. Savitt, Inc.*, 468 A.2d 933, 934 (Conn. 1983)), Illinois (*Ainsworth v. Century Supply Co.*, 693 N.E.2d 510, 513 (1998) (applying §652C)), New Jersey (*Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 907 (D.N.J. 1986) (addressing §§652B and 652C)), and Pennsylvania (*Marks v. Bell Tel. Co.*, 331 A.2d 424, 430 (1975)). Nebraska's statutory scheme is essentially the same as Restatement §§652B and 652C, to which Nebraska courts look for guidance. *See Sabrina v. Willman*, 540 N.W.2d 364, 369 (Neb. 1995). While the Illinois Supreme Court has not expressly recognized the invasion of privacy by intrusion into seclusion (*see Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 989 (Ill. 1989)), a number of Illinois appellate courts have recognized such a claim, although others have not. *Id.* New York has not adopted these common law invasion of privacy provisions. However, as discussed below, New York's statutory right to privacy encompasses Trans Union's misappropriation of plaintiffs' information here.

### b.   Intrusion Upon Seclusion

The comment to Restatement §652B provides that the invasion need not be a physical intrusion into plaintiff's space. The intrusion:

> [M]ay be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account.... The intrusion itself makes the defendant subject to liability.

Restatement §652B, cmt b. Here, Trans Union holds plaintiffs' private and detailed financial information in trust, and is prohibited from using it for target marketing purposes. ¶¶44-48, 51. By accessing plaintiffs' private financial information stored in its consumer reporting database for an undisputedly illegal purpose, Trans Union intruded upon plaintiffs' private financial concerns and invaded their privacy. ¶¶68-76. Plaintiffs' Complaint further alleges that Trans Union's privacy intrusion was "highly offensive or objectionable to a reasonable person of ordinary sensibilities and has caused mental anguish and suffering." ¶98. Thus, plaintiffs have pleaded all requirements for an intrusion claim under Restatement §652B.

Contrary to Trans Union's argument, it does not matter that Trans Union accessed information contained in databases in its possession. Numerous courts have held that an intrusion may occur notwithstanding defendant's possession of or access to the private information at issue. *See, e.g., Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1069 (Colo. App. 1998) (where plaintiff consented to blood test and voluntarily provided blood sample, defendant's conducting more than one blood test constituted a "separate intrusion"); *Fallstrom v. L.K. Comstock Co.*, No. CV9901525835, 2001 Conn. Super. LEXIS 129, at *21 (Conn. Super. Jan. 22, 2001) (employer's lawful possession of urinalysis test results did not preclude separate "intrusion" where co-employees were advised of results); *Johnson v. K Mart Corp.*, 723 N.E.2d 1192, 1196 (Ill. App. 2000) (finding a genuine issue of fact existed regarding whether an unauthorized intrusion occurred where employees voluntarily disclosed information to investigators posing as co-workers). As the California Supreme Court has explained, what matters is whether the defendant obtains "unwanted access to data" with respect to which "the plaintiff had an objectively reasonable expectation of seclusion or solitude." *Sanders*, 978 P.2d at 71. Plaintiffs allege such expectations in the Complaint

- 17 -

(¶¶2, 68, 97), and consumers clearly have an objectively reasonable expectation of privacy in the detailed information at issue. ¶¶60-64. Indeed, the FCRA itself expressly recognizes plaintiffs' "right to privacy" in the information entrusted to Trans Union. *See* 15 U.S.C. §1681a. In sum, the societal recognition of an expectation of privacy in one's intimate financial details is clear. *See, e.g., McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. 1998); *Hall v. Harleysville Ins. Co.*, 896 F. Supp. 478, 484 (E.D. Pa. 1995). *See also* Plaintiffs' Memorandum in Opposition to Defendant's Trans Union LLC's and Acxiom Corporation's Motions to Dismiss Consolidated Amended Complaint at 17-18, filed April 4, 2001 (citing cases recognizing individuals' privacy rights in their financial dealings and related information, and incorporated herein).

