FILED

CERTIFIED COPY

OCT 2 7 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT CO

DOCKETED
OCT 28 2003

# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3644

CYNTHIA ALBERT, JEFFREY BEADLE,
CECILIA E. COMSTOCK, et al.,

*Plaintiffs-Appellants,*

*v.*

TRANS UNION CORPORATION, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CV 4729—**Robert W. Gettleman**, *Judge.*

ARGUED JUNE 6, 2003—DECIDED OCTOBER 2, 2003

Before RIPPLE, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* In this appeal, the plaintiffs ask this Court to reverse the district court's determination that injunctive relief is not available for Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, actions brought by private, non-governmental plaintiffs. We do not reach this issue, however, because we lack jurisdiction to hear this interlocutory appeal.

## I. History

This is a multidistrict litigation panel case in which nineteen individually named plaintiffs from several different states assert a variety of claims against Chicago-based Trans Union. Trans Union is a "consumer reporting agency" within the meaning of the FCRA. 15 U.S.C. § 1681a(f) (2003). Its primary business is the collection of credit information for the purpose of distributing consumer credit reports to third-party credit grantors for use in assessing the creditworthiness of potential customers.

Another aspect of Trans Union's business has at various times involved the generation of lists of consumers who meet various credit and financial criteria. Trans Union sells or rents these lists, along with other consumer information, to third parties such as retailers, telemarketers, and others. Plaintiffs allege that Trans Union has violated the FCRA and applicable state privacy laws by unlawfully disclosing private financial information and other confidential information to these third parties for use in prescreening for firm offers of credit or insurance and in other target marketing schemes.

Many of plaintiffs' concerns were addressed in a Federal Trade Commission ("FTC") enforcement proceeding instituted in 1992 to determine whether Trans Union's prescreening and target marketing business violated the FCRA. Two orders came out of the FTC proceeding. The first, the "prescreening order," requires Trans Union to ensure that its customers who use its services for prescreening have a permissible purpose under FCRA § 1681b. The second, the "final order," which went into effect April 25, 2001, requires Trans Union to cease the challenged target marketing conduct, specifically enjoining it from "distributing or selling consumer reports, including those in the form of target marketing lists, to any person unless [the company] has reason to believe that such person intends to use

the consumer report for purposes authorized under Section [1681b] of the [FCRA]." *In re Trans Union Corp.*, Final Order, No. 9255 (FTC Feb. 10, 2000), *cited in Trans Union LLC v. FTC*, 245 F.3d 809, 813 (D.C. Cir. 2001).[1]

Despite the FTC's favorable ruling, plaintiffs continue to seek monetary damages and injunctive relief on a class-wide basis in this action. Before answering the complaint, Trans Union filed several motions with the district court concerning a variety of topics, including motions to dismiss certain counts and challenges to class certification. The district court ruled on all of these motions in a single order dated September 10, 2002. *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328 (N.D. Ill. 2002). In their first attempt to appeal a portion of this order, the plaintiffs challenged the district court's ruling that statutory damages claims under FCRA § 1681n could not be maintained as a class action. On October 17, 2002, we denied them permission to appeal the class-certification ruling, noting that the class-certification issue could be fully reviewed on appeal of the final order of the case. Thus, the class certification issue is not before us now.

This is the plaintiffs' second attempt to appeal the district court's order. In this appeal, the plaintiffs challenge only the district court's determination that private plaintiffs are not entitled to injunctive relief under the FCRA. Looking to the text of the FCRA and the only federal appellate decision to address the issue, *see Washington v. CSC Credit Servs.*, 199 F.3d 263 (5th Cir. 2000), the district court found that because (i) the statute expressly grants to the FTC the power to pursue injunctive relief; (ii) the statute does not specifically grant such power to individuals; and (iii) the

---

[1] The Final Order was stayed pending Trans Union's appeal to the D.C. Circuit, which upheld the FTC's decision. *See Trans Union LLC*, 245 F.3d at 819.

statute explicitly gives individuals the power to seek damages, the most straightforward interpretation of the statute was that Congress intended to provide injunctive relief only to the FTC.

The plaintiffs filed a notice of appeal, asserting jurisdiction under 28 U.S.C. § 1292(a)(1) and seeking immediate review of the dismissal of their request for injunctive relief under the FCRA. For the reasons set out below, we find that we lack jurisdiction to hear this appeal.

## II. Analysis

Plaintiffs acknowledge that we generally have jurisdiction to review only final judgments of the district court, *see* 28 U.S.C. § 1291, but they contend that the exception provided in 28 U.S.C. § 1292(a)(1) gives this Court jurisdiction to review immediately the district court's dismissal of their request for injunctive relief under the FCRA. Section 1292(a) provides in relevant part:

> [T]he courts of appeals shall have jurisdiction of appeals from:

> (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1292(a) (2003).

We recently reiterated the narrow scope of the § 1292(a)(1) exception to the final-judgment rule, noting the Supreme Court's directive that "because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule . . . the statute is to be construed narrowly." *Simon Prop. Group, L.P. v. mySimon, Inc.*, 282 F.3d 986, 990 (7th Cir. 2002) (citing *Carson v. Am. Brands*, 450 U.S.

