### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**
JUL 28 2004

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) Lead Case No. 00 CV 4729 |
| | ) |
| | ) MDL Docket No. 1350 |
| | ) |
| | ) Hon. Robert W. Gottleman |
| THIS DOCKET RELATES TO: | ) |
| | ) |
| ALL ACTIONS | ) |
| | ) |
| | ) |

**FILED**
JUL 2 7 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### ANSWER TO SECOND AMENDED CONSOLIDATED COMPLAINT

Defendants Trans Union LLC ("Trans Union"), by its attorneys, as its Answer and Affirmative Defenses to Plaintiffs' Second Amended Consolidated Complaint, states as follows:

1.      Plaintiffs Cynthia Albert, Jeffrey Beadle, Cecilia Comstock, Dawn DeRonde, David Feige, Megan Gogerty, Victoria Scott Kearley, Geri Mann, Marci Martinelli, Lawrence and Joan Palazzolo, Heather Payne, Boris and Alla Rozenblitt, Randall J. Stein, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann and Nancy M. Woods (collectively, "Plaintiffs"), individually and on behalf of all persons similarly situated, by their attorneys, make the following allegations for their First Amended Consolidated Complaint. Plaintiffs make these allegations with knowledge as to their own acts, respectively, and upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**ANSWER:**    Trans Union admits that Plaintiffs seek to make the allegations of this Second Amended Complaint individually and on behalf of a purported class. Trans Union denies the remaining allegations of this paragraph.

*/5/*

## NATURE OF THE ACTION

2.     Defendant Trans Union LLC ("Trans Union") is a credit bureau which is now, and has, for a number of years, been engaged in an unlawful scheme of distribution and sale of private and detailed financial, credit and other confidential information of hundreds of thousands of Americans. As part of this illegal scheme, Trans Union retrieves private credit and other financial information from its credit databases, generates lists of consumers who meet certain targeted financial criteria, and sells those lists to target marketing and advertising firms for a substantial profit. Trans Union has been aided and abetted in this scheme by defendant Acxiom Corporation ("Acxiom"), in which Trans Union held a substantial ownership interest during the relevant time period, and who acted as Trans Union's agent with respect to the unlawful conduct alleged herein. During the 1990s, Acxiom was integrally involved in the operation of Trans Union's target marketing business, and engaged in the disclosure and sale of consumer reports in the form of the Master File, target marketing lists, and other similar products and services as alleged herein, and substantially profited from the sale and disclosure of consumers' private credit and other financial information. Through the acts alleged herein, Trans Union, Acxiom and the other defendants identified herein have trampled and violated the privacy rights and expectations of consumers, violated federal and state laws prohibiting such conduct, and have been unjustly enriched by such unlawful conduct and privacy intrusions. Plaintiffs and the plaintiff classes defined herein seek, inter alia, to enjoin the defendants' unlawful conduct, and to recover actual, statutory, punitive and all other damages provided for by law for defendants' repeated unlawful acts and conduct.     Plaintiffs also seek the disgorgement of all unjust gains defendants have received as a result of the unlawful conduct alleged herein, along with their attorneys' fees and costs.

**ANSWER:**     Trans Union admits that it is a credit bureau. Trans Union further admits that

the Plaintiffs purport to seek on behalf of a purported class injunctive relief; actual, statutory,

punitive and other damages; disgorgement of gains; and attorneys' fees and costs. Trans Union

denies the remaining allegations of this paragraph.

## PARTIES

3.     Plaintiff Cynthia Albert is a resident of this District.

**ANSWER:**     Trans Union is without knowledge or information sufficient to form a belief as

to the truth of the allegations of this paragraph, and therefore denies the same.

4.     Plaintiff Jeffrey Beadle is a resident of West Hartford, Connecticut.

**ANSWER:** Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

5. Plaintiff Cecilia E. Comstock is a resident of Phoenix, Arizona.

**ANSWER:** Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

6. Plaintiff Dawn DeRonde is a resident of City of Orange, New Jersey.

**ANSWER:** Trans Union denies that Dawn DeRonde is a plaintiff in this action. Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

7. Plaintiff David Feige is a resident of New York, New York.

**ANSWER:** Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

8. Plaintiff Megan Gogerty is an Illinois citizen whose primary residence has been, at all relevant times, this District.

**ANSWER:** Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

9. Plaintiff Victoria Scott Kearley is a resident of Montgomery, Alabama.

**ANSWER:** Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

10.    Plaintiff Geri Mann is a resident of this District.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.


11.    Plaintiff Marci Martinelli is a California citizen whose primary residence has been, at all relevant times, within the Northern District of California.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.


12.    Plaintiffs Lawrence Palazzolo and Joan E. Palazzolo are residents of New Britain, Pennsylvania.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.


13.    Plaintiff Heather Payne is a resident of this District.

**ANSWER:**    Trans Union denies Payne is a plaintiff in this action.  Further answering Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.


14.    Plaintiffs Boris Rozenblitt and Alla Rozenblitt are residents of Cherry Hill, New Jersey.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.


15.    Plaintiff Randall J. Stein is a resident of San Diego, California.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

16.    Plaintiff Elizabeth H. Turner is a resident of St. Clair County, Illinois.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

17.    Plaintiff Alan Wayne is a resident of Los Angeles, California.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

18.    Plaintiff Nancy Winkelmann is a resident of Omaha, Nebraska.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

19.    Plaintiff Nancy M. Woods is a resident of St. Clair County, Illinois.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

20.    Each of the Plaintiffs has had multiple credit or loan accounts, each satisfies the "Minimum Criteria" for inclusion in Trans Union's Master File hereinafter "List Master File" or "Master File"), and each was included in Trans Union's List Master File during the relevant time period. As a result, each of the Plaintiffs has had his or her credit reports and private financial, credit and other confidential information, sold and/or disclosed by Trans Union or its agents to third parties, through the disclosure or sale of its List Master File, target marketing lists, and similar products and services during the relevant time period, without each Plaintiff's authorization or consent, in violation of the Fair Credit Reporting Act (5 U.S.C. §1681 et seq. ("FCRA") and applicable state privacy laws as alleged herein.

**ANSWER:**    With respect to the allegations of the first sentence of this paragraph: (1) Trans Union is without knowledge and information sufficient to form a belief as to the truth of the allegation that each of the Plaintiffs has had multiple credit or loan accounts and Trans Union therefore denies the same; (2) Trans Union admits that at some point during the period 1995-2000 it possessed information in its CRONUS database that may or may not have related to each of the Plaintiffs except DeRonde, which information satisfied the minimum criteria then-existing for including certain of such information in the List Master File. With respect to DeRonde Trans Union states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that information possessed by Trans Union and relating to DeRonde satisfied the minimum criteria for including such information in the List Master File, and Trans Union therefore denies the same; (3) Trans Union admits that at some point during the period 1995-2000, a record which included a name which may or may not have related to each of the Plaintiffs except DeRonde was included in a version of the List Master File. Without respect to DeRonde, Trans Union states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations that DeRonde's name was included in a version of the List Master File, and Trans Union therefore denies the same. Trans Union denies the remaining allegations of this paragraph.

21.    As a result of defendants' violations of the FCRA and privacy laws as alleged herein, each of the Plaintiffs have been damaged thereby, including, but not limited to, (i) the monetary value of Plaintiffs' private information the defendants unlawfully sold, which value was determined by defendants when they sold the information at a certain price per thousand names, or at a certain price per name, depending on the amount of private information that was sold with the name; and (ii) the costs and expenses incurred as a result of investigating defendants' conduct and Plaintiffs' legal rights and remedies with respect to defendants' conduct as alleged herein, as well as retaining legal counsel to pursue those rights and remedies. These costs and expenses include, but are not limited to telephone calls, postage, copying costs, and certain other miscellaneous items, including lost time.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


22.    As a further result of defendants' violations of the FCRA and privacy laws as alleged herein, Plaintiffs have also experienced some or all of the following forms of mental distress as a result of the conduct of defendants as alleged in herein including, but not limited to, harassment, anger, annoyance, vexation, frustration, aggravation, irritation, and exasperation by, the fact that, among other things: (i) Plaintiffs' legal rights under the FCRA and other laws have been repeatedly violated by defendants; (ii) Plaintiffs' rights to privacy have been repeatedly violated by defendants by unlawfully disclosing Plaintiffs' private financial, credit, and other personal information; (iii) Plaintiffs' intangible personal property, in the form of Plaintiffs' private financial, credit and other personal information, has been repeatedly and unlawfully misappropriated and sold by defendants for their own financial gain to the detriment of Plaintiffs; and (iv) Plaintiffs have received enormous amounts of annoying and unsolicited junk mail and telephone calls over the last several years, in large part as a result of defendants' unlawful conduct as alleged herein, all of which has also interrupted and wasted significant amounts of Plaintiffs' valuable time.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


23.    Trans Union is a Delaware limited liability company with its headquarters located in Chicago, Illinois. Trans Union conducts business throughout the United States. Trans Union owns and/or controls, has owned and/or controlled, or has or had a substantial ownership interest in a number of other entities that have also engaged in the unlawful conduct alleged herein, or have assisted, aided and abetted, and/or conspired with Trans Union in committing the unlawful conduct alleged herein, including PerformanceData and Acxiom.

**ANSWER:**    Trans Union admits the allegations of the first two sentences of this paragraph.

Trans Union denies the remaining allegations of this paragraph.


