

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE TRANS UNION CORP. PRIVACY LITIGATION, | ) ) No. 00 C 4729 <br> ) MDL Docket No. 1350 <br> ) <br> ) Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs[1] in this multi-district action, have brought a seven-count second amended consolidated putative class action complaint charging defendants Trans Union, LLC, Acxiom Corp., and MCI WorldCom Communications, Inc., and MCI WorldCom, Inc.,[2] with various violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. (Counts I, II, V and VI); state law claims for invasion of privacy and misappropriation (Count III); unjust enrichment (Count IV);and violation of the California Business and Professional Code § 17200 (the "UCL") (Count VII).[3] Plaintiffs have moved for certification of three classes: (A) a nationwide putative damage class for defendants' willful violations of the FCRA; (B) an Illinois class consisting of all Illinois consumers who had their telephone number or other personal information sold or otherwise disclosed to a third party in connection with a firm offer of credit

---

[1] The named plaintiffs in the underlying constituent actions are: Cynthia Albert, Jeffrey Beadle, Cecilia Comstock, Dawn DeRonde, David Feige, Megan Gogerty, Victoria Scott Kearley, Geri Mann, Marci Martinelli, Lawrence and Joan Palazzolo, Boris and Alla Rozenblitt, Randall J. Stein, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann and Nancy M. Woods.

[2] Because the MCI entities filed a notice of bankruptcy and an automatic stay was issued in 2002, the case has been stayed as to them pursuant to 11 U.S.C. § 362.

[3] The court granted defendants' motion to dismiss Counts III and IV. In re Trans Union Corp. Privacy Litigation, 326 F. Supp.2d 893 (N.D. Ill. 2004) (Trans Union II).

or insurance ("the Illinois Firm Offer Class"); and (C) a California class for defendants' violations of the UCL through the sale of target marketing lists. For the reasons set forth below, the motion is granted in part and denied in part.

## DISCUSSION[4]

Fed. R. Civ. P. 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These elements are a prerequisite to certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 14 International Teamster Health and Welfare Fund, 1999 WL 755051 at *2 (N.D. Ill. 1999) (and cases cited therein). Plaintiffs argue that all three proposed classes satisfy the requirements of Rule 23(b)(3), and that the UCL class also meets the requirements of Rule 23(b)(2).

Trans Union and Acxiom have each raised a number of different challenges to plaintiffs' motion, most of which focus on the adequacy of representation requirement of Rule 23(a)(4)[5],

---

[4] A detailed description of plaintiffs' allegations and the history of the Federal Trade Commission's ("FTC") enforcement proceedings against Trans Union, upon which plaintiffs' claims are based, can be found in this court's previous opinions, see In re Trans Union Corp. Privacy Litigation, 211 F.R.D. 328 (N.D. Ill. 2000) ("Trans Union I"); Trans Union II; and two District of Columbia Circuit Court opinions reviewing the FTC's enforcement decisions. Trans Union Corp. v. FTC, 81 F.3d 228 (D.C. Cir. 1996) ("FTC I"), and Trans Union Corp. v. The Federal Trade Commission, 245 F.3d 809 (D.C. Cir. 2001) ("FTC II").

[5] Neither defendant has raised any specific challenge to the numerosity, commonality, or typicality requirements of Rule 23(a) 1, 2 and 3.

2

and the requirements of Rule 23(b)(3), and all of which relate equally to all three proposed classes. Both defendants have also raised specific attacks on each of the three proposed classes.

Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Joncek, 1999 WL 755051 *6-7.

Each defendant raises different challenges to plaintiffs' ability to represent the proposed classes adequately. Acxiom argues that the individual plaintiffs do not "know and understand their rights and roles as to class representative." Acxiom points to a number of depositions of certain named plaintiffs in which they have indicated that they do not know what claims have been asserted, what classes have been proposed, and which classes they represent. This argument generally carries little weight when assessing adequacy of representation. "[T]he class representative's role is limited. It was found not to be enough to defeat class certification in Surowitz v. Hilton Hotels Corps., 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, 657 F.2d 890, 896 (7th Cir. 1991). Acxiom argues, however, that when coupled with the fact that there is what it terms a "questionable relationship between many of the class attorneys

3

and the named plaintiffs," this lack of knowledge verifies that "plaintiffs' counsel had manufactured this lawsuit and are controlling it to a prohibitive degree."

