## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**In Re TRANS UNION CORP.**
**PRIVACY LITIGATION**

---

**THIS DOCUMENT RELATES TO:**

**NO. 05-cv-00831**

**Lead Case No. 00 cv 4729**
**MDL Docket No. 1350**
**Judge Robert Gettleman**

---

**Yvonne Morse v. Trans Union, LLC**
**and**
**Alec Sharp, Individually and as Representative**
**of Certain Underwriters at Lloyd's London,**
**Federal Insurance Company (UK), LTD,**
**Assicurazioni Generali S.P.A. GE Frankona**
**Reinsurance LTD, All Subscribing to**
**Policy No. QA990006**

---

Defendants Alec Sharp, et al. ("Underwriters") for their Answer and Affirmative

Defenses, respond below to the following allegations made in the First Amended Class Action

Complaint:

### DEFENDANTS' ANSWER

1.     No Answer or other responsive pleading has been filed by Trans Union to plaintiff's Complaint. Plaintiff submits this First Amended Complaint under the provisions of Fed. R. Civ. P. 15(a).

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 1.

2.     This First Amended Complaint is brought to assert additional claims under the Louisiana Direct Action Statute, La.R.S. 22:655B(1), against the above-named Underwriters of a policy of liability insurance. Trans Union has made claim for coverage of its liability to plaintiffs in this action under said Policy Number QA9900096, which has limits in the amount of $75,000,000 (Seventy-five million dollars). Plaintiff only recently became aware of the

335282.1

existence of this insurance policy, because in a Louisiana state law class action entitled *Andrews v. Trans Union,* Trans Union denied in response to an interrogatory and request for production that any policy of insurance provided liability coverage to Trans Union for claims arising from Trans Union's target marketing activities.

**RESPONSE:** Underwriters admit that they issued Professional Liability Insurance

Policy Number QA9900096 to Trans Union, with a limit of liability in the amount of $75

million, Period of Insurance from June 16, 1999 to June 16, 2002. Underwriters deny that Trans

Union has made a claim for coverage of its liability, if any, to plaintiffs in this action under the

Policy. Underwriters further deny knowledge and information sufficient to form a belief as to

the truth of the remaining allegations contained in Paragraph 2.

## JURISDICTION AND VENUE

3.     This Honorable Court has jurisdiction in this action pursuant to 28 U.S.C. 1331 (federal question) in that this action is brought under the provisions of 15 U.S.C. 1681, *et. seq.* (the Fair Credit Reporting Act). This Court has supplemental jurisdiction over state law claims asserted herein under the provision of 28 U.S.C. 1367 because those claims involve the same nucleus of operative facts as the federal claims brought herein.

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 3.

## PARTIES

4.     Plaintiff, Yvonne Morse, is a person of the age of majority and a resident of the Eastern District of Louisiana. Plaintiff, Robert Morse, is a person of the age of majority and a resident of the Eastern District of Louisiana. Plaintiffs bring this action on behalf of themselves and those similarly situated, whose confidential consumer credit information has been sold, leased and/or improperly disclosed by defendant, Trans Union, LLC, and by its subsidiaries and co-conspirators, in the form of target marketing lists, in violation of the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.*, and in particular, § 1681b.

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 4.

5.    Defendant, Trans Union, LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Trans Union LLC is authorized to do and doing business in the Eastern District of Louisiana.

**RESPONSE:**  Underwriters admit that Trans Union is a Delaware limited liability

company with its principal place of business in Chicago, Illinois, but deny knowledge and

information sufficient to form the belief as to the remaining allegations contained in Paragraph 5.

6.    Defendants, Alec Sharp, Individually and its Representative of Certain Underwriters at Lloyd's London; Federal Insurance Company (UK), LTD., Assicurazioni Generali S.P.A., GE Frankona Reinsurance, Ltd. are underwriters, all subscribing to a certain policy of liability insurance Number QA9900096, which provides professional liability coverage to defendant, Trans Union, for claims asserted by plaintiffs in this action.

**RESPONSE:**  Underwriters admit they issued Policy Number QA9900096 to Trans

Union, but deny that the Policy provides coverage to Trans Union or plaintiffs for claims

asserted in this action.

