# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) ) ) | Lead Case No. 00CV4729 |
| | ) | MDL Docket No. 1350 |
| This Document Relates To: | ) ) ) | Judge Robert W. Gettleman |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Michael T. Mason |

**STIPULATION OF SETTLEMENT**

## TABLE OF CONTENTS

                                                                                    Page

I.      THE ACTIONS ................................................................................................1

II.     DEFENDANTS DENY ANY WRONGDOING OR LIABILITY .....................................2

III.    BENEFITS OF SETTLING THE ACTIONS ...............................................................3

IV.     TERMS OF THE SETTLEMENT ..........................................................................3

        1.      Definitions ..........................................................................................4

        2.      Terms of the Settlement .......................................................................9

        3.      Preliminary Approval Order and Settlement Hearing ...........................25

        4.      Application for Reimbursement of Attorneys' Fees and Costs .............25

        5.      Effect of Disapproval, Cancellation or Termination ............................26

        6.      Miscellaneous Provisions ...................................................................28

This Stipulation of Settlement dated as of October 5, 2006 (hereinafter "Stipulation"), is made and entered into by and among the following Settling Parties to the Actions, as those terms are defined herein:[1] (i) Settlement Class Representative Plaintiffs, on behalf of themselves and each of the Settlement Class Members, by and through Settlement Class Counsel; and (ii) the Defendants, by and through their counsel of record in the Actions. This Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all released claims, as set forth below, subject to the terms and conditions set forth herein.

## I.     THE ACTIONS

The following cases were filed by consumers in various U.S. District Courts and were subsequently transferred to the United States District Court for the Northern District of Illinois for all pretrial purposes pursuant to transfer orders from the Judicial Panel on Multidistrict Litigation ("MDL Cases"):

### IN RE TRANS UNION CORPORATION PRIVACY LITIGATION
### MDL 1350, MASTER CASE NO. 00-CV-4729

|     | Abbreviated Case Name | N.D. Ill Case Number | Filed In/Transferred From |
|-----|------------------------|-----------------------|----------------------------|
| (a) | *Gogerty v. Trans Union* | 00-CV-1665 | N.D. Illinois |
| (b) | *Payne v. Trans Union* | 00-CV-3292 | N.D. Illinois |
| (c) | *Comstock v. Trans Union* | 00-CV-4730 | D. Arizona |
| (d) | *Martinelli v. Trans Union* | 00-CV-4731 | N.D. California |
| (e) | *Turner v. Trans Union* | 00-CV-4732 | S.D. Illinois |
| (f) | *Woods v. Trans Union* | 00-CV-4733 | S.D. Illinois |
| (g) | *Winkelmann v. Trans Union* | 00-CV-4734 | D. Nebraska |

---

[1]     As used in this Stipulation, capitalized terms shall have the meanings and definitions set forth in Section IV hereof.

| | Abbreviated Case Name | N.D. Ill Case Number | Filed In/Transferred From |
|---|---|---|---|
| (h) | *Feige v. Trans Union* | 00-CV-4735 | S.D. New York |
| (i) | *Rozenblitt v. Trans Union* | 00-CV-4736 | E.D. Pennsylvania |
| (j) | *Kearley v. Trans Union* | 00-CV-5468 | M.D. Alabama |
| (k) | *Wayne v. Trans Union* | 00-CV-5682 | C.D. California |
| (l) | *Stein v. Trans Union* | 00-CV-7780 00-CV-8096 | S.D. California |
| (m) | *Morse v. Trans Union* | 05-CV-831 | E.D. Louisiana |
| (n) | *Jowers v. Trans Union* | 06-CV-3074 | E.D. Texas |

The MDL Cases have all been consolidated for all pretrial purposes by and through the Final Order of Consolidation and Pretrial Order No. 1, entered by the Court on November 28, 2000.

In addition to the MDL Cases, a case was filed in the Superior Court of California, County of Orange on or about August 31, 1998, entitled *Frey v. Trans Union, et al.*, Case No. 798893 ("Frey Action").

## II.    DEFENDANTS DENY ANY WRONGDOING OR LIABILITY

Defendants have denied, and continue to deny, each and every claim and allegation of wrongdoing that has been alleged by Plaintiffs in the Actions. Defendants also have denied, and continue to deny, *inter alia*, any and all allegations that Plaintiffs or Settlement Class Members have suffered any damage whatsoever, have been harmed in any way, or are entitled to any relief as a result of any conduct on the part of Defendants, or either of them, as alleged by Plaintiffs in the Actions.

Nevertheless, Defendants have concluded that further litigation will entail risks, will likely be protracted and expensive with uncertain results, that settlement of the Actions is therefore advisable to permit the operation of the Defendants' businesses without further litigation expenses and the distraction of executive personnel, and that it is therefore desirable and prudent that the Actions

between Plaintiffs, Settlement Class Members, and Defendants be fully and finally resolved and settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III. BENEFITS OF SETTLING THE ACTIONS

Settlement Class Representative Plaintiffs believe that the claims asserted by Plaintiffs in the Actions have merit and that there is evidence to support their claims. Settlement Class Representative Plaintiffs, however, recognize and acknowledge the expense and length of continued litigation and legal proceedings necessary to prosecute the Actions against Defendants through trial and through any appeals. Settlement Class Representative Plaintiffs also recognize and have taken into account the uncertain outcome and risks associated with litigation in general, and the Actions in particular, as well as the difficulties and delays inherent in any such litigation. Settlement Class Representative Plaintiffs are also mindful of the potential problems of proof and the possible defenses to the unlawful conduct alleged by Plaintiffs in the Actions, as well as the remedies they seek. As a result, Settlement Class Representative Plaintiffs believe that the Settlement set forth in this Stipulation provides substantial benefits to Settlement Class Members, secures certain procedural rights for Settlement Class Members, and retains important individual rights for Settlement Class Members. Settlement Class Representative Plaintiffs and Settlement Class Counsel have therefore determined that the Settlement, as set forth in this Stipulation, is fair, reasonable, adequate and in the best interests of the Plaintiff Settlement Class.

