**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) Lead Case No. 00 C 4729 ) ) MDL Docket No. 1350 ) |
| This Document Relates To: | ) Judge Robert W. Gettleman ) |
| ALL ACTIONS. | ) Magistrate Judge Michael T. Mason ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED CLASS ACTION SETTLEMENT**

After more than eight years of vigorous, hard-fought litigation, these coordinated class actions (the "Actions") have been settled for $20 million in cash, plus at least $20 million in free products and services (valued at $49.75 per Settlement Class Member), and substantial injunctive relief, including restrictions on Defendants' business practices, the provision of credit scores and public service announcements. Upon submitting a valid claim, each class member may elect to receive no less than $49.75 in free credit monitoring services, or, if qualified, as much as $200 in cash for compensable harm from Defendants' alleged FCRA privacy violations. Further, all Settlement Class Members who do not receive a cash payment or the free credit monitoring services, retain their right to file an individual claim against Defendants under the FCRA. These benefits, set forth in the Stipulation of Settlement (the "Stipulation," attached as Ex. A to the Motion), are the result of Plaintiffs' vigorous case prosecution and extensive arm's-length settlement negotiations.[1]

---

[1]  Capitalized terms herein have the same definitions as in the Stipulation.

The proposed Settlement, if approved, will result in a complete resolution of all claims in the Actions.

The issue before the Court on this Motion for Preliminary Approval is whether the proposed Settlement is sufficiently within the range of what might be approved as fair, reasonable and adequate to justify giving notice to Settlement Class Members and scheduling a final approval hearing. At this point, the Court is not required to determine whether the proposed Settlement is fair and reasonable, nor would any Settlement Class Members' substantive rights be prejudiced by granting preliminary approval.

## I.   FACTUAL SUMMARY

Plaintiffs allege violations of the Fair Credit Reporting Act ("FCRA") and the improper disclosure of information under that act. The target marketing claims allege that the Trans Union's disclosures of a consumer's name and address in this line of business violated the FCRA. The prescreening claims allege that certain disclosures by Trans Union of consumer's names with appended data violated the FCRA.

First, Trans Union offered target marketing lists in the form of consumer names and addresses selected on the basis of likely consumer interest for the purpose of making offers to purchase goods or services, or to make contributions to charitable or political organizations ("target marketing lists"). There are no copies of the specific lists that were sold. However, the List Master File contained over 190 million names from which these target marketing lists were created and sold, and the List Master File itself was sold to vendors. Plaintiffs contend that each consumer name disclosed violated the FCRA and each such disclosure is the subject of a claim in this litigation.

Second, Trans Union provided to customers computerized lists of a consumer's name and address selected on the basis of credit eligibility and used for the purpose of making firm offers of credit or insurance ("firm offer lists"). Trans Union's firm offer business is regulated by the FCRA.

Section 604 (c) allows a consumer reporting agency to provide a consumer report to a customer who intends to make a firm offer of credit or insurance. Under the FCRA, there are limitations placed on the information that can be made available to customers in connection with a firm offer list. Plaintiffs allege that Defendants violated this provision of the FCRA by providing telephone numbers and, in certain limited circumstances, access to Social Security numbers to credit grantors making firm offers of credit to consumers. The number of such consumers who were the subject of such disclosures is not readily determinable, but the firm offer claimants are all included as target marketing claimants and, thus, are a subset of those claims.

## II.    PROCEDURAL HISTORY

The procedural history of these Actions are well known to the Court and need not be repeated at length herein; however, a brief summary is provided below.

On or about August 31, 1998, a class action was filed in the Superior Court of California, County of Orange, against some of the Defendants captioned *Frey v. Trans Union, et al.*, Case No. 798893 (the "*Frey* Action"). A federal class action lawsuit complaint was filed shortly thereafter, and other lawsuits followed. In 2000, The Honorable William Alsup of the Northern District of California rejected a proposed settlement of the litigation. In August 2000, the Judicial Panel on Multidistrict Litigation transferred nine related actions to this Court for all pre-trial proceedings. The Court subsequently consolidated these cases for pre-trial purposes and appointed the undersigned attorneys as Lead Counsel for the MDL Actions. The *Frey* Action and the MDL Actions are referred to as the "Actions."

