**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re TRANS UNION CORP.
PRIVACY LITIGATION

_____

THIS DOCUMENT RELATES TO:

    ALL CASES


_____

**Lead Case No. 00 cv 4729
MDL Docket No. 1350
Judge Robert Gettleman
Magistrate Judge Michael T.
Mason**

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................1

    A.     Plaintiffs' Claims ........................................................................1

    B.     Procedural Background and Settlement Negotiations ...........................2

III.    THE PROPOSED SETTLEMENT AND RELEASE TERMS ........................................2

    A.     Definition of the Settlement Class. ...................................................4

    B.     Settlement Fund. .........................................................................4

        1.     Cy pres distribution for "no-internet" class members ...............................4

        2.     Notice and administration costs ........................................5

        3.     Post-Settlement Claims ..................................................5

        4.     Final Distribution of Fund .............................................5

    C.     In-Kind Relief. ...........................................................................6

    D.     Statute of Limitations. ..................................................................7

    E.     Releases. ...................................................................................8

    F.     Incentive Awards and Attorneys' Fees and Expenses. ..........................8

    G.     Class Certification. ......................................................................9

    H.     Disgorgement of Profits. ...............................................................9

    I.     Additional Provisions. ..................................................................9

IV.     PRELIMINARY APPROVAL SHOULD BE GRANTED.............................................10

    A.     A Class Action Settlement is Favored and Should be Preliminarily Approved if it Falls Within the Range of Reasonableness ........................................10

B.    The Court Should Grant Preliminary Approval Because the Settlement is Within the Range of Possible Approval ....................................................................... 12

1.    Factor One:  the Settlement is eminently fair when comparing the strength of Plaintiffs' case to the amount of Defendants' settlement offer ............ 13

2.    Factor Two:  Trial will likely be complex, lengthy, and costly. ............... 15

3.    Factor Three:  lack of opposition to Settlement among affected parties. ... 15

4.    Factor Four:  numerous competent counsel support approval of the settlement ............................................................................................. 15

5.    Factor Five:  the Settlement was proposed late in litigation and discovery was virtually complete .......................................................................... 16

V.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 ................................. 17

VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER .............................. 18

VII.  CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Albert v. Trans Union*,
    346 F.3d 734 (7th 2003) ........................................................................3

*Alliance To End Repression v. City of Chicago*,
    561 F. Supp. 537 (N.D. Ill. 1982) ......................................................10

*Allstate Ins. Co.*,
    400 F.3d 505 (7th Cir. 2005).............................................................17

*Andrews v. Trans Union*,
    917 So. 2d. 462 (La. App. 4 Cir., 8/17/05) ....................................2, 3, 4, 10

*Dalton v. Alston & Bird*,
    741 F. Supp. 157 (S.D. Ill. 1990)......................................................10

*De La Fuente v. Stokely-Van Camp., Inc.*,
    713 F.2d 225 (7th Cir. 1983).............................................................19

*Doe v. Guardian Life Ins. Co. of Am.*,
    145 F.R.D. 466 (N.D. Ill. 1992).........................................................20

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985).............................................................11

*Frey v. Trans Union, et al.*,
    Cause No. 798893, Superior Court of Orange Co. Cal. (1998) ....................2, 4, 10, 17

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982).............................................................10

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002).......................................................11

*Hispanics United of DuPage County v. Village of Addison*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ....................................................12

*Horowitz v. Pownall*,
    105 F.R.D. 615 (D. Md. 1985)...........................................................20

*In Re Trans Union*,
    211 F.R.D. 328 (N.D. Il. 2002) ...........................................................2

*In Re Trans Union,*
    326 F. Supp. 893 (N.D. II. 2004) ....................................................................3

*In Re Trans Union,*
    2005 U.S. Dist. Lexis 17548 (N.D. III. Aug. 17, 2005) ...................................3

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996)................................................................... 10, 11

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998)........................................................................19

*Martinelli v. Trans Union Corp.,*
    ...................................................................................................................2

*McHan v. Grandbouche,*
    99 F.R.D. 260 (D. Kan. 1983).......................................................................20

*Rosario v. Livaditis,*
    963 F.2d 1013 (7th Cir. 1992).......................................................................19

*Reynolds v. Beneficial Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002)................................................................... 11, 12

*Safeco Insurance v. Burr,*
    _____ U.S. _____, 127 S.Ct. 2201 (2007).................................................13

*Synfuel Techonologies, Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006).........................................................................11

## RULES

FED. R. CIV. P. 23 ..............................................................................2, 9, 10, 17, 19, 20

## SECONDARY SOURCE

MANUAL FOR COMPLEX LITIGATION § 1.46 (1981) ..................................................11

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002).......10

## I.    INTRODUCTION

After many months of arms-length negotiations, Plaintiffs (hereafter "Plaintiffs" or "Class Representatives") have reached an agreement with Trans Union Corp. ("Trans Union") and Acxiom Corporation to resolve this case.  Plaintiffs and Defendants now wish to commence the settlement approval process and seek entry of an order that grants preliminary approval of the "Settlement Agreement" attached hereto, certifies a provisional settlement class, approves the parties' proposed notice to the Class, and directs that notice be given to Class members as proposed.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs' Claims

In this class action, Plaintiffs assert causes of action on behalf of themselves and others similarly situated for violations of the Fair Credit Reporting Act ("FCRA").   In particular, Plaintiffs allege that Trans Union, a consumer reporting agency, engaged in two types of practices resulting in the disclosure of consumer information in violation of FCRA.

First, Plaintiffs allege Trans Union violated FCRA when it used consumer credit information for the purpose of generating target marketing lists containing the names and addresses of consumers who met certain financial or credit criteria.   Trans Union thereby disclosed consumers' credit information without having a "permissible purpose" for doing so under the FCRA.   Trans Union's target marketing database, the "List Master File" contained more than 190 million names from which Trans Union created target marketing lists.

Second, Plaintiffs allege Trans Union violated FCRA by providing its customers with lists of consumer names and addresses that Trans Union selected based on credit eligibility for making firm credit or insurance offers.   While FCRA allows a consumer reporting agency to

provide such reports, it places limitations on the information that can be made available. Plaintiffs allege that Trans Union disclosed more information than FCRA permits.

### B.    Procedural Background and Settlement Negotiations

 This coordinated proceeding includes fourteen related class actions (the "MDL Cases") filed against Trans Union in United States District Court.  The first MDL Case, *Martinelli v. Trans Union Corp.*, was commenced in California state court and removed to the Northern District of California in early 1999.   In 2000, the Judicial Panel on Multidistrict Litigation transferred *Martinelli* and the other MDL cases to this Court for all pre-trial proceedings. Additional cases were transferred in the years that followed.  In addition to the MDL cases, a class action styled *Frey v. Trans Union, et. al.,* Cause No. 798893, was filed in Orange County, California Superior Court in 1998 (the "*Frey Action*"), and a class action styled *Andrews v. Trans Union* LLC, Case No. 02-18553, was filed in the Civil District Court for the Parish of New Orleans, Louisiana in December, 2002 (the "*Andrews Action*"), and certified as a class action for Louisiana consumers.  The *Frey Action*, the *Andrews Action*, and the MDL Cases are collectively referred to herein as the "Actions."

Following transfer to this Court, Plaintiffs filed a Consolidated Complaint, which Defendants' moved to dismiss.  Defendants also moved, at that time, for an order that a nationwide FCRA class could not be certified under FRCP 23.  In September 2002, the Court granted Defendants' motion to dismiss in part, and dismissed Plaintiffs' declaratory and injunctive claims and state law claims for invasion of privacy and misappropriation.  *In Re Trans Union*, 211 F.R.D. 328 (N.D. Il. 2002).  The Court also struck Plaintiffs' claims for nominal damages and ruled that Plaintiffs' could not certify a national target marketing class seeking statutory damages of $100 to $1000 per class member under FCRA.   Plaintiffs then sought

appellate review of certain of these rulings, but the Seventh Circuit declined review and/or dismissed the appeal for lack of subject matter jurisdiction. *Albert v. Trans Union*, 346 F. 3d 734 (7th 2003). *See* Declaration of Christopher T. Micheletti In Support of Preliminary Approval ("Micheletti Decl.") ¶¶2-3, 18-19, Exh. 12.

Plaintiffs filed a Second Amended Class Action Complaint (the "Complaint") in November 2002, claiming violations of the FCRA, invasion of privacy, misappropriation, violation of California unfair competition statutes, and unjust enrichment, and seeking damages and equitable relief. Defendants again moved to dismiss, and the Court again granted the motion in part, dismissing with prejudice Plaintiffs' invasion of privacy, misappropriation, and unjust enrichment claims. *In Re Trans Union*, 326 F. Supp. 893 (N.D. Il. 2004). Significantly, Plaintiffs' FCRA and California unfair competition claims survived. *Id.* ¶20, Exh. 13.

During the time period 1999 through 2004 and beyond, Plaintiffs engaged in extensive merits and class-related discovery. *See* § II B, *infra*. Plaintiffs moved to certify various classes in 2004, and in August 2005, this Court denied the motion in part, but did certify an Illinois "firm offer" class. *In Re Trans Union*, 2005 U. S. Dist. Lexis 17548 (N.D. Ill. Aug. 17, 2005). Micheletti Decl. ¶21, Exh. 14. On the same day as the Court in this action certified the Illinois Firm Offer Class, the Louisiana Court of Appeals affirmed certification of the Louisiana class. *Andrews v. Trans Union*, 917 So. 2d. 462 (La. App. 4 Cir., 8/17/05).

In September, 2005, the Court referred the matter to the Honorable Michael T. Mason for a settlement conference (Rec. Doc. 188). Following referral, the parties engaged in settlement conferences resulting in a March 2006 agreement in principle to settle (the "First Proposed Settlement"). Following additional negotiations, MDL counsel filed a motion for preliminary approval of the First Proposed Settlement in November 2006. Louisiana Plaintiffs filed an

Objection, and the First Settlement was withdrawn at the Court's suggestion. Louisiana Plaintiffs then filed additional briefing in response to Magistrate Judge Mason's request.

On September 28, 2007, MDL Counsel moved for preliminary approval of a Second Proposed Settlement, to which Louisiana and Texas Counsel objected. In January 2008, Magistrate Judge Mason issued a Report and Recommendation recommending that the Second Proposed Settlement be rejected. On March 4, 2008, Judge Gettleman overruled Trans Union's and MDL Counsel's objections to the Magistrate Judge's recommendation and rejected the Second Proposed Settlement. At the March 4 hearing, Judge Gettleman stated that Louisiana and Texas Counsel should be included in any further settlement negotiations.

Since then, the Court has assisted Louisiana Counsel, Texas Counsel and MDL Counsel in continuing negotiations with Trans Union. These negotiations resulted in an agreement in principle to settle reached on April 24, 2008, and the execution of the final Settlement Agreement on May 20, 2008.

## III.    THE PROPOSED SETTLEMENT AND RELEASE TERMS

The principal terms of the Stipulation of Settlement (the "Settlement Agreement"), which is attached hereto as Exhibit "A," are set forth below.

**A.    Definition of the Settlement Class.**  The "Settlement Class" consists of all persons who had an open credit account or open line of credit from a credit grantor located in the United States at any time during the period of January 1, 1987, to the date of preliminary approval. The class shall include, without limitation, any classes asserted or certified in *Andrews* and *Frey*.

**B.    Settlement Fund.**  Trans Union will create a cash settlement Fund in the amount of $75,000,000 (the "Fund").

1.      **Cy pres distribution for "no-internet" class members**

An initial distribution of $150,000 will be made from the Fund to one or more qualified 501(c)(3) entities jointly chosen by Trans Union and Plaintiffs and approved by the Court.  This distribution is in consideration of class members who do not have access to the internet.

2.      **Notice and administration costs**

Costs of notice and administration shall be paid from the Fund.

3.      **Post-Settlement Claims**

The balance of the Fund shall be deposited in an appropriate interest-bearing account, with interest accruing to the Fund, and the Fund to bear any taxes and administration costs thereon.

Trans Union may obtain reimbursement from the Settlement Fund for amounts it pays to satisfy settlements or judgments arising from lawsuits asserting Post-Settlement Claims (including any plaintiffs' attorneys' fees and costs, but not including any defense costs).  A Post-Settlement Claim is a claim by a Settlement Class Member against a Defendant that is currently pending (excluding those of Plaintiffs) or that is asserted after the date of this Stipulation relating to Defendants' alleged distribution of Target Marketing lists or related information or Firm Offer lists or related information and arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law.  The term "Post-Settlement Claim" shall include, without limitation, claims under any legal or equitable theory, whether asserted in the form of a complaint filed in state or federal court, a demand for arbitration, an informal demand letter, or otherwise.

On a quarterly basis, Trans Union shall report on lawsuits filed asserting these claims to a Committee comprised of representatives chosen equally by Trans Union and Settlement Class

Counsel.  Such quarterly reports shall include (a) the name of each Post-Settlement Claimant receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (b) the amount paid to each such Post-Settlement Claimant, (c) the name of each law firm or attorney receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (d) the amount paid to each such law firm or attorney, (e) the date on which each payment was made, (f) a brief description of the nature of the claim that was the basis for the payment (g) a copy of any complaint, demand for arbitration, informal demand letter or similar document in which the Post-Settlement Claims at issue were asserted; and (h) any agreement memorializing the resolution of the Post-Settlement Claims.  Settlement Class Counsel shall be entitled to request additional information from Trans Union as they deem necessary and appropriate to substantiate the propriety of reimbursement payments, and Trans Union shall not unreasonably withhold any such information requested.  Any dispute about the propriety of a reimbursement received by Trans Union shall be resolved by the Court.  In the event the Court finds any such reimbursement amount improper, Trans Union shall return such amount, plus interest at the same rate earned on the Settlement Fund, to the Settlement Fund within 10 business days.

In the event that any Post-Settlement Claims remain pending at the end of the limitations period, the Committee will in good faith estimate an amount to be retained in the Fund in respect of any future settlement or judgment on such Post-Settlement Claims.

### 4.    Final Distribution of Fund

After expiration of the limitations period, if any unexpended money remains in the Fund other than money being reserved in respect of pending Post-Settlement Claims, that money may be made available to class members through an administrative claims process.  Settlement Class

members will have the opportunity to register to receive a pro-rata share of the amount remaining in the Fund. After analysis and recommendation by Plaintiffs' counsel, the Court will determine if the amount remaining in the Fund is sufficient for a pro-rata distribution to registered class members. If not, the amount remaining in the Fund will be distributed to 501(c)(3) entities recommended by the parties and approved by the Court.

      **C.**     **In-Kind Relief.** Trans Union shall provide six months of the Trans Union credit monitoring service, having a retail value of $59.75, to all Settlement Class members who request it. The process for requesting this service shall be as follows: Commencing on the first day on which class notice is disseminated and continuing through the fourteenth day after the Final Fairness Hearing, Settlement Class Members shall be able to register at the settlement website. Upon Ultimate Approval, the Claims Administrator will notify Settlement Class Members who registered, at the email address they provided, that Basic In-Kind Relief is available and can be claimed at a designated website. The Claims Administrator may reasonably provide this notice in stages so as to avoid overloading the website's capacity to provide Basic In-Kind Relief. The services comprising Basic In-Kind Relief may be initiated in this fashion by Settlement Class Members for six months following Ultimate Approval. The six months of credit monitoring service provided in this Section shall be offered by Trans Union in addition to any other credit monitoring or other service to which Settlement Class Members are entitled, either by purchase or for any other reason. A Settlement Class Member claiming Basic In-Kind Relief shall not be required to provide any form of payment, such as credit card, to obtain Basic In-Kind Relief, and shall not be required to contact Trans Union in order to discontinue the services provided as Basic In-Kind Relief. Basic In-Kind Relief services shall be automatically discontinued after six months unless the Settlement Class Member affirmatively requests that the Basic In-Kind Relief,

or any portion thereof, continue at the Settlement Class Member's own expense. This service shall be offered to all Settlement Class members in consideration for the release of their procedural rights to bring Post-Settlement Claims as class, joined, or aggregated actions and for their agreement to entry of an injunction enjoining the pursuit of Post-Settlement Claims as class, joined, or aggregated actions (as provided in Paragraph 4, above). All Settlement Class members, whether or not they actually request the service offered in this Section 6(a), shall release such procedural rights.

Simultaneously with offering the in-kind relief described in Section 6(a), Trans Union shall offer an alternative enhanced set of services that Settlement Class members can select in exchange for a full release of their claims. This enhanced set of services shall consist of nine months of Trans Union credit monitoring, a suite of insurance scores, and Trans Union's mortgage simulator service; the aggregate retail value of these services totals $115.50.

**D.      Statute of Limitations.** For all class members whose claims were not time-barred as of January 1, 1987, Trans Union agrees not to raise a limitations defense to any Post-Settlement Claims commenced within two years of the date of Final Approval that involve causes of action pending in MDL No. 1350 as of the date of the Settlement.

**E.      Releases.**   No damages claims are released except the damages claims of the named plaintiffs and such settlement class members who either (a) claim the additional enhanced in-kind relief as described below or (b) receive cash amounts remaining in the Fund as described below; all other damages claims are dismissed without prejudice. Procedural rights to bring Post-Settlement Claims in the form of a class, joined, or aggregated action are released and will be enjoined. Claims for injunctive and declaratory relief are released.

**F.     Incentive Awards and Attorneys' Fees and Expenses.**   Attorneys' fees and litigation expenses shall be paid out of the Settlement Fund.   Trans Union shall agree not to oppose any fee award up to 25% of the Fund.   The amount of attorneys' fees ultimately awarded shall be in the sole discretion of the Court, and shall not affect the validity or finality of the Settlement.   Incentive awards to the Class Representatives shall be paid from the Fund, as approved by the Court and in recognition of the services to the Class provided by them, in an amount not to exceed $3,750.

**G.     Class Certification.**   The parties shall seek certification of the Settlement Class defined above pursuant to Rule 23(b)(1)(A), with enhanced notice and a full opportunity to object but without the right to opt out from release of their procedural rights only.   All class members' damages claims shall be dismissed without prejudice, except for the damages claims of the following categories of class members (which will be dismissed with prejudice): (1) the Class Representatives, (2) those class members who opt for any additional in-kind relief offered by Trans Union pursuant to Section 6(b), and (3) those class members who receive cash distributions from amounts remaining in the Fund following the expiration of the limitations period.   Claims for injunctive relief shall be dismissed with prejudice, and an injunction shall be entered enjoining all class members from bringing any Post-Settlement Claims in the form of a class, joined, or aggregated action.

**H.     Disgorgement of Profits.**   Trans Union represents—and Plaintiffs acknowledge—that the amount set forth in this Stipulation as the Settlement Fund represents full disgorgement of Trans Union's relevant profits and is intended for restitution to affected Settlement Class Members and for payment or reimbursement of legal and administrative expenses incurred by them.

I.       **Additional Provisions.**  All counsel of record in all constituent actions of MDL

No. 1350, and all counsel of record in *Andrews* and *Frey*, represent that they have no other

individual clients who have engaged them to pursue the target marketing or prescreening claims

brought in this action against Trans Union, and agree that they will take no step to solicit, either

on their own behalf or on behalf of any other attorney, additional clients to pursue such claims.

## IV.     PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.       A Class Action Settlement is Favored and Should be Preliminarily Approved if it Falls Within the Range of Reasonableness

Federal law recognizes an overriding public policy in favor of settlement of class actions.

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Alliance To End Repression v. City of Chicago*,

561 F. Supp. 537, 548 (N.D. Ill. 1982); *see also* Alba Conte & Herbert Newberg, Newberg on

Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by

the courts and favored by public policy.").

Federal Rule of Civil Procedure 23 requires court review of the resolution of a class

action such as this one.  In particular, the Rule provides that "[t]he claims, issues, or defenses of

a certified class may be settled, voluntarily dismissed, or compromised only with the court's

approval."  FED. R. CIV. P. 23(e).  Court approval is required to ensure that the parties gave

adequate consideration to the rights of absent class members during settlement negotiations.  *See*

*Dalton v. Alston & Bird*, 741 F. Supp. 157, 160 (S.D. Ill. 1990) ("A court's role in approving a

class action settlement is to insure that the settlement is fair to the absent class members.").

The approval of a class action settlement is committed to the Court's discretion.  *Isby*,

75 F.3d at 1196.  The first step of the approval process is a preliminary approval hearing to

determine whether the proposed settlement is "within the range of possible approval."

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  The purpose of the preliminary

approval hearing is to ascertain whether any reason exists to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Id.* (citing Manual for Complex Litigation s 1.46, at 53-55 (West 1981)). If the Court finds that a proposed settlement is "within the range of possible approval," the next step is the fairness hearing, at which the Court will "adduce all information necessary for the judge to rule intelligently on whether the proposed settlement is 'fair, reasonable, and adequate.'" *Id.*

In order to evaluate the fairness of a settlement, a district court must consider:

[1]    the strength of plaintiffs' case compared to the amount of defendants' settlement offer,

[2]    an assessment of the likely complexity, length and expense of the litigation,

[3]    an evaluation of the amount of opposition to settlement among affected parties,

[4]    the opinion of competent counsel, and

[5]    the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006), *citing Isby*, 75 F.3d at 1199. Other factors that have been recognized include "the defendants' ability to pay," and "the presence of collusion". *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.* 212 F.R.D. 400, 409 (E.D. Wis. 2002) *citing EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

In conducting this analysis, the Court should begin by quantifying "the net expected value of continued litigation to the class." *Synfuel* at 653, *citing Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir.2002). This requires that the Court "estimate the range of possible outcomes and ascribe a probability to each point on the range." *Synfuel* at 653, *citing*

*Reynolds* at 285.  The Seventh Circuit recognizes that this analysis cannot be conducted with a high degree of precision, but rather involves the court reviewing evidence that enables it to estimate possible outcomes and arrive at a "ballpark valuation."  *Id.*

When a settlement is a result of arm's length negotiations, and plaintiffs' counsel is experienced and has engaged in adequate discovery necessary to represent the class effectively, a strong initial presumption of fairness attaches to the proposed settlement.  *Hispanics United of DuPage County v. Village of Addison*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997).

### B. The Court Should Grant Preliminary Approval Because the Settlement is Within the Range of Possible Approval

The consideration provided under the Settlement is substantial.  Plaintiffs negotiated for meaningful in-kind relief, a Fund of $75 million, and a settlement structure whereby the class members release procedural rights only (the right to aggregate claims or participate in a class action) and release their substantive claims only if they affirmatively opt-in and expressly agree to release them.  Furthermore, Defendants' liability for their conduct at issue in this litigation is not limited or capped in any way by this settlement.

The $75 million amount of the Fund, which is the *minimum* Defendants will pay, was arrived at after two earlier proposed settlements were challenged and denied preliminary approval, and after additional extensive negotiations between Defendants and Louisiana, Texas and MDL Plaintiffs' counsel.  Furthermore, it represents full disgorgement of Trans Union's relevant profits.

Additionally, the in-kind relief is valuable to the Settlement Class and costly to Trans Union.  Even if the cost to Trans Union of providing this in-kind relief is only a small percentage of the retail value ($59.75 per person for the basic credit monitoring service, and $115.50 for the enhanced service), the cost to Trans Union would still be substantial.  Because Trans Union gets

12

no credit against the Fund for the cost of providing in-kind relief, this represents a significant cost to Trans Union above and beyond the $75 million that Trans Union is paying into the Fund.

As further described below, the $75 million Fund, and the other consideration, were agreed to after considering all key factors, including the Defendants' net worth, the Defendants' ability to pay any judgment that might be entered against them, the range of judgment amounts that would likely be obtained by Plaintiffs, the risk that a multi-billion dollar judgment would be remitted by the District Court or the Court of Appeals, and the time that would be required to litigate this case through trial and appeal.

1.    **Factor One:  the Settlement is eminently fair when comparing the strength of Plaintiffs' case to the amount of Defendants' settlement offer**

Here, the $75 million Fund (and other significant relief included in the Settlement) is reasonable in light of the strengths and weaknesses of Plaintiffs' case.  Plaintiffs allege that Trans Union committed FCRA violations when it disclosed Settlement Class Members' credit information in its target marketing lists.  While Plaintiffs have performed extensive discovery and gathered evidence substantiating their claims, Defendants have denied (and would continue to deny) any wrongdoing.  Moreover, to obtain statutory damages, Plaintiffs must prove the commission of "willful" FCRA violations.  Defendants will vigorously contest "willfulness" by arguing, *inter alia*, that the FTC and D.C. Circuit Court of Appeals did not finally rule on the propriety of its conduct until, respectively, 2000 and 2001—which was after Trans Union discontinued most if not all of the challenged conduct; and, that therefore its conduct could not be considered "reckless" under *Safeco Insurance v. Burr*, ___ U.S. ___, 127 S.Ct. 2201 (2007). While Plaintiffs believe they could ultimately demonstrate willfulness, they are certainly cognizant of the risks involved in proving such a claim.

To prevail in this litigation, Plaintiffs must ultimately certify a class over Defendants' objection. Given the Court's denial of two prior motions to certify a nationwide class of target marketing claims, Plaintiffs would have to convince the Court to reconsider these prior orders denying class certification. Due to recent developments in Seventh Circuit case law, Plaintiffs believe they may be able to certify a nationwide class. Nevertheless, the risk still exists that the Court would not certify a nationwide class.

As noted above, when analyzing the strengths of the Plaintiffs' case, the Court should consider the net expected value of continued litigation and the probability of the range of possible outcomes. Here (setting aside actual damages, punitive damages, and attorneys' fees), the statutory damage range of $100 to $1000, when multiplied by the estimated 190 million class members, yields damages of $19 billion to $190 billion. These figures, however, have little relevance to the "net expected value of continued litigation" or the "range of possible outcomes" for two principal reasons: (1) a multi-billion dollar verdict could be remitted by the Court or by the Seventh Circuit to an amount more closely correlated to the damages suffered by the Plaintiffs or to the benefit derived by the Defendants as a result of the conduct at issue; and (2) even if such a verdict was not remitted, Defendants are without the financial wherewithal to pay a multi-billion dollar verdict.

Moreover, it is critical to note that Plaintiffs' substantive claims are not being released by the Settlement. All class members who do not affirmatively choose to release their claims in exchange for the enhanced in-kind relief automatically maintain their substantive right to sue Trans Union (in a non-aggregated, non-class action lawsuit) for the same conduct at issue in this litigation, and there is no limit on Trans Union's liability. When scrutinizing the Settlement, it is important to realize that not all of the substantive claims are being released, and thus the

14

consideration provided in the Settlement need not be as great as if the Settlement involved the release of all claims.

Without question, the first factor, the strength of Plaintiffs' case compared to the consideration provided under the Settlement, weighs in favor of preliminary approval.

2.      **Factor Two:  Trial will likely be complex, lengthy, and costly.**

Given the high stakes nature of this case, continued litigation (up to and including trial and any appeals) will be complex, lengthy and costly.  Defendants deny that their conduct violated FCRA, deny that any violations were willful, deny that this case should be certified (for litigation purposes), as well as assert other defenses to Plaintiffs' claims.  Furthermore, this case involves novel issues of law due to the size of the class, the annihilative statutory damages, constitutional issues regarding relation of damages to harm suffered, and issues regarding collection of a judgment, and possible bankruptcy of the Defendants.  Accordingly, the second factor, an assessment of the likely complexity, length, and expense of the litigation, also weighs in favor of preliminary approval.

3.      **Factor Three:   lack of opposition to Settlement among affected parties.**

At the fairness hearing, the Court will consider any objections.   At this preliminary approval stage, however, it is noteworthy that although there was opposition to the two prior settlements that were proposed, the current settlement is unopposed and is supported by the numerous parties who have had their cases transferred to this MDL proceeding.

4.      **Factor Four:   numerous competent counsel support approval of the settlement**

This Settlement is the product of more than two years of arm's-length negotiations among counsel experienced in class action litigation.  The hard-fought negotiations, assisted by

Magistrate Judge Mason, resulting in the instant settlement, follows two previously rejected settlement agreements and eight years of litigation.   Plaintiffs' counsel have obtained and analyzed ample evidence and dedicated significant time and resources to analyzing the strengths and weaknesses of the case, and have determined that the proposed Settlement is in the best interests of all Settlement Class members given: (1) the high value of the consideration provided by the settlement, (2) the limited nature of the release, and (3) the uncertainty and further substantial expense of pursuing the Actions through trial and appeal.

5.      **Factor Five:  the Settlement was proposed late in litigation and discovery was virtually complete**

The parties have engaged in extensive discovery in the nearly ten years since this litigation commenced.   From 1999 through 2002, Plaintiffs' counsel reviewed approximately one-quarter to one-half million pages of Trans Union documents, from which they culled 40,000 pages for further analysis and coding.   Micheletti Decl. ¶¶5-13, Exhs. 1-10.   In connection with these productions, Plaintiffs' counsel engaged in extensive negotiations (including dozens of written communications and telephone conversations) over a period of many months in an effort to ensure Trans Union's compliance with the discovery requests and forthright production of documents.   *Id.*.  Louisiana Plaintiffs also conducted extensive discovery in connection with certification of the Louisiana class, obtaining and analyzing more than 40,000 documents, before class certification of the Louisiana class was granted and affirmed.

In addition to document and written discovery, Plaintiffs deposed Trans Union personnel regarding the information in Trans Union's target marketing database, target marketing list production, and the disclosure of Plaintiffs' identifying information in target marketing lists.   In addition to conducting these and other depositions, Plaintiffs' counsel has reviewed multiple

depositions and analyzed thousands of pages of hearing transcripts generated in connection with related proceedings before the FTC.  *Id.* ¶¶8, 9.

Document and other discovery taken in the *Frey* California case, was also coordinated, accessed and utilized in these proceedings.  *Id.* ¶17.  Plaintiffs also successfully pursued contested third party discovery against Trans Union's parent company, The Marmon Group, pursued and obtained thousands of pages of documents from defendant Acxiom, and engaged in extensive class certification-related discovery in connection with its litigated class motion decided in 2005.  *Id.* ¶¶15, 21.

The above summary, in conjunction with the extensive motion practice outlined above in section II B, make it clear that the fifth factor, the stage of the proceedings and the amount of discovery completed at the time of settlement, strongly favors approval.

## V.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23

Federal Rule of Civil Procedure Rule 23 does not require the Court to provide individual notice to the class in 23(b)(1) or (b)(2) class actions.  FED. R. CIV. P. 23(c)(2)(A); *see also In re Allstate Ins. Co.*, 400 F.3d 505, 506-07 (7th Cir. 2005) (noting that 23(b)(2) class action does not require giving class members notice of the suit and a chance to opt out of it and bring their own, individual suits).  Nonetheless, the Court may direct notice to the class when appropriate.  FED. R. CIV. P. 23(c)(2)(A).

Given the size of the Settlement Class, the extensive notice here is designed to inform the greatest practicable number of Class Members, thereby maximizing the opportunity for Settlement Class members to review and understand the Settlement, and to respond appropriately if they so choose.  *See* Affidavit of Gina M. Intrepido, Vice-President and Media Director of Hilsoft Notifications (the "Hilsoft Affidavit").  To effectuate this goal, Hilsoft designed a multi-

17

pronged notification effort that includes individual mailings, published notices in multiple magazines and newspapers, internet banner notices, press releases, radio public service announcements, and broadcast advertising on national television. *Id.* at ¶¶5-9, 22-43. In addition, a neutral information website will be established where class members can obtain additional information about the case. *Id.* at ¶33.

Hilsoft estimates that the publication and television effort will reach approximately 86.5% of adults on average 4.3 times each. *Id.* At ¶6, 36, Ex. 1, p. 8, 12-14. *In* addition to the reach of the published and televised notices, the notice program will reach an additional percentage of the class members (which has not been quantified) through: (1) publications targeting those class members living in U.S. territories and possessions, as well as those serving in the military; (2) the internet banner notices (which will be displayed on popular websites); (3) the press releases (which will be published by various print and internet media); (4) the radio public service announcements (which will be broadcast by various radio stations); (5) the informational website (which will be located via various search engines by class members who search for topics related to the settlement), and (6) an estimated more than one million summary notices sent out by Trans Union in its credit file disclosures made during the notice period.

The costs of notice will be paid out of the Settlement Fund. Plaintiffs have endeavored to secure the most efficient notice program possible, taking into consideration the desire to reach a broad cross-section of class members while not spending an inappropriate amount of the Fund on notice. The estimated cost of the published notice is approximately $5.2 million.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

The parties have stipulated to the certification of a Settlement Class in connection with the proposed settlement. There are four prerequisites to a class action under Federal Rule of

Civil Procedure 23(a): numerosity, commonality, typicality, and fair and adequate representation. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Once these four prerequisites are satisfied, the potential class must also satisfy at least one provision of Rule 23(b). *Id.*

The proposed Settlement Class satisfies all of Rule 23(a)'s requirements. The Settlement Class, which includes virtually every adult in the United States, easily meets the numerosity requirement. Commonality is also satisfied since all class members pursue the common issue of whether Trans Union violated FCRA when it improperly disclosed information about Settlement Class members. *See Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) (holding that the commonality required is satisfied when the class claims stem from a common nucleus of operative facts). Typicality, closely related to commonality, is satisfied because Plaintiffs' claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members [Plaintiffs'] claims are based on the same legal theory"– here, Trans Union's improper disclosure of information under FCRA. *See id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). Finally, Plaintiffs constitute adequate class representatives as they have no claims antagonistic to other Settlement Class members. Likewise, class counsel is competent, experienced, and has more than adequately protected Class Member's interests.

The Plaintiff Settlement Class is also appropriate for certification under 23(b)(1)(A) because the class members claims are homogenous and the Settlement does not involve money damages. Here, without exception, the Settlement Class members have "homogeneous, cohesive interests" because (1) the conduct toward every Class Member was identical and (2) no substantive right is to be released in the Settlement—all individual damages claims are preserved. That is, quite unique to this Settlement, "no individual issues exist," which is the very

circumstance federal courts require for the application of Rule 23(b)(1)(A). *See Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992) (denying class certification because "numerous factual issues unique to each plaintiff would have to be addressed"); *Horowitz v. Pownall*, 105 F.R.D. 615, 618 (D. Md. 1985*); McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D. Kan. 1983). In other cases pled under FCRA, and in class settlements that certify and release damages claims, while plaintiffs are frequently the victims of similar circumstances, such circumstances cannot be characterized as "homogeneous."

Trans Union's conduct was identical with respect to each Settlement Class member: disclosure of Settlement Class members' private credit information for impermissible target marketing purposes. Further, as noted above, the proposed settlement identically provides to each Settlement Class member the right to preserve and pursue his or her damages claims, while still receiving a benefit for release of solely procedural rights—it is this which gives homogeneity and cohesiveness to the class.

In addition, the second defining element of Rule 23(b)(1)(A)—no pursuit of individual damages claims—is easily met. This settlement is unique in that it requires a dismissal, *without prejudice*, of all individual-damages claims. Given that these individual damages claims are wholly preserved from a limitations perspective, it is as if they had never been pursued. As such, the requirement that the Class Members "are not [any longer] pursuing individual damages claims," is satisfied.

## VII.   CONCLUSION

Based on foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval of Proposed Settlement, provisionally certify the Class as defined herein, approve the parties' proposed Notice to the Class and direct that Notice be

disseminated to the Class as proposed, and schedule a hearing for final approval of Plaintiffs'

Counsel's fee application and Plaintiffs' proposed incentive payments.

DATED: May 20, 2008.

Respectfully submitted,

By:    /s/  Jon W. Borderud
Jon W. Borderud
The Borderud Law Group
11620 Wilshire Blvd., Suite 400
Los Angeles CA 90025
Telephone:  (310) 207-2848
Fax:  (310) 207-2748

By:    /s/  Joy Ann Bull
Joy Ann Bull
Coughlin Stoia Geller
Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  (619) 231-1058
Fax:  (619) 231-7423

By:    /s/  Matthew Righetti
Matthew Righetti
Righetti Law Firm
456 Montgomery Street
Suite 1400
San Francisco CA 94104
Telephone:  (415) 983-0900

Settlement Class Counsel and
Co-Lead Counsel for the MDL
Plaintiffs

By:    /s/  Thomas A. Doyle
Terry Rose Saunders
Thomas A. Doyle
Saunders & Doyle
20 South Clark Street, Suite 1720
Chicago IL 60603
Telephone:  (312) 551-0051
Fax:  (312) 551-4467

Liaison Counsel for the MDL
Plaintiffs

By:    /s/  Dawn Adams Wheelahan
Dawn Adams Wheelahan
5528 Loyola Ave.
New Orleans LA 70115
Telephone:  (512) 689-1153
Fax:  (512) 628-9149

Settlement Class Counsel and
Counsel for Yvonne and Robert
Morse, Mark Andrews and the
Certified Louisiana Class

By:    /s/  Michael A. Caddell
Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
Caddell & Chapman
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Settlement Class Counsel and
Counsel for Plaintiff, Donald
Jowers

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a copy of the foregoing has been filed on the Court's ECF system and thereby served on all counsel of record, this 20th day of May, 2008.


　/s/  Cory S. Fein　　　　　
Cory S. Fein