# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | Lead Case No. 000V4729 |
| | MDL Docket No. 1350 |
| This Document Relates To: | Judge Robert W. Gettleman |
| | Magistrate Judge Michael T. Mason |
| ALL ACTIONS. | |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated as of May 20, 2008 ("Stipulation"), is made and entered into by and among the following Settling Parties to the Actions, as those terms are defined herein:[1] (i) Settlement Class Representative Plaintiffs, on behalf of themselves and each of the Settlement Class Members, by and through Settlement Class Counsel; and (ii) the Defendants, by and through their counsel of record in the Actions. This Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all released rights and claims, as set forth below, subject to the terms and conditions set forth herein.

## I.     THE ACTIONS

The following cases were filed by consumers in various U.S. District Courts and were subsequently transferred to the United States District Court for the Northern District of Illinois for all pretrial purposes pursuant to transfer orders from the Judicial Panel on Multidistrict Litigation ("MDL Cases"):

---

[1]     As used in this Stipulation, capitalized terms shall have the meanings and definitions set forth in Section IV hereof.

**IN RE TRANS UNION CORPORATION PRIVACY LITIGATION**
**MDL 1350, MASTER CASE NO. 00-CV-4729**

| | Abbreviated Case Name | N.D. Ill Case Number | Filed In/Transferred From |
|---|---|---|---|
| (a) | *Gogerty v. Trans Union* | 00-CV- 1665 | N.D. Illinois |
| (b) | *Payne v. Trans Union* | 00-CV-3292 | N.D. Illinois |
| (c) | *Comstock v. Trans Union* | 00-CV-4730 | D. Arizona |
| (d) | *Martinelli v. Trans Union* | 00-CV-4731 | N.D. California |
| (e) | *Turner v. Trans Union* | 00-CV-4732 | S.D. Illinois |
| (f) | *Woods v. Trans Union* | 00-CV-4733 | S.D. Illinois |
| (g) | *Winkelmann v. Trans Union* | 00-CV-4734 | D. Nebraska |
| (h) | *Feige v. Trans Union* | 00-CV-4735 | S.D. New York |
| (i) | *Rozenblitt v. Trans Union* | 00-CV-4736 | E.D. Pennsylvania |
| (j) | *Kearley v. Trans Union* | 00-CV-5468 | M.D. Alabama |
| (k) | *Wayne v. Trans Union* | 00-CV-5682 | C.D. California |
| (1) | *Stein v. Trans Union* | 00-CV-7780 00-CV-8096 | S.D. California |
| (m) | *Morse v. Trans Union* | 05-CV-831 | E.D. Louisiana |
| (n) | *Jowers v. Trans Union* | 06-CV-3074 | E.D. Texas |

The MDL Cases have all been consolidated for all pretrial purposes by and through the Final Order of Consolidation and Pretrial Order No. 1, entered by the Court on November 28, 2000.

In addition to the MDL Cases, a case was filed in the Superior Court of California, County of Orange on or about August 31, 1998, entitled *Frey v. Trans Union*, et al., Case No. 798893 ("Frey Action"). Another case was filed in the Civil District Court for the Parish of

Orleans, Louisiana on or about December 2, 2002, entitled *Andrews v. Trans Union LLC*, Case No. 02-18553 ("Andrews Action").

## II.  DEFENDANTS DENY ANY WRONGDOING OR LIABILITY

Defendants have denied, and continue to deny, each and every claim and allegation of wrongdoing that has been alleged by Plaintiffs in the Actions. Defendants also have denied, and continue to deny, inter alia, any and all allegations that Plaintiffs or Settlement Class Members have suffered any damage whatsoever, have been harmed in any way, or are entitled to any relief as a result of any conduct on the part of Defendants, or either of them, as alleged by Plaintiffs in the Actions.

Nevertheless, Defendants have concluded that further litigation will entail risks, will likely be protracted and expensive with uncertain results, that settlement of the Actions is therefore advisable to permit the operation of the Defendants' businesses without further litigation expenses and the distraction of executive personnel, and that it is therefore desirable and prudent that the Actions between Plaintiffs, Settlement Class Members, and Defendants be fully and finally resolved and settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.  BENEFITS OF SETTLING THE ACTIONS

Settlement Class Representative Plaintiffs believe that the claims asserted by Plaintiffs in the Actions have merit and that there is evidence to support their claims. Settlement Class Representative Plaintiffs, however, recognize and acknowledge the expense and length of continued litigation and legal proceedings necessary to prosecute the Actions against Defendants through trial and through any appeals. Settlement Class Representative Plaintiffs also recognize and have taken into account the uncertain outcome and risks associated with litigation in general, and the Actions in particular, as well as the difficulties and delays inherent in any such litigation.

Settlement Class Representative Plaintiffs are also mindful of the potential problems of proof and the possible defenses to the unlawful conduct alleged by Plaintiffs in the Actions, as well as the remedies they seek. As a result, Settlement Class Representative Plaintiffs believe that the Settlement set forth in this Stipulation provides substantial benefits to Settlement Class Members, secures certain consideration and retains important individual rights for Settlement Class Members. Settlement Class Representative Plaintiffs and Settlement Class Counsel have therefore determined that the Settlement, as set forth in this Stipulation, is fair, reasonable, adequate and in the best interests of the Plaintiff Settlement Class.

## IV. TERMS OF THE SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED to, by and among the Settlement Class Representative Plaintiffs (for themselves, Plaintiffs, and all Settlement Class Members) and the Defendants, for themselves, by and through their respective counsel of record, that the Actions shall be finally and fully compromised, settled and released, the Actions shall be dismissed as to all Settling Parties, and the claims of Settling Parties shall be released, subject to the terms and conditions of this Stipulation, and subject to the Final Approval Order approving the Stipulation becoming "Final" as defined herein.

### 1. Definitions

As used in this Stipulation, the following terms shall have the following definitions and meanings:

1.1 "Actions" means the MDL Actions, the Andrews Action, and the Frey Action, as defined herein.

1.2 "Acxiom" means defendant Acxiom Corporation.

1.3 "Aggregated Action" shall mean any action in which two or more individual plaintiffs assert claims relating to the same or similar alleged conduct.

1.4    "Andrews Action" means the action filed in the Civil District Court for the Parish of Orleans, Louisiana on or about December 2, 2002, entitled *Andrews v. Trans Union LLC*, Case No. 02-18553.

1.5    "Basic In-Kind Relief" means the relief being provided by Trans Union pursuant to the Stipulation as set forth in ¶2.2(a) herein.

1.6    "Claims Administrator" means Epiq Systems Inc. or such other entity agreed by the parties and authorized by the Court to process claims and to undertake other tasks as set forth in this Stipulation.

1.7    "Class Action" shall mean an action brought by one or more individual plaintiffs on behalf of a class of similarly situated persons under any applicable state or federal statute or rule, whether certified or uncertified.

1.8    "Court" means the United States District Court for the Northern District of Illinois, and includes the MDL Actions assigned to the Honorable Robert W. Gettleman and the matters and issues referred to the Honorable Michael T. Mason, United States Magistrate Judge, for decision or resolution.

1.9    "Defendants" means defendants Trans Union and Acxiom.

1.10    "Defendants' Counsel" means counsel of record for Defendants.

1.11    "Defendants' Related Parties" means each of a Defendant's past or present officers, directors, partners, agents, employees, shareholders, attorneys, accountants or auditors, consultants, legal representatives, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, affiliated entities, and any entity that controls a Defendant, or in which a Defendant has a controlling interest.

1.12    "Enhanced In-Kind Relief" means the relief being provided by Trans Union pursuant to the Stipulation as set forth in ¶2.2(b) herein.

1.13    "Escrow Account" means the trust account used to hold the Settlement Fund that will be paid by Trans Union pursuant to this Stipulation.

1.14    "Escrow Agent" means the bank or trust company selected by Settlement Class Counsel and approved by Trans Union to hold the Settlement Fund payable by Trans Union pursuant to this Stipulation.

1.15    "FCRA" means the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

1.16    "Final" means when the last of the following with respect to the Final Approval Order approving the Stipulation has occurred: (i) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following the entry of the Final Approval Order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 33rd day); and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a determination of any such motion or appeal that permits the consummation of the Settlement in substantial accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of an award of attorneys' fees and expenses from the Settlement Fund.

1.17    "Final Approval" means the approval of the Stipulation and Settlement by the Court at or after the Final Fairness Hearing, and entry of the Final Approval Order.

1.18    "Final Approval Order" means the order entered by the Court giving Final Approval of the Stipulation and dismissing claims.

1.19    "Final Fairness Hearing" means the hearing at which the Stipulation and the Final Approval Order are presented by the Settling Parties for Final Approval and entry by the Court.

1.20    "Firm Offer" means an offer of credit or insurance to a consumer regulated by Section 604(c) of the FCRA (15 U.S.C. §1681b(c)).

1.21    "Frey Action" means the action filed in the Superior Court of California, County of Orange on or about August 31, 1998, entitled Frey v. Trans Union, et al., Case No. 798893.

1.22    "Joined Action" means any action in which any plaintiff asserts both (a) Post-Settlement Claims, and (b) claims relating to any other subject matter whatsoever, regardless of whether the causes of action asserted in the action are created by the same statute, common law principle, or equitable principle.

1.23    "MDL Actions" means all actions which have been transferred to, are being transferred to, or will be transferred to the Court by the MDL Panel for inclusion in the MDL Actions , including the actions listed in Section I above.

1.24    "Named Plaintiffs" means all named Plaintiffs in the Actions.

1.25    "Notice Administrator" means Hilsoft Notifications or such other entity agreed by the parties and authorized by the Court to provide notice and to undertake other tasks as set forth in this Stipulation.

1.26    "Notice Plan" shall mean the plan for disseminating notice to Settlement Class Members attached hereto as Exhibit 1.

1.27 "Plaintiffs" means all Named Plaintiffs in the MDL Actions, the Andrews Action, and the Frey Action, including Cynthia Albert, Mark Andrews, Jeffrey Beadle, Cecilia Comstock, David Feige, Megan Gogerty, Donald Jowers, Victoria Scott Kearley, Geri Mann, Marci Martinelli, Robert and Yvonne Morse, Lawrence and Joan Palazzolo, Heather Payne, Boris and Alla Rozenblitt, Randall J. Stein, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann, Nancy M. Woods, and Josh Frey, and including each of a Plaintiff's estates, heirs, executors, guardians, conservators and trustees.

1.28 "Plaintiffs' Counsel" means Plaintiffs' counsel of record in the Actions.

1.29 "Plaintiffs' Related Parties" means each of a Settlement Class Member's estates, heirs, executors, guardians, conservators and trustees.

1.30 "Plaintiff Settlement Class" is defined as: All consumers who had an open credit account or an open line of credit from a credit grantor located in the United States at any time during the period January 1, 1987 to the date of Preliminary Approval. The term "Plaintiff Settlement Class" shall include, without limitation, any classes asserted or certified in the Andrews Action and the Frey Action. Excluded from the Plaintiff Settlement Class are (a) Defendants and their predecessors, affiliates, subsidiaries, officers, directors and employees, (b) counsel for any of the Settling Parties in these Actions, and (c) any and all judges and justices assigned to hear any aspect of the Actions, along with the spouses of the foregoing and any children residing in their households.

1.31 "Post-Settlement Claim" means any claim by a Settlement Class Member (other than a Plaintiff) against a Defendant that is currently pending or that is asserted after the date of this Stipulation arising out of, or relating to, the facts or claims alleged in the Actions concerning Defendants' alleged distribution of Target Marketing lists or related information or concerning

Firm Offer claims alleged in any of the MDL Actions, the Andrews Action, or the Frey Action. The term "Post-Settlement Claim" shall include, without limitation, claims under any legal or equitable theory, whether asserted in the form of a complaint filed in state or federal court, a demand for arbitration, an informal demand letter, or otherwise.

1.32    "Preliminary Approval" means the preliminary approval of the Stipulation by the Court, conditional certification of the Plaintiff Settlement Class, and approval of the method and content of notice to the Plaintiff Settlement Class.

1.33    "Settlement" means the settlement entered into by the Settling Parties as set forth and embodied by this Stipulation, and as may be amended by the Settling Parties as provided for herein.

1.34    "Settlement Class Counsel" means (a) Jon W. Borderud of The Borderud Law Group, 11620 Wilshire Boulevard, Suite 400, Los Angeles, CA 90025; (b) Joy Bull of Coughlin Stoia Geller Rudman & Robbins LLP, 401 B Street, Suite 1600, San Diego, CA 92101; (c) Matthew Righetti of the Righetti Law Firm, 456 Montgomery Street, Suite 1400, San Francisco, C.A. 94101; (d) Dawn Adams Wheelahan, 5528 Loyola Ave., New Orleans LA 70115; and (e) Michael A. Caddell of Caddell & Chapman, 1331 Lamar, Suite 1070, Houston TX 77010-3027.

1.35    "Settlement Class Member" means a person who falls within the definition of the Plaintiff Settlement Class as defined in ¶ 1.30 of the Stipulation.

1.36    "Settlement Class Period" means the period commencing on January 1, 1987 to the date of Preliminary Approval.

1.37    "Settlement Class Representative Plaintiffs" means Mark E. Andrews, Jeffrey Beadle, Josh Frey, Megan Gogerty, Donald Jowers, Victoria Scott Kearley, Marci Martinelli,

Yvonne Morse, Robert Morse, Lawrence and Joan Palazzolo, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann, and Nancy M. Woods.

1.38   "Settlement Fund" means the amount paid by Trans Union pursuant to ¶ 2.1(a) herein.

1.39   "Settling Parties" means, collectively, each of the Defendants, as defined herein, by and through their counsel of record, and each of the Settlement Class Representative Plaintiffs on behalf of themselves, all Plaintiffs, and all Settlement Class Members, by and through Settlement Class Counsel.

1.40   "Stipulation" means this Stipulation of Settlement, as may be amended by the Settling Parties as provided for herein.

1.41   "Target Marketing" means selling or advertising goods and services, or soliciting charitable or political contributions, directly to consumers by mail, telephone, or other means, which consumers are identified by, among other criteria, targeted financial criteria or demographic traits. Target Marketing does not include Firm Offers (as defined above).

1.42   "Trans Union" means defendant Trans Union LLC.

1.43   "Ultimate Approval" means that the Final Approval Order has become Final, as defined herein.

1.44   "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description arising out of, or relating to, the facts or claims alleged in the Actions which any person does not know or suspect to exist in his, her or its favor at the time of the release of claims which, if known by him, her or it, might have affected his, her or its settlement with and release of claims. With respect to any and all claims, the Settling Parties stipulate and agree that, upon Ultimate Approval, all Settling Parties shall

10

expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and

by operation of the Final Approval Order shall have waived, the provisions, rights and benefits

of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the release,
> which if known by him or her must have materially affected his or her settlement
> with the debtor.

The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by

operation of the Final Approval Order to have acknowledged, that the foregoing waiver was

separately bargained for and a key element of the settlement of which this release is a part.

## 2.    Terms of the Settlement

2.1    Settlement Fund

(a)    Creation and Deposit of Settlement Fund.  Trans Union shall pay the total

sum of $75,000,000.00 (seventy-five million dollars) as provided herein.  Promptly following the

Court's entry of the order granting Preliminary Approval, Trans Union shall open the Escrow

Account.  On the first business day following the Court's entry of the order granting Preliminary

Approval, Trans Union shall wire transfer $1,080,000.00 ($1.08 million) to the Notice

Administrator to defray initial costs of notice as provided in the Notice Plan.  Between the first

business day following the Court's entry of the order granting Preliminary Approval and the

thirtieth day after the Court's entry of the order granting Preliminary Approval, Trans Union

shall transfer to the Notice Administrator such additional funds as the Notice Administrator shall

request to carry out the Notice Plan.  On or before the thirtieth day after the Court's entry of the

order granting Preliminary Approval, Trans Union shall deposit in the Escrow Account an

amount equal to the difference between $75,000,000.00 ($75 million) and the total amount

previously transferred by Trans Union to the Notice Administrator.  The Settlement Fund shall

be held in the Escrow Account by an Escrow Agent selected by Settlement Class Counsel and agreed to by Trans Union pending Ultimate Approval, and the use or disbursement of such funds shall be as provided in this Stipulation as approved by the Court. Settlement Class Counsel shall provide to Trans Union wire-transfer instructions for the transfer of the Settlement Fund to the Escrow Account. The Settlement Fund may be invested in investment instruments as may be agreed upon by Settlement Class Counsel and Trans Union prior to Ultimate Approval, or as agreed upon by Settlement Class Counsel after Ultimate Approval. Any investment instrument in which the Settlement Fund is permitted to be invested, as provided for herein, must be backed by the full faith and credit of the United States Government or fully insured by the United States Government, or an agency thereof, and the Escrow Agent shall be required to reinvest the proceeds of any such investment instruments as they mature in similar permissible instruments at their then-current market rates. The Escrow Agent shall bear any and all risks related to the investment of the Settlement Fund.

(b)     Use and Disbursement of Settlement Fund. The Settlement Fund is to be used only in the following manner and for the following purposes, and no others:

(i)     Starting no earlier than the first business day following the Court's entry of the order granting Preliminary Approval, expenses of the Notice Administrator and the Claims Administrator shall be paid from the Settlement Fund in an amount that the parties reasonably estimate to be approximately $6,000,000.00 ($6 million) as provided in Section 2.6;

(ii)     Within 10 days after Ultimate Approval, Attorneys' Fees and Costs shall be paid from the Settlement Fund as provided in Section 4;

(iii)    Within 30 days after Ultimate Approval, Named Plaintiff incentive awards shall be paid from the Settlement Fund as provided in Section 2.7;

(iv)    Upon Final Approval, Trans Union shall be entitled, without prior approval of the Court or Settlement Class Counsel, to receive reimbursement from the Settlement Fund equal to any amounts paid to satisfy settlements or judgments arising from Post-Settlement Claims, not including any defense costs.  Trans Union shall have the option to settle any suit or pre-suit demand, or litigate any suit, involving Post-Settlement Claims.  On a quarterly basis, Trans Union shall report on lawsuits filed asserting these claims to a Committee comprised of representatives chosen equally by Trans Union and Settlement Class Counsel.  Such quarterly reports shall include (a) the name of each person asserting a Post-Settlement Claim receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (b) the amount paid to each such person, (c) the name of each law firm or attorney receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (d) the amount paid to each such law firm or attorney, (e) the date on which each payment was made, (f) a brief description of the nature of the claim that was the basis for the payment, (g) a copy of any complaint, demand for arbitration, informal demand letter or similar document in which the Post-Settlement Claims at issue were asserted, and (h) any agreement memorializing the resolution of the Post-Settlement Claims.  Any dispute about the propriety of a reimbursement received by Trans Union shall be resolved by the Court.  In the event the Court finds any such reimbursement amount improper, Trans Union shall return such amount, plus interest at the same rate earned on the Settlement Fund, to the Settlement Fund within 10 business days.

(v)     In the event that any Post-Settlement Claims remain pending at the end of the two-year period described in Section 2.4, the Committee will in good faith estimate an amount to be retained in the Settlement Fund in respect of any future settlement or judgment on such Post-Settlement Claims.  Any dispute about the amount of the good faith estimate shall be resolved by the Court.

(vi)     At the conclusion of the two-year period described in Section 2.4, all money remaining in the Settlement Fund and not retained for pending claims as provided in Section 2.1(b)(v) may be paid to Settlement Class Members as provided herein.  Settlement Class Members shall be given an opportunity to register on a website or via U.S. mail to receive a portion of the remaining Settlement Fund, provided they do not initiate a Post-Settlement Claim or receive Enhanced In-Kind Relief.  Such registration shall be permitted commencing on the first day on which notice is disseminated and concluding 14 days after the Final Fairness Hearing.  The electronic registration form shall be simplified, requiring only reasonable unique identifying information from the claimant and a representation or attestation that the claimant is a member of the Plaintiff Settlement Class.  Registrations submitted by U.S. mail shall contain the same information contained in the electronic registration form and shall be mailed to a separate, dedicated post office box established by the Claims Administrator exclusively for the purpose of receiving such registrations.  Notice to the Plaintiff Settlement Class shall contain a reasonable description of how a Settlement Class Member may register or make a claim pursuant to this paragraph, and of the circumstances under which a payment may be made.  At the conclusion of the two-year period described in Section 2.4, Settlement Class Counsel shall make a recommendation

to the Court concerning the use and allocation of any amount remaining in the Settlement Fund. Such recommendation shall consider as its first preference the distribution of the funds remaining in the Settlement Fund, if any, to those persons who registered during the registration period to receive a possible distribution, unless the Court determines that the amount remaining in the Settlement Fund cannot feasibly be distributed to claimants taking into account the number of claimants, the relative cost of claims administration, and the amount that would be distributed per claimant. If the amount remaining in the Settlement Fund is determined to be less than can feasibly be distributed to persons who registered for a distribution, then the amount remaining in the Settlement Fund will be distributed to one or more qualified 501(c)(3) entities jointly chosen by Trans Union and Settlement Class Counsel and approved by the Court.

(c)     The amount set forth in this Stipulation as the Settlement Fund represents full disgorgement of Trans Union's relevant profits and is intended for restitution to affected Settlement Class Members and for payment or reimbursement of legal and administrative expenses incurred by them. The Settlement Fund shall be used in the manner and for the purposes provided for herein. The Escrow Agent shall not disburse the Settlement Fund except as provided for by this Stipulation, or by order of the Court.

(d)     Jurisdiction of Court. All Settlement Funds transmitted to and held by the Escrow Agent as required by this Stipulation shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as all Settlement Funds have been completely distributed pursuant to the terms of the Stipulation, and/or any further order(s) of the Court.

(e)　　Settlement Fund Tax Status. Settling Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B¬1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(f)　　For the purpose of Treas. Reg. § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in ¶2.1(e) above) shall be consistent with this subsection and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.1(g) hereof.

(g)　　All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Trans Union with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without

16

limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.1(f) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall Defendants have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold Defendants harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B−2(1)(2)); Defendants are not responsible therefor nor shall they have any liability with respect thereto. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this section.

2.2     In-Kind Relief.

(a)     Basic In-Kind Relief.  Trans Union shall provide six months of the Trans Union credit monitoring service (which consists of (i) free unlimited daily access to a Settlement Class Member's Trans Union credit report and Credit Score; (ii) "credit monitoring," a 24-hour email credit notification service (with certain other components customarily provided by Trans Union with sale of this product)) having a retail value of $59.75, to all class members who request it.  The process for requesting this service shall be as follows: Commencing on the first day on which class notice is disseminated and continuing through the fourteenth day after the

Final Fairness Hearing, Settlement Class Members shall be able to visit the settlement website identified in the notice materials, express their interest in receiving Basic In-Kind Relief, and register their name, address, and email address. Upon Ultimate Approval, the Claims Administrator will notify Settlement Class Members who registered, at the email address they provided, that Basic In-Kind Relief is available and can be claimed at a designated website. The Claims Administrator may reasonably provide this notice in stages so as to avoid overloading the website's capacity to provide Basic In-Kind Relief. The services comprising Basic In-Kind Relief may be initiated in this fashion by Settlement Class Members for six months following Ultimate Approval. The six months of credit monitoring service provided in this Section shall be offered by Trans Union in addition to any other credit monitoring or other service to which Settlement Class Members are entitled, either by purchase or for any other reason. A Settlement Class Member claiming Basic In-Kind Relief shall not be required to provide any form of payment, such as credit card, to obtain Basic In-Kind Relief, and shall not be required to contact Trans Union in order to discontinue the services provided as Basic In-Kind Relief. Basic In-Kind Relief services shall be automatically discontinued after six months unless the Settlement Class Member affirmatively requests that the Basic In-Kind Relief, or any portion thereof, continue at the Settlement Class Member's own expense. This service shall be offered to all Settlement Class Members in consideration for the release of their procedural rights to bring Post-Settlement Claims as Class Actions, Joined Actions, or Aggregated Actions and for their agreement to entry of an injunction enjoining the pursuit of Post-Settlement Claims as Class Actions, Joined Actions, or Aggregated Actions. The release of such procedural rights shall extend to all Settlement Class Members, whether or not they actually request the service offered in this Section.

(b)     Enhanced In-Kind Relief.  Simultaneously with offering Settlement Class Members the Basic In-Kind Relief described in Section 2.2(a), Trans Union shall offer an alternative enhanced set of services that class members can select in exchange for a full release of claims.  This enhanced set of services shall consist of nine months of Trans Union credit monitoring, a suite of insurance scores, and Trans Union's mortgage simulator service, having an aggregate retail value of $115.50.  The process for requesting this service shall be the same as described above for claiming Basic In-Kind Relief, substituting the words "Enhanced In-Kind Relief" where the words "Basic In-Kind Relief" appear.  The Enhanced In-Kind Relief shall be offered by Trans Union in addition to any other services to which class members are entitled, either by purchase or for any other reason, provided, however, that Settlement Class Members claiming Enhanced In-Kind Relief shall be ineligible to receive any other benefit under this Settlement.  A Settlement Class Members who claims Enhanced In-Kind Relief shall not be required to provide any form of payment, such as a credit card, to obtain Enhanced In-Kind Relief, and shall not be required to contact Trans Union in order to discontinue the services provided as Enhanced In-Kind Relief.  Enhanced In-Kind Relief services shall be automatically discontinued after nine months unless the Settlement Class Member affirmatively requests that the Enhanced In-Kind Relief, or any portion thereof, continue at the Settlement Class Member's own expense.

2.3     Consideration for Settlement Class Members Lacking Internet Access.  Within 30 days of Ultimate Approval, a distribution will be made from the Settlement Fund to one or more qualified 501(c)(3) charities jointly chosen by Trans Union and plaintiffs and approved by the Court in consideration of Settlement Class Members who are unable to access the Basic In-Kind

Relief or Enhanced In-Kind Relief because they lack access to the Internet.  The amount of this cy pres distribution shall be $150,000.00 (one hundred fifty thousand dollars).

2.4     Statutes of Limitations.  For all Settlement Class Members whose claims were not time-barred as of January 1, 1987, the Defendants agree not to raise a limitations defense to any currently pending claims or any Post-Settlement Claims commenced within two years of the date of Final Approval that involve causes of action pending in MDL No. 1350 as of the date of Preliminary Approval.

2.5     Notice Procedures.  The Settling Parties agree to the notice procedures specified in the Notice Plan, a copy of which is attached hereto as Exhibit 1, subject to Court approval. Additionally, commencing as soon as practicable following Preliminary Approval, and continuing up to the fourteenth day following the date of Final Approval, Trans Union shall include in its file disclosures pursuant to 15 U.S.C. § 1681g a summary of the publication notice prepared by the Notice Administrator and/or a link to the website established by the Notice Administrator.  If the notice procedures are determined by the Court to be inadequate, or if the Court orders the procedures to be changed in any material fashion (including, but not limited to, providing additional individual notice to Settlement Class Members), this Stipulation will be voidable at Trans Union's option.

2.6     Expenses of Notice and Administration.  Expenses of notice and administration shall be invoiced by the Notice Administrator and the Claims Administrator, respectively, and paid from the Settlement Fund.  In no event shall the total expenses associated with notice and administration increase the amount paid by Trans Union as part of the settlement.

2.7     Plaintiff Incentive Awards.  Subject to the Court's Preliminary and Final Approval, within 30 days after Ultimate Approval of the Settlement, each Named Plaintiff shall

be paid from the Settlement Fund an amount not to exceed $3,750.00 in recognition of their

efforts in representing the Settlement Class Members, including their attendance at hearings,

sitting for depositions and consultation with counsel throughout the pendency of the Actions.

Said incentive awards and the other benefits provided by this Settlement will be the only

compensation Named Plaintiffs will receive for their participation in the Actions, and will be

paid in consideration of their full release of all claims relating to the target marketing and

prescreening claims brought in the Actions.

     2.8     Releases and Retention of Certain Individual Rights and Claims.  All releases set

forth below are void if the Settlement does not receive Ultimate Approval.

     (a)     Named Plaintiffs. Upon Final Approval of the Settlement, all Named

Plaintiffs will be deemed to have released, and by operation of the Final Approval Order shall

have, fully, finally, and forever released, relinquished and discharged Defendants, and each of

them, and Defendants' Related Parties from any and all claims, including Unknown Claims,

arising out of, or related to, the facts or claims alleged in the Actions arising out of state or

federal law, including (i) any and all such claims related to Defendants' alleged distribution of

Target Marketing lists or related information, and (ii) any and all such claims relating to the Firm

Offer claims alleged in any of the MDL Actions, the Andrews Action, or the Frey Action.

     (b)     Other Settlement Class Members.

     (i)     Upon Final Approval, all Settlement Class Members who receive

the Enhanced In-Kind Relief described in Section 2.2(b) above, will, along with their

respective Plaintiff's Related Parties, be deemed to have released, and by operation of the

Final Approval Order shall have, fully, finally, and forever released, relinquished and

discharged Defendants, and each of them, and Defendants' Related Parties from any and

all claims, including Unknown Claims, arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such claims related to Defendants' alleged distribution of Firm Offer lists or related information.

(ii)     Upon Final Approval, all Settlement Class Members who receive a cash distribution from the Settlement Fund pursuant to Section 2.1(b)(vi) herein will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Final Approval Order shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims, including Unknown Claims, arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such claims related to Defendants' alleged distribution of Firm Offer lists or related information.

(iii)    Upon Final Approval, all Settlement Class Members who are not Named Plaintiffs and who are not described in Section 2.8(b)(i) or (b)(ii), will, along with their respective Plaintiff's Related Parties, be deemed to have released, and by operation of the Final Approval Order shall have, fully, finally, and forever released and relinquished their procedural rights to pursue any claims, including Unknown Claims, arising out of or related to the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such

claims related to Defendants' alleged distribution of Firm Offer lists or related information, as either (A) named plaintiffs or class members in any Class Action, (B) plaintiffs in any Joined Actions, or (C) plaintiffs in any Aggregated Action.

(c)     Injunction and Bar Order.  It shall be a condition of Settlement that the Settling Parties shall jointly seek, and the Court shall have granted, an injunction and bar order enjoining all Settlement Class Members described in Section 2.8(b)(iii) from participating in any Class Action, Joined Action, or Aggregated Action, as specified in the aforementioned Section 2.8(b)(iii).

### 3.     Preliminary Approval Order and Settlement Hearing

3.1     After execution of the Stipulation by the Settling Parties, the Settling Parties shall submit the Stipulation to the Court and shall apply for entry of an Order requesting, inter alia, the Preliminary Approval of the Settlement as set forth in the Stipulation, the certification of the Plaintiff Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(1)(A), and approval of the form and content of the notices. A copy of the proposed order granting Preliminary Approval is attached hereto as Exhibit 2.  The notices shall include the general terms of the Settlement set forth in the Stipulation, the general terms of the Fee and Expense Application, deadlines for class members to submit objections and to file claims, and the date of the Final Fairness Hearing.

3.2     After the notices have been disseminated as provided herein, the Court will hold the Final Fairness Hearing to consider approval of the Settlement of the Actions as provided for herein. At or after the Final Fairness Hearing, Settlement Class Counsel will request that the Court approve the proposed Fee and Expense Application.

4.        **Application for Reimbursement of Attorneys' Fees and Costs**

4.1       Plaintiffs' Counsel shall submit an application or applications to the Court for reimbursement of attorneys' fees and expenses from the Settlement Fund incurred in connection with prosecuting and settling the Actions, including expert and consultant fees, plus allowable interest on fees and expenses until paid, as may be approved by the Court ("Fee and Expense Application").  Said process shall occur in a manner to be determined by the Court.  Defendants have agreed to remain neutral on the Fee and Expense Application provided that the amount of such fee Application(s), exclusive of expenses, does not exceed 25% percent of the Settlement Fund.

4.2       The amount of attorneys' fees and expenses applied for and approved by the Court ("Fee and Expense Award"), shall be paid from the Settlement Fund to Plaintiffs' Counsel in accordance with the Court's order within 10 days after the Settlement has received Ultimate Approval and the Court has entered an Order awarding Attorneys' Fees and Expenses, and that Order has become Final.   Settlement Class Counsel agree that fees of Louisiana Counsel shall be awarded by the Court.

4.3       Any Fee and Expense Application, any Fee and Expense Award, and any and all matters related thereto, shall not be considered part of the Stipulation, and shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and shall not operate to terminate or cancel the Stipulation or Settlement, and shall not affect or delay the finality of any Final Approval Order approving the Stipulation and the Settlement of the Actions.

4.4       Defendants shall have no responsibility for, or any liability with respect to, the payment of attorneys' fees and expenses to Plaintiffs' Counsel, and the sole source of any Fee and Expense Application and Fee and Expense Award shall be the Settlement Fund.

5.      **Effect of Disapproval, Cancellation or Termination**

5.1      If the Settlement does not receive Ultimate Approval, then the Settlement, any

Stipulation, and the settlement term sheet shall become null and void. In addition, the Settling

Parties agree that if this Settlement becomes null and void, the Defendants shall not be

prejudiced in any way from opposing the certification of a class or classes in the Actions or in

any other litigation that is not one of the Actions. Further, the Settlement Fund, including interest

earned, less taxes and tax expenses that have been properly disbursed pursuant to this Stipulation

and any notice and administration expenses that have been incurred pursuant to this Stipulation

but have not yet been disbursed, shall be returned to Trans Union if (a) the Settlement does not

receive Final Approval, and a revised settlement is not submitted by the Settling Parties to the

Court within 180 days following the Court's failure to grant such Final Approval, or (b) an Order

of the Court giving Final Approval to the Settlement is overturned after exhaustion of all appeals,

and a revised settlement is not submitted to the Court within 180 days following the exhaustion

of all such appeals.

5.2      In the event that the Stipulation does not receive Ultimate Approval, or the

Stipulation is terminated, or fails to become effective in accordance with its terms, the Settling

Parties and the Settlement Class Members shall be restored to their respective positions in the

Actions as of May 1, 2008. In such event, the terms and provisions of the Stipulation, with the

exception of Sections 2.1(d)-(g), 5.1, and 6.14 hereof, shall have no further force and effect with

respect to the Settling Parties and the Settlement Class Members, and shall not be used in this

Actions or in any other proceeding for any purpose, and any judgment or order entered by the

Court in accordance with the terms of the Stipulation shall be treated as vacated, nunc pro tunc.

5.3      If a case is commenced in respect to Trans Union under Title 11 of the United

States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar

law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Funds, or any portion thereof, by or on behalf of Trans Union, to be a preference, voidable transfer, fraudulent transfer, or similar transaction, then, as to Trans Union, the releases given and Final Approval Order entered in favor of Trans Union pursuant to this Stipulation shall be null and void.

5.4     Trans Union warrants and represents that it is not "insolvent" within the meaning of 11 U.S.C. § 101(32) as of the time this Stipulation is executed and as of the time any payments are transferred or made as required by this Stipulation.

**6.     Miscellaneous Provisions**

6.1     The Settling Parties acknowledge that it is their intent to consummate this Settlement, and agree to cooperate and take whatever steps are necessary and appropriate to complete the Settlement, to obtain Preliminary, Final, and Ultimate Approval of the Settlement, to effectuate the terms of the Settlement, and to protect the Settlement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to the facts or claims alleged in the Actions, if so required.

6.2     To the extent any disputes or issues arise with respect to documenting the Settlement, the Settling Parties agree to use their best efforts to informally resolve any such disputes or issues; but in the event any such dispute or issue cannot be resolved informally, to bring any such dispute or issue to the Court for resolution.

6.3     The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Actions, except as specifically provided for herein. The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. While retaining their right to deny liability, the Defendants agree that the amount paid to the Settlement Fund and the other terms of

26

the Settlement were negotiated at all times at arm's length and in good faith by the Settling

Parties, and reflect a settlement that was reached voluntarily after consultation with competent

legal counsel.

6.4     Neither the Stipulation nor the Settlement contained therein, nor any act

performed or document executed pursuant to or in furtherance of the Stipulation or the

Settlement: (a) is or may be deemed to be, or may be used as an admission or evidence of, the

validity of any claims asserted in the Actions, or of any wrongdoing or liability on the part of

Defendants, or (b) is or may be deemed to be, or may be used as an admission or evidence of,

any fault or omission of any of the Defendants in any civil, criminal, or administrative

proceeding in any court, administrative agency or other tribunal. Defendants may file the

Stipulation and/or the Final Approval Order in any action that has been or may be brought

against them in order to support a defense or counterclaim based on principles of res judicata,

collateral estoppel, release, good faith settlement, judgment bar, reduction, or any other theory of

claim preclusion or issue preclusion, or any similar defense or counterclaim.

6.5     No person shall have any claim against any Defendant, Defendant's Counsel, or

Settlement Class Counsel based on distribution of benefits made substantially in accordance with

this Stipulation of Settlement or any Settlement-related order(s) of the Court.

6.6     All agreements made and Orders entered during the course of the Actions relating

to the confidentiality of information shall survive this Stipulation.

6.7     The Stipulation may be amended or modified only by a written instrument signed

by Defendants and Settlement Class Counsel, or their respective successors-in-interest.

6.8     The Stipulation constitutes the entire agreement among the Settling Parties, and

no representations, warranties or inducements have been made to any Party concerning the

Stipulation, other than those contained herein. The Stipulation replaces and voids any and all previous agreements concerning the settlement of the Actions. Except as provided for herein with respect to Settlement Class Counsels' Fee and Expense Application and Award, each Party shall bear its own costs.

6.9     Settlement Class Counsel, on behalf of the Plaintiff Settlement Class, are expressly authorized by Settlement Class Representative Plaintiffs to take all appropriate action required or permitted to be taken by the Plaintiff Settlement Class pursuant to the Stipulation to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Plaintiff Settlement Class which they deem necessary or appropriate.

6.10     Each attorney executing the Stipulation on behalf of any party hereto hereby warrants that such attorney has the full authority to do so.

6.11     This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

6.12     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

6.13     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation. The Parties shall present the Court with proposed Orders that allow for such a retention of jurisdiction, in accordance with applicable law.

6.14    The Stipulation shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to that State's choice-of-law principles.

6.15    All counsel of record in the Andrews Action and the Frey Action shall cooperate, and shall take all such actions as are reasonably necessary in the appropriate courts, to secure the dismissal with prejudice of the Andrews Action and the Frey Action without any notice, consideration or expense other than that which is provided under this Stipulation.  It shall be a condition of Trans Union's obligations under this Stipulation that orders by courts of competent jurisdiction dismissing the Andrews Action and the Frey Action with prejudice be obtained effective on the date of, and contingent upon, Ultimate Approval.

6.16    All counsel of record in all constituent actions of MDL No. 1350, and all counsel of record in the Andrews Action and the Frey Action, represent that they have no other individual clients who have engaged them to pursue the Target Marketing or Firm Offer claims brought in the Actions against Defendants, and agree that they will take no step to solicit, either on their own behalf or on behalf of any other attorney, additional clients to pursue such claims.

6.17    The Settling Parties will jointly submit a proposed final approval order for entry by the Court reciting that (a) the amount paid by Trans Union constituting the Settlement Fund is sufficient to deter future Target Marketing and Firm Offer conduct of the kind at issue in MDL No. 1350, (b) that the amount paid by Trans Union constituting the Settlement Fund represents the full disgorgement of all relevant profits realized by Trans Union, and (c) that Trans Union has ceased the conduct at issue in MDL No. 1350.

IN WITNESS WHEREOF, the Settling Parties hereto have entered into this Stipulation and caused it to be executed by their duly authorized attorneys as of May 20, 2008.

By:    /s/ Jon W. Borderud
Jon W. Borderud
The Borderud Law Group
11620 Wilshire Blvd., Suite 400
Los Angeles CA  90025
Telephone:  310/207-2848
310/207-2748 (fax)

Settlement Class Counsel

By:    /s/  Joy Ann Bull
Joy Ann Bull
Coughlin Stoia Geller
Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Settlement Class Counsel

By:    /s/  Matthew Righetti
Matthew Righetti
Righetti Law Firm
456 Montgomery Street, Suite 1400
San Francisco CA 94104
Telephone:  415/983-0900

Settlement Class Counsel

By:    /s/  Thomas A. Doyle
Terry Rose Saunders
Thomas A. Doyle
Saunders & Doyle
20 South Clark Street, Suite 1720
Chicago IL  60603
Telephone:  312/551-0051
312/551-4467 (fax)

Liaison Counsel For The MDL Plaintiffs

By:    /s/ Dawn Wheelahan
Dawn Adams Wheelahan
State Bar No.
5528 Loyola Ave.
New Orleans LA 70115
Telephone:  (512) 689-1153
Facsimile:  (512) 628-9149

Settlement Class Counsel

By:    /s/  Michael A. Caddell
Michael A. Caddell
Texas Bar No. 03576700
Cynthia B. Chapman
Texas Bar No. 00796339
Cory S. Fein
Texas Bar No. 06879450
Caddell & Chapman
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  713.751.0400
Facsimile:  713.751.0906

Settlement Class Counsel

By:    /s/  John Zarian
John Zarian, Esq.
Zarian Midgley & Johnson PLLC
University Plaza
960 Broadway Ave., Suite 250
Boise, ID  83706
Main:    (208) 562-4900
Fax:    (208) 562-4901
E-mail: zarian@zarianmidgley.com

Plaintiffs Counsel in the Frey Action

By:      /s/  Brian P. Brooks
John H. Beisner, Esq.
Brian P. Brooks, Esq.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
Main:    (202) 383-5300
Fax:      (202) 383-5414
E-mail: bbrooks@omm.com

Counsel for Trans Union LLC

By:      /s/ Peter Donoghue
Roger Longtin, Esq.
Michael O'Neil, Esq.
Peter Donoghue, Esq.
DLA Piper Rudnick Gray Cary US LLP
203 N. La Salle Street
Suite 1900
Chicago, IL  60601
Main:  (312) 368-4000
Fax: (312) 236-7516
E-mail: Roger.Longtin@dlapiper.com

Counsel for Trans Union

By:      /s/  Amy L. Stewart
Amy L. Stewart, Esq.
Rose Law Firm, P.A.
120 East Fourth Street
Little Rock, AR 72201
Main: (501) 375-9131
Fax: (501) 375-1309
E-mail: astewart@roselawfirm.com

Counsel for Acxiom Corporation