## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | Lead Case No. 00 c 4729 |
| | MDL Docket No. 1350 |
| This Document Relates To: | Judge Robert W. Gettleman |
| ALL ACTIONS. | Magistrate Judge Michael T. Mason |

## DECLARATION OF CHRISTOPHER MICHELETTI
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

I, Christopher T. Micheletti, declare:

1.      I am a member of the firm Zelle, Hofmann, Voelbel, Mason & Gette, LLP and am a member in good standing of the State Bar of California.  This Declaration is based on personal knowledge, except where specified that information is based on information and belief, and if called to testify, I could and would do so competently as to the matters set forth herein.  I am submitting this Declaration in support of Plaintiffs' motion for preliminary approval of settlement.

### *Overview of Discovery*

2.      I have been involved in investigating these matters since 1998, and in discovery in these proceedings since 1999.  The first of these coordinated proceedings, *Martinelli v. Trans Union Corp.*, was commenced in early 1999.  Merits discovery commenced shortly thereafter, with plaintiffs seeking written discovery, document discovery and depositions addressing merits and other issues.  That discovery continued during 2000.

3.      In 2000, additional federal class actions were filed against Trans Union, and MDL proceedings were commenced.  In 2000, the *Martinelli Action* was coordinated with the additional federal class actions and the proceedings were coordinated before this Court. In its November 28, 2000 Final Order of Consolidation and Pretrial Order No. 1 ("PTO No. 1"), this Court ordered all plaintiffs counsel in the *Martinelli Action* and in other coordinated actions to make available their discovery conducted to date in an effort to streamline further discovery and reduce duplication.  *See*  PTO No. 1, §XII.A.  Plaintiffs counsel followed this directive.  Additionally, this Court acknowledged the California state court matter *Frey, et al. v. Trans Union*, No. 798893, and ordered counsel in these coordinated proceedings to coordinate discovery and other pretrial matters with such proceedings in the *Frey* matter to aid in the efficient administration of these cases.  *See* PTO No. 1, §XVI.  Plaintiffs counsel in these matters thereafter pursued coordinated discovery and endeavored, to the extent possible, to access and utilize information discovered in *Frey*.

4.      Upon MDL coordination, plaintiffs pursued additional merits discovery, including third party discovery addressing numerous legal issues, including willfulness and related liability issues.  Since these actions were commenced over eight years, ago, plaintiffs counsel have served hundreds of document requests and dozens requests for admission and interrogatories, directed to merits discovery, much of which addressed the issue of whether Trans Union willfully violated the FCRA.

5.      From 1999 through 2002, Plaintiffs counsel reviewed approximately one-quarter to one-half million pages of documents, and culled therefrom or otherwise obtained from Trans Union in excess of 40,000 pages of documents.  Plaintiffs counsel have taken depositions, reviewed multiple depositions taken in the related FTC proceeding and reviewed

and analyzed thousands of pages of transcripts of the proceedings before the FTC, all with the purpose of performing merits discovery and analyses, including analyses of the willfulness issue.  These efforts are detailed below.

### *Pre-MDL Discovery*

6.     Plaintiff Marci Martinelli filed her individual and representative action against Trans Union Corporation and Acxiom Corporation on January 28, 1999 in Santa Clara County Superior Court in State Court in California (the *Martinelli Action*).  Trans Union and Acxiom removed the suit to federal court in the Northern District of California, where it was coordinated with a related Fair Credit Reporting Act ("FCRA") class action, *Rosen v. Trans Union*, Civil No. 99-0632, which was filed in February of 1999.  Trans Union and Acxiom unsuccessfully moved to dismiss those cases under Fed.R.Civ.P. 12(b)(6).  The *Martinelli* and *Rosen Actions* addressed the same conduct, alleged that the conduct violated the same laws, sought the same relief and were brought on behalf of essentially the same persons.  Commencing in 1999, those cases proceeded in a coordinated fashion on discovery, motion practice and other pretrial maters.  Martinelli thereafter amended her complaint to add federal class claims.

7.     Discovery in *Martinelli* commenced through Rule 26 written initial disclosures in late Spring of 1999.  During the time period May 1999 to September 1999, Martinelli also served extensive requests for admission, document requests and/or interrogatories on Trans Union, to which Trans Union responded and produced documents.  Plaintiff's written discovery requests addressed substantive elements of her claims and addressed merits related issues, including, but not limited to information contained in Trans Union's target marketing and other databases, Trans Union's disclosure of target marketing

3

lists and databases to third parties, documents produced in and related to the FTC proceeding against Trans Union, Trans Union's internal memoranda regarding the propriety of its target marketing list sales practices, changes in Trans Union's practices and disclosures pertaining to target marketing lists, among numerous other areas.   A true and correct copy of Martinelli's First Request for Production of Documents, and Trans Union's written response thereto are attached hereto as Exhibits 1 and 2 respectively.

8.     In October of 1999, counsel for the plaintiffs commenced review of Trans Union's documents at several locations in Chicago. During the time period October 1999 to December 1999, counsel for Martinelli reviewed approximately 100,000 to 200,000 pages of documents made available for review by Trans Union in Chicago. I personally participated in this review. From the foregoing documents, plaintiff's counsel selected over 20,000 pages of documents for production. These documents were received by plaintiffs counsel during the time period November 1999 to January 2000. The documents reviewed and produced included numerous depositions and other transcripts of testimony of Trans Union personnel taken in the FTC proceeding, exhibits utilized in those proceedings, as well as discovery materials produced in those proceedings. Plaintiffs also reviewed files that were not produced in or part of the FTC proceeding, and selected thousands of pages of those documents for production. In terms of testimony, plaintiffs counsel reviewed and obtained over 3000 pages of trial transcripts from the FTC proceeding, as well as deposition transcripts of Trans Union personnel – Barry Botruff, J. Frank, Oscar Marquis, W. Rogers and Gary Weith. During the time period from November 1999 to January 2000, plaintiffs' counsel reviewed, analyzed and coded the above documents.

9.      During late 1999, plaintiffs' counsel also deposed the person at Trans Union who was most knowledgeable regarding the information in Trans Union's target marketing database, target marketing list production and the disclosure of Martinelli's identifying information in target marketing lists.  I also understand that prior to the MDL coordination order, other plaintiff's counsel actually traveled to the Federal Trade Commission and reviewed the entire transcript in that proceedings and selected portions thereof as well as exhibits for copying.

### *MDL Discovery*

10.      In the Spring of 2000, additional federal class actions were commenced against Trans Union in various U.S. district courts which actions alleged substantially the same claims as were asserted in the *Martinelli* action.  A petition to coordinate all of the actions was thereafter filed and the cases were coordinated for pretrial purposes before this court in summer of 2000.  In late 2000, and pursuant to the order of Final Order of Consolidation and Pretrial Order No. 1 entered by this Court on November 28, 2000, this Court ordered that all discovery taken in the coordinated actions (including *Martinelli*) was to be made available for use and analysis in the MDL proceedings.  *See* November 28, 2000 Order, §XII.A.  Thus, all discovery performed prior to the MDL proceedings was made available in the MDL proceedings.

11.      In early 2001, and under the auspices of the MDL proceeding, plaintiffs counsel resumed merits and other discovery against Trans Union and Acxiom, serving their first set of coordinated interrogatories and document requests.  By these requests, plaintiffs sought and obtained further information regarding Trans Union's databases and the contents and uses thereof, information concerning Trans Union's willful violations of the FCRA, as

well as information regarding Trans Union's gross revenues from the distribution of target marketing lists during the time period 1994 to 2000. True and correct copies of the First Set of Coordinated Document Requests Propounded by Plaintiffs, and Trans Union's responses thereto are attached hereto as Exhibits 3 and 4, respectively. True and correct copies of the First Set of Coordinated Interrogatories Propounded by Plaintiffs, and Trans Union's responses thereto are attached hereto as Exhibits 5 and 6, respectively.

12. During 2001, plaintiffs counsel reviewed another 100,000-200,000 pages of documents made available for review by Trans Union in Chicago and San Francisco, selecting for production additional, relevant documents pertaining to Trans Union's use of its target marketing databases, sales practices pertaining thereto, as well as documents pertaining to whether Trans Union knowingly or willfully violated the FCRA. From mid-to-late 2001 to early 2002, plaintiffs' counsel received an additional 17,000 pages of documents which they had selected for copying from their review of the 100,000 to 200,000 pages of documents referred to above.

13 In February 2002 and April 2002, plaintiffs counsel served their Second Set of Coordinated Document Requests, and their Third Set of Coordinated Document Requests, respectively, on Trans Union. These requests sought further information regarding Trans Union's databases, Trans Union's compliance with the FCRA, its relationship and communications between it and its parent and Acxiom on topics relevant to the litigation, changes to Trans Union's use and disclosure of consumer credit information during the relevant time period, the impact of the Gramm-Leach-Bliley Act on Trans Union's target marketing business, among other topics. In response to these and prior requests, Trans Union produced documents, and also made available for inspection additional large

6

quantities of documents. The latter documents were reviewed and relevant documents were selected for copying by plaintiffs' counsel. By late 2002, Trans Union sent to plaintiffs an additional 6,000+ pages of documents which Trans Union produced on its own from its own files, or which plaintiffs counsel had culled from tens of thousands of pages of documents made available for inspection. True and correct copies of the Second Set of Coordinated Document Requests Propounded by Plaintiffs, and Trans Union's responses thereto are attached hereto as Exhibits 7 and 8, respectively. True and correct copies of the Third Set of Coordinated Document Requests Propounded by Plaintiffs, and Trans Union's responses thereto are attached hereto as Exhibits 9 and 10, respectively.

14.     In connection with the above productions, plaintiffs counsel were required on numerous occasions to meet and confer with Trans Union counsel in an effort to ensure Trans Union's production of the relevant documents requested. Extensive negotiations over a period of many months were engaged in by plaintiffs counsel in an effort to ensure or otherwise maximize Trans Union's compliance with plaintiffs' discovery requests, with dozens of written communications and telephone conversations being required in order to ensure Trans Union's forthright production of documents.

15.     Plaintiffs counsel also pursued third party discovery against Trans Union's parent company, The Marmon Group, in late 2001. A copy of the subpoena served on the Marmon Group is attached hereto as Exhibit 11. Trans Union and its counsel resisted discovery against its parent company, but plaintiffs counsel, though extensive meet and confer efforts, ultimately obtained responsive documents from that entity. Plaintiffs counsel also pursued discovery against defendant Acxiom, obtaining 1000+ pages of documents from that defendant in 2001 and 2002 as well.

16.     As the above history demonstrates, plaintiffs counsel have engaged in extensive merits discovery in this matter since 1999, devoting nearly three years thereto from 1999 to 2002.

### *Frey Discovery*

17.     During the time period 1999 to 2002, I understand that extensive discovery was also performed in the *Frey* matter.  From time to time, Plaintiffs counsel in these proceedings would coordinate with plaintiffs counsel in *Frey* in connection with the review and analysis of documents made available for inspection by Trans Union. Numerous discovery requests and responses in *Frey* were also provided to or served on plaintiffs counsel in these proceedings.  Plaintiffs counsel in *Frey* deposed multiple Trans Union witnesses, including Gary Weith, David Wright Paulus, Jr. and James Rock.  I understand that over 28,000 pages of documents were produced in the *Frey* case, which were selected from a review of hundreds of thousands of pages of documents.  Plaintiffs counsel in *Frey* also served approximately 140 requests for admission, 140 interrogatories and 73 separate requests for production of documents.

### *2003 to 2005*

18.     As discussed below, during 2003 to 2005, plaintiffs counsel have devoted extensive efforts to, among numerous other tasks, fending-off Trans Union's multiple motions to dismiss and strike, to efforts to obtain appellate review of various rulings, to responding to class discovery sought by Trans Union, to obtaining certification of one or more classes, and to court-directed settlement efforts.

8

19.     In February 2001, Trans Union had filed a motion to dismiss plaintiffs'
claims, to strike certain of plaintiffs claims for relief, and for an order that a nationwide
FCRA class could not be certified under FRCP 23.  By April 2002, those motions were fully
briefed by the parties.  On September 10, 2002, the district court ruled on those motions,
dismissing a number of plaintiffs' claims, striking various forms of relief, and ruling that
plaintiffs could not certify a national class under the FCRA.  *See In re Trans Union Corp.*
*Privacy Litigation*, 211 F.R.D. 328 ( N.D. Ill. 2002).  Plaintiffs sought appellate review of
certain of the district court's rulings, but the Seventh Circuit declined review or otherwise
found that it lacked subject matter jurisdiction over plaintiffs' appeals, and did not address
the merits of their appeal.

20.     On November 8, 2002, plaintiffs filed their Second Amended Consolidated
Complaint, portions of which Trans Union moved to dismiss on January 9, 2003.  This
motion was fully briefed by March of 2003.  On July 6, 2004, the district court ruled on the
second round of motions to dismiss, granting in part and denying in part the motions.  *See In*
*re Trans Union Corp. Privacy Litigation,* 326 F.Supp.2d 893 (N.D. Ill. 2004).

21.     In October 2004, plaintiffs filed their motion for class certification, seeking
certification of various classes.  During the time period late 2004 to early 2005, Trans Union
conducted deposition and document discovery of the class representative plaintiffs.  Trans
Union took 13 depositions during that time period, which were attended and defended by
numerous plaintiffs' counsel.  Plaintiffs' class certification motion was fully briefed by
Spring of 2005. On August 15, 2005, the district court ruled on plaintiffs' class certification
motion, denying in part and granting in part the motion.  *See In re Trans Union Corp.*
*Privacy Litigation.*, No. 00 C 4729, MDL 1350, 2005 WL 2007157 (Aug. 17, 2005 N.D.Ill.).

The district court thereafter referred the parties to Magistrate Judge Michael Mason for settlement discussions.  By order dated March 13, 2006, the Court stayed all discovery.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

Executed this 20th day of May, 2008, at San Francisco, California.


_____/s/ Christopher T. Micheletti_____

Christopher T. Micheletti