The cases cited by Trans Union on this point are inapposite. In *Dwyer v. Am. Express Co.*, 652 N.E.2d 1351 (Ill. App. 1995), the plaintiffs made voluntary disclosures directly to the defendant. Here, plaintiffs disclosed nothing to Trans Union; rather Trans Union probed its consumer reporting database – which is derived from third party financial institutions – for plaintiffs' financial histories. Indeed, in rejecting the plaintiff's intrusion claim, the *Dwyer* court expressly noted that defendants "are not disclosing financial information about particular cardholders." *Id.* at 747. Here, in contrast, plaintiffs allege that Trans Union accessed and disclosed their private financial information. ¶¶52-71.[18]

With regard to the requirement that the intrusion be "highly offensive to a reasonable person," as noted above, the Complaint so alleges. Indeed, the issue of whether or not a particular disclosure would be "'highly offensive to a reasonable person'" is generally reserved for the jury. *See, e.g., Rafferty v. Hartford Courant Co.*, 416 A.2d 1215, 1216 (Conn. Super. 1980). Thus, in *Hall*, 896 F. Supp. at 484, the court expressly found that an intrusion into one's credit history raised a genuine issue of fact on a claim under §652B. In that case, which involved defendants accessing Trans Union's credit reports, the court reasoned:

---

[18]In *Frankel v Warwick Hotel*, 881 F. Supp. 183 (E.D. Pa. 1995), the plaintiff alleged only that the defendant terminated his employment because the plaintiff refused to divorce his wife. Indeed, the court in *Frankel* recognized that the intrusion need not be a "physical intrusion," but may be "some other form of investigation or examination into plaintiff's private concerns." *Id.* at 188.

The Restatement suggests that invasion of one's private bank records could qualify for this tort. We find that a person's credit history could be analogous enough to bank records for an unauthorized search of them to be a significant intrusion. We also find that it is appropriate for a jury to determine whether disclosure of a person's credit report would cause shame or embarrassment to a person of ordinary sensibilities.

*Id.* Similar intrusions are at issue here, and warrant denial of Trans Union's motion.[19]

Trans Union's further claims that Arizona and Alabama require that the defendant's conduct be "extreme and outrageous," and that Connecticut requires a physical intrusion, are wrong. First, the Alabama Supreme Court in *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121, 123 (Ala. 1985), held that §652B requires that the intrusion "be such as would outrage a person of ordinary sensibilities *or cause such a person mental suffering, shame or humiliation.*" Plaintiffs have alleged such mental suffering here. ¶¶22, 98. Similarly, the Arizona Supreme court has "rejected the 'extreme and outrageous conduct' standard in favor of the 'highly offensive' standard set forth in the Restatement and adopted by most jurisdictions." *Med. Lab. Mgmt Consultants v. ABC, Inc.*, 30 F. Supp. 2d 1182, 1189 (D. Ariz. 1998), *aff'd*, 306 F.3d 806 (9th Cir. 2002). Finally, Connecticut's Supreme Court adopted the invasion of privacy provisions set forth in the Restatement (*Goodrich v. Waterbury Republican-Am., Inc.*, 448 A.2d 1317, 1328-29 (Conn. 1982)), which expressly provides that the intrusion may be "physically or otherwise," and may involve accessing one's "private affairs or concerns." Restatement §652B. Thus, there is no requirement that Trans Union physically invade plaintiffs' personal space under Connecticut law.

### c.    Appropriation of Name or Likeness

"The common form of invasion of privacy under the [§652C] is the appropriation and use of the plaintiff's name or likeness ... for some similar commercial purpose." Restatement §652C, cmt. b. Section 652C protects "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him

---

[19]The cases upon which Trans Union relies for this point are also distinguishable. *Stern v. Great W. Bank*, 959 F. Supp. 478 (N.D. Ill. 1997), involved the disclosure of lawfully subpoenaed documents pursuant to a court order, as well as the implied consent of the plaintiff. The "conduct and circumstances" there differ greatly from the indisputably illegal and non-consensual intrusion into plaintiffs' detailed credit histories at issue here. The other cases cited by Trans Union, which involve disclosure of names, addresses or a hotel bill, similarly do not involve the financially detailed information at issue here.

or to others." *Id.* cmt. a. Additionally, the "right created by [§652C] is in the nature of a property right." *Id.*

Here, each plaintiffs' name and confidential financial information have value, and Trans Union's unlawful use, disclosure and sale of that information was made for its own commercial purposes and benefit. ¶99. Such allegations satisfy the requirements for misappropriation under the Restatement §652C. *See Weld v. CVS Pharmacy, Inc.*, No. 98-0897F, 1999 WL 494114, at *6 (Mass. Super. June 29, 1999) (misappropriation claim under §652C upheld where defendant pharmacy accessed its databases containing plaintiffs' names, addresses, dates of birth, prescription and medical information for purposes targeting customers to receive mailings); *Ainsworth*, 693 N.E.2d at 513 (Illinois court holding that plaintiff has sufficiently pleaded an appropriation claim where he alleged that defendant used plaintiff's image derived from the defendant's own instructional video, without his consent, and defendant derived income therefrom); *Fanelle v. LoJack Corp.*, 79 F. Supp.2d 558, 564 (E.D. Pa. 2000) (allegation that defendant used, in a commercial brochure, a copy of a newspaper article that contained plaintiff's name and picture stated a claim for appropriation under §652C).

Trans Union's reliance on *Dwyer* is unavailing. In *Dwyer*, the court reasoned that cardholders' names only had value when they were aggregated. Here, however, plaintiffs have alleged that each plaintiff's name and confidential financial information have value. ¶99. In addition, Trans Union sells its lists at a certain price depending upon the number of names on the list. ¶21. As a result, each plaintiff's name on a list adds incremental value thereto. Thus, the court's ground for rejecting the plaintiff's claim in *Dwyer* is not present here.

While New York does not recognize a common law right to privacy, privacy claims may be asserted under "Civil Rights Law §§50 and 51, which provide a right of action only for use of a person's name or picture for 'advertising' or 'trade' purposes without prior written consent." *Gaeta v. Home Box Office*, 645 N.Y.S.2d 707, 709 (N.Y. Civ. 1996). Here, plaintiffs' allegations that Trans Union used their names for trade purposes and without their consent meet these requirements. *See Caesar v. Chem. Bank*, 460 N.Y.S.2d 235, 237-38 (N.Y. Sup. 1983), *aff'd* 483 N.Y.S.2d 16 (1984) (use of photograph of plaintiff without consent for advertising purposes violated §51).

- 20 -

### d.    Plaintiffs Have Sufficiently Alleged Injury

Under the Restatement §652B and §652C, the plaintiffs only need to establish that the intrusion or appropriation occurred in order to establish liability.[20] Once liability is established, the plaintiffs may seek damages for harm to their privacy interests, mental distress and special damages. *See* Restatement §652H. Plaintiffs' Complaint contains numerous allegations outlining the damage, injury and harm incurred by them as a result of Trans Union's privacy invasions. ¶¶22, 70, 98, 100. Thus, Trans Union's assertion that plaintiffs fail to allege any cognizable injury is wrong. With regard to Trans Union's argument that plaintiffs have failed to request actual damages, this Court previously "construe[d] plaintiffs' request for all legal relief to include a claim for actual damages." Order at 19. Thus, there was no reason for plaintiffs to add an express reference to actual damages to the Complaint.

Moreover, Trans Union's argument "overlooks ... the venerable principle that the law will presume that damages exist for every infringement of a right." *Ainsworth*, 693 N.E.2d at 514. Accordingly, where an intrusion or misappropriation occurs, the courts vindicate the plaintiff's rights "even if plaintiff cannot prove actual damages," and "have long presumed that nominal damages are available for this tort" (referring to Illinois courts and applying rule in misappropriation context).[21] Indeed, the Court recognized this fundamental remedial principle in its September 10, 2002 Order. Order at 30-31. Thus, even assuming *arguendo* that plaintiffs cannot prove actual damages, nominal damages are recoverable for Trans Union's intrusion and misappropriation.

---

[20]*See* Restatement §652B, cmt. b ("[t]he intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined"); *id.* §652C, cmt. c (liability exists if the defendant "appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiffs' name or likeness" or if "the value of the name has in some way been appropriated").

[21]*See Wecht v PG Publishing Co.*, 725 A.2d 788, 791-92 (Pa. Super. 1999) (Pennsylvania courts "have awarded nominal damages ... where there is a technical tort but no actual damage ... [and] have held that nominal damages are available in invasion of privacy cases"); *Sabrina*, 540 N.W.2d at 364 (nominal damages available for invasion of privacy under Nebraska law "in recognition of a legal wrong [even] where there is no proof of actual damages"); *Leabo v. Leninski*, 484 A.2d 239, 2445 (Conn. App. 1984) (technical invasion of privacy entitles plaintiff to nominal damages). *See also Rohrbaugh v. Wal-Mart Stores, Inc.*, 572 S.E.2d 881, 888 (W. Va. 2002) ("when a plaintiff has established liability for invasion of privacy ... nominal compensatory damages are to be awarded" if no other damages are proven).

2.    **Plaintiffs Have Stated a Cause of Action for Unjust Enrichment**

Trans Union seeks to dismiss the unjust enrichment claims set forth in plaintiffs' Fourth Cause of Action. Yet, Trans Union's motion never discusses the elements necessary to maintain an unjust enrichment cause of action under *any* of the nine states at issue in this cause of action. *See* ¶30(d). Instead, Trans Union incorrectly argues, without support, that the unjust enrichment claims are inextricably tied to the privacy claims. *See* Def's Mem. at 13, 15. Thus, so the argument goes, the unjust enrichment claims cannot survive if the privacy claims are dismissed. Trans Union is mistaken.

Each of the states at issue here has recognized a broad equitable cause of action for unjust enrichment.[22]    The Restatement (First) of Restitution (1937), succinctly articulates the basic

_____

[22]Connecticut: *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 521-22 (Conn. 1994); *Gagne v. Vaccaro*, 766 A.2d 416, 427-28 (Conn. 2001) ("Unjust enrichment is a very broad and flexible equitable doctrine that has as its basis the principle that it is contrary to equity and good conscience for a defendant to retain a benefit that has come to him at the expense of the plaintiff."). Nebraska: *Bush v. Kramer*, 173 N.W.2d 367, 369 (Neb. 1969) ("Where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving the benefits to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay the reasonable value of them."). Illinois: *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) ("[A] plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."). New York: *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2nd Cir.), *cert. denied*, _ U.S. _, 123 S. Ct. 104 (2002) ("'To prevail on a claim for unjust enrichment in New York a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'"). Alabama: *Jordan v. Mitchell*, 705 So.2d 453, 458 (Ala. Civ. App. 1997) ("Retention of a benefit is unjust if ... the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship."). Arizona: *City of Sierra Vista v. Cochise Enters.*, 697 P.2d 1125, 1131 (Ariz. App. 1984) (A claim for unjust enrichment requires proof of the following five elements: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law."); *see also Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005 (Ariz. App. 1995) and *Stapley v. Am. Bathtub Liners*, 785 P.2d 84 (Ariz. App. 1989). California: A person who has been unjustly enriched, at the expense of another, is required to make restitution. *Cal. Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 131 (1992). A person is enriched if the person receives a benefit at another's expense. *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992). The term "benefit" means any type of advantage. *County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1278 (1999). New Jersey: *Stewart v. Harris Structural Steel Co.*, 486 A.2d 1265, 1271 (N.J. Super. 1984) (quoting *D'Ippolito v. Castoro*, 242 A.2d 617, 619 (N.J. 1968) and *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 380 (N.Y. 1919)) ("[A] constructive trust should 'be impressed in any case where to fail to do so will result in an unjust enrichment.... When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'"). Pennsylvania: *AmeriPro Search,*

requirements for restitution applied by many courts; *i.e.*, that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* at §1. The comments to the Restatement of Restitution further provide that where:

> [A] benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust ... the defendant may be under a duty to give to the plaintiff the amount by which he has been enriched. Thus where a person with knowledge of the facts wrongfully disposes of the property of another and makes a profit thereby, he is accountable for the profit and not merely for the value of the property of the other with which he wrongfully dealt.[23]

*Id.* at §1, cmt. c. Under federal law, "[d]isgorgement of profits 'initially developed as a remedy to provide a plaintiff relief in equity, to serve as a proxy for damages, or to deter the wrongdoer from continuing his violations'" (*Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 184 (3d Cir. 2001)), and "is most appropriate if damages are otherwise nominal" (*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994)).

Plaintiffs have alleged a litany of wrongful conduct properly charged to Trans Union. ¶¶45-81. Plaintiffs have further alleged that, as a direct result of Trans Union's wrongful conduct, Trans Union "derived millions of dollars of revenue" (¶99) and were "unjustly enriched to the detriment of Plaintiffs" and "retention of these benefits, derived in violation of law, is unjust and contravenes the fundamental principles of justice, equity, and good conscience" (¶104). Plaintiffs' seek "disgorgement of all revenues" received as a result of Trans Union's misconduct. ¶106.

Plaintiffs' allegations track, with particularity, the broad equitable cause of action for unjust enrichment for each identified sub-class relevant to this cause of action. Even a cursory review of

---

*Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. 2001) ("The elements of unjust enrichment are 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'"). The most significant element of unjust enrichment is whether the defendant's enrichment was unjust. *Promark Realty Group, Inc. v. B&W Assocs.*, Civ. A. No. 02-CV-1089, 2002 U.S. Dist. LEXIS 8016, at *10 (E.D. Pa. May 1, 2002) (quoting *Gee v. Eberle*, 420 A.2d 1050, 1060 (Pa. Super. 1980)) ("Indeed, 'the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties.'").

[23]   *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999), is in accord. The court found that unjust enrichment may not be appropriate as a class action *unless*, as here, there is "evidence to establish that the question of liability is uniform among all members of the proposed class." *Id.* at 500. The case at bar presents *precisely* the kind of liability situation the *Clay* court was referring to. Here, Trans Union's misconduct is not only uniform, but has already been *adjudicated* to a finality.

the Complaint shows that plaintiffs' unjust enrichment claim does not "rise or fall" with the privacy claims. As the FTC determined, Trans Union's misconduct transgressed more than privacy claims – Trans Union violated a host of federal statutes specifically designed to protect the putative class members. Now that defendant has handsomely benefitted from their misconduct, they piously claim that *equity* commands they be able to retain the benefit of their illegal conduct. Trans Union's argument that it should be allowed to keep the profits derived from its violations of federal statutes and privacy laws (while also evading the statutory penalties commensurate with the scope of its wrongdoing), contravenes the most basic principles of equity.

## III.   CONCLUSION

For these reasons, plaintiffs respectfully request that the Court deny Trans Union's motion to dismiss, find that Trans Union has waived any claim to attorney-client privilege with respect to Trans Union's good faith belief that its target marketing practices were legal, and order Trans Union to produce all documents relevant to its good faith defense.

DATED:  February 14, 2003

Respectfully submitted,

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
FRANK J. JANECEK, JR.
WILLIAM J. DOYLE II

_WILLIAM J. DOYLE II_

401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058

PRONGAY & BORDERUD
KEVIN M. PRONGAY
JON W. BORDERUD
11755 Wilshire Blvd., Suite 2140
Los Angeles, CA  90025
Telephone:  310/207-2848

RIGHETTI LAW FIRM
MATTHEW RIGHETTI
220 Montgomery Street, 16th Floor
San Francisco, CA  94104
Telephone:  415/983-0900

Co-Lead Counsel for Plaintiffs

SAUNDERS & DOYLE
TERRY ROSE SAUNDERS
THOMAS A. DOYLE
33 North Dearborn Street, Suite 1302
Chicago, IL  60602
Telephone:  312/551-0051

Liaison Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Thomas A. Doyle, certify that I caused a copy of the foregoing document to be served before 5 p.m. on February 14, 2003, on counsel listed below by First Class U.S. Mail, postage prepaid, and by Facsimile.

*Representing Trans Union LLC:*

Roger L. Longtin
Michael O'Neil
Piper Rudnick
203 North LaSalle Street, Suite 1800
Chicago, IL 60601-1293
(312) 236-7516
*(Via Facsimile and U.S. Mail)*

and

John H. Beisner
Brian P. Brooks
O'Melveny & Myers LLP
555 13th Street, N.W.
Washington, D.C. 20004-1109
(202) 383-5414
*(Via Facsimile and U.S. Mail)*

*Representing Axciom Corp.:*

Amy Lee Stewart
Rose Law Firm
120 East Fourth Street
Little Rock, AK 72701
(501) 375-1309
*(Via Facsimile and U.S. Mail)*

and

Thomas P. Arden
Elayna T.Pham
Holland & Knight
500 West Madison Street, 40th Floor
Chicago, IL 60661
(312) 993-9350
*(Via Facsimile and U.S. Mail)*

*Representing MCI World Com. Inc. and
MCI Communications, Inc. d/b/a MCI
Worldcom Wireless*

Ross B. Bricker
Jenner & Block
One IBM Plaza
Chicago, IL 60611
(312) 527-0484
*(Via Facsimile and U.S. Mail)*

Thomas A. Doyle