79, 84 (1981)). Therefore, we approach the § 1292(a)(1) exception "somewhat gingerly lest a floodgate be opened" that would deluge the appellate courts with piecemeal litigation. *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 481-82 (1978) (quoting *Switzerland Cheese Assn. v. E. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966)).

With this in mind, we turn to the requirements for jurisdiction under § 1292(a)(1). Trans Union contends that for jurisdiction to be available under that exception, there must be absolutely no injunctive relief remaining for the district court to grant or deny. In other words, the district court's order denying the injunction must have completely foreclosed all injunctive relief in the case or else § 1292 does not apply and we lack jurisdiction.

As support for this position, Trans Union relies heavily on three cases—one Supreme Court case and two cases from this circuit. In the Supreme Court case *Gardner v. Westinghouse Broadcasting Company*, the district court had denied class certification under Federal Rule of Civil Procedure 23(b) on the grounds that the plaintiff's claim was not typical and that the case did not present questions of law or fact common to the class. 437 U.S. at 479-80. The plaintiff sought immediate appeal under § 1292(a)(1), arguing that "[t]he practical effect of the denial of class certification, is . . . to refuse a substantial portion of the injunctive relief requested." *Id.* at 480. The Supreme Court rejected the argument, holding that the denial of class certification in that case did not have the practical effect of refusing injunctive relief. *Id.* at 480-81. In its reasoning, the Court, in a passage relied on by Trans Union, distinguished a previous case, *General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430 (1932), by observing: "In [*General Electric*], the Court held that an order dismissing a counterclaim for an injunction was appealable. The order, therefore, *entirely disposed* of the defendant's prayer for injunctive relief; here

[in *Gardner*] the order *merely limits the scope of the relief that may ultimately be granted.*" *Id.* at 481. (emphasis added). This statement, Trans Union claims, displays the Court's view that unless a district court's order "entirely disposes" of all injunctive relief, appellate jurisdiction does not lie under § 1292(a)(1).

Trans Union similarly relies on statements in our opinion in *Holmes v. Fisher*, 854 F.2d 229 (7th Cir. 1988). In that case, the plaintiff, who was arrested without a warrant and held for eight days before being taken to court, sought equitable relief and damages under § 1983 and sought to represent a class of similarly situated citizens. *Id.* at 230. The district court dismissed the request for equitable relief, but left the claim for damages pending. *Id.* We held that we had jurisdiction over the interlocutory appeal of the district court's decision to deny equitable relief under § 1292 because "[a]lthough the request for money is pending, a conclusive denial of all equitable relief is appealable even though a request for damages lives on. . . . Holmes has suffered total defeat on his request for an injunction, and § 1292(a)(1) allows him an immediate appeal." *Id.* at 230-31. Based on this statement, Trans Union asserts that *Holmes* makes clear that unless there is a total denial of all injunctive relief, § 1292(a)(1) does not provide jurisdiction over an interlocutory appeal.

Finally, Trans Union points to our decision in *Samayoa v. Chicago Bd. of Educ.*, 783 F.2d 102 (7th Cir. 1986). In *Samayoa*, the plaintiffs, who had been denied admission to the Walt Disney Magnet School, alleged racial discrimination by the school against Cubans, American Indians, and Caucasians in the administration of the school's desegregation plan. *Id.* at 102. Count 1 of the amended complaint charged the Chicago Board of Education and others with violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. *Id.* As relief under this count, the

plaintiffs sought to have the defendants enjoined from enforcing the desegregation plan. *Id.* at 102-03. Count II of the complaint sought relief through Title VI of the Civil Rights Act of 1964. *Id.* at 103. In Count III, the plaintiffs alleged violations of the due process and equal protection clauses and sought an order enjoining the defendants from denying plaintiffs admission to the school in violation of their civil rights. *Id.* The district court dismissed Counts I and II, but retained Count III. *Id.* at 102-03. The plaintiffs sought interlocutory review of the dismissal of Count I pursuant to § 1292(a)(1). *Id.* at 103. We held that we lacked jurisdiction to hear the appeal, noting that although Count I, which sought injunctive relief, was dismissed, "Count III, which remains for trial, involves the same factual situation, alleges constitutional violations, and seeks essentially the same remedy." *Id.* at 104. Therefore, dismissal of Count I did not refuse an injunction, rather it simply narrowed the grounds of the dispute. *Id.; see also Holmes*, 854 F.2d at 231 (discussing *Samayoa*).

Trans Union asserts that *Samayoa*, *Gardner*, and *Holmes* together illustrate that an appeal under § 1292(a)(1) is not available unless the district court has completely disposed of all injunctive relief in the case. We are not convinced, however, that these cases stand for such a strong proposition. For instance, the *Gardner* Court, though making a statement supporting Trans Union's position in dicta, actually dealt with whether the denial of class certification amounts to the denial of an injunction, and not directly with whether an appeal could be had under § 1292 when injunctive relief is still pending below. *Gardner*, 437 U.S. at 478-79. In *Holmes*, we merely noted that there had been a "conclusive denial of all equitable relief;" we did not hold that it was necessary in all cases that there be a "total defeat" on all injunctive components to qualify for § 1292(a)(1) review. *Holmes*, 854 F.2d at 230-31. And, in *Samayoa*, the central reason we lacked jurisdiction was not

simply because some potential injunctive relief remained below but rather because the relief remaining was essentially identical to the injunctive relief that was dismissed. *Samayoa*, 783 F.2d at 104. Therefore, the case law does not necessarily require us to accept Trans Union's interpretation of § 1292(a)(2).

Rather, we think that these cases and others interpreting § 1292(a)(1) represent a continuum. At one end are cases like *Holmes* where our jurisdiction under § 1292(a)(1) is secure because the district court's order entirely negated the equitable component in the case. At the other end are cases where the district court's order did not involve the denial of any injunctive relief. At this end, § 1292(a)(1) clearly would not provide jurisdiction. Between these poles are the more difficult cases where plaintiffs have sought multiple injunctions and the district court denied some of them while leaving others pending. *Samayoa* falls in this middle area, but we ultimately determined in that case that we lacked jurisdiction because the counts that remained in the district court and the counts that were dismissed and appealed, essentially sought the same injunctive relief, only under different legal theories. *See Holmes*, 854 F.2d at 231. We could envision, however, a different case in this middle area where the injunctive relief denied by the district court and the injunctive relief still remaining before the district court are of an entirely different nature—relating to distinct subject matter or seeking completely different injunctive relief. Such a case would present a far stronger argument for finding interlocutory appellate jurisdiction than did *Samayoa*.

Our task in deciding whether we have jurisdiction therefore involves determining where on that continuum this case lies. We find that this case falls very close to *Samayoa*: while the district court denied injunctive relief under the FCRA, substantial and similar injunctive relief is still available in the district court.

To determine what injunctive relief is still remaining in the district court, we look to the plaintiffs' most recently amended complaint, the Second Amended Consolidated Complaint, which was filed after the district court's order denying plaintiffs injunctive relief under the FCRA. In that complaint, we find that still pending in the district court is the plaintiffs' "Seventh Cause of Action," which seeks an order enjoining the defendants from further violations of California Business & Professions Code §§ 17203 and 17204, which regulates unfair business practices. At the very least under this count, injunctive relief against defendant's complained-of actions is still available for the California plaintiffs.

In addition to the relief under the California statute, however, there remains injunctive relief under laws in other states as well. For instance, in Count III of the complaint, all the plaintiffs seek equitable and other remedies for invasion of privacy and misappropriation "under the laws of the states in which Plaintiffs reside." Similarly, in Count IV, all plaintiffs seek all appropriate relief for unjust enrichment "under the laws of the states in which Plaintiffs reside."

Most importantly, in the second amended consolidated complaint's prayer for relief, the plaintiffs seek the same injunctions under state- and common-law theories as they sought in the first complaint under the FCRA.[2] Such relief,

---

[2] Specifically, in the second complaint they request:

2. As permitted by state law and the Court's equitable powers, an order enjoining defendants from disclosing consumer reports in the form of target marketing lists to any person unless defendants have reason to believe that such person intends to use such lists for a permissible purpose as required by law;

(continued...)

now sought under state law, would provide for the same injunctions that the district court ruled were unavailable to the plaintiffs under the FCRA. Thus, not unlike *Samayoa*, there is little difference between the injunctive relief denied by the district court and the injunctive relief that still remains below. Since essentially the same injunctive relief is still available, the district court's order ruling that injunctive relief is not available under the FCRA did not truly deny an injunction but rather "narrowed the grounds of dispute." *Holmes*, 854 F.2d at 230.

We have recognized that in certain rare instances where the district court's order, while not technically refusing an injunction, has the same "practical effect," a plaintiff may still obtain appellate review if there is a possibility of irreparable harm to the plaintiffs if the appeal is delayed. *See Simon Prop. Group*, 282 F.3d at 990; *see also Holmes*, 854 F.2d at 231. The plaintiffs here have not argued that we have jurisdiction based on the district court's order having the "practical effect" of refusing an injunction. Even if they had made this argument, we would reject it. Here, given the fact that the FTC has already issued two orders that address the conduct about which the plaintiffs complain, it is highly unlikely that any irreparable injury will befall the plaintiffs if this appeal is not heard immediately.

---

[2] (...continued)

    3. As permitted by state law and the Court's equitable powers, an order enjoining defendants from the misappropriation and/or invasion of the privacy rights of Plaintiffs and of the members of the appropriate Plaintiff Classes through the disclosure of their private financial, credit and other confidential information without their informed written consent;

    4. As permitted by state law and the Court's equitable powers, an order requiring defendants to notify all members of the appropriate Plaintiffs Class of their right to be excluded from defendants' target marketing lists and of the manner in which such exclusion may be sought.

No. 02-3644                                                                 11

## III. Conclusion

For the foregoing reasons, we lack jurisdiction to hear this appeal. This appeal is therefore DISMISSED.

A true Copy:

Teste:

*Christine Duff Hudkins, deputy*

*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—10-2-03