24.    Acxiom is a Delaware corporation with its corporate headquarters located in Conway, Arkansas. Acxiom has owned or currently owns entities that have purchased and used target marketing lists products or other similar services supplied by Trans Union and/or Acxiom, and that contain the private credit or other financial information of consumers. During all relevant times, Trans Union is or has been the single largest shareholder of Acxiom, and is or has been Acxiom's second largest customer. During all relevant times, Acxiom has operated as a consumer credit reporting agency, and is subject to the FCRA. Together, Trans Union and Acxiom have unlawfully disclosed consumer reports and credit information on millions of Americans. As a result, Acxiom has actively participated in, has acted as Trans

Union's agent, and has aided and abetted and conspired with Trans Union in the unlawful conduct alleged herein.

**ANSWER:**    With respect to the allegations of the first sentence of this paragraph, Trans Union admits on information and belief that Acxiom Corporation ("Acxiom") is a Delaware corporation.  Trans Union denies on information and belief that Acxiom's headquarters are located in Conway, Arkansas.  With respect to the allegations of the second sentence of this paragraph, Trans Union states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of this sentence, and therefore denies same.  With respect to the allegations of the third sentence of this paragraph, Trans Union denies that it is or ever has been Acxiom's largest shareholder.  Trans Union is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the third sentence of this paragraph, and therefore denies same.  With respect to the allegations of the fourth sentence of this paragraph, Trans Union states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of this sentence, and therefore denies same.  Trans Union denies the remaining allegations of this paragraph.

   25.    MCI WorldCom Communications, Inc. ("MCI") was a defendant in Plaintiffs' Amended Consolidated Complaint.   Plaintiffs have received notice from MCI that the automatic stay provided for in the U.S. Bankruptcy Code applies to MCI.  As a result, Plaintiffs are not prosecuting their claims against MCI in this amended complaint.  This should not be constituted as a waiver of any of Plaintiffs' claims against MCI in the event it is determined that the automatic stay does not extend to MCI.

**ANSWER:**    Trans Union admits that MCI WorldCom Communications, Inc. ("MCI") was a defendant in Plaintiff's Amended Consolidated Complaint.  Trans Union admits that Plaintiffs are not prosecuting their claims against MCI in this Second Amended Consolidated Complaint. Trans Union is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies same.

26. Any applicable statutes of limitations which may apply to Plaintiffs' claims or Causes of Action, began to run, if at all, only shortly before Plaintiffs' claims were filed, because Plaintiffs were previously unaware that Trans Union had been disclosing their consumer reports and private credit and other confidential information as alleged herein. Members of the Plaintiff Classes continue to be unaware that Trans Union has unlawfully sold, leased, and/or disclosed such information. In addition, or alternatively, the applicable statutes of limitations which may apply to the Plaintiffs' and Class members' claims have been equitably tolled because Plaintiffs were aware of defendants' unlawful conduct until shortly before they filed their claims against defendants, and most Class members are still unaware of defendants' unlawful conduct as alleged herein, and defendants have concealed, and continue to conceal, the unlawful conduct alleged herein.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


## JURISDICTION AND VENUE

27. This Court has jurisdiction over this matter pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §168lp and 28 U.S.C. §1331, as it arises under the consumer credit laws of the United States set forth in the FCRA, 15 U.S.C. §1681 et seq., and under 28 U.S.C. §1332.

**ANSWER:**    Trans Union denies that jurisdiction exists over this Second Amended Consolidated Complaint under 28 U.S.C. § 1332.    Trans Union admits the remaining allegations of this paragraph.


28. This Court has supplemental jurisdiction over the state law claims set forth herein under 28 U.S.C. §1367, as those claims are joined with related claims under the FCRA and/or with claims over which this Court has jurisdiction under 28 U.S.C. §1332.

**ANSWER:**    Trans Union denies that jurisdiction exists over this Second Amended Consolidated Complaint under 28 U.S.C. § 1332.    Trans Union admits the remaining allegations of this paragraph.

29. Venue is proper in this Court under the FCRA, 15 U.S.C. §1681p, and because one or more defendants reside here within the meaning of 28 U.S.C. §1391(b) and (c) and have contacts within this district sufficient to subject them to personal jurisdiction herein.

**ANSWER:**   Trans Union denies that 15 U.S.C. § 1681p addresses venue. Trans Union admits the remaining allegations of this paragraph.

## CLASS ALLEGATIONS

30.   This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3). Plaintiffs seek certification of the following classes and/or subclasses:

### FCRA Classes/Subclasses.

(a)   All persons in the United States whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and the present.

(a)(1)   All persons in the United States whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and October 1, 1997.

(a)(2)   All residents of the State of Nebraska whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and the present.

(a)(3)   All residents of Douglas County, in the State of Nebraska, whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28 1997 and the present.

(a)(4)   All residents of St. Clair County, in the State of Illinois, whose consumer reports were disclosed by Trans Union or its agents to an unaffiliated third party, without authorization by the consumer, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products and services, between January 28, 1997 and the present.

### FCRA Firm Offer Class/Subclass

(b)   All persons in the United States who, at any time between September 30, 1997 and the present, have had their telephone number and/or their private financial, credit or other confidential information disclosed by Trans Union or its agents in connection with a "firm offer of credit or insurance."

### State Law Privacy/Misappropriation Classes/Subclasses

(c)     As a separate class for each state, all residents of Arizona, Alabama, California, Connecticut, Illinois, Nebraska, New Jersey, Pennsylvania, and New York, whose private financial, credit or other confidential information was disclosed by Trans Union or its agents, without the individual's permission, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products or services, at any time between September 28, 1995 and the present.

### State Law Unjust Enrichment Classes/Subclasses

(d)     As a separate class for each state, all residents in Arizona, Alabama, California, Connecticut, Illinois, Nebraska, New Jersey, Pennsylvania, and New York, whose private financial, credit or other confidential information was disclosed by Trans Union or its agents, without the individual's permission, through the transfer or sale of Trans Union's List Master File, target marketing lists, or similar products or services, at any time between September 28, 1995 and the present.

### California Unfair Competition Class/Subclass

(e)     All residents of California who, at any time between January 28, 1995 and the present, have had their private financial, credit or other confidential information disclosed by Trans Union or its agents through the transfer or sale of its List Master File, target marketing lists, or similar products or services.

**ANSWER:**     Trans Union admits that Plaintiffs seek certification of the classes and/or subclasses described in this paragraph, except for those described in subparagraphs (c) and (d), which relate solely to claims that have been dismissed by the Court. Trans Union denies the remaining allegations of this paragraph.

31.     Excluded from each of the above classes and subclasses (the "Plaintiff Classes") are defendants, any person or other entity employed by, related to, or affiliated with defendants, the judge assigned to this case and his staff, and counsel of record for Plaintiffs. Also, as used in the above class definitions, "target marketing list" shall not include "firm offers of credit or insurance."

**ANSWER:**    Trans Union admits that Plaintiffs seek to exclude the persons listed in this paragraph from the classes and subclasses listed in paragraph 30. Trans Union denies the remaining allegations of this paragraph.

32.    Plaintiffs specifically reserve the right to amend or change the definition or scope of any of the alleged Plaintiff Classes set forth herein, and further reserve the right to add or delete classes or subclasses, depending on the development of the facts and the state of the law at the time Plaintiffs bring a motion to certify a class or classes.

**ANSWER:**    Trans Union admits that Plaintiffs purport to reserve the rights described in this paragraph. Trans Union denies the remaining allegations of this paragraph.

33.    The Plaintiff Classes satisfy all of the requirements for certifying a class, including the requirements of numerosity, commonality, typicality, adequacy, and predominance. The members of the Plaintiff Classes are so numerous and geographically dispersed that joinder of all class members is clearly impracticable.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

34.    Questions of fact and law are common to each member of the Plaintiff Classes. Common questions of fact and law include, among others:

a.    Whether defendants' disclosure of class members' credit information in its Master File, target marketing lists, or similar products or services constitutes noncompliance with and/or violations of the FCRA;

b.    Whether defendants' acts of noncompliance with the FCRA were willful;

c.    Whether defendants' acts of noncompliance with the FCRA were knowing, intentional or reckless acts undertaken in disregard of the rights of class members;

d.    Whether defendants' acts of noncompliance with the FCRA were negligent;

e.    The nature and extent of injunctive relief to which the class members are entitled;

f.    Whether, as a result of defendants' acts of noncompliance with the FCRA, Plaintiffs and members of the appropriate Plaintiff Classes are entitled to any damages,

including actual damages, statutory damages, nominal damages, punitive damages and/or attorneys' fees under the FCRA;

g.    Whether, as a result of defendants' acts of wrongful conduct and/or noncompliance with the FCRA, Plaintiffs and the Plaintiff Classes are entitled to actual damages;

h.    Whether, as a result of the wrongful conduct of defendants, Plaintiffs and the Plaintiff Classes are entitled to exemplary and/or punitive damages; and

i.    Whether defendants were unjustly enriched by their unlawful conduct as alleged herein, and the extent of their unjust enrichment.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


35.    The respective claims of the Plaintiffs are typical of such claims of the members of the Plaintiff Classes.  Plaintiffs and all members of the Plaintiff Classes have been similarly affected by defendants' conduct and the members of the Plaintiff Classes have the same claims against the defendants.  The claims of all of the members of the Plaintiff Classes depend on a showing of the wrongful conduct described herein, which give Plaintiffs, individually and as class representatives, the right to seek the relief sought herein.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


36.    There are no irreconcilable conflicts as between Plaintiffs and the other members of Plaintiff Classes with respect to this action or the claims for relief.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


37.    Plaintiffs and their attorneys are able to, and will, fairly and adequately protect the interests of the Plaintiff Classes.  Plaintiffs know and understand their asserted rights and their role as class representatives.  Plaintiffs have no conflicts of interest with the proposed class members.  Plaintiffs' attorneys are experienced class action litigators who are well able, and possess the resources needed, to conduct the proposed litigation.  Plaintiffs' attorneys can vigorously prosecute the rights of the class members of the proposed Plaintiff Classes.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


38.    Prosecution of separate actions by individual class members may create the risk of inconsistent and varying adjudications and may establish incompatible standards of conduct

for defendants in that different courts may order different equitable or other relief or take other inconsistent actions.

**ANSWER:**    Trans Union denies the allegations of this paragraph..

39.    Prosecution of separate actions by individual Plaintiffs will, as a practical matter, be dispositive of the interests of other proposed class members not party to the adjudications or will substantially impair or impede such person's ability to protect their interests in that, for example, Trans Union and other defendants may exhaust their available funds in satisfying the claims of earlier plaintiffs to the detriment of later plaintiffs.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

40.    Trans Union and other defendants have acted and/or refused to act on grounds generally applicable to the proposed class, making final injunctive relief and corresponding declaratory relief appropriate with respect to members of the Plaintiff Classes as a whole in that Trans Union and other defendants have unlawfully disclosed private financial, credit and other, confidential information of members of the proposed Plaintiff Classes and have been unjustly enriched.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

41.    Common questions of law and fact predominate over any individual issues pertaining to the class members. All of these claims depend on proving that defendants are liable for unlawfully disclosing private financial, credit and other confidential information of members of the proposed Plaintiff Classes. The proposed evidentiary showings for the claims of each member of the proposed classes would be based on the same documents and testimony concerning defendants' actions.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

42.    A class action is superior to the other available methods for the fair, just and efficient group-wide adjudication of the controversy. Plaintiffs and members of the Plaintiff Classes have no interest in individually controlling the prosecution of separate actions. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system. The class action device allows a court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Plaintiffs' claims in a single (or limited) forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and preserves the rights of each class member. Furthermore, for most class members, a class action

is the only feasible mechanism that allows them an opportunity to obtain full legal redress and justice.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


43.    Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving hundreds of thousands of class members. Plaintiffs are not aware of any difficulty that would be encountered in the management of Plaintiffs' claims which would preclude their certification as class claims.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


44.    Certification of the Plaintiff Classes is appropriate under Federal Rule of Civil Procedure 23(a) and also under Federal Rules of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3).

**ANSWER:**    Trans Union denies the allegations of this paragraph.


## FACTS COMMON TO ALL COUNTS
### Trans Union And Its Consumer Credit Databases

45.    Trans Union engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, but only as permitted under the FCRA.

**ANSWER:**    Trans Union admits that part of its business is assembling credit information and

other information pertaining to consumers for the purpose of furnishing "consumer reports" as

defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d) ("FCRA"). Trans Union

admits that part of its activities is regulated by the FCRA. Trans Union denies the remaining

allegations of this paragraph.


46.    Trans Union maintains large computer databases of consumer credit information for use in generating such consumer reports. These databases include the credit activity of every credit-active individual in the United States. The information on these databases is collected by Trans Union from credit grantors such as banks, mortgage companies, credit unions, automobile dealers, collection agencies and other entities. Trans Union also receives information on student loans and child support information.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of this paragraph and therefore denies the same. Trans Union admits the remaining allegations of this paragraph.

47.    Trans Union's database system for furnishing consumer reports is called CRONUS. A "record" in CRONUS includes the name of a consumer and his or her address. Additional individual-level consumer credit information is listed in CRONUS in a "tradeline." A "tradeline" is a segment of a consumer report that reflects a credit relationship between a consumer and a creditor-usually a debt or a potential debt owed by the consumer to the credit grantor. "Tradeline" information includes, inter alia, a customer's account number, telephone number, social security number, and any generational suffix; the open date of the account; the subscriber's (credit grantor's) name and code, and its kind of business; the verified date on the accident; the type of loan; the credit limit assigned by the credit grantor; payment history and the crossed date of the account, if any. A consumer's credit "file" includes all tradelines for that consumer in CRONUS.

**ANSWER:**    With respect to the first sentence of this paragraph, Trans Union admits that CRONUS is a database that is used for furnishing consumer reports. Trans Union denies the remaining allegations of the first sentence of this paragraph. With respect to the allegations in the fourth sentence of this paragraph, Trans Union admits that a tradeline can reflect a credit relationship between a consumer and creditor, and that this relationship can include a debt owed by the consumer to the credit grantor. Trans Union denies the remaining allegations of the fourth sentence of this paragraph. With respect to the fifth sentence of this paragraph, Trans Union denies that plaintiffs have fully described all the information in a "tradeline." Trans Union admits the remaining allegations of this paragraph.

48.    The consumer reports furnished by Trans Union (1) communicate information bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living; and (2) are used or expected to be used for, inter alia, the purpose of serving as a factor in establishing the consumer's eligibility for personal, family or household credit or insurance (hereinafter referred to collectively as "credit information" or "consumer report"). This credit information and the consumer reports furnished by Trans Union constitute "consumer reports" within the meaning of the FCRA, 15 U.S.C. §1681a(d).

**ANSWER:**   Trans Union admits that it furnishes certain information which meets the

definition of "consumer report" under the FCRA, 15 U.S.C. 1681a(d) but denies that all of the

information it provides meets the definition of "consumer report" in 15 U.S.C. 1681a(d).  Trans

Union denies the remaining allegations of this paragraph.

49.   Trans Union furnishes these consumer reports in exchange for monetary fees or
dues.   Trans Union furnishes consumer reports in interstate commerce.   Trans Union is a
"consumer reporting agency" ("CRA") within the meaning of the FCRA, 15 U.S.C. §1681a(f).

**ANSWER:**   With respect to the allegations of the first sentence of this paragraph, Trans

Union admits that it furnishes some consumer reports in exchange for monetary fees.  Trans

Union denies the remaining allegations of this sentence.  Trans Union admits the allegations of

the second and third sentences of this paragraph.

50.   Trans Union is or has been the single largest shareholder of Acxiom and is or
has been Acxiom's second largest customer.   During the 1990s, Acxiom has operated as a
consumer credit reporting agency, and as Trans Union's agent.   Together, Trans Union and
Acxiom have gathered and furnished credit data on millions of Americans.   As alleged herein,
Trans Union and Acxiom have unlawfully disclosed consumer reports to unaffiliated third
parties for purposes of selling Trans Union's Master File, target marketing lists, and similar
products and services.  As a result, Acxiom has actively participated in, acted as Trans Union's
agent, and aided and abetted Trans Union's violations of law, with respect to the unlawful
conduct alleged herein against Trans Union.

**ANSWER:**   With regard to the first sentence of this paragraph, Trans Union denies that it is

or has been the largest shareholder in Acxiom.   Trans Union is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of this

sentence, and therefore denies same.  With regard to the second sentence of this paragraph,

Trans Union admits that at certain points during the 1990s, Acxiom provided certain data

processing services to Trans Union pursuant to contracts.  Trans Union is without knowledge or

information sufficient to form a belief as to the allegation that Acxiom has operated as a

consumer reporting agency, and therefore denies same. Trans Union denies the remaining allegations of the second sentence of this paragraph. With respect to the third sentence of this paragraph, Trans Union admits that it has gathered and furnished credit data on millions of Americans. Trans Union is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the third sentence of this paragraph, and therefore denies the same. Trans Union denies the remaining allegations of this paragraph.

51.     Trans Union and Acxiom may lawfully furnish a consumer report only for a "permissible purpose" as defined in the FCRA, §15 U.S.C. 168lb. These permissible purposes are limited by the FCRA and include, for example, furnishing a consumer report in response to a court order, or in accordance with written instructions of the consumer.

**ANSWER:**   Trans Union admits the allegations of this paragraph.

<u>Trans Union's Target Marketing Business</u>

52.     Performance Data is a division of Trans Union that distributes, sells, leases and/or rents (hereinafter referred to collectively as "distributes") "target marketing" lists to third parties. Performance Data was previously known as TransMark, then as Trans Union Lists; its name was changed to Performance Data in 1997. Trans Union and Performance Data (and its predecessors in name) are referred to herein collectively as "Trans Union."

**ANSWER:**   With respect to the allegations of the first sentence of this paragraph, Trans Union admits that PerformanceData was formerly a division of Trans Union that distributed, leased, or rented "target marketing lists" to third parties. Trans Union denies the remaining allegations of the first sentence of this paragraph. Trans Union admits the allegations of the second and third sentence of this paragraph.

53.     Target marketing involves selling or advertising goods and services directly to consumers by mail or telephone. Consumers are picked by, among other criteria, targeted financial or credit-related criteria, and demographic traits. Trans Union's target marketing business uses consumer credit information from its consumer credit data bases to prepare lists on computer tape of consumers who meet certain credit-related and other criteria.

**ANSWER:**    Trans Union admits the allegations of the first sentence of this paragraph but

denies that plaintiffs have completely defined the types of solicitations that make up "target

marketing." With respect to the allegations in the second sentence of this paragraph, Trans

Union admits that through target marketing consumers can be picked by, among others,

demographic traits. Trans Union denies that the plaintiffs have fully defined the traits or

criteria used in selecting consumers for target marketing. Trans Union is without knowledge or

information sufficient to form a belief as to the meaning of the term "financial or credit-related

criteria," as used in this sentence and therefore denies same. Trans Union denies the remaining

allegations of the second sentence of this paragraph. With respect to the third sentence of this

paragraph, Trans Union admits that it distributes lists on computer tape to target marketing and

other firms for use in soliciting consumers. Trans Union is without information sufficient to

form a belief as to the meaning of "consumer credit information," "credit-related criteria," and

"consumer credit databases" as those phrases are used in this paragraph, and therefore denies

the remaining allegations of this paragraph.


54.    Trans Union sells and distributes its target marketing lists throughout the United
States to target marketing and other firms for use in soliciting consumers. Trans Union's target
marketing customers include, among others, catalogue companies, newspaper and magazine
subscription vendors, firms using mail solicitations or telemarketing, as well as target
marketing list brokers, managers and wholesalers. In 1997 alone, Trans Union's gross
revenues through Performance Data's sale of target marketing lists were about $34 million, and
Trans Union has been selling such lists since at least 1992.

**ANSWER:**    Trans Union admits that it distributes to customers throughout the Untied States

target marketing lists that are used to solicit consumers for firm offers of credit or insurance.

Trans Union further admits that it formerly distributed to target marketing and other firms lists

that were used to solicit consumers for offers to sell goods and services. Trans Union denies

the remaining allegations of the first sentence of this paragraph. With respect to the allegations

in the second sentence of this paragraph, Trans Union admits that its customers for target marketing lists have included, among others, catalog companies, newspaper and magazine subscription vendors, firms using mail solicitations or telemarketing, as well as target marketing list brokers, managers, and wholesalers. Trans Union denies the remaining allegations of the second sentence of this paragraph. With respect to the third sentence of this paragraph, Trans Union denies that it has sold lists. Trans Union admits the remaining allegations of the third sentence of this paragraph.

55.    Trans Union retrieves and uses consumer information stored in CRONUS to create two primary databases called the Master File and the Standard Characteristics database. Since the mid-1990s, the Master File has had other names, including the "Base List." The use by Trans Union of its CRONUS information to develop lists for its target marketing business allows Trans Union to sell information that is far richer and more detailed than the data collected and used by non-CRA competitors which sell target marketing lists.

**ANSWER:**    With respect to the allegations in the first sentence of this paragraph, Trans Union admits that it formerly retrieved and used some, but not all, consumer information stored in CRONUS, along with other information, to create portions of the List Master File and Standard Characteristic databases. Trans Union denies the remaining allegations of the first sentence of this paragraph. Trans Union denies the remaining allegations of this paragraph.

56.    In order to include a CRONUS consumer file in the Master File, Trans Union specifies that the consumer file must satisfy several minimum criteria. Prior to January 1998, each CRONUS consumer file had to show at least two open tradelines, with one of the tradelines verified -- i.e., that some reported activity took place -- during the preceding 12 months. In addition, a qualifying tradeline could not be closed or be an account about which there was a consumer dispute, and could not be a collection record or public record ("pre-1998 Minimum Criteria").

**ANSWER:**    With respect to the allegations of the first sentence of this paragraph, Trans Union denies that it continues to build the List Master File. Trans Union admits the remaining

allegations of the first two sentences of this paragraph. Trans Union denies the allegations of the last sentence of this paragraph.

57.     In January 1998, in order to be included in the Master File, Trans Union began to require CRONUS consumer files to contain two tradelines active within the last six months or one tradeline active in the last six months with an address confirmed by an outside source (hereinafter "post-1997 Minimum Criteria" and both sets are referred to collectively as the Minimum Criteria"). As with the pre-1998 Minimum Criteria, the qualifying tradeline could not be a collection record or a public record. Trans Union's promotions state that the Master File is a list of "135 million financially active individuals," that "[a]ny adult with at least two active tradelines is represented," and that a person with no activity in a 12-month period -- i.e., making payments or establishing credit -- is dropped from the Master File.

**ANSWER:**    With respect to the allegations of the first two sentences of this paragraph, Trans Union admits that for the version of the List Master File created in December 1997, the minimum criteria for including a consumer's name in the file was one tradeline CRONUS associated with the consumer that was reported in the previous six months. A tradeline reflecting a collection account was not considered in applying the criterion. The address associated with the tradeline must have been verified by another tradeline in CRONUS or with information purchased from an outside source. Trans Union denies the remaining allegations of the first two sentences of this paragraph. Trans Union is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, as Plaintiffs have not identified the documents that they reference. Accordingly, Trans Union denies the remaining allegations of this paragraph.

58.     The Master File is frequently enhanced with the addition of other personal, often credit-related, financial information on each individual. The criteria Trans Union uses to create these subsets are called "indicators" or "selects." Trans Union generates approximately half of these subsets from its consumer reporting database CRONUS. In order to generate the foregoing selects or indicators, as well as other financial estimates, Trans Union obtains information from CRONUS and incorporates that information into the Master File.

**ANSWER:**    Trans Union admits that the List Master File formerly contained "indicators" or "selects" that indicated that the consumer may have certain demographic or other characteristics. Some of the indicators or selects that were contained in the List Master File were derived in whole or in part from the CRONUS database. Trans Union is without knowledge or information sufficient to form a belief as to the meaning of the terms "personal," "credit-related" or "financial" as used in this paragraph and therefore denies same. Trans Union denies the remaining allegations of this paragraph.

59.    Trans Union offers its third party vendors at least two ways to utilize the information contained in its Master File products. Some vendors provide a list of consumers to Trans Union and purchase the Master File credit-related or financial information regarding those customers. Other vendors request that Trans Union extract from the Master File the names and address of those consumers who satisfy pre-selected criteria chosen by the customer. Trans Union's target marketing customers can choose from a menu of selects and ask for a tailored list of consumers' names and addresses who, for example, have a bank card or an open mortgage, but never have obtained short term (30/60/90 day) financing. Trans Union sells these lists for one-time use by its customers either by rental or by license and charges a "base price" per thousand names, with additional charges per thousand based on the "selects" that the vendor has chosen.

**ANSWER:**    Trans Union admits that customers who obtained information from the List Master File formerly could provide a list of consumers to Trans Union and receive back selected information from the List Master File pertaining to these consumers. In addition, customers formerly could request that Trans Union extract from the List Master File the names and addresses of consumers who satisfied pre-selected criteria chosen by the customer. Trans Union admits that its customers for target marketing lists from the List Master File formerly could choose as selects presence of an open mortgage and presence of a bankcard. Trans Union formerly charged for target marketing lists derived from the List Master File, among other ways, by charging a base price per thousand names, with additional charges for various selects. Trans Union is without knowledge or information sufficient to form a belief as to the

meaning of the terms "credit-related" or "financial" information and therefore denies same.

Trans Union denies the remaining allegations of this paragraph.

### Trans Union's Target Marketing Lists, Products and Services

60.    Trans Union has sold, distributed and otherwise disclosed target marketing lists identifying Plaintiffs and other members of the Plaintiff Classes. These lists were created utilizing one or more of the following indicators, selects and/or estimates, among others:

a.    Open automobile loans; auto loan type (e.g., lease, refinanced loan, equity transfer loan, automobile loan); open dates and expiration dates for the auto lease or loan; the high credit amount of current loans/leases;

b.    Open bank card; open premium bank card (i.e., bank card with credit limit of $10,000 or higher); open date of the most recent bank or premium bank card;

c.    Open department store card; open date of the most recent department store trade;

d.    Open finance trade; open date of the most recent finance loan; a "30/60/90 day" finance trade (i.e., a loan due in 30, 60 or 90 days);

e.    Head of household (i.e., the person with the highest number of trades in a household);

f.    Open mortgage; open second mortgage; mortgage type; open and closed dates and high credit amounts of mortgages; estimated home value and home equity (as derived from mortgage balances and other credit information);

g.    Mail order buyers-based on identifying tradelines such as Spiegel's, L.L. Bean, Eddie Bauer;

h.    Single persons-based on credit accounts not being joint accounts; and

i.    Open student loan; open date of most recent student loan; aggregate high credit of all of a person's student loans; a closed student loan; and open upscale retail credit card;

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as

to the truth of the allegations of this paragraph and therefore denies same.

61.    Trans Union has sold, distributed and otherwise disclosed a number of other target marketing lists premised on other selects, indicators and estimates.

**ANSWER:**    Trans Union admits that in the past it has distributed a number of target marketing lists that utilized various selects, indicators or estimates.  Trans Union denies the remaining allegations of this paragraph.

62.    Trans Union's "Standard Characteristics" or "Attribute" file is a second database Trans Union maintains on consumers.  This database contains 313 attributes on each CRONUS consumer who meets the Master File Minimum Criteria.  Trans Union uses this personal credit information to create certain models that it offered to target marketers until at least October 1997.  These models assign a value or score to each consumer file in the following ways through the following products thereby disclosing sensitive financial information regarding consumers:

a.    E-VAL.    A scoring system that, using information in the Standard Characteristics file, estimates the amount of equity available in a consumer's home.  A Trans Union customer can purchase a consumer's E-VAL "score" showing: (1) the estimated actual amount of equity in the consumer's home; (2) the percentage of equity over home value; and (3) the home value range.

b.    TIE.  The TIE scoring system provides a consumer's estimated income within a $5,000 range (culminating in an over $100,000 category).  TIE estimates income by modeling 23 attributes in the Standard Characteristics file.

c.    SOLO.  The SOLO model places consumers into one of 40 "clusters," based on a modeling of 35 attributes in the Standard Characteristics file.  SOLO evaluates individual behavior and describes tendencies based on how individuals are using credit.  Examples of SOLO cluster categories are: "Urban Ethnics," "Urban Upscale," "Empty Nesters," "Single Strugglers," "Kids and Cars."

d.    P$YCLE.    This model also assigns people to one of 60 "buckets" that are intended to estimate a consumer's income producing assets.  Categories of buckets include, "Elite Pre-Retired Spenders," "Affluent Renters," "Inner City Strugglers."

e.    PIC.  The PIC product used the Standard Characteristics file to model the, likelihood that a person owns financial service products.  On the Master File, the PIC option will indicate whether there is a negative or positive propensity to purchase, among other things, a home equity loan, a mutual fund, and installment loan or term life insurance.

**ANSWER:**    Trans Union admits that it formerly maintained a "Standard Characteristics" or "Attributes" file, which contained 313 attributes pertaining to consumers. Trans Union also admits that data in the "Standard Characteristics" file was formerly used, among other things, as inputs for calculating scores provided by the E-VAL, TIE, SOLO, P$YCLE and PIC models. Trans Union admits that it ceased making E-VAL, TIE, SOLO, P$YCLE and PIC available to target marketers who were not making firm offers of credit or insurance in October 1997. Trans Union is without knowledge or information sufficient to form a belief as to the meaning of the terms "personal credit information" and "sensitive financial information" as used in this paragraph and therefore denies the same. Trans Union admits that E-VAL generally provided a home value estimate; TIE generally provided an income estimate; SOLO generally evaluated prospects for the customer's product and/or service; P$YCLE generally predicted a household's usage of financial products and services; and PIC generally predicted a consumer's propensity to purchase certain financial products. Trans Union denies that Plaintiffs have completely and accurately described the features of the Standard Characteristics File, E-VAL, TIE, SOLO, P$YCLE and PIC. Trans Union denies the remaining allegations of this paragraph.

63.    In addition to its Master File/Selects product and the Standard Characteristics models, during at least part of the relevant time period, Trans Union has offered several other products derived from CRONUS, including:

a.    TransLink/Reverse Append. This product provides merchants with names and addresses of bank card holders. The merchant submits to Trans Union a list of bank card numbers that were used to make purchases from the merchant. Trans Union then retrieves from CRONUS the name and address of the primary cardholder. While a customer name is presumably already available to the merchant, the address is not. By purchasing TransLink, merchants obtain a useful list of names and addresses without asking their customers for this information. TransLink is among Trans Union's largest selling target marketing

services and Trans Union is the only CRA that provides this type of "reverse append" service.

b.  New Issues File.  This file contains names and addresses of individuals who received credit within the last 90 days.  It also discloses when an individual obtained the credit and the type of credit issued.

c.  Emerging Consumers File.  This file included individuals with only one tradeline from the prior twelve months.  To qualify, the tradeline must be open.

**ANSWER:**  Trans Union admits that it formerly offered several products other than the Master File and the Standard Characteristics file.  With respect to the allegations of paragraph 63(a), Trans Union denies that it currently distributes the TransLink/Reverse Append product. Subject to that denial, Trans Union admits the allegations of the first two sentences of paragraph 63(a).  With respect to the third sentence of paragraph 63(a), Trans Union denies that TransLink directly retrieved information from CRONUS to fulfill a customer order.  Trans Union admits the remaining allegations of the third sentence of paragraph 63(a).  With respect to the fourth and fifth sentences of paragraph 63(a), Trans Union is without knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.  Trans Union denies the remaining allegations of paragraph 63(a).  With respect to the allegations of paragraph 63(b), Trans Union admits the allegations of this paragraph.  With respect to the allegations of paragraph 63(c), Trans Union admits the allegations of this paragraph.

64.  Trans Union also sells a "driver" list which comprises persons with an auto loan tradeline or a gas card tradeline.

**ANSWER:**  Trans Union admits that it formerly distributed a "driver" list which comprised persons who were believed to have an auto loan or a gas card tradeline.  Trans Union denies the remaining allegations of this paragraph.

<u>Trans Union's Promotion Of Its Target Marketing Lists, Products And Services</u>

65.     Trans Union promotes its Master File and target marketing products as a unique source of credit-based marketing information from CRONUS.  As set out in detail below, Trans Union acknowledges in its promotional materials that its target marketing lists are premised on consumer credit information.

**ANSWER:**     Trans Union is without knowledge or information sufficient to form a belief as

to the meaning of the terms "credit-based marketing information" and "consumer credit

information" as used in this paragraph and therefore denies same.  Trans Union denies the

remaining allegations of this paragraph.

66.     Trans Union advertises that its use of credit information or "credit based data" provides a competitive advantage over other credit reporting agencies that do not use such information generating target marketing lists.  Trans Union similarly promotes advantages over other target marketing list providers who rely on survey data directly from individuals, as opposed to the confidential credit and other financial information upon which Trans Union relies in generating its target marketing lists.  Trans Union knows that its target marketing lists are consumer reports because it, in essence, promotes them as "credit based" marketing tools.

**ANSWER:**     Trans Union is without knowledge or information sufficient to form a belief as

to the meaning of the terms "credit information," "credit based data," "confidential credit or

other financial information" and "credit-based marketing tools" as used in this paragraph and

therefore denies same.  Trans Union denies that target marketing lists it formerly distributed to

customers in order for customers to solicit offers other than firm offers of credit or insurance

are consumer reports and further denies that it knows such target marketing lists are consumer

reports.  Trans Union denies that it currently advertises target marketing lists for purposes other

than providing firm offers of credit or insurance.  Trans Union denies the remaining allegations

of this paragraph.

67.     Specifically, Trans Union has represented in it advertising materials promoting its target marketing lists that, among other things:

a.  "We Can Tell You More About The 150,000,000 People On Our List Than Forbes Can Tell You About The 500 On Theirs";

b.  "It's Easier To Acquire Individuals' Money If You Know Where They Keep It";

c.  "Tap Into The Richest Source Of Individual-Level Financial Data In America";

d.  "Performance Data's MasterFile, one of the largest databases of U.S. consumers, covering nearly every adult in the country. And a great source of behavioral and demographic data";

e.  "To lift response rates, you need the power of individual-level data. . . Our individual-level data includes over 45 million known direct response buyers of magazines, books, and other programs. Add to this the best behavioral data available -- including new movers, homeowners, bank card holders -- and the result is higher response rates and greater profits";

f.  "What they're buying is only a beginning. We can tell you a lot about your best prospects. To assure that you invest in only the most qualified prospects, our direct response buyer data is segmented into six major categories and seventy-two different sub-categories. In addition to areas of interest, you can select from the following variables: Total dollars ever ordered, total dollar amount from most recent order, month and year of most recent activity, most recent activity in months, source of the order . . . In addition, Performance Data offers you a wealth of individual-level data to further segment and target prospects";

g.  The Master File is the "richest source of individual-level financial data available," and its database is "kept fresh and current by nearly two billion updates supplied by credit grantors every month, and is maintained for accuracy and quality";

h.  Its Master File is "without equal" and its information is "highly accurate" and is "based on actual behavior -- not self-reported or neighborhood values";

i.  The Master File is "the freshest and most comprehensive" data due to its "robust and extensive source of original credit based information";

j.  The Master File is "living and breathing data," "the most comprehensive available in terms of observed behavior" and the "only source of individual-level financial data" that is "individual and behavioral";

k.  "Trans Union is a unique provider of credit-based marketing information. Our database is unmatched when compared to traditional direct marketing vehicles on the market today";

l.     Trans Union's Standard Characteristics correlate highly with "lending activity";

m.     Trans Union data is "highly predictive in response modeling and profiling, especially with financial offers";

n.     "Trans Union's finance trade select provides consumers who have "generally had trouble with their credit in the past and are highly responsive to credit offers";

o.     Trans Union information contains "spending, payment and demographic data" that is "highly predictive and cost effective"; and

p.     Trans Union distinguishes itself from "its traditional competitors within the credit reporting industry," who have not pursued Trans Union's "open policy" regarding the use of credit information by target marketers.

**ANSWER:**   Trans Union is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, as Plaintiffs have not identified the documents that they reference.   Accordingly, Trans Union denies the allegations of this paragraph.

<u>Trans Union's Disclosure of Consumer Reports</u>
<u>For An Impermissible Purpose</u>

68.     Trans Union's target marketing products and lists reflecting the selects, indicators and estimates described above are consumer reports because the lists and products disclose confidential financial and credit information culled from the same Trans Union consumer reporting database that is also used by credit grantors in making credit eligibility determinations. The presence or absence of a tradeline, bank card, retail account, finance loan, auto loan, collection account or a mortgage, and other types of financial information described above, is used in credit scoring by credit grantors, and in the determination of consumers' eligibility for personal, family or household credit insurance.   Consumers have a strong expectation of privacy and privacy interest in the use of the above confidential financial information from their credit files.

**ANSWER:**   Trans Union admits that certain target marketing products and lists used to solicit firm offers of credit or insurance are consumer reports, but denies that target marketing products and lists used to solicit other offers are consumer reports.   Further answering, Trans Union denies the allegations of this paragraph.

69.    During the 1990s and continuing to the present, Trans Union has disclosed consumer reports regarding Plaintiffs and members of the Plaintiff Classes in the form of the target marketing products and lists described above to target marketers and other unaffiliated third parties that did not have a permissible purpose for receipt and use thereof. Trans Union has done so without the class members' authorization or consent, and this practice is ongoing. As a result, Trans Union has invaded the right to privacy and privacy expectations of Plaintiffs and members of the Plaintiff Classes.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

70.    Plaintiffs and members of the Plaintiff Classes are persons who have been harmed, and injured in fact within the meaning of Article III of the United States Constitution in that they have, or have had, multiple credit or loan accounts; their names, addresses, and private financial, credit and other confidential information were, and are, included within Trans Union's Master File and other databases used for target marketing; and their names, addresses and private financial, credit and other confidential information were unlawfully misappropriated, disclosed, rented, leased and/or sold by Trans Union to unaffiliated third parties in violation of, among other things, Plaintiffs', and members of the Plaintiff Classes' rights under the FCRA and rights of privacy, as alleged herein.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

71.    Trans Union either knew or reasonably should have known that its target marketing lists and products constituted consumer reports within the meaning of the FCRA and that those reports were not being used by third parties for a permissible purpose under the FCRA. Trans Union nevertheless disclosed, and continues to disclose, such information in violation of the FCRA and the privacy rights of Plaintiffs and the members of Plaintiff Classes. Trans Union has acted willfully, recklessly and/or in conscious disregard for Plaintiffs' rights and the rights of the members of the Plaintiff Classes. Trans Union has derived substantial profits from the unlawful disclosure of consumer information in its target marketing lists and other products.

**ANSWER:**    Trans Union admits that certain of its target marketing products and lists used to solicit firm offers of credit or insurance are consumer reports. Trans Union denies the remaining allegations of this paragraph.

72.    In or around October 1997, Trans Union changed the types of credit information it sells to target marketers. Trans Union did so out of concern that amendments to the FCRA provided for substantial monetary penalties for violations. Prior thereto, Trans Union was unconcerned with whether or not its disclosure of target marketing lists violated the FCRA

because it believed that the only liability it faced was an order to discontinue disclosing such information. Trans Union therefore knew that it was violating the FCRA by disclosing this information, but was concerned because it believed that the worst that could happen would be that it would have to stop selling the lists.

**ANSWER:**    Trans Union admits that it eliminated certain variables in the List Master File

after October 1, 1997. Trans Union denies the remaining allegations of this paragraph.

73.    Since October 1997, Trans Union has knowingly and intentionally continued to disclose consumer reports regarding Plaintiffs and members of the Plaintiff Classes to target marketers and other unaffiliated third parties that did not have a permissible purpose for the receipt and use of such information. It has done so in conscious disregard of the rights of Plaintiffs and members of Plaintiff Classes, and in continuing effort to generate revenue and profits and profits at the expense of consumers' privacy rights. Trans Union has earned and continues to earn substantial revenue and profits from this unlawful activity.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

74.    In a decision dated July 31, 1998, an Administrative Law Judge ("ALJ") of the Federal Trade Commission ruled in a matter styled *In the matter of Trans Union Corporation,* Docket No. 9255, that Trans Union assembles information on consumers to furnish consumer reports to subscribers and consumers; Trans Union is a consumer reporting agency; Trans Union's target marketing lists are consumer reports; and Trans Union furnishes consumer report information in target marketing lists to persons who do not have a permissible purpose under the FCRA. The ALJ ruled that, by this conduct, Trans Union violates the FCRA. The ALJ ordered that Trans Union cease and desist from the sale of such consumer reports in the absence of a permissible purpose.

**ANSWER:**    Trans Union admits that an Administrative Law Judge of the Federal Trade

Commission ("ALJ") issued an initial decision dated July 31, 1998 in the matter styled *In the*

*matter of Trans Union Corporation,* Docket No. 9255. In that Initial Decision, the ALJ wrote

several conclusions of law including: 1) Trans Union assembles information on consumers to

furnish consumer reports to subscribers and consumers; 2) Trans Union is a consumer reporting

agency; 3) Trans Union's target marketing lists are consumer reports; 4) Trans Union furnishes

consumer report information in target marketing lists to persons who do not have a permissible

purpose under Section 604 of the FCRA; and 5) by this conduct Trans Union violates Section

604 and 607(a) of the FCRA. Trans Union admits that the ALJ recommended to the Federal

Trade Commission, as part of the Initial Decision, that Trans Union be ordered to cease and

desist from distributing target marketing lists which the ALJ believed constituted consumer

reports unless Trans Union has reason to believe that the recipient of such lists either intends to

make a firm offer of credit to all consumers on the lists or to otherwise use such lists for

purposes authorized by the FCRA. Trans Union denies the remaining allegations of this

paragraph.

75.    On February 10, 2000, after reviewing a full trial record, the FTC affirmed the
ALJ's July 1998 findings and conclusions. The FTC specifically found that:

> Trans Union's target marketing lists are indeed consumer reports under the
> FCRA because they contain information that bears on the factors set forth in
> Section 603(d)(1) and is used or expected to be used as a factor in determining a
> consumer's eligibility for credit. By selling these lists to target marketers
> without a permissible purpose, Trans Union violates the FCRA. This conclusion
> applies to Trans Union's Master File/Selects; proprietary models; and
> TransLink/reverse append products.
>
> Trans Union's disclosure to target marketers of information on the existence of a
> tradeline violates the FCRA. Further, Trans Union's disclosure in its target
> marketing products of other information, such as the existence of a type of
> tradeline, open date of tradeline, home equity information, and income
> estimations, among other list criteria described above, also violates the Act.

**ANSWER:**    Trans Union admits that by order dated February 10, 2000, the FTC adopted in

part the Initial Decision of the ALJ referenced in paragraph 74, and also issued an opinion that

contains the language quoted in this paragraph. Trans Union also admits that the FTC, in its

opinion, stated that it reviewed the record in that action. Trans Union denies the remaining

allegations of this paragraph.

76.    The FTC's Opinion and Order has been upheld on appeal to the D.C. Court of
Appeals, and Petition for a Writ of Certiori in the U.S. Supreme Court has been denied.

**ANSWER:**    Trans Union admits the allegations of this paragraph.

<u>Trans Union's "Firm Offers of Credit"</u>

77.    Information sold by Trans Union in its target marketing business is also used in prescreening for transactions consisting of a "firm offer of credit or insurance."

**ANSWER:**    Trans Union admits that some, but not all, information that it formerly disclosed in target marketing lists used to make solicitations other than firm offers of credit was also made available for creating prescreened lists of consumers to whom Trans Union's customers would make a firm offer of credit or insurance. Trans Union denies the remaining allegations of this paragraph.

78.    In general, a firm offer of credit or insurance is an offer of credit or insurance that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer. Such offers are sometimes characterized as "pre-approved" offers of credit or insurance.

**ANSWER:**    Trans Union admits the general allegations of this paragraph and refers to the FCRA for a more specific definition of "firm offer of credit or insurance."

79.    Pursuant to the FCRA, Trans Union may furnish information for purposes of a credit transaction if, among other things, the proposed transaction involves a "firm offer of credit" to the consumer. If all of the statutory requirements are met under the FCRA with respect to a firm offer of credit, a consumer reporting agency such as Trans Union may provide only the following information pursuant to a firm offer of credit transaction under Section 1681b(c) of the FCRA: (A) "the name and address of a consumer," (B) "an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer"; and (C) "other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity."

**ANSWER:**    Trans Union admits the allegations of this paragraph.

80.    Trans Union has also violated the FCRA by, among other things, (i) disclosing Plaintiffs' and class members' telephone numbers in violation of Section 1681b(c), and

(ii) disclosing other information pertaining to a consumer that identifies the relationship or experience of the consumer with respect to a particular creditor or other entity as allege herein.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

81.    Any applicable statutes of limitations which may apply to Plaintiffs' Fifth and Sixth Causes of Action, began to run, if at all, in March of 1999 because Plaintiffs were previously unaware that Trans Union had been disclosing their telephone numbers and/or private financial, credit and/or other confidential information in connection with the sale, lease and/or disclosure of target marketing lists for firm offers of credit or insurance, and members of the Firm Offer Class continue to be unaware that Trans Union has unlawfully sold, leased, and/or discussed such information. In addition, or alternatively, the applicable statutes of limitations which may apply to the Plaintiffs' Fifth and Sixth Causes of Action, have been equitably tolled because Trans Union concealed, and continues to conceal, its unlawful disclosure of telephone numbers and/or private financial, credit and/or other confidential information in connection with the sale, lease and/or disclosure of target marketing lists for firm offers of credit or insurance, in violation of the FCRA, among other things.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

### MCI's Target Marketing Efforts

82.    Trans Union sold, leased or otherwise disclosed consumer reports, including a report on Comstock to MCI. Such reports were provided without a permissible purpose.

**ANSWER:**    Trans Union admits that it has disclosed consumer reports to MCI. Trans Union denies the remaining allegations of this paragraph.

83.    MCI intended to and did obtain Comstock's consumer report for the purpose of soliciting Comstock and other members of the Firm Offer Class to purchase wireless service.

**ANSWER:**    Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

84.    On or about March 13, 2000, Comstock received "An Exclusive Offer for Pre-Approved Wireless Service" from MCI WorldCom Wireless, which stated that she was targeted based on information Trans Union provided to MCI:

> Based on your excellent credit history, we are pleased to offer you *MCI WorldCom Wireless[Tm] Platinum* complete with a very competitive rate plan and a **FREE LG 330 digital phone!**

In a footnote written in diminutive script, the solicitation also included the following statement, which was the only other information bearing on how Comstock was chosen for this offer:

> Your name was pre-released based on information obtained from Trans Union. If at the time of the offer, you no longer meet the initial criteria, the offer will be revoked. If you prefer that your name be omitted from future offers you may call 1-888-567-8688 or write to Trans Union LLC, Marketing Opt Out, P.O. Box 97328 Jackson, MS 39288-7328.

**ANSWER:**   This allegation relates solely to a claim that was dismissed by the Court by its order dated September 10, 2002, and therefore no answer is required. To the extent an answer from Trans Union is required, Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

85.   MCI sent identical letters to thousands of consumers located in Arizona and other states.

**ANSWER:**   Trans Union admits on information and belief that MCI sent letters to thousands of consumers. Trans Union is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

86.   Comstock did not solicit or seek wireless services from MCI or from other companies who have purchased consumer reports from Trans Union and used those reports to solicit such class members.

**ANSWER:**   Trans Union is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

87.   15 U.S.C. §168lm(d) of the FCRA expressly requires any such unsolicited offers include in writing "clear and conspicuous statement[s]." The Section requires statements that the "information contained in the consumer's consumer report was used in connection with the transaction," that the consumer "received the offer [because the consumer] satisfied the criteria for credit worthiness ... under which [the consumer was] selected for the offer," and that the

consumer has the "right to prohibit information contained in [the] consumer's file with any consumer reporting agency from being used in connection with any credit ... transaction" they do not initiate. These statements are missing from MCI's uniform communications to Comstock and other members of the Comstock Classes.

**ANSWER:**   This allegation relates solely to a claim that was dismissed by the Court by its order dated September 10, 2002, and therefore no answer is required. To the extent an answer from Trans Union is required, denies the allegations of this paragraph.


## FIRST CAUSE OF ACTION
(Willful Noncompliance With the FCRA, 15 U.S.C. §§1681b, 1681n
By All Plaintiffs Against Trans Union and Acxiom)

88.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 87 as if the same were set forth herein.

**ANSWER:**   Trans Union repeats and realleges each and every response to paragraphs 1-87 as if fully stated herein.


89.    Through the disclosure, sale and/or lease of the target marketing lists, products and other similar services described herein, defendants have furnished and continue to furnish consumer reports regarding Plaintiffs and members of the Plaintiff Classes to unaffiliated target marketers and other third party vendors.

**ANSWER:**   Trans Union denies the allegations of this paragraph.


90.    Defendants' disclosure of the foregoing consumer reports was and is not made for permissible purpose under the FCRA, 15 U.S.C. §1681b, and violates and/or violated the FCRA, 15 U.S.C. §1681 *et seq.,* including §1681b and §1681e(a).

**ANSWER:**   Trans Union denies the allegations of this paragraph.


91.    Defendants' disclosure of the foregoing consumer reports constitutes knowing and intentional acts in conscious disregard for the rights of Plaintiffs and members of the Plaintiff Classes under the FCRA, 15 U.S.C. §1681n. The Court should therefore award all appropriate relief as set forth in the Prayer For Relief.

**ANSWER:**   Trans Union denies the allegations of this paragraph.

SECOND CAUSE OF ACTION
(Negligent Noncompliance With The FCRA, 15 U.S.C. §§1681b, 1681o
By All Plaintiffs Against Trans Union and Acxiom)

92.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 91 as if the same were set forth herein.

**ANSWER:**    Trans Union repeats and realleges each and every response to paragraphs 1-91

as if fully stated herein.


93.     Through the disclosure, sale and/or lease of the target marketing lists, products and other similar services described herein, defendants have furnished and continue to furnish consumer reports regarding Plaintiffs and members of the Plaintiff Classes to unaffiliated target marketers and other third party vendors.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


94.     Defendants' disclosure of the foregoing consumer reports was and is not made for a permissible purpose under the FCRA, 15 U.S.C. §1681b, and violates and/or violated the FCRA, 15 U.S.C. §1681 *et seq.*, including §1681b and §1681e(a).

**ANSWER:**    Trans Union denies the allegations of this paragraph.


95.     Defendants' disclosure of the foregoing consumer reports constitutes a failure to use ordinary care and constitutes negligent noncompliance with the FCRA under 15 U.S.C. §1681o. The Court should therefore award all appropriate relief as set forth in the Prayer For Relief.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


THIRD CAUSE OF ACTION
(Invasion of Privacy and Misappropriation
By Plaintiffs Against Trans Union and Acxiom)

96.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 95 as if the same were set forth herein.  This cause of action is being asserted by Plaintiffs under the laws of the states in which Plaintiffs reside, and as separate state classes, as alleged herein.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.


97.   Plaintiffs and members of the Plaintiff Classes have a legally protected privacy interest in their private and confidential credit, financial and other personal information and a reasonable expectation of privacy in such information.  This right to privacy includes the right not to have someone else profit by the misappropriation and sale of such private and confidential financial information.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.


98.   As alleged herein, Trans Union and Acxiom made an unauthorized intrusion into Plaintiffs' seclusion by accessing, disclosing and selling the private financial credit, and other confidential information of Plaintiffs and members of the Plaintiff Classes without such persons' knowledge, authorization or consent.  This unauthorized disclosure and sale of such private facts and information is one that is highly offensive or objectionable to a reasonable person of ordinary sensibilities and has caused mental anguish and suffering as alleged herein.  Moreover, the disclosure of such private facts and information as alleged herein does not include information which is of a legitimate public concern.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.


99.   Trans Union and Acxiom violated the rights of privacy of Plaintiffs and members of the Plaintiff Classes by misappropriating and disclosing, selling and/or leasing their private and confidential financial and other information without their consent.  Each Plaintiffs' and Class members' name and private and confidential financial and other information have value, and defendants' unlawful use, disclosure and sale of that information, was made for their own benefit.  Trans Union and Acxiom derived millions of dollars of revenue through the unlawful misappropriation of Plaintiffs' names and private and confidential financial and other information.

**ANSWER:**    This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required. To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.

100.    As a result of the unlawful conduct as alleged herein, the privacy rights of
Plaintiffs and the Plaintiff Classes have been violated, and Plaintiffs and Class members have
been harmed as a result thereof.

**ANSWER:**    This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required. To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.

101.    As the unlawful conduct by Trans Union and Acxiom alleged herein was
intentional, fraudulent, oppressive and/or malicious, and Plaintiffs and members of the Plaintiff
Classes are entitled to exemplary damages, as well as all other appropriate relief as set forth in
the Prayer For Relief.

**ANSWER:**    This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required. To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.

### FOURTH CAUSE OF ACTION
(Unjust Enrichment By all Plaintiffs
Against Trans Union and Acxiom)

102.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1
through 101 as if the same were set forth herein. This cause of action is being asserted by
Plaintiffs under the laws of the states in which Plaintiffs reside, and as separate state classes, as
alleged herein.

**ANSWER:**    This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required. To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.

103.   Trans Union and Acxiom have been unjustly enriched by misappropriating and selling the private financial, credit and other confidential information of Plaintiffs and members of the Plaintiff Classes without each such person's knowledge, authorization or consent.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.


104.   By accessing, disclosing and selling Plaintiffs' and Class members' private and confidential financial information in violation of federal and state laws as alleged herein, Trans Union and Acxiom have been unjustly enriched to the detriment of Plaintiffs.  Defendants' retention on of these benefits, derived in violation of law, is unjust and contravenes the fundamental principles of justice, equity, and good conscience.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.


105.   Trans Union and Acxiom have capitalized on the unlawful sale and disclosure of private consumer credit and other information as alleged herein, and the benefits they have received are directly related to their exploitation of Plaintiffs' and Class members' privacy interests and rights.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.


106.   Plaintiffs and members of the Plaintiff Classes are entitled to restitution and/or disgorgement of all revenues Trans Union and Acxiom have received by selling, leasing or otherwise disclosing such private information as alleged herein, as well as all other appropriate relief as set forth in the Prayer For Relief.

**ANSWER:**   This paragraph relates to a cause of action that has been dismissed by the Court.

Therefore no answer is required.  To the extent that an answer is required, Trans Union denies

the allegations of this paragraph.

FIFTH CAUSE OF ACTION
(Willful Noncompliance With the FCRA, 15 U.S.C. §1681b(c)
By All Plaintiffs Against Trans Union and Acxiom)

107.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1
through 106 as if the same were set forth herein.

**ANSWER:**    Trans Union repeats and realleges each and every response to paragraphs 1-106

as if fully stated herein.


108.    Since October 1997, in connection with the sale, lease and/or disclosure of target
marketing lists used for firm offers of credit or insurance, Trans Union and Acxiom have
furnished information to unaffiliated third party vendors beyond that which is permitted by the
FCRA.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


109.    Through the sale, lease and/or disclosure of the telephone numbers and/or
private financial credit and/or other confidential information of Plaintiffs and members of the
Firm Offer Class, in Trans Union's Master File, target marketing lists, and similar products and
services that were used for firm offers of credit or insurance; Trans Union and Acxiom
willfully failed to comply with 15 U.S.C. §1681b(c).

**ANSWER:**    Trans Union denies the allegations of this paragraph.


110.    Trans Union's and Acxiom's disclosure of the foregoing information constitutes
knowing and intentional acts in conscious disregard for the rights of Plaintiffs and the members
of the Firm Offer Class under the FCRA, 15 U.S.C. §1681n. The Court should therefore award
all appropriate relief as set forth in the Prayer For Relief.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


SIXTH CAUSE OF ACTION
(Negligent Noncompliance With The FCRA, 15 U.S.C. §1681b(c)
By All Plaintiffs Against Trans Union and Acxiom)

111.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1
through 110 as if the same were set forth herein.

**ANSWER:**    Trans Union repeats and realleges each and every response to paragraphs 1-110

as if fully stated herein.

112.    Since October 1997, in connection with sale, lease and/or disclosure of target
marketing lists used for firm offers of credit or insurance, Trans Union and Acxiom have
furnished information to their unaffiliated third party vendors beyond that which is permitted
by the FCRA.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

113.    Through the sale lease and/or disclosure of the telephone numbers and/or private
financial, credit and/or other confidential information of Plaintiffs and members of the Firm
Offer Class, in Trans Union's Master File, target marketing lists, and similar products and
services, which were used for firm offers of credit or insurance, Trans Union and Acxiom have
negligently failed to comply with 15 U.S.C. §1681b(c).  The Court should therefore award all
appropriate relief as set forth in the Prayer For Relief.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

SEVENTH CAUSE OF ACTION
(Violation of Cal. Bus. & Prof. Code §17200 et seq.
By Martinelli, Stein and Wayne Against Trans Union,
and by Martinelli Against Acxiom)

114.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1
through 113 as if the same were set forth herein.

**ANSWER:**    Trans Union repeats and realleges each and every response to paragraphs 1-113

as if fully stated herein.

115.    By virtue of Trans Union's and Acxiom's violation of the FCRA and their
willful or negligent noncompliance with the FCRA, their invasion of Plaintiffs' privacy and the
other wrongful conduct alleged in this complaint, Trans Union and Acxiom have engaged in
unfair competition through the course of unlawful business acts and practices, unfair business
acts and practices and fraudulent business acts and practices, all in violation of California
Business & Professions Code §17200 et seq.

**ANSWER:**    Trans Union denies the allegations of this paragraph.

116.    Trans Union and Acxiom have been unjustly enriched as a result of the acts of unfair competition alleged herein.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


117.    Pursuant to California Business & Professions Code §§17203 and 17204, Plaintiffs Martinelli, Stein and Wayne are entitled to an order enjoining Trans Union and Acxiom from and further violations of Section 17200, and requiring them to disgorge all revenue derived from their acts of unfair competition as alleged herein to deter others from engaging in such unlawful conduct in the future.

**ANSWER:**    Trans Union denies the allegations of this paragraph.


## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Due Process)

The proposed restriction on Trans Union's distribution of target marketing lists and prescreening lists is a patently arbitrary classification, utterly lacking in rational justification and bearing no rational relationship to any legitimate governmental interest in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, the Due Process provision of the Fourteenth Amendment to the United States Constitution and the Due Process provision of Article I, Section 7 of the California Constitution.

### SECOND AFFIRMATIVE DEFENSE
(Unconstitutional Vagueness)

The interpretations of the FCRA and Section 17200 of the California Business and Professions Code upon which the Second Amended Consolidated Complaint is based are unconstitutionally vague and thus violate the Due Process Clause of the Fifth Amendment to the United States Constitution, the Due Process provision of the Fourteenth Amendment to the

United States Constitution, and the Due Process provision of Article I, Section 7 of the California Constitution.

### THIRD AFFIRMATIVE DEFENSE
(Vagueness Precluding Finding Of Maliciousness or Willfulness)

The vagueness of the FCRA and Section 17200 of the California Business and Professions Code with respect to Trans Union's practices put in issue by the Second Amended Consolidated Complaint preclude a finding that Trans Union's conduct was malicious or willful.

### FOURTH AFFIRMATIVE DEFENSE
(Consent)

The Second Amended Consolidated Complaint and each cause of action purportedly alleged therein are barred to the extent that Plaintiffs and/or the members of the class whom Plaintiffs purport to represent have not excluded their names from the distribution of target marketing lists and/or firm offer prescreening lists.

### FIFTH AFFIRMATIVE DEFENSE
(Statutes of Limitations)

The Second Amended Consolidated Complaint and each cause of action purportedly alleged therein are barred by the applicable statutes of limitations, including, without limitation, California Business & Professions Code § 17208, 15 U.S.C § 1681p and §§ 339(1) and 340 of the California Code of Civil Procedure.

### SIXTH AFFIRMATIVE DEFENSE
(Free Speech)

The interpretations of the FCRA and Section 17200 of the California Business and Professions Code upon which the Second Amended Complaint is based violate the Free Speech

Clause of the First Amendment to the United States Constitution and Article I, Section 2 of the California Constitution.

## SEVENTH AFFIRMATIVE DEFENSE
(Unconstitutional Overbreadth)

The interpretations of the FCRA and Section 17200 of the California Business and Professions Code upon which the Second Amended Complaint is based are unconstitutionally overbroad and thus violate the Due Process Clause of the Fifth Amendment to the United States Constitution, the Due Process provision of the Fourteenth Amendment to the United States Constitution, and the Due Process provision of Article I, Section 7 of the California Constitution.

## EIGHTH AFFIRMATIVE DEFENSE
(Violation of Due Process - Excessive Penalty)

Plaintiffs' demands for restitution and/or disgorgement are unconstitutional because they seek to impose a penalty that is excessive in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, the Due Process provision of the Fourteenth Amendment to the United States Constitution, and the Due Process provision of Article I, Section 7 of the California Constitution.

## NINTH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

Plaintiffs and/or the members of the putative class whom plaintiffs purport to represent have failed to mitigate their damages due to their failure to exclude their names from inclusion on target marketing lists and/or prescreened lists, and to the extent of such failure to mitigate, any relief awarded under the Second Amended Consolidated Complaint should be reduced accordingly.

## TENTH AFFIRMATIVE DEFENSE

(Waiver)

The Second Amended Consolidated Complaint and each cause of action purportedly alleged therein are barred by the acts and conduct of the plaintiffs and/or the members of the putative class whom plaintiffs purport to represent.

### ELEVENTH AFFIRMATIVE DEFENSE
(Common Interest Privilege, Cal. Civil Code § 47(c))

The Second Amended Consolidated Complaint and each cause of action purportedly alleged therein are barred by the common interest privilege, Cal. Civil Code § 47(c)).

### TWELFTH AFFIRMATIVE DEFENSE
(FCRA Preemption)

The Second Amended Consolidated Complaint and each cause of action purportedly alleged therein are barred by §§ 1681b(c) and 1681t of the FCRA.

### THIRTEENTH AFFIRMATIVE DEFENSE
(No Duplicative Recovery)

To the extent that any relief sought by plaintiffs would be duplicative of relief sought by other plaintiffs in other lawsuits, subjecting Trans Union to the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth Amendments to the United States Constitution, and by Article I, Sections 15 and 17 of the California Constitution.

### FOURTEENTH AFFIRMATIVE DEFENSE
(Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### FIFTEENTH AFFIRMATIVE DEFENSE
(Equal Protection)

The interpretations of the California Business & Professions Code § 17200 and the FCRA upon which the Second Amended Consolidated Complaint are based are unconstitutionally vague or overbroad in violation of Trans Union's rights guaranteed by the

Equal Protection provision of the Fourteenth Amendment to the United States Constitution and the Equal Protection provision of Article I, Section 7 of the California Constitution.

**SIXTEENTH AFFIRMATIVE DEFENSE**
(Cal. Civ. Code § 1785.32)

Each cause of action purportedly alleged in the Second Amended Consolidated Complaint based on California law is barred by Cal. Civ. Code § 1785.32 and judicial interpretations thereof which, *inter alia*, prohibit consumer actions in the nature of defamation, invasion of privacy or negligence against consumer reporting agencies.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
(Failure to State a Claim)

Plaintiffs' Second Amended Consolidated Complaint fails to state a claim on which relief can be granted.

WHEREFORE, Trans Union prays for judgment as follows:

1. That Plaintiffs take nothing by his Second Amended Consolidated Complaint;

2. That Trans Union be awarded all costs incurred herein;

3. That Trans Union be awarded attorneys' fees as allowed by law or contract; and

4. That the Court award such other and further relief as it deems just and proper.

Respectfully submitted,

**TRANS UNION LLC**

By: _Michael O'Neil_

One of its attorneys

Roger L. Longtin (ARDC #01689185)
Michael O'Neil (ARDC #06201736)
Peter J. Donoghue (ARDC #06206849)
PIPER RUDNICK LLP
203 North LaSalle Street, Suite 1800

Chicago, Illinois  60601-1293
(312) 368-4000 - Telephone
(312) 236-7516 – Facsimile

John H. Beisner
Brian P. Brooks
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
Tel: (202) 383-5300
Fax: (202) 383-5414

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **Answer To Second Amended Consolidated Complaint** has been served by First Class U.S. Mail, postage prepaid on this 27th day of July, 2004 on the following counsel:


Jon W. Borderud
PRONGAY & BORDERUD
11755 Wilshire Blvd. #2140
Los Angeles, CA 90025
Tel 310-202-2848
Fax 310-207-2748

Mr. Matthew Righetti
RIGHETTI & WYNNE
456 Montgomery Street
Suite 1400
San Francisco, California 94104

Mr. Frank Janecek, Jr.
LERACH, COUGHLIN, STOIA &,
   ROBBINS, LLP
401 B Street, Suite 1700
San Diego, California 92101


Ms. Amy Stewart
ROSE LAW FIRM
120 East Fourth Street
Little Rock, Arkansas 72201

Ms. Terry Rose Saunders
Law Offices of Terry Rose Saunders
33 N. Dearborn Street
Suite 1302
Chicago, Illinois 60602

Mr. Ross B. Bricker
JENNER & BLOCK
One IBM Plaza
47th Floor
Chicago, Illinois 60611

John H. Beisner
Brian P. Brooks
O'Melveny & Myers LLP
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 2004

_____
Michael O'Neil