The court disagrees. The fact that plaintiff Turner's son is a lawyer and informed her of a potential claim does not mean that she can not be a proper plaintiff. The whole point of the class action mechanism is that very often potential plaintiffs are unaware of their claims. Additionally, the fact that plaintiff Wayne is a class representative in four lawsuits brought by his counsel does not, by itself, establish that he is an improper representative. Plaintiff Wayne has sufficient, albeit limited, knowledge of the case, and defendants have produced no evidence to suggest that his participation in other suits creates a conflict for him in the instant action.

Moreover, as noted, under Rule 23(a)(4) the class representative's knowledge is not generally the proper focus. Instead, the court should focus on the competency of plaintiffs' counsel and any conflicts between the named class representatives and other class members. See Heastie v. County Bank of Greater Peoria, 125 F.R.D. 669, 676 (N.D. Ill. 1989). There is no question that the plaintiffs' attorneys are all very experienced class action litigators who have vigorously pursued this litigation.[6] As to Acxiom's argument that "plaintiffs' counsel . . . manufactured this lawsuit," Acxiom forgets that the genesis of this case was the FTC's successful enforcement action, hardly a matter conjured up by opportunistic lawyers.

Acxiom also argues that representation of the class is inadequate because some plaintiffs would be subject to individualized defenses. In particular, Acxiom challenges plaintiff Gogerty,

---

[6]Acxiom does suggest that class counsel is not adequate because they have not shown that they can bear the expense of notification to all identifiable class members. Acxiom has cited no case to suggest that this is a basis on which to deny class certification. In any event, the argument is premature. The court has not yet determined the manner or method of notice to be provided.

arguing that she cannot represent the Illinois Firm Offer Class because she is not currently a resident of Illinois and was an Illinois resident for less than three of the eight years in question. Even if Acxiom is correct, there are a number of other Illinois plaintiffs qualified to represent the Illinois Firm Offer Class. Thus, denial of class certification on this ground would be inappropriate.

Trans Union's attack on plaintiffs' ability to represent the proposed classes adequately takes a somewhat different tack. Trans Union argues that the named plaintiffs damaged the class by deciding to pursue only FCRA statutory damage claims for Illinois residents in connection with firm offers of credit, thereby waiving all other FCRA claims for other putative class members. Trans Union argues that plaintiffs allege that it willfully violated the FCRA by disclosing certain consumer information in target marketing lists. The Act provides for statutory damages of not less than $100 and not greater than $1,000 per violation. 15 U.S.C. § 1681n. Yet, according to Trans Union, plaintiffs seek such statutory damages only on behalf of certain Illinois residents, and not on behalf of the other 178 million people they purport to represent. Thus, Trans Union argues that if plaintiffs' target marketing claims go to trial, Illinois residents can recover statutory damages of between $100 and $1,000 per violation plus their share of punitive damages, while residents of all other jurisdictions will be eligible only for their share of any punitive award. Additionally, Trans Union argues that if the class is certified and the case tried, individuals who reside outside of Illinois would not have a second chance to seek statutory damages under the FCRA because of the prohibition against claim splitting.

This argument is faulty on a number of levels. First, contrary to Trans Union's assertions, plaintiffs do not seek to certify a class on behalf of all Illinois consumers for statutory damages as

5

a result of Trans Union's sale of target marketing lists. The Illinois class seeks statutory damages for consumers whose telephone numbers or other personal information was sold to third parties in connection with a firm offer of credit. This is a much smaller class than that described by Trans Union in its argument, and Trans Union makes no effort to demonstrate how certification of that class could prevent claims by consumers from other jurisdictions whom plaintiffs do not seek to represent.

Moreover, and perhaps more importantly, Trans Union's argument seeks to put plaintiffs into a "Catch-22" situation. In Trans Union I, Trans Union argued against certification of a nationwide statutory damage class because such a class action was not the superior method for the fair and efficient adjudication of the controversy. The argument was based in large part on the enormity of the putative FCRA class - - approximately 190 million people. The court agreed with Trans Union, holding that the potential for damages, which were grossly disproportionate to any actual harm, made a class action an inferior method to adjudicate the FCRA claims. Trans Union I, 211 F.R.D. at 351. Having defeated plaintiffs' efforts to represent all those allegedly injured nationwide, Trans Union's suggestion that by seeking to represent a smaller class plaintiffs have now sold out the "rights of most putative class members" to "advance the interest of no one other than plaintiffs' counsel" is disingenuous. Plaintiffs have not waived any claims; they have attempted to bring claims not prohibited by the court's earlier ruling. Accordingly, the court rejects Trans Union's argument that plaintiffs are inadequate class representatives.

Rule 23(b)(3)

Trans Union also argues that "plaintiffs' federal claims turn predominately on facts and standards that are inescapably individualized." Although not styled as such, Trans Union appears

6

to be arguing that plaintiffs cannot satisfy Rule 23(b)(3), which requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Trans Union's main argument is that it sold "so many different information products" during the period in question that individual fact issues as to each product would necessarily predominate.

As it has throughout this litigation, Trans Union takes a myopic view of the FTC proceeding generally and the 2001 District of Columbia Circuit Court opinion in particular. In 1994 the FTC summarily held that Trans Union's target marketing lists were consumer reports, and that target marketing is not an authorized use of consumer reports under § 1681b. The FTC ordered Trans Union to stop selling target marketing lists. In FTC I, 81 F.3d 228 (D.C. Cir. 1996), the court agreed that selling consumer reports for target marketing violates the Act, and remanded for further evidentiary hearings on the FTC's finding that because the mere "existence of a tradeline" was used for credit-granting decisions, any list based on the existence of a tradeline constitutes a consumer report. FTC II, 245 F.3d at 813. On remand, after extensive discovery and a lengthy trial, the FTC again found that Trans Union's target marketing lists contained information that credit grantors use as factors in granting credit and concluded that the lists are credit reports that could not be sold for target marketing purposes. On appeal, the D.C. Circuit affirmed the FTC's decision that the mere existence of a tradeline is a factor in credit granting decisions. Id. at 814.

In the instance case, despite voluminous briefing, Trans Union has not identified a single product (list) that was not created from its List Master File. To be included in that List Master

7

File, from which all target marketing lists are created, the consumer must have a tradeline. Thus, the recipient of any Trans Union list is informed that every person on that list had credit activity. Therefore, every target marketing list constitutes a credit report and cannot be sold for target marketing purposes. Contrary to Trans Union's assertions, therefore, individual issues would not predominate because there is no need to examine every product sold to determine if it was a consumer report.

Of course, the fact that individual issues do not predominate does not mean that certification under Rule 23(b)(3) is automatic. A class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. With respect to the proposed nationwide punitive damage class the court agrees with Trans Unions that class treatment is not the superior method. In Trans Union I, this court rejected plaintiffs' request for a nationwide statutory damage class, based in part on the enormity of the class, the potential for catastrophic damages and the balanced statutory scheme that provides for regulation and enforcement by the FTC. Those same concerns militate against certification of a nationwide punitive damage class.

Additionally, certification of a nationwide class for punitive damages only, with no class claim for actual damages, would emasculate the court's previous ruling and the statutory scheme upon which it was based. One reason the court concluded that individual rather than class actions are the superior method for seeking damages, statutory or actual, is that both punitive damages and attorneys fees are available in those individual actions. It is the availability of both punitive damages and attorney fees that provides the incentive for individuals with relatively minor or no actual damages to bring suit. If the court were to certify the proposed punitive damage class, a

large incentive for bringing individualized damage actions would be lost to every member of the nationwide class, which is comprised of anyone injured by defendants' activities. Disconnecting the availability of punitive damages from individual claims for actual or statutory damages would thus cripple the statutory scheme designed by Congress to achieve compliance with the Act. Accordingly, the court concludes that a nationwide punitive damage class is not the superior method for the fair and efficient adjudication of the controversy and denies certification of that class.

The same analysis does not hold true with respect to the Illinois Firm Offer Statutory Damage Class. Although plaintiff has not attempted to quantify the number of persons in that proposed class, it is unquestionably large enough to satisfy the numerosity requirement of Fed. R. Civ. 23(a)(1). It is not necessarily so large, however, as to create the problems inherent to a nationwide class. Trans Union suggests that the proposed Illinois Class must consist of 8,170,000 people, resulting in a potential minimum statutory damage of $817 million. It reaches this conclusion, however, by taking 4.3% (Illinois' percentage of the total U.S. population) of the potential 190 million nationwide class members. This argument is unavailing, because the proposed Illinois class includes only those consumers whose telephone numbers or other personal information was improperly sold in connection with a firm offer of credit or insurance. This is but a small subset of the original proposed nationwide class, consisting of every consumer whose name appeared in any target marketing list. Because the proposed Illinois class is much more limited in scope, the court concludes that a class action is the superior method to adjudicate the claim. Accordingly, the court grants the motion to certify the Illinois Firm Offer Class.

The final proposed class is defined as all consumers residing in California from January 28, 1995, to the present, who are listed in Trans Union's list master file and, based on information in defendants' data bases, had or may have had their names, addresses or credit information sold or otherwise disclosed to third parties through defendants' target marketing lists or similar products or services. The proposed class seeks damages for violations of the California UCL. As Trans Union notes, a virtually identical proposed class was denied certification by a California state court because the plaintiffs could pursue a representative action for unfair competition without satisfying class certification requirements. Frey v. Trans Union Corp., Cal. Supp. Ct. No. 798893 (January 6, 2003). That order was subsequently reversed by the California Appellate Court, based on an application of recently enacted Proposition 64, which repealed the right under the UCL to bring a representative action without meeting class certification requirements. Frey v. Trans Union Corp., G031928 (Cal. Ct. App. March 24, 2005). That court reversed the denial of class certification and remanded the case to the trial court for determination of whether the proposed class could meet the certification requirements. Whether the requirements of Proposition 64 can be applied retroactively, as the Frey court did, is an issue that has divided the California appellate courts. See Foundation Aiding Elderly v. Superior Court, No. A109442, 2005 WL 752739, *2 (2005). Whether Proposition 64 should be applied retroactively, and whether a class can be certified under the UCL if it can, are issues unique to California law and are currently being decided by the California court involving essentially the same parties and the same issues. Therefore, principles of comity direct this court to stay decision on certification of plaintiffs' proposed UCL class until the California courts have fully

addressed the issue in the Frey litigation. See e.g. Interstate Material Corp v. City of Chicago, 847 F2d. 1285 (7th Cir. 1988).

## CONCLUSION

For the reason set forth above, plaintiffs' motion for class certification is denied as to Proposed Class A, (the Punitive Damage Class), granted as to Proposed Class B (Illinois Firm Offer Class), and stayed as to Proposed Class C. The Illinois Firm Offer class is defined as:

> All consumers (as defined in 15 U.S.C. § 1681a(c) residing in the State of Illinois, from September 30, 1997 to the present, who were (i) listed in Trans Unions' List Master File, and (ii) based on information contained in defendants' databases had their telephone number or other personal information sold or otherwise disclosed to a third-party in connection with a firm offer of credit or insurance.

This matter is set for a report on status for September 6, 2005, at 1:30 p.m. Counsel for plaintiffs in Morse v. Trans Union No. 04-3336 (E.D. La.) is directed to be present to discuss the pending motion with respect to that case.

**ENTER:** **August 17, 2005**

*[signature]*

Robert W. Gettleman
United States District Judge