## FACTUAL ALLEGATIONS

7.    Defendant, Trans Union, LLC ("Trans Union") is a consumer reporting agency (also known as "credit bureau") as defined by the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA").

**RESPONSE:**  Underwriters admit the allegations contained in Paragraph 7.

8.    Since 1990, and before that time, Trans Union has been engaged in the sale, lease and/or unlawful distribution of consumers' private financial, credit, and other confidential information in the form of target marketing lists ("Lists"), which are compilations of consumer reports as defined by the FCRA and the Federal Trade Commission ("FTC").  Trans Union has sold, leased and/or distributed the Lists containing the names and other information of plaintiff and all putative class members to persons who have no permissible purpose to obtain consumer reports, in violation of § 1681b of the FCRA.  Trans Union violated the provisions of § 1681e(a) of the FCRA by failing to maintain reasonable procedures to prevent the furnishing of consumer reports except for purposes permissible under § 1681b of the FCRA by distributing the above described lists to persons who have no permissible purpose to obtain consumer reports.

**RESPONSE:**  Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 8.

9.    The Lists that are the subject of this complaint are derived from Trans Union's credit reporting database, called "CRONUS." In 1990, the FTC notified the three major credit reporting agencies, including Trans Union, that their sale of target marketing lists derived from credit reporting databases was in violation of the FCRA. While the two other major credit reporting agencies complied with the FTC's "cease and desist" order, defendant, Trans Union, refused to do so. Subsequent to the FTC's order in 1990, Trans Union earned approximately $40 million dollars annually from the unlawful distribution of consumers' confidential financial information in the Lists. It was these profits, and the fact that the FTC had no power, at the time of its initial order, to seek a monetary penalty, that motivated Trans Union's blatant disregard for the law and the rights of consumers.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 9.

10.    Plaintiffs, and all putative class members, are persons whose names were included in defendant, Trans Union's Master File, which is used to compile the complained-of target marketing lists. The Master File is compiled by applying certain criteria to the consumer reporting information contained in Trans Union's CRONUS database of consumer credit files. Trans Union's target marketing lists are compiled by selecting and applying certain criteria to the Master File, or by matching social security numbers, credit card numbers, or other personal identifiers to the names contained in the Master File. Plaintiffs and each putative class member had his or her private financial, credit or other confidential information unlawfully disclosed by Trans Union, in to third parties, in a target marketing list, or similar product or service, without their authorization or consent, in violation of the FCRA, and in particular, §1681b and §1681e(a) of that statute.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 10.

11.    Where Trans Union contracted with others to sell, lease and/or distribute its unlawful target marketing lists, Trans Union always kept title to the consumer credit data in its CRONUS database. Therefore, Trans Union was always liable under the FCRA for the unlawful disclosures of consumer credit information contained in its database, even where others effectuated the disclosures.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 11.

12.    In connection with information regarding consumers' right to opt-out of target marketing lists, defendant, Trans Union, did not at any time disclose to the consumers that its Lists included information from its consumer credit reporting database that was protected from disclosure under the provisions of the FCRA. Thus, even if Trans Union advised consumers of

335282.1

their right to opt-out of marketing lists, Trans Union failed to disclose to consumers the information necessary for them to make an informed decision to do so.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 12.

    13.    Plaintiffs seek statutory, actual and punitive damages under §1681n and §1681o of the FCRA for a class of approximately 4.5 million Louisiana residents, as well as attorney's fees and expenses of litigation under the provisions of those statutes.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 13.

## FED. R. CIV. P. 23 ALLEGATIONS

    14.    Plaintiffs bring this action individually and on behalf of all other similarly situated Louisiana residents whose consumer credit information was disclosed by Trans Union by way of target marketing lists.    Specifically excluded are all persons whose information was disclosed *only* in List products permissible under the FCRA, and not in any impermissible list product. Also excluded are the judges to whom this case is assigned and their immediate families, and all employees, owners, representatives, officers, directors, attorneys, and other persons related to or affiliated with the defendant, Trans Union LLC; and counsel for the plaintiffs.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 14.

    15.    All proposed class members of this class, which is geographically limited to current residents of Louisiana, seek relief under the same legal and remedial theories, under the provisions of 15 U.S.C. 1681n and 1681o, as set forth hereinabove, so that the claims of the representative plaintiffs are typical of the claims of all proposed class members.

    **RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 15.

    16.    The questions of law and fact set forth above are common to all class members. Common issues include, but are not limited to:

        Whether Trans Union violated the provisions of §1681b of the FCRA by disclosing information from the CRONUS credit reporting database in target marketing lists;

335282.1

Whether Trans Union violated the provisions of §1681e(a) of the FCRA by disclosing information from the CRONUS credit reporting database in target marketing lists;

Whether plaintiffs are entitled to statutory damages as a result of Trans Union's violations, under §1681n of the FCRA;

Whether plaintiffs are entitled to punitive damages as a result of Trans Union's violations, under §1681 of the FCRA;

Whether plaintiffs are entitled to attorney's fees and expenses under the provisions of §§1681n and 1681o of the FCRA;

Whether plaintiffs are entitled to equitable disgorgement of Trans Union's revenues derived from the unlawful conduct complained of herein;

Whether disgorgement of unlawful revenues is an adequate measure of actual damages under the provisions of the FCRA.

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.

17.    The proposed class numbers more than one hundred persons, widely dispersed, so that joinder is impractical.

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18.    The representative plaintiffs have no conflicts which would prevent their adequate representation of all class members.  Proposed class counsel is experienced in class action and consumer law matters, having served as lead counsel in three certified class actions brought under the FCRA, and in more than ten class action or putative class action matters in the Eastern District of Louisiana.  Class counsel has no conflicts which would prevent her adequate representation of all class members.

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18.

19.    The claims against defendant, Trans Union LLC in this action should be maintained as a class action pursuant to Fed. R. Civ. Proc. 23(b)(3), because common issues, as set forth hereinabove, predominate over any individual issues, and because class action is superior to other methods available for resolution of this controversy.

335282.1

**RESPONSE:** Underwriters deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.

20.    The claims in this action under the Louisiana Direct Action Statute (La. R. S. 22:655) against the insurance underwriters should be maintained as a class action under the provisions of Fed. R. Civ. P. 23(b)(1)(B), because the insurance proceeds are a "limited fund" and adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests by depleting the limited fund of insurance proceeds available to pay claims.

**RESPONSE:**  Underwriters deny the allegations contained in Paragraph 20.

21.    Class action is superior to other methods available for resolving this controversy, because repetitive litigation of identical issues as presented here would waste the resources of the courts and the parties; the individual stakes are small when compared with the costs of the litigation; the class members are widely dispersed, and are unlikely to bring individual actions, which would be costly, to protect their interests; and this class action is superior to the repeated production and evaluation of identical evidence which would attend litigation of the individual claims, including waste of expert and attorney labor, and the waste of the resources of the courts; finally, to leave plaintiffs' complaint unaddressed, and allow Trans Union to keep its unlawful profits, would encourage wrongdoing on the part of consumer reporting agencies and all defendants, to the public's detriment and in contravention of the policies of the Fair Credit Reporting Act.

**RESPONSE:**  Underwriters deny the allegations contained in Paragraph 21.

22.    Plaintiffs are entitled to and request a trial by jury.

**RESPONSE:**  Underwriters assert that no answer is required.  To the extent a response is required, Underwriters deny the allegations contained in Paragraph 22.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against Underwriters upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Complaint is barred by the applicable statute of limitations and of the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims for relief asserted in the Complaint are barred by the doctrines of waiver and/or estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any coverage under the Policy pursuant to Louisiana's Direct Action Statute.

## FIFTH AFFIRMATIVE DEFENSE

Trans Union has never given notice under the Policy of the *Morse* action, and therefore is not entitled to coverage for *Morse* pursuant to the express terms and conditions of the Policy. To the extent Trans Union is not entitled to coverage, the *Morse* putative class is not entitled to coverage under the Policy.

## SIXTH AFFIRMATIVE DEFENSE

Trans Union has never sought coverage under the Policy for the *Morse* action and therefore the *Morse* plaintiffs are not entitled to coverage under the Policy.

## SEVENTH AFFIRMATIVE DEFENSE

Underwriters did not breach any contractual, general or other duty to plaintiffs or Trans Union, including, but not limited to the implied covenant of good faith and fair dealing.

335282.1

### EIGHTH AFFIRMATIVE DEFENSE

The *Morse* complaint was first filed in December 2004, two and one-half years after the Policy expired on  June 16, 2002.  Accordingly, the *Morse* action is not a Claim "first made" during the period of insurance as required under the Policy.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' complaint, and each and every claim for relief therein, is barred and precluded, unlimited and whole in part by the provisions, terms, exclusions, definitions, rotations and conditions of the Policy.

### TENTH AFFIRMATIVE DEFENSE

Coverage under the Policy is barred to the extent that not all conditions precedent and subsequent to the triggering of liability of coverage have been fulfilled.

### ELEVENTH AFFIRMATIVE DEFENSE

Coverage under the Policy is barred to the extent that the alleged losses were not fortuitous.

### TWELFTH AFFIRMATIVE DEFENSE

Coverage under the Policy is barred to the extent that the alleged losses were known to Trans Union at the time the Policy was procured.

### THIRTEENTH AFFIRMATIVE DEFENSE

Coverage under the Policy is barred to the extent Trans Union's General Counsel was aware of the facts and circumstances alleged in the *Morse* complaint prior to the Policy's inception and knew such facts and circumstances might give rise to a claim under the Policy. See Exclusion (g).

### FOURTEENTH AFFIRMATIVE DEFENSE

To the extent the *Morse* complaint is not deemed to have been first made when it was first filed in December 2004, but rather relates back to any prior related actions, the *Morse* complaint must be deemed first made prior to the Policy's inception because it arises out of the same, continuing or related Professional Services that were the subject of litigation prior to the Policy's inception.

### FIFTEENTH AFFIRMATIVE DEFENSE

The Policy does not afford coverage for any damages that constitute disgorgement or restitution.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are precluded due to a pending settlement in the action into which *the Morse* complaint has been consolidated.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Underwriters further reserve their right to assert additional affirmative defenses which may become apparent upon further investigation, discovery, examination or cross-examination.

WHEREFORE, Underwriters request that this Court enter judgment in favor of Underwriters and against Plaintiffs, and that this Court award to Underwriters such further relief as this Court deems just and equitable, including but not limited to, an award to Underwriters of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §1132(g)(1).

Respectfully submitted,

Alec Sharp, et al.

By: _____

One of Their Attorneys

335282.1

David M. Holmes
Stefan R. Dandelles
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
120 N. LaSalle Street
Suite 2600
Chicago, IL 60602
Telephone:  (312) 704-0550
Facsimile:   (312) 704-1522

335282.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Defendants' Answer** was delivered to all counsel of record listed below by U.S. regular mail, on this the 19th day of July, 2006.

Terry Rose Saunders
Tom Doyle
SAUNDERS & DOYLE
33 N. Dearborn Street, Suite 1302
Chicago, IL 60602

Mr. Jon W. Borderud
PRONGAY & BORDERUD
12121 Wilshire Blvd., Suite 400
Los Angeles, CA 90025

Mr. Frank Janecek, Jr.
MILBERG, WEISS, BERSHAD,
HYNES & LERACH, LLP
401 B Street, Suite 1700
San Diego, CA 92101

Ms. Dawn Adams Wheelahan
540 Poydras Street, Suite 1550
New Orleans, LA 70130

Mr. Ross B. Bricker
JENNER & BLOCK
One IBM Plaza, 47th Floor
Chicago, IL 60611

Mr. Matthew Righetti
RIGHETTI & WYNNE
456 Montgomery Street, Suite 1400
San Francisco, CA 94104

Ms. Amy Stewart
ROSE & LAW FIRM
120 East Fourth Street
Little Rock, Arkansas 72201

Stefan R. Dandelles
*One of the Attorneys for Underwriters*

David M. Holmes
Stefan R. Dandelles
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
120 N. LaSalle Street, Suite 2600
Chicago, Illinois 60602
(312) 704-0550
Fax: (312) 704-1522

335282.1