## IV. TERMS OF THE SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED to, by and among the Settlement Class Representative Plaintiffs (for themselves, Plaintiffs, and all Settlement Class Members) and the Defendants, for themselves, by and through their respective counsel of record, that the Actions shall be finally and fully compromised, settled and released, the Actions shall be dismissed with prejudice as to all Settling Parties, and the claims of Settling Parties shall be released,

subject to the terms and conditions of this Stipulation, and subject to the Judgment approving the Stipulation becoming "Final" as defined herein.

### 1. Definitions

As used in this Stipulation, the following terms shall have the following definitions and meanings:

1.1    "Actions" means the MDL Actions and the Frey Action, as defined herein.

1.2    "Actual Damage Claim" means a claim made by a Settlement Class Member for actual damages pursuant to ¶2.4 herein.

1.3    "Acxiom" means defendant Acxiom Corporation.

1.4    "Authorized Claimant" means any Claimant whose proof of claim as referenced in ¶1.5 herein is allowed pursuant to the terms of the Stipulation.

1.5    "Claimant" means any Settlement Class Member who files a proof of claim seeking to assert an Actual Damage Claim in such form and manner, and within such time, as the Settling Parties have agreed to or the Court shall prescribe.

1.6    "Claims Administrator" means a designated entity authorized to process claims and to undertake other tasks as set forth in this Stipulation.

1.7    "Claims Process" means the claims process provided for in this Stipulation as set forth in ¶2.4 herein.

1.8    "Court" means the United States District Court for the Northern District of Illinois, and includes the MDL Actions assigned to the Honorable Robert W. Gettleman and the matters and issues referred to the Honorable Michael T. Mason, United States Magistrate Judge, for decision or resolution.

1.9    "Credit Scores" means VantageScore Credit Score product.

1.10    "Defendants" means defendants Trans Union and Acxiom.

- 4 -

1.11    "Defendants' Counsel" means counsel of record for Defendants.

1.12    "Defendants' Related Parties" means each of a Defendant's past or present officers, directors, partners, agents, employees, shareholders, attorneys, accountants or auditors, consultants, legal representatives, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, affiliated entities, and any entity in which a Defendant has a controlling interest.

1.13    "Escrow Account" means the trust account used to hold the Settlement Funds that will be paid by Trans Union pursuant to this Stipulation.

1.14    "Escrow Agent" means the bank or trust company selected by Settlement Class Counsel and approved by Trans Union to hold the Settlement Funds payable by Trans Union pursuant to this Stipulation.

1.15    "FCRA" means the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*

1.16    "Final" means when the last of the following with respect to the Judgment approving the Stipulation has occurred: (i) the expiration of three (3) business days after the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Judgment has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 33rd day); and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a determination of any such motion or appeal that permits the consummation of the Settlement in substantial accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall not include any

appeal that concerns only the issue of an award of attorneys' fees and expenses from the Settlement Fund.

1.17    "Final Approval" means the approval of the Stipulation and Settlement by the Court at or after the Final Hearing, and entry of the Judgment.

1.18    "Final Hearing" means the hearing at which the Stipulation and Judgment is presented by the Settling Parties for Final Approval and entry by the Court.

1.19    "Firm Offer" means an offer of credit or insurance to a consumer regulated by Section 604(c) of the FCRA (15 U.S.C. §1681b(c)).

1.20    "Frey Action" means the action filed in the Superior Court of California, County of Orange on or about August 31, 1998, entitled *Frey v. Trans Union, et al.*, Case No. 798893.

1.21    "In-Kind Relief" means the relief being provided by Trans Union pursuant to the Stipulation as set forth in ¶2.3 herein.

1.22    "In-Kind Relief Claim" means a claim filed by a Settlement Class Member to obtain the relief being provided by Trans Union pursuant to ¶2.3 herein.

1.23    "Internet Notice" means the notice of the Settlement that will be posted on the internet at www.tulistsettlement.com.

1.24    "Judgment" means the judgment entered by the Court giving Final Approval of the Stipulation.

1.25    "Lump Sum Payment" means the amount of twenty million dollars ($20,000,000) United States currency.

1.26    "MDL Actions" means all actions which have been transferred to, are being transferred to, or will be transferred to the Court by the MDL Panel for inclusion in the MDL Cases, including the actions listed in Section I above.

1.27    "Named Plaintiffs" means all named Plaintiffs in the Action.

1.28 "Plaintiffs" means all Named Plaintiffs in the MDL Actions and the Frey Action, including Cynthia Albert, Jeffrey Beadle, Cecilia Comstock, David Feige, Megan Gogerty, Donald Jowers, Victoria Scott Kearley, Geri Mann, Marci Martinelli, Robert and Yvonne Morse, Lawrence and Joan Palazzolo, Heather Payne, Boris and Alla Rozenblitt, Randall J. Stein, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann, Nancy M. Woods, and Josh Frey, and including each of a Plaintiff's estates, heirs, executors, guardians, conservators and trustees.

1.29 "Plaintiffs' Counsel" means Plaintiffs' counsel of record in the Actions.

1.30 "Plaintiff's Related Parties" means each of a Settlement Class Member's estates, heirs, executors, guardians, conservators and trustees.

1.31 "Plaintiff Settlement Class" is defined as: All consumers who had an open credit account or an open line of credit from a credit grantor located in the United States at any time during the period January 1, 1987 to the present. Excluded from the Plaintiff Settlement Class are (a) Defendants and their predecessors, affiliates, subsidiaries, officers, directors and employees, (b) counsel for any of the Settling Parties in these Actions, and (c) any and all judges and justices assigned to hear any aspect of the Actions, along with the spouses of the foregoing and any children residing in their households.

1.32 "Preliminary Approval" means the preliminary approval of the Stipulation by the Court, conditional certification of the Plaintiff Settlement Class, and approval of the method and content of notice to the Plaintiff Settlement Class.

1.33 "Publication Notice" means notice of the Settlement that will be published in various periodicals, as agreed to by Defendants and Settlement Class Counsel, and approved by the Court.

1.34 "Settlement" means the settlement entered into by the Settling Parties as set forth and embodied by this Stipulation, and as may be amended by the Settling Parties as provided for herein.

1.35 "Settlement Class Counsel" means MDL co-lead counsel: (a) Jon W. Borderud of The Borderud Law Group, 11620 Wilshire Boulevard, Suite 400, Los Angeles, California 90025; (b) William J. Doyle II of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 655 West Broadway, Suite 1900, San Diego, California 92101; and (c) Matthew Righetti of Righetti Wynne, P.C., 456 Montgomery Street, Suite 1400, San Francisco, California 94104.

1.36 "Settlement Class Member" means a person who falls within the definition of the Plaintiff Settlement Class as defined in ¶1.31 of the Stipulation.

1.37 "Settlement Class Period" means the period commencing on January 1, 1987 to the date the Stipulation is executed.

1.38 "Settlement Class Representative Plaintiffs" means Jeffrey Beadle, Josh Frey, Megan Gogerty, Victoria Scott Kearley, Marci Martinelli, Lawrence and Joan Palazzolo, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann, and Nancy M. Woods.

1.39 "Settlement Fund(s)" means the amount paid by Trans Union into the Escrow Account pursuant to ¶2.2 herein.

1.40 "Settling Parties" means, collectively, each of the Defendants, as defined herein, by and through their counsel of record, and each of the Settlement Class Representative Plaintiffs on behalf of themselves, all Plaintiffs, and all Settlement Class Members, by and through Settlement Class Counsel.

1.41 "Stipulation" means this Stipulation of Settlement, as may be amended by the Settling Parties as provided for herein.

1.42 "Target Marketing" means selling or advertising goods and services, or soliciting charitable or political contributions, directly to consumers by mail or telephone, which consumers are identified by, among other criteria, targeted financial criteria or demographic traits. Target Marketing does not include Firm Offers (as defined above).

1.43    "Trans Union" means defendant Trans Union LLC.

1.44    "Ultimate Approval" means that the Judgment has become Final, as defined herein.

**2.      Terms of the Settlement**

2.1    **Injunctive Relief.**  Defendants agree to stipulated injunctive relief as follows:

(a)      **Firm Offer Business.**  As part of this injunction, Trans Union shall be enjoined for a period of five (5) years from the date of Ultimate Approval from disclosing in connection with customer audits of Firm Offer lists: i) full social security numbers of consumers, and ii) consumer credit information where the identity of a particular consumer can be ascertained. Nothing in this Stipulation, or the Judgment approving the Stipulation, shall preclude the disclosure of partial social security numbers or credit information, so long as any such disclosed information cannot be identified with a particular consumer.  Likewise, nothing in this Stipulation, or the Judgment approving the Stipulation, shall be construed as a finding or judicial declaration that, in connection with customer audits of Firm Offer lists, the disclosure of partial social security numbers or credit information that cannot be identified with a particular consumer complies with or violates the FCRA or other law.

(b)      **Target Marketing Business.**  Defendants shall be enjoined, for a period of five (5) years from the date of Ultimate Approval, from distributing Target Marketing lists or related information which constitute "consumer reports" under the FCRA, except to the extent such lists or related information are authorized under the FCRA or applicable law, as amended from time to time.

(c)      **Certain Defenses to Individual FCRA Claims.**  Defendants shall be enjoined, for a period of one (1) year from the date of Ultimate Approval or, in the case of a Settlement Class Member who has made an Actual Damage Claim,  for a period of one (1) year from the date of denial of the Settlement Class Member's Actual Damage Claim, if later, from asserting any statute of limitations defenses, prescription defense, or any defenses based on laches, to any

- 9 -

individual claims brought under the FCRA, arising out of, or related to, the facts and claims alleged in the Actions. Nothing in this Stipulation, or the Judgment approving the Stipulation, shall prevent Defendants from raising or asserting any defense other than a limitations or laches or prescription defense as provided for in this paragraph, to any individual claim brought by an individual consumer under the FCRA, which arises out of or is related to the facts and claims alleged in the Actions. Further, nothing in this Stipulation, or the Judgment approving the Stipulation, shall prevent Defendants from raising any defense, including any limitations, prescription or laches defenses, to any representative action or class action which includes a class or representative claim brought under the FCRA, or to any class or representative action brought pursuant to the FCRA.

(d) **Providing Credit Scores.** For a period of two (2) years after Ultimate Approval of the Settlement, Trans Union shall provide free Credit Scores, along with reasonable explanatory information, directly to consumers who have received: (i) free consumer disclosures from Trans Union as required by FCRA Section 612(b) and (c); or (ii) free consumer disclosures from Trans Union pursuant to state law; but Trans Union will not be required to provide free Credit Scores to consumers who receive disclosures pursuant to FCRA Section 612(a). Each individual Credit Score so provided to consumers has a current retail value of $5.95.

(e) **Public Service Announcements.** Trans Union shall be required to issue the public service announcements described in ¶2.5(e) below.

(f) **Judgment.** All injunctive relief provided for herein shall be included in the Judgment approving the Stipulation to be submitted to the Court for Final Approval, and the Settling Parties shall request that the Court maintain jurisdiction to enforce the provisions of this injunctive relief.

2.2 **Settlement Fund**

- 10 -

(a) **Creation and Deposit of Settlement Fund.** Within ten (10) business days following the Court's entry of the Judgment giving Final Approval to the Stipulation, Trans Union shall deposit the Lump Sum Payment of $20,000,000 ($20 million) into the Escrow Account, less any approved advances made pursuant to ¶¶2.5 and 2.6 hereof. All Settlement Funds shall be held in the Escrow Account by an Escrow Agent selected by Settlement Class Counsel and agreed to by Trans Union pending Ultimate Approval, and the use or disbursement of such funds as approved by the Court. Settlement Class Counsel shall provide to Trans Union wire-transfer instructions for the transfer of the Settlement Fund to the Escrow Account. The Settlement Fund may be invested in investment instruments as may be agreed upon by Settlement Class Counsel and Trans Union prior to Ultimate Approval, or as agreed upon by Settlement Class Counsel after Ultimate Approval. Any investment instrument in which the Settlement Fund is permitted to be invested, as provided for herein, must be backed by the full faith and credit of the United States Government or fully insured by the United States Government, or an agency thereof, and the Escrow Agent shall be required to reinvest the proceeds of any such investment instruments as they mature in similar permissible instruments at their then-current market rates. The Escrow Agent shall bear any and all risks related to the investment of the Settlement Fund.

(b) **Use and Disbursement of Settlement Fund.** The Settlement Fund is to be used only for the purposes set forth in this Stipulation, and does not include any monies for fines, penalties or punitive damages, except as may be specifically provided herein. The Settlement Fund shall be used in the manner and for the purposes provided for herein, including, as appropriate, the distribution of any remaining or unused Settlement Funds by means of *cy pres* to appropriate non-profit entities, whose purpose is, among others, to educate consumers about their privacy and credit rights, and to protect those rights on behalf of consumers, under a cy pres plan that shall be proposed by Settlement Class Counsel, agreed to by Trans Union, and approved by the Court at the

- 11 -

appropriate time. The Escrow Agent shall not disburse the Settlement Fund except as provided for by this Stipulation, or by order of the Court. Prior to Ultimate Approval, no Settlement Funds will be disbursed without the written agreement of all Settlement Class Counsel and Trans Union. After Ultimate Approval, no Settlement Funds will be disbursed without the written agreement of all Settlement Class Counsel.

After Ultimate Approval, Settlement Class Counsel are authorized to execute such transactions necessary to disburse the Settlement Fund to Authorized Claimants pursuant to the terms of the Stipulation and orders of the Court.

(c) **Jurisdiction of Court.** All Settlement Funds transmitted to and held by the Escrow Agent as required by this Stipulation shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as all Settlement Funds have been completely distributed pursuant to the terms of the Stipulation, and/or any further order(s) of the Court.

(d) **Settlement Fund Tax Status.** Settling Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e) For the purpose of Treas. Reg. §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns

necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.2(d) above) shall be consistent with this subsection and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.2(f) hereof.

(f)     All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Trans Union with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.2(e) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall Defendants have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold Defendants harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); Defendants are not responsible therefore nor shall they have any liability with respect thereto. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their

- 13 -

tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this section.

2.3    **In-Kind Relief**

(a)    In addition to all other relief provided by this Settlement, Trans Union shall provide additional consideration to Settlement Class Members in the form of In-Kind Relief on a claims-made basis for a period of two (2) years after the Settlement receives Ultimate Approval. In-Kind Relief (as described below) shall be offered to all Settlement Class Members on a claims-made basis, with no ceiling on the total dollar amount of In-Kind Relief that will be made available to be claimed by Settlement Class Members over the two year period. The In-Kind Relief can be claimed by Settlement Class Members by sending an In-Kind Relief claim form to Trans Union or its agent claiming such benefits. The In-Kind Relief claim form shall only require the Settlement Class Member's name and address, and any other necessary information to confirm his or her identity. The claim form shall be available on the Website for two (2) years after Ultimate Approval, and Settlement Class Members claiming In-Kind Relief benefits may transmit a completed claim form to Trans Union or its agent electronically via the Internet. The claim form shall be agreed upon by Settlement Class Counsel and Defendants. Prior to Ultimate Approval, Settlement Class Members may register an e-mail address to receive messages addressing when In-Kind Relief will be available.

(b)    Trans Union shall provide to each Settlement Class Member, who properly and timely makes an In-Kind Relief Claim pursuant to the Settlement, six (6) months of its consumer service which includes: (i) free unlimited daily access to a Settlement Class Member's Trans Union credit report and Credit Score; (ii) "credit monitoring," a 24-hour email credit notification service; and (iii) identity theft insurance with a limit of $25,000 (where permitted by law). Trans Union represents that the current retail value of the foregoing In-Kind Relief services is presently $49.75

- 14 -

per Settlement Class Member. A claimant for In-Kind Relief shall not be required to provide any form of payment, such as a credit card, to obtain In-Kind Relief, and shall not be required to contact Trans Union in order to discontinue the services provided as In-Kind Relief. In-Kind Relief services shall be automatically discontinued after six (6) months unless the Settlement Class Member affirmatively requests that the In-Kind Relief, or any portion thereof, continue at the Settlement Class Member's own expense.

(c) Trans Union shall provide a guaranteed minimum retail dollar amount of the free In-Kind Relief and/or the free Credit Scores referenced in ¶2.1(d) of no less than $20 million in total combined retail value (measured by the number of In-Kind Relief recipients, multiplied by $49.75, and/or the number of Credit Score recipients, multiplied by $5.95). There shall be no maximum dollar amount on the amount of In-Kind Relief and free Credit Scores that Trans Union will be required to make available and provide to Settlement Class Members pursuant to this Stipulation.

2.4     **Claims Process for Actual Damages**

All Settlement Class Members who do not timely opt-out of the Settlement, as provided for herein, and who do not submit a claim for In-Kind Relief, may, within 180 days of the date of the Final Hearing, submit a claim form to the Claims Administrator stating under penalty of perjury that they have suffered actual damages as a result of alleged conduct by Trans Union arising out of, or directly related to, the conduct alleged in the Actions, which alleged conduct falls within certain specified and predetermined categories ("Actual Damage Claim"). The categories of injury supporting Actual Damage Claims are: 1) denials of credit, insurance or employment or changes to the terms of credit, insurance or employment, and 2) physical injury or emotional distress. All Claimants submitting Actual Damage Claims will be required to submit contemporaneous documentation supporting their damage claims. Settlement Class Counsel and counsel for Trans

Union will agree upon a claim form Claimants are to submit in order to make an Actual Damage Claim, as well as a protocol to be followed by the Claims Administrator evaluating Actual Damage Claims in order to determine whether they are valid and should be paid. If the parties are unable to reach agreement on the claim form or protocol, the parties will submit the dispute or issue to the Court for resolution. Settlement Class Members claiming they have suffered actual damages, and who present the appropriate and required documentation and proof, shall receive $40 directly from Trans Union (over and above and not from the Settlement Fund) for their unproven claim for "actual damages," along with an additional $160 to be paid from the Settlement Fund, representing a proportionate, but unproven, amount of hypothetical "punitive damages." These amounts shall be paid to the Settlement Class Member only after the requirements set forth herein, and as have been agreed upon by Settlement Class Counsel and Trans Union, have been met by the Settlement Class Member filing the Actual Damage Claim, and the Settlement has received Ultimate Approval. If the amount of valid hypothetical "punitive damages" claims exceed the amount available for distribution from the Settlement Fund, each Authorized Claimant will be paid an equal *pro rata* share of the available Settlement Fund. The Actual Damage Claim form shall be made available on the Website to be printed out or may be obtained by writing to the Claims Administrator, will be signed under penalty of perjury, and mailed to a designated address along with the required documentation.

2.5    **Notice Procedures**

The Settling Parties agree to the following notice procedures, subject to Court approval:

(a)    **Website.** Trans Union shall, at its own expense, create and maintain a Website at www.tulistsettlement.com for providing Internet Notice to Settlement Class Members and as a means for Settlement Class Members to understand and claim the certain settlement benefits being offered by the Settlement. The design, form, content, and duration of the Website shall be

- 16 -

negotiated and agreed to by Defendants and Settlement Class Counsel, and in the event they are unable to reach agreement on any issue concerning the Website, the Court shall retain jurisdiction and the Court shall decide the issue. The Website will be up and running at the time Publication Notice to the Settlement Class Members, pursuant to ¶2.5(c), is commenced.

(b) **Toll-Free Number.** The Claims Administrator shall establish a toll-free telephone number through which Settlement Class Members may obtain additional information about the terms and conditions of the Settlement, including any opt-out rights. The design, form, content, and duration of the toll-free number shall be negotiated and agreed to by Defendants and Settlement Class Counsel. The toll-free number shall be in service between the time Publication Notice to the Settlement Class Members, pursuant to ¶2.5(c), is commenced and the Final Hearing. Subsequent to the Final Hearing but before Ultimate Approval, the toll-free number shall be in service subject to the agreement of Settlement Class Counsel and Defendants. The costs of the toll-free number shall be paid from the Settlement Fund. In the event costs associated with the toll-free number are incurred prior to the time the Escrow Account is funded, pursuant to ¶2.2(a), Trans Union shall pay these costs, and Trans Union shall, subject to review and approval by Settlement Class Counsel, deduct the amount of these costs from the amount it deposits into the Escrow Account as required by ¶2.2(a).

(c) **Published Notice.** Trans Union shall retain a media consultant to administer, prior to the Final Hearing, a plan of Publication Notice to the Settlement Class Members informing them of the Settlement. This plan of Publication Notice and the contents of the published notices, shall be approved by Settlement Class Counsel, Defendants and the Court. Trans Union shall pay for the costs of Publication Notice to Settlement Class Members up to a maximum amount of $1.5 million. Trans Union shall not be entitled to reimbursement of any portion of the $1.5 million expended on any such Publication Notice required by this Stipulation. In the event the costs of

Publication Notice exceeds $1.5 million, the additional costs shall be paid from the Settlement Fund. In the event these costs are incurred prior to the time the Escrow Account is funded, pursuant to ¶2.2(a), Trans Union shall pay these additional costs, subject to review and approval by Settlement Class Counsel, and Trans Union shall deduct the amount of these additional costs from the amount it deposits into the Escrow Account as required by ¶2.2(a).

(d)     **Individual Notice to Settlement Class Members.**  Trans Union routinely provides written information to consumers in the form of written file disclosures.  It is estimated that Trans Union sends out approximately 10 million written file disclosures each year to individual consumers.  Trans Union agrees to use its best efforts to ensure that these written communications give each consumer who receives a file disclosure from Trans Union or its agents individual written notice of the Settlement, and to refer all such consumers in such written notice to the Website referenced in ¶2.5(a), above, as well as the toll-free telephone number referenced in ¶2.5(b), above, (to the extent that the toll-free number is in service), in the following manner:

(i)     For the period between the time Publication Notice to Settlement Class Members is commenced, pursuant to ¶2.5(c), and the Final Hearing, Trans Union shall provide all Settlement Class Members who receive file disclosures from Trans Union with written notice of the Internet address of the Website and the toll-free number to obtain additional information about the Settlement.

(ii)     After the Final Hearing, and until the period to obtain In-Kind Relief under ¶2.3 has ended, Trans Union shall provide all Settlement Class Members who receive file disclosures from Trans Union with written notice of the Internet address to the Website and the toll free-number (to the extent that it is in service) to obtain information about how to claim and obtain the benefits provided by the Settlement.

(iii)      Trans Union shall administer the foregoing individual notice plan subject to reasonable audit, review and monitoring by Settlement Class Counsel. Trans Union shall pay the costs of the foregoing individual notice plan; provided, however, that if the individual notice plan requires that additional pages be inserted in written file disclosures to Settlement Class Members, the Settlement Fund will pay the costs of producing these additional pages. In the event costs associated with these additional pages are incurred prior to the time the Escrow Account is funded pursuant to ¶2.2(a), Trans Union shall pay these costs, and Trans Union shall, subject to review and approval by Settlement Class Counsel, deduct the amount of these costs from the amount it deposits into the Escrow Account as required by ¶2.2(a).

(e)      **Public Service Announcements.** Trans Union shall, at its own expense, create and distribute at least two (2) public service announcements per year for three (3) years after Ultimate Approval of the Settlement, on a national basis, through national media, relating to consumer education about credit, identity theft, protection of personal information, and other relevant matters to enable consumers to understand and manage their personal credit information. The initial public service announcements shall also provide additional and further notice of the benefits provided by the Settlement as described herein. Such public service announcements shall be in addition to any announcements Trans Union may be currently obligated to provide under any legal or other obligation, and their content and mode of dissemination shall be subject to review and approval by Settlement Class Counsel. Any dispute concerning the content or mode of dissemination of the public service announcements shall be resolved by the Court as part of the settlement process.

2.6      **Expenses of Claims Administration and Opt-Out Processing**

(a)      **Claims Administration.** With respect to the Claims Process described in ¶2.4, Trans Union shall retain a Claims Administrator to administer the Claims Process. The

Settling Parties agree that any Claims Administrator is solely an agent of Trans Union, for purposes of consumer information being supplied to it by Trans Union. Any Claims Administrator's appointment shall be subject to the approval and monitoring of Settlement Class Counsel and the Court. Trans Union shall provide to the Claims Administrator all information necessary for the administration of the Claims Process. The costs of the Claims Administrator to administer the Claims Process described in ¶2.4 shall be paid from the Settlement Fund. In the event costs associated with the Claims Administrator administering the Claims Process are incurred prior to the time the Escrow Account is funded pursuant to ¶2.2(a), Trans Union shall, subject to review and approval by Settlement Class Counsel, pay these costs, and Trans Union shall deduct the amount of these costs from the amount it deposits into the Escrow Account as required by ¶2.2(a).

(b) **Opt-Outs.** The costs of the Claims Administrator to process opt-out requests under ¶2.9, shall be paid from the Settlement Fund. In the event costs associated with the Claims Administrator processing opt-out requests are incurred prior to the time the Escrow Account is funded pursuant to ¶2.2(a), Trans Union shall, subject to review and approval by Settlement Class Counsel, pay these costs, and Trans Union shall deduct the amount of these costs from the amount it deposits into the Escrow Account as required by ¶2.2(a).

(c) No person shall have any claim against the Settling Parties or their counsel, the Claims Administrator, or other entity designated by the Settling Parties based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, or further order(s) of the Court.

2.7 **Plaintiff Incentive Awards**

Subject to the Court's Preliminary and Final Approval, upon Ultimate Approval of the Settlement, Trans Union shall pay $3,500 as a Plaintiff's incentive award to each of the Named Plaintiffs in the Actions who do not opt out of the Settlement in recognition of their efforts in

representing the Settlement Class Members, including their attendance at hearings, sitting for depositions and consultation with counsel throughout the pendency of the Actions. Said incentive awards and the other benefits provided by this Settlement will be the only compensation Named Plaintiffs will receive for their participation in the Actions.

### 2.8 Releases and Retention of Certain Individual Rights and Claims

All releases set forth below are void if the Settlement does not receive Ultimate Approval.

(a) **Named Plaintiffs.** Upon Final Approval of the Settlement, all Named Plaintiffs in the Actions who do not timely and individually opt out of the Settlement, as provided for herein, will be deemed to have released, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all claims related to Defendants' alleged distribution of Firm Offer information or lists. If more than one Named Plaintiff opts out of the Settlement, the Settlement will be voidable at Trans Union's option, if such option is exercised by Trans Union within 30 days of receiving notice of the opt-outs by giving written notice of such decision to Settlement Class Counsel.

(b) **Non-opt Out Class.** Pursuant to FRCP 23(b)(2), upon Final Approval, Named Plaintiffs and all Settlement Class Members will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from any and all rights they may have to obtain injunctive relief covered by ¶2.1 and punitive or exemplary damages from or against the Defendants, or either of them, or Defendants' Related Parties in connection with any and all claims arising out of or related to the

- 21 -

facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all claims related to Defendants' alleged distribution of Firm Offer information or lists, in exchange for the injunctive relief provided for by this Settlement.

      (c)    **Opt-out Class.**

          (i)      Pursuant to FRCP 23(b)(3), upon Final Approval, all Settlement Class Members who do not timely and individually opt-out of the Settlement, and who, within two (2) years of Ultimate Approval, claim the In-Kind Relief described in ¶2.3 above, will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims arising out of or related to the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all claims related to Defendants' alleged distribution of Firm Offer information or lists.

          (ii)     Pursuant to FRCP 23(b)(3), upon Final Approval, all Settlement Class Members who do not timely and individually opt-out of the Settlement, but who submit an Actual Damage Claim, as provided for in ¶2.4 above, and who receive payment thereunder, will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all claims related to Defendants' alleged distribution of Firm Offer information or lists. If the total number of valid and payable Actual Damage Claims under this subparagraph

exceeds 15,000, then the Settlement will be voidable at Trans Union's option, if such option is exercised by Trans Union within thirty (30) days of Trans Union receiving notice of the number of all valid and payable Actual Damage Claims by giving written notice to Settlement Class Counsel.

(iii)      Pursuant to FRCP 23(b)(3), upon Final Approval, all Settlement Class Members, who do not timely and individually opt out of the Settlement, and who do not claim benefits under either ¶¶2.3 or 2.4, above, will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from the Settlement Class Members' rights to bring or continue to participate in any and all claims against Defendants and Defendants' Related Parties as a class action on behalf of others, or as a representative action on behalf of others, as well as their rights to be a member of any such class or representative action, with respect to any and all claims arising out of, or related to, the facts or claims alleged in the Actions, arising out of state or federal law, including (i) any and all claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all claims related to Defendants' alleged distribution of Firm Offer information or lists.

(iv)      Pursuant to FRCP 23(b)(3), upon Final Approval, all Settlement Class Members, who do not timely and individually opt out of the Settlement, and who do not claim benefits under either ¶¶2.3 or 2.4, above, will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims arising out of, or related to, the facts or claims alleged in the Actions, arising out of state or federal law, but said persons shall retain their individual right to bring an individual claim against Defendants, or either of them, under the FCRA only, and may seek to recover in such

- 23 -

an individual action actual damages or statutory damages (but not punitive damages), attorney's fees, and costs, for claims arising out of or related to the facts and claims alleged in the Actions.

        (v)     Upon Final Approval, each of the Defendants and Defendants' Related Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Settlement Class Members who have not opted-out of the settlement and Plaintiffs' Counsel from all claims (including unknown claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Actions.

### 2.9   Opt-Outs and Opt-Out Period

        (a)     Settlement Class Members may opt out of the Settlement by mailing a written request to opt-out of the Settlement to the Claims Administrator on or before the deadline provided in the Publication Notice. Such request will contain the Settlement Class Member's name and address and a statement that the Settlement Class Member does not wish to be included in the Settlement. Such opt-out request must be made on an individual basis, and not on a class-wide basis.

        (b)     Unless otherwise modified by the Court, the opt-out period shall be for a period of ninety (90) days after the last Publication Notice to the Settlement Class Members, pursuant to ¶2.5(c), has been effectuated. If the total number of individual opt-outs exceeds 10,000 persons, the Settlement will be voidable at Trans Union's option, if such option is exercised by Trans Union by giving written notice to Settlement Class Counsel within thirty (30) days of receiving notice of the total number of opt-outs.

### 2.10   Confirmatory Discovery.

Defendants agree to provide Settlement Class Counsel with all reasonable and necessary discovery and information needed to confirm certain prior factual representations that have been made to Plaintiffs' Counsel in the Actions. Such confirmatory discovery process will be overseen by the Court.

### 3. Preliminary Approval Order and Settlement Hearing

3.1     After execution of the Stipulation by the Settling Parties, the Settling Parties shall submit the Stipulation to the Court and shall apply for entry of an order requesting, *inter alia,* the Preliminary Approval of the Settlement as set forth in the Stipulation, the certification of the Plaintiff Settlement Class for settlement purposes, and approval of the form and content of the summary Publication Notice and Internet Notice. The Notices shall include the general terms of the Settlement set forth in the Stipulation, the general terms of the Fee and Expense Application, deadlines for class members to request exclusion from the Plaintiff Settlement Class and to file claims, and the date of the Final Hearing.

3.2     After Internet Notice is posted, Publication Notice is given and the individual written notice provided for in ¶2.5 is commenced, the Court will hold the Final Hearing to consider approval of the Settlement of the Actions as provided for herein. At or after the Final Hearing, Settlement Class Counsel will request that the Court approve the proposed Fee and Expense Application.

### 4. Application for Reimbursement of Attorneys' Fees and Costs

4.1     Settlement Class Counsel shall submit an application or applications to the Court for reimbursement of attorneys' fees and expenses from the Settlement Fund incurred in connection with prosecuting and settling the Actions, including expert and consultant fees, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid), as may be approved by the Court ("Fee and Expense Application"). Defendants have agreed to remain neutral on the Fee and Expense Application.

4.2     The amount of attorneys' fees and expenses applied for by Settlement Class Counsel and approved by the Court ("Fee and Expense Award"), shall be paid to Settlement Class Counsel directly from the Settlement Fund immediately after the Settlement has received Ultimate Approval. Any Fee and Expense Award shall be transmitted by the Settlement Fund Escrow Agent to a

separate account established by Settlement Class Counsel at First Federal Bank of California, and

shall be held in such account until such funds are allocated and distributed by Settlement Class

Counsel to the various Plaintiffs' Counsel. Settlement Class Counsel will allocate the Fee and

Expense Award amongst Plaintiffs' Counsel in a manner in which they in good faith believe reflects

the relative contributions of the various Plaintiffs' Counsel to the prosecution and resolution of the

Actions, and such allocation shall require the agreement of all three Settlement Class Counsel.

4.3    Any Fee and Expense Application, any Fee and Expense Award, and any and all

matters related thereto, shall not be considered part of the Stipulation, and shall be considered by the

Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the

Settlement, and shall not operate to terminate or cancel the Stipulation or Settlement, and shall not

affect or delay the finality of any Judgment approving the Stipulation and the Settlement of the

Actions.

4.4    Defendants shall have no responsibility for, or any liability with respect to, the

payment of attorneys' fees and expenses to Plaintiffs' Counsel, and the sole source of any Fee and

Expense Application and Fee and Expense Award shall be the Settlement Fund.

## 5.    Effect of Disapproval, Cancellation or Termination

5.1    If the Settlement does not receive Ultimate Approval, then the Settlement, any

Stipulation, and the settlement term sheet shall become null and void. In addition, the Settling

Parties agree that if this Settlement becomes null and void, the Defendants shall not be prejudiced in

any way from opposing the certification of a class or classes in the Actions or in any other litigation

that is not one of the Actions. Further, the Settlement Fund, including interest earned, less expenses

that have been properly disbursed pursuant to this Stipulation, hereof, shall be returned to Trans

Union if (a) the Settlement does not receive Final Approval, and a revised settlement is not

submitted by the Settling Parties to the Court within 180 days following the Court's failure to grant

such Final Approval, or (b) an order of the Court giving Final Approval to the Settlement is overturned after exhaustion of all appeals, and a revised settlement is not submitted to the Court within 180 days following the exhaustion of all such appeals, or (c) Trans Union voids the Settlement pursuant to ¶¶2.8(a), 2.8(c)(ii) or 2.9(b) hereof.

5.2    In the event that the Stipulation does not receive Ultimate Approval, or the Stipulation is terminated, or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Actions as of June 28, 2006. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.2(c)-(f), 5.1, 5.3 and 6.14 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Actions or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

5.3    If Ultimate Approval does not occur, or if the Stipulation is terminated pursuant to its terms, neither Settlement Class Representative Plaintiffs or Plaintiffs' Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Settlement Fund for notice or administration costs allowed by this Stipulation. In addition, any expenses already incurred and properly chargeable to the Settlement Fund pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent, in accordance with the terms of the Stipulation, prior to the balance of the Settlement Fund being refunded to Trans Union as provided for herein.

5.4    If a case is commenced in respect to Trans Union under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Funds, or any portion thereof, by or on behalf of Trans Union, to be a preference,

- 27 -

voidable transfer, fraudulent transfer, or similar transaction, then, as to Trans Union, the releases given and Judgment entered in favor of Trans Union pursuant to this Stipulation shall be null and void.

     5.5    Trans Union warrants and represents that it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time this Stipulation is executed and as of the time any payments are transferred or made as required by this Stipulation.

     **6.**    **Miscellaneous Provisions**

     6.1    The Settling Parties acknowledge that it is their intent to consummate this Settlement, and agree to cooperate and take whatever steps are necessary and appropriate to complete the Settlement, to obtain Preliminary, Final, and Ultimate Approval of the Settlement, to effectuate the terms of the Settlement, and to protect the Settlement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to the facts or claims alleged in the Actions, if so required.

     6.2    To the extent any disputes or issues arise with respect to documenting the Settlement, the Settling Parties agree to use their best efforts to informally resolve any such disputes or issues; but in the event any such dispute or issue cannot be resolved informally, to bring any such dispute or issue to the Court for resolution.

     6.3    The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Actions, except as specifically provided for herein. The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. While retaining their right to deny liability, the Defendants agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated at all times at arm's length and in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

6.4     The Settling Parties recognize that the case *Andrews v. Trans Union LLC*, No 02-18553 (Civ. Dist. Ct., Orleans Parish, La.) ("Andrews"), is pending in state court in Louisiana, which arises out of the same alleged conduct as that challenged in the Actions. The Settling Parties further recognize that the Settlement would resolve the claims asserted in *Andrews* in the same manner as the claims asserted in the Actions. The Settling Parties agree to take steps necessary to preserve the jurisdiction of the Court over the Actions, including but not limited to filing appropriate motions in either the Court or in the appropriate Louisiana court to prevent further proceedings in *Andrews* pending Preliminary and/or Final Approval.

6.5     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be, or may be used as an admission or evidence of, the validity of any claims asserted in the Actions, or of any wrongdoing or liability on the part of Defendants, or (b) is or may be deemed to be, or may be used as an admission or evidence of, any fault or omission of any of the Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. Defendants may file the Stipulation and/or the Judgment in any action that has been or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion, or any similar defense or counterclaim.

6.6     All agreements made and orders entered during the course of the Actions relating to the confidentiality of information shall survive this Stipulation.

6.7     The Stipulation may be amended or modified only by a written instrument signed by Defendants and Settlement Class Counsel, or their respective successors-in-interest.

6.8     The Stipulation constitutes the entire agreement among the Settling Parties, and no representations, warranties or inducements have been made to any Party concerning the Stipulation,

- 29 -

other than those contained herein. Except as provided for herein with respect to Settlement Class Counsels' Fee and Expense Application and Award, each Party shall bear its own costs.

6.9     Settlement Class Counsel, on behalf of the Plaintiff Settlement Class, are expressly authorized by Settlement Class Representative Plaintiffs to take all appropriate action required or permitted to be taken by the Plaintiff Settlement Class pursuant to the Stipulation to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Plaintiff Settlement Class which they deem necessary or appropriate.

6.10    Each attorney executing the Stipulation on behalf of any party hereto hereby warrants that such attorney has the full authority to do so.

6.11    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

6.12    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

6.13    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

6.14    The Stipulation shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the Settling Parties hereto have entered into this Stipulation and caused it to be executed by their duly authorized attorneys as of October 5, 2006.

THE BORDERUD LAW GROUP
JON W. BORDERUD

_____
JON W. BORDERUD

11620 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Telephone: 310/207-2848
310/207-2748 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOY ANN BULL
WILLIAM J. DOYLE II


_____
WILLIAM J. DOYLE II

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

RIGHETTI WYNNE, P.C.
MATTHEW RIGHETTI


_____
MATTHEW RIGHETTI

456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415/983-0900

Settlement Class Counsel

IN WITNESS WHEREOF, the Settling Parties hereto have entered into this Stipulation and

caused it to be executed by their duly authorized attorneys as of October 5, 2006.

THE BORDERUD LAW GROUP
JON W. BORDERUD

_____
JON W. BORDERUD

11620 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Telephone: 310/207-2848
310/207-2748 (fax)

LERACH COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
JOY ANN BULL
WILLIAM J. DOYLE II

_____
WILLIAM J. DOYLE II

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

RIGHETTI WYNNE, P.C.
MATTHEW RIGHETTI

_____
MATTHEW RIGHETTI

456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415/983-0900

Settlement Class Counsel

- 31 -

IN WITNESS WHEREOF, the Settling Parties hereto have entered into this Stipulation and caused it to be executed by their duly authorized attorneys as of October 5, 2006.

THE BORDERUD LAW GROUP
JON W. BORDERUD

_____
JON W. BORDERUD

11620 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Telephone: 310/207-2848
310/207-2748 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
JOY ANN BULL
WILLIAM J. DOYLE II

_____
WILLIAM J. DOYLE II

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

RIGHETTI WYNNE, P.C.
MATTHEW RIGHETTI

_____
MATTHEW RIGHETTI

456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415/983-0900

Settlement Class Counsel

SAUNDERS & DOYLE
TERRY ROSE SAUNDERS
THOMAS A. DOYLE

_____
THOMAS A. DOYLE

20 South Clark Street, Suite 1720
Chicago, IL 60603
Telephone: 312/551-0051
312/551-4467 (fax)

Liaison Counsel for Plaintiffs

DLA PIPER US LLP
ROGER L. LONGTIN
MICHAEL C. O'NEIL
PETER J. DONOGHUE

_____
ROGER L. LONGTIN

203 N. La Salle Street
Suite 1900
Chicago, IL 60601
Telephone: 312/368-4000

O'MELVENY & MYERS
BRIAN P. BROOKS

_____
BRIAN P. BROOKS

1625 Eye Street N.W.
Washington, DC 20006-4001
Telephone: 202/383-5300

Counsel For Defendant Trans Union LLC

- 32 -

ROSE LAW FIRM
AMY LEE STEWART

_____
AMY LEE STEWART

120 East Fourth Street
Little Rock, AR 72201
Telephone: 501/377-0334

**Counsel For Defendant Acxiom Corporation**

S:\Settlement\Trans Union set\(v9) STP00030964.doc

- 33 -