Defendants moved to dismiss the consolidated complaint. In a September 10, 2002 opinion, the Court granted Defendants' motion in part, dismissing Plaintiffs' declaratory and injunctive claims and state law claims for invasion of privacy and misappropriation. The Court also struck Plaintiffs' claim for nominal damages. Defendants also challenged Plaintiffs' allegations of a

national target marketing class seeking statutory damages of $100-$1,000 per class member under the FCRA. On September 10, 2002, the Court struck these allegations holding that such a class could not be certified.

In November 2002, Plaintiffs filed a Second Amended Class Action Complaint (the "Complaint") against Defendants. The Complaint charged Defendants with violating the Fair Credit Reporting Act, invasion of privacy, misappropriation, violating California's state consumer fraud statutes, and of being unjustly enriched. The Complaint sought both equitable relief and damages. Defendants moved to dismiss the Complaint. In a July 6, 2004 opinion, the Court granted Defendants' motion in part, dismissing with prejudice Plaintiffs' claims for invasion of privacy, misappropriation and unjust enrichment. The Court upheld Plaintiffs' FCRA claims and the claim under California's state consumer fraud statute.

Plaintiffs then sought to certify a national class action seeking punitive damages under the FCRA and to certify an Illinois statewide firm offer class under the FCRA. On August 17, 2005 this Court certified a conditional Illinois statewide class limited to Plaintiffs' FCRA firm offer claims. The Court denied Plaintiffs' request for a national target marketing class for punitive damages under the FCRA.

Over the past eight years, Plaintiffs' Counsel developed the Actions through comprehensive factual investigation and legal research. Plaintiffs' Counsel gathered, reviewed and analyzed hundreds of thousands of pages of documents from Defendants and third parties; took and participated in depositions; responded to Defendants' class discovery requests; analyzed the actions taken in prior government proceedings; sought, obtained and analyzed the very substantial written discovery; and hired and worked with expert consultants.

### III. THE SETTLEMENT NEGOTIATIONS

From time to time throughout those years, the topic of settling Plaintiffs' claims would arise between the parties. Prior to the Court's rulings on the motion to dismiss and class certification, the parties spent about four days in mediation with The Honorable Abner Mikva (Ret.). While the parties were close to an agreement, the negotiations fell apart. More recently, in September of 2005, the Court referred the Actions to the Magistrate Judge for a settlement conference. These settlement discussions were rigorous, spanning many months, and including numerous formal sessions. It was only as a result of substantial efforts by the parties, their counsel and the Magistrate Judge that a tentative settlement was reached. After exchanging and reworking many drafts of the settlement papers, the settling parties executed the Stipulation filed herewith.

### IV. OVERVIEW OF THE PROPOSED SETTLEMENT

#### A. Settlement Fund and In-Kind Relief

Defendants will contribute a Lump Sum Payment of $20 million in cash to be used for purposes of making payments to Settlement Class Members for Actual Damage Claims, paying all attorneys' fees and costs to Plaintiffs' Counsel, and certain of the costs of notice and administration of the proposed Settlement. Each Settlement Class Member who submits a valid Claim Form for actual damages will be entitled to receive up to $200 for his or her claim. Trans Union will pay $40 directly to the claimant and up to $160 will be paid from the Settlement Fund. If the number of valid claims exceed a number that allows payment of $160 to each valid claimant from the Settlement Fund, each valid claimant will receive an equal pro rata share of the available funds. The period for submission of such claims will remain open for 6 months following the date of the Final Hearing.

In addition to all other relief provided by the proposed Settlement, each Settlement Class Member who submits a claim for In-Kind relief and does not receive actual damages will be entitled to free credit monitoring services valued at $49.75 per Settlement Class Member. Credit monitoring

includes six months of the following services: (a) free unlimited internet access to a Trans Union credit report and credit score; (b) monitoring of the consumer's credit report by email; and (c) identity theft insurance with a limit of $25,000 (where allowed by law). The period for submission of such claims will remain open for two years after the proposed Settlement receives Ultimate Approval as defined in the Stipulation. Additionally, Defendants have agreed to provide free credit score disclosures (a $5.95 value) to Settlement Class Members. There is no cap on the amount of In-Kind relief that Defendants will make available to the Settlement Class Members over this two year period, and Defendants have guaranteed to provide a minimum of $20 million in In-Kind relief.

The proposed Settlement does not provide for reversion of any portion of the Settlement Fund to the Defendants. In the event that there are any residual or unused funds that remain after distribution of all required payments to Settlement Class Members who submit valid Actual Damage Claims, the disposition of any such funds as *cy pres* awards to appropriate non-profit entities will be agreed upon by the Parties and then submitted to the Court for approval.

Over and above the $20 million cash fund and the minimum of $20 million of In-Kind Relief, Defendants are responsible for the payment of Notice and Administrative Costs up to $1.5 million. The Settlement Fund will pay any additional costs of Notice and Administration. Defendants will also pay modest incentive awards to Plaintiffs and will set up and maintain a dedicated website.

B.   **Injunctive Relief**

Defendants have agreed to stipulated injunctive relief wherein: Trans Union will be enjoined for a period of five years from Ultimate Approval from disclosing Social Security numbers and identifiable consumer credit information in connection with customer audits of its firm offer lists and from distributing target marketing lists or related information, which constitute consumer reports under the FCRA; Defendants will be enjoined for a period of one year from the date of Ultimate Approval from asserting any statute of limitations defenses, prescription defense, or any defense

based on laches to any individual claims brought under the FCRA arising out of or related to the Actions; and Trans Union will issue two public service announcements per year for three years after Ultimate Approval of the Settlement, about credit, identity theft, protection of personal information, and other relevant matters. These national announcements will also provide notice of the settlement benefits.

### C.   Retention of Individual Claims Under the FCRA

All Settlement Class Members, who do not receive a cash payment or In-Kind benefits with a present retail value of $49.75, will retain the right to bring an individual claim against Defendants under the FCRA. Such Settlement Class Members may seek to recover actual damages or statutory damages, attorneys' fees, and costs for claims arising out of the facts and claims in these Actions. However, all Settlement Class Members will release their claims for punitive damages.

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Before a class action may be compromised, court approval must be obtained and notice of the proposed dismissal or compromise must be given to all class members in the manner the court directs. *See* Fed. R. Civ. P. 23(e). It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

At a final approval hearing, the Court would have before it extensive papers submitted in support of the proposed Settlement and will be asked to make a determination as to whether the proposed Settlement is fair, reasonable and adequate, under all of the circumstances. At this juncture, however, the parties request only that the Court grant preliminary approval of the proposed Settlement. The procedure for preliminary review of a proposed class action settlement is well established and is described in *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982):

The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Its purpose is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Manual for Complex Litigation* §1.46, at 53-55 (West 1981). If the district court finds that a proposed settlement is "within the range of possible approval," the next step is the fairness hearing.

In determining whether preliminary approval is warranted, three issues must be decided: (i) whether the proposed Settlement is within the range of what might ultimately be found fair, reasonable and adequate, and thus warrants the issuance of notice to Settlement Class Members and setting a hearing to consider final settlement approval; (ii) whether the proposed Plaintiff Settlement Class meets the requirements of Rule 23; and (iii) whether the proposed notice plan will provide the best notice practicable. The proposed Settlement satisfies each of these requirements.

## A.     The Proposed Settlement Is Within the Range of Possible Approval

Here, the proposed Settlement is well within the range of possible approval as it provides substantial benefits to the Settlement Class Members, either cash to compensate for any actual privacy harms or credit monitoring services, as well as injunctive relief. Given the complexities of this litigation and the continued risks if the parties were to proceed to trial, the proposed Settlement represents a reasonable resolution of these Actions and eliminates the very real risk that the Settlement Class might otherwise recover nothing.

Provided that the proposed Settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the Court should direct that notice be given to the Settlement Class Members of a formal fairness hearing, at which time evidence may be presented in support of and in opposition to the proposed Settlement. *See Manual for Complex Litigation* §§21.632, 21.633 (4th ed. 2004).

While premature at this stage of the proceedings, among the factors that a district court should consider when it makes its "fairness" determination are: a comparison of the strengths of the Plaintiffs' case versus the amount of the proposed settlement; the likely length and expense of continued litigation; the amount of opposition among the affected parties; the opinion of competent counsel; and the stage of the proceedings at the time of the proposed settlement. *Isby*, 75 F.3d at 1199; *Abrams v. Van Kampen Funds, Inc.*, 2006 U.S. Dist. LEXIS 2129 at **4-5 (N.D. Ill. Jan 18, 2006). Each of these factors weighs strongly in favor of preliminary approval of the proposed Settlement.

### 1. The Strengths and Weaknesses of Plaintiffs' Case Evidence the Fairness of the Proposed Settlement

The first of these factors is the most significant. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Because there are intensely contested legal and factual arguments concerning virtually every element of Plaintiffs' claims, this litigation involves substantial risks, and the proposed Settlement is a wise and appropriate resolution of the claims.

Plaintiffs' Complaint centers on whether Defendants violated the FCRA in providing its customers with certain personal information in its target marketing and firm offer lists. Plaintiffs have performed an extensive investigation of the claims at issue, and have identified certain evidence (the strongest of which were presented during settlement discussions) that they believe helps to substantiate their allegations. On the other hand, Defendants have and would continue to mount a broad-based opposition to Plaintiffs' arguments. Defendants contend that Plaintiffs would not be able to prove to the satisfaction of this Court or a jury that their actions violated the FCRA or that Settlement Class Members have compensable injuries resulting from any conduct by Defendants. Further, Defendants contend Plaintiffs will be unable to show knowing and intentional violations of the FCRA, which is required to obtain statutory damages.

The proposed Settlement has a minimum value of $41.5 million.[2] When compared to the potential benefits available to Class Members if this matter were to proceed to trial and a favorable judgment resulted in a statutory damages recovery, it is clear the proposed Settlement offers Class Members a greater recovery than would be available at trial. The proposed Settlement gives Class Members several choices: (1) file a claim and receive benefits valued at $49.75; (2) submit documentation showing actual damage and receive $200 (twice the minimum statutory damages available under the FCRA); or (3) file an individual claim against Defendants for statutory damages of up to $1,000 under the FCRA. All three of these options offer Class Members greater value than could be realized by proceeding to trial and recovering the maximum classwide statutory damage award, for the following reason.

Assuming that Plaintiffs could successfully certify a nationwide statutory damage class -- notwithstanding the Court's prior adverse ruling on this issue -- and assuming that Plaintiffs could prove that Trans Union's conduct was "willful" within the meaning of the statute, the maximum amount that Plaintiffs could be awarded at trial for a nationwide class of 190 million members would be a statutory damage award of $19 billion to $190 billion, which would far exceed Trans Union's total net worth.[3] Even if Trans Union was liquidated and all proceeds were somehow distributed to the nationwide class, each class member would receive only a *de minimis* cash award. As a result, the benefits available to class members under the proposed Settlement are superior to the benefits that could be recovered by going to trial.

---

[2] The proposed Settlement has a $20 million cash component, a guaranteed minimum of $20 million in in-kind settlement benefits (with no upper limit on the in-kind benefits), and $1.5 million for notice and administration costs, for a total minimum monetary value of $41.5 million.

[3] If Plaintiffs were awarded an amount equal to Trans Union's net worth, such an award may still be subject to a due process challenge.

### 2. Continued Litigation Would be Complex, Prolonged and Costly

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11:50, at 155 (4th ed. 2002). Originally commenced in 1998, the Actions consist of numerous complex cases that would likely continue against the Defendants for many more years. In the absence of a settlement, class members who have already waited for eight years, would have to wait years longer before any recovery is realized. Avoiding that unnecessary and unwarranted expenditure of resources and time will benefit all parties and the Court.

### 3. Settlement Class Counsel Have Endorsed the Proposed Settlement Only After Extensive Litigation and Settlement Negotiations

The Court should also consider the opinion of counsel as to the merits of the proposed Settlement. *See Isby*, 75 F.3d at 1200. Over the long course of their vigorous litigation of this matter, Plaintiffs' Counsel have analyzed the legal issues applicable to Plaintiffs' causes of action and reviewed evidence from Defendants and third parties. It is Settlement Class Counsel's informed opinion that, given the uncertainty and further substantial expense of pursuing the Actions through trial, the proposed Settlement is in the best interests of all Settlement Class Members.

At this juncture, however, the Court need not answer the ultimate question: Whether the proposed Settlement is fair, reasonable and adequate. At this stage, the Court is asked only to permit notice of the terms of the proposed Settlement to be sent to Settlement Class Members and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any expressed views by Settlement Class Members as to the fairness of the proposed Settlement and Settlement Class Counsel's request for an award of fees and expenses. 5 James Wm. Moore, *Moore's Federal Practice* §23.85[3], at 23-353 through 23-354 (3d ed. 2002). There is no doubt that the proposed

Settlement satisfies the standard for preliminary approval and notice of a fairness hearing should be given to Settlement Class Members.

### B. The Proposed Notice Program Meets the Requirements of Due Process and Rule 23

Plaintiffs also request approval of the method for providing notice to Settlement Class Members. While the Court has discretion as to the form and content of the notice, the notice must meet certain due process requirements. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172-77 (1974). The notice must be the best practicable, reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The notice program has been carefully thought out and is tailored to reach as many Settlement Class Members as practicable. The detailed Notice Plan is submitted herewith as Exhibit B to Plaintiffs' Motion. In summary, the proposed Notice Plan includes: broad-based published notice in consumer magazines and newspapers (Ex. C to the Motion); direct notice to individuals who receive file disclosures from Trans Union (Ex. E ), direct notice to individuals who request a copy of the Notice of Proposed Class Action Settlement (Ex. D); and notice through a dedicated website. Notices in the form of Ex. C will be published in a variety of major publications targeted to the general population. *See* Ex. B at pp.16-20. Publications have been selected, and exposure frequencies set within them that, in combination with individual direct notice, are calculated to achieve a combined net reach of 82.9% of credit consumers (*see* Ex. B at p.22). The published notices will advise Settlement Class Members that the Notice (Ex. D) and the Claim Form and Release (Ex. H) will be available on the dedicated site at www.tuclasssettlement.com (*see* Ex. F for a sample). In addition, there is a toll-free telephone number through which Settlement Class

Members may obtain additional information about the terms and conditions of the proposed Settlement, including any opt-out rights (*see* Ex. G for a sample script for the toll free number).

The proposed notice program is adequate because it provides a fair opportunity for Settlement Class Members to obtain full disclosure of the conditions of the proposed Settlement. The notices will advise Settlement Class Members of: the essential terms of the proposed Settlement; the procedures for requesting exclusion from the Settlement Class or objecting to the proposed Settlement; information regarding Plaintiffs' Counsel's fee request; methods for obtaining additional information; and specifics on the date, time and place of the Final Hearing. The Notice Plan is designed to provide the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. Settlement Class Counsel believe the proposed Notice Plan will fairly apprise Settlement Class Members of their rights with respect to the proposed Settlement and is the best notice practicable under the circumstances.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

In connection with the proposed Settlement, the parties have stipulated to the certification of a Plaintiff Settlement Class. *See* Ex. A at 7. A class may be certified if it satisfies all of the requirements of Rule 23(a) and one of the three subparagraphs of Rule 23(b).

The proposed Plaintiff Settlement Class satisfies all of the requirements of Rule 23(a). Its members are sufficiently numerous under Rule 23(a)(1) because, although the exact size of the Settlement Class cannot be determined at this time, it is estimated to include as many as 190 million consumers throughout the United States. The class claims satisfy Rule 23(a)(2), because they raise common questions of law and fact that stem from a "common nucleus of operative fact," (*see Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)), *i.e.*, whether Defendants violated the FCRA by improperly disclosing information about Settlement Class Members. Moreover, the United States Supreme Court noted that the common issues test is readily met in consumer cases.

*Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The claims of the proposed class representatives are also typical of those of the Class, satisfying Rule 23(a)(3), because their claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Plaintiffs' target marketing claims and firm offer claims are essentially grounded in the same law and similar facts. Both allege violations of the FCRA and the improper disclosure of information under that act. Finally, Plaintiffs are adequate to represent the Plaintiff Settlement Class because they have no claims antagonistic to those of other Settlement Class Members and their counsel are competent, experienced, and will (as already demonstrated) more than adequately protect the Settlement Class Members' interests. *See In re Anicom Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 5575, at *8 (N.D. Ill. Mar. 26, 2002).

The Plaintiff Settlement Class also meets the requirements of 23(b)(3). Common questions of law and fact predominate over individual questions and a class action will be superior to other available means of adjudication. *See, e.g., Tatz v. Nanophase Techs. Corp.*, 2003 U.S. Dist. LEXIS 9982, at *26 (N.D. Ill. June 12, 2003). With respect to superiority, the damages claimed by individual Class Members would be dwarfed by the costs of individual actions. *See In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). Further, most consumers have little or no ability to prosecute this type of litigation on an individual basis. *See, e.g. Nanophase Techs.*, 2003 U.S. Dist. LEXIS 9982, at *28. At this stage, there are no issues with respect to manageability. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Also, Defendants would provide significant injunctive relief in exchange for the class-wide release of the right to obtain further injunctive relief or punitive damages based on claims related to

distribution of target marketing lists and firm offer information and lists. The parties agreed that Rule 23(b)(2) would apply to the injunctive relief portion of the proposed Settlement, which is appropriate because Defendants' actions -- and the resulting injunctive relief -- are applicable to the class as a whole. *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 470 (7th Cir. 2004).

Hence, the Plaintiff Settlement Class satisfies all requirements for provisional certification.

## VII. CONCLUSION

Plaintiffs submit that the proposed Settlement is certainly within the range of possible approval and it warrants this Court's preliminary approval.

November 6, 2006

Respectfully submitted,

*/s/ William J. Doyle II / TRS*

Joy Ann Bull
William J. Doyle II
LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058

**Co-Lead Counsel for Plaintiffs**

Jon W. Borderud
THE BORDERUD LAW GROUP
11620 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Telephone: 310/207-2848

**Co-Lead Counsel for Plaintiffs**

Matthew Righetti
RIGHETTI WYNNE, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415/983-0900

**Co-Lead Counsel for Plaintiffs**

Terry Rose Saunders
Thomas A. Doyle
SAUNDERS & DOYLE
20 South Clark Street, Suite 1720
Chicago, IL 60603
Telephone: 312/551-0051

**Liaison Counsel for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I certify that, before 5 p.m. on November 6, 2006, I caused a copy of the foregoing document to be served using the Court's electronic filing system on all Counsel included in that system for this litigation. In addition, before 5 p.m. on November 6, 2006, I certify that I caused the document to be served on the Counsel listed below, by email and by regular mail.

Roger L. Longtin
DLA Piper
203 N. La Salle Street, Suite 1800
Chicago, IL 60601

Amy Lee Stewart
Rose Law Firm
120 East Fourth Street
Little Rock AR 72201

Micheal A. Caddell
Caddell & Chapman
1331 Lamar, Suite 1070
Houston TX 77010

Dawn Adams Wheelahan
650 Poydras Street, Suite 1550
New Orleans, Louisiana, 70130

                                                            /s Thomas A. Doyle

                                                           Thomas A. Doyle