RECEIVED

SEP 21 1999
79785
FURTH, FAHRNER & MASON

1  **Matthew Righetti, Esq.**   Bar No.  121012
   220 Montgomery Street, 16th Floor
2  San Francisco, California  94104
   Phone      (415) 983-0900
3  Fax        (415) 397-9005

4
   **Kevin J. McInerney**   Bar No.  46491
5  18124 Wedge Parkway #503
   Reno, NV  89511
6  Phone      (775) 849-3811
7  Fax        (775) 849-3866

8  Attorneys for Plaintiff

9
                **UNITED STATES DISTRICT COURT**
10
              **NORTHERN DISTRICT OF CALIFORNIA**
11
                   **SAN FRANCISCO DIVISION**

12 MARCI MARTINELLI,                 §    Civil No.   99-1867 WHA
   individually and on behalf of the §    {Rel'd. case:  99-0632 WHA}
13 California public,                 §
                                      §
14                                    §
   Plaintiff,                         §
15                                    §
        v.                            §
16                                    §
                                      §
17 TRANS UNION CORPORATION,           §
   a Delaware corporation;            §
18 ACXIOM CORPORATION,                §
                                      §
19 a Delaware corporation;            §    **PLAINTIFF**
   and Does 1 through 100, inclusive, §    **MARTINELLI'S FIRST**
20                                    §    **REQUEST FOR**
                                      §    **PRODUCTION OF**
21                                    §    **DOCUMENTS**
                                      §
22 Defendants.                        §
                                      §
23 ─────────────────────────────────  §
                                      §
24 MICHAEL ROSEN, on behalf of        §
   himself and all other persons      §
25 similarly situated,                §
                                      §
26 Plaintiff,                         §
                                      §
27      v.                            §

28                                    1

TRANS UNION CORPORATION,                §
                                        §
                                        §
                                        §
Defendant.                              §
_____§

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff Marci Martinelli ("Plaintiff") hereby requests that defendant Trans Union Corporation ("Trans Union") produce for inspection and copying the following documents and other things, within its possession, custody or control.  The production shall occur at the offices of Righetti Law Firm, 220 Montgomery Street, Suite 1650, San Francisco, California, or at such other location as is agreed to by counsel for the parties, on October 26, 1999.

<u>**DEFINITIONS AND INSTRUCTIONS**</u>

The following requests are subject to the definitions set forth below:

A.    "Trans Union" refers to Trans Union, its predecessors, directors, officers, agents, servants, employees, attorneys, subsidiaries, affiliates, divisions or any other related companies or divisions, including PerformanceData, Marketing Services, Trans Mark and Trans Union Lists.

B    "CRONUS" refers to Trans Union's credit reporting database.

C.    "Master File" refers to all original, copy, archived or predecessor versions of Trans Union's database, batch file or electronically-stored information for target marketing, including, but not limited to, lists entitled "Master File," "Base List" and "List Master File," as well as the "MasterFile" referred to on PerformanceData's web site located at HYPERLINK http://www.performancedata.com www.performancedata.com.

D.    "Performance Base file" refers to all original, copy, archived or predecessor versions of Trans Union's database referred to as "PerformanceBase" on

2

1    its web site located at    HYPERLINK http://www.performancedata.com

2    www.performancedata.com, or referred to as "RelationBase."

3    E.    "New Issues file" refers to all original, copy, archived or predecessor

4    versions of Trans Union's database, batch file or electronically-stored information

5    which is created by selecting from CRONUS names and addresses of consumers

6    with at least two tradelines, one of which has an open date within the last 90 days.

7    F.    "Target Marketing list" refers to lists of names and addresses and/or

8    telephone numbers of consumers which are provided, distributed or otherwise

9    disclosed to Trans Union's target marketing customers or their agents who are

10   offering goods and services to consumers.   This definition includes "target

11   marketing list" as that term is used in   Appellant-Respondent Trans Union

12   Corporation's Public Record Version Brief In Support Of Appeal in Case No D-9255,

13   before the Federal Trade Commission at page 10 ("PerformanceData provides target

14   marketing lists of names and addresses to its customers who are offering goods and

15   services to consumers"), but does not include lists disclosed for the purpose of

16   making a "firm offer of credit or insurance" as defined in the Fair Credit Reporting

17   Act, 15 U.S.C. §1681a(l).

18   G.    "Target marketing products" refers to models, estimates and other

19   similar products used by Trans Union to generate lists of names and addresses

20   and/or telephone numbers of consumers which are provided, distributed or

21   otherwise disclosed to Trans Union's target marketing customers or their agents

22   who are offering goods and services to consumers, including but not limited to such

23   products as E-VAL, PIC, P$YCLE, SOLO, TIE and any other products used to estimate

24   the home equity, net worth or other similar financial characteristics of consumers.

25   H.    "Trans Link" refers to all current or predecessor versions of Trans

26   Union's product which "reverse appends" a name and address with a bank card

27   number.

28                                              3

I.      "Document" or "documents" shall mean the original and all non-identical copies of written, printed, typed and visually, orally or electronically reproduced material of any kind, whether or not privileged, which is in the possession, custody or control of Trans Union, including, but not limited to, writings, drawings, graphs, charts, photographs, electronic ("E-mail") communications, computer tapes and other data compilations from which information can be obtained or translated, if necessary, by Trans Union through detection devices into reasonably usable form, including computer databases, batch files or other electronically-stored information.

J.      "FTC Proceeding" shall mean the proceeding before the Federal Trade Commission styled In the Matter of Trans Union Corporation, Docket No. 9255.

K.      With the exception of requests nos. 15 through 30, the time period for these requests is January 1, 1995 to the present.  The time period for requests nos. 15 through 30 is December 15, 1992 to the present.

L.      The singular shall include the plural and the plural shall include the singular.

M.      As used herein, the conjunctive term "and" shall include the disjunctive term "or,' and vice versa.

N.      Should Trans Union withhold any document sought by any of the following requests, Trans Union shall, in its written response, describe such document by stating the following as to each such document: (1) the document date; (2) the name of the person(s) who signed, sent or prepared the document; (3) the name of the person(s) to whom the document was addressed or copied; (4) the general nature or description of the document (i.e., letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists; and (5) the legal basis for withholding the document and a description of the subject matter of the

4

document sufficient to show why the legal basis for withholding the document is applicable in each instance.

O.    Plaintiff's request of any documents sought herein shall not constitute a concession that any such documents should not have been produced in connection with Trans Union's initial disclosures under Fed.R.Civ.P. 26 or Civil L.R. 16-5.

## REQUESTS

1.    All documents reflecting or referring to communications between Trans Union and its target marketing customers that concern, evidence, reflect or refer to target marketing lists.

2.    A hard copy or printout of all information pertaining to Plaintiff in CRONUS.

3.    A hard copy or printout of all information pertaining to Plaintiff in each copy or version of Trans Union's Master File.

4.    A hard copy or printout of all information pertaining to Plaintiff in each copy or version of Trans Union's Performance Base File.

5.    A hard copy or printout of all information pertaining to Plaintiff in each copy or version of Trans Union's New Issues File.

6.    One copy of each version of Trans Union's Master File.

7.    One copy of each version of Trans Union's Performance Base File which has been used to generate target marketing lists for purposes other than making a "firm offer of credit or insurance" as defined in the Fair Credit Reporting Act, 15 U.S.C. §1681a(l).

8.    One copy of each version of Trans Union's New Issues File.

9.    All documents reflecting or referring to the identity of Trans Union's target marketing customers.

5

10.    All documents reflecting or referring to the identity of the third-party mailers to whom Trans Union provides or has provided its target marketing lists.

11.    All documents reflecting or referring to the target marketing lists Trans Union's target marketing customers or their agents have purchased, rented or otherwise obtained from Trans Union which show the selects, indicators, extracts and/or other criteria used to generate said target marketing lists, including but not limited to all orders, invoices, receipts, confirmations and other written communications with said customers or their agents.

12.    All documents reflecting or referring to the target marketing lists Trans Union's target marketing customers or their agents have purchased, rented or otherwise obtained from Trans Union, including but not limited to all orders, invoices, receipts, confirmations and other written communications with said customers or their agents which show the target marketing products (e.g., "E-VAL," "PIC," "P$YCLE," "SOLO" and "TIE") used to generate said target marketing lists.

13.    All documents reflecting a target marketing list which has been or will be disclosed to a third party and which contains Plaintiff's name.

14.    All documents reflecting a target marketing list which has been or will be disclosed to a third party and which contains the name of consumer(s) whose addresses are located in California.

15.    All documents produced by Trans Union in the FTC proceeding.

16.    All documents produced by the complaint counsel in the FTC proceeding.

17.    All documents produced by third parties in the FTC proceeding.

18.    All protective orders entered by the parties or any third parties in the FTC proceeding.

19.    All privilege logs exchanged or disclosed by the parties or by any third parties in the FTC proceeding.

20.   All written discovery responses by Trans Union in the FTC proceeding.

21.   All written discovery responses by complaint counsel in the FTC proceeding.

22.   All documents reflecting expert reports which were exchanged or disclosed in the FTC proceeding.

23.   All transcripts of testimony (deposition, trial, etc.) of Trans Union personnel, Trans Union witnesses, Trans Union experts, complaint counsel witnesses, complaint counsel experts, third-party personnel, third-party witnesses and third-party experts generated in the FTC proceeding.

24.   All declarations and affidavits of Trans Union personnel, Trans Union witnesses, Trans Union experts, complaint counsel witnesses, complaint counsel experts, third-party personnel, third-party witnesses and third-party experts submitted in the FTC proceeding.

25.   All exhibits offered, entered and/or received into evidence in the trial before Judge Timony in the FTC proceeding.

26.   All exhibits marked and used at any depositions in the FTC proceeding.

27.   All documents reflecting or referring to Trans Union's continuing or discontinuing, or altering its practices pertaining to, the use of any selects, indicators, extracts or other criteria in connection with its target marketing list business.

28.   All documents reflecting or referring to Trans Union's continuing or discontinuing, or altering its practices pertaining to, the use of any target marketing products in connection with its target marketing list business.

29.   All documents reflecting or referring to the FTC's 1993 consent order with TRW Inc. regarding target marketing lists.

30.   All documents reflecting or referring to whether or not the disclosure, sale and/or distribution of any of Trans Union's target marketing lists or target marketing products violates the Fair Credit Reporting Act ("FCRA"), the Consumer

7

Credit Reporting Agencies Act ("CCCRA") or any other federal or California state law.

31.    All documents reflecting or referring to Trans Union's continuing or discontinuing, or altering its practices pertaining to, the disclosure, sale and/or distribution of any target marketing lists or target marketing products in or around October 1997.

32.    All documents reflecting or referring to Trans Union's no longer including certain information in its Master File commencing in or around October 1997.

33.    All documents reflecting or referring to Trans Union's continuing or discontinuing, or altering its practices pertaining to, the disclosure, sale and/or distribution of any target marketing lists or target marketing products in or around January 1998.

34.    All documents reflecting or referring to Trans Union's no longer including certain information in its Master File in late 1997 or early 1998.

35.    All documents reflecting or referring to the creation in late 1997 or early 1998 of the Performance Base file.

36.    All documents reflecting or referring to Trans Union's continuing or discontinuing, or altering its practices pertaining to, the disclosure, sale and/or distribution of any target marketing lists or target marketing products in or around April 1998.

37.    All documents reflecting or referring to Trans Union's no longer including certain information in its Master File in or around April 1998.

38.    All documents referring to the 1996 amendments to the FCRA which became effective October 1, 1997 and to Trans Union's sale, disclosure or distribution of its target marketing lists or target marketing products.

39.   All documents reflecting, referring or relating to Trans Union's consideration of the "$2500 per occurrence penalty" imposed by the 1996 amendments to the FCRA which became effective October 1, 1997.

40.   All documents reflecting, referring or relating to Trans Union's consideration or discussion of the fact that, with the 1996 amendments to the FCRA which became effective October 1, 1997, Trans Union had gone from an environment where the worst thing that could happen is that Trans Union would have to stop selling certain target marketing lists to an environment where there were significant financial penalties.

41.   All documents reflecting or referring to the building of the Master File in December 1997.

42.   All documents reflecting or referring to consumer privacy concerns or expectations regarding use of credit information collected and stored by credit reporting agencies, including any market, consumer or survey research regarding same.

43.   All documents reflecting or referring to Trans Union's advertising, promotion or marketing of its target marketing business, databases and products.

44.   All documents reflecting Trans Union's gross revenues from the distribution and sale of target marketing lists and target marketing products.

45.   All documents reflecting Trans Union's net profits from the distribution and sale of target marketing lists and target marketing products.

46.   All documents produced in response to any discovery requests in the Frey case.

47.   All documents reflecting organizational charts for Trans Union and its predecessors.

48.   All documents reflecting organizational charts for PerformanceData and its predecessors.

9

49.   All documents reflecting lists of the titles and responsibilities of all employees of PerformanceData and its predecessors

50.   All documents reflecting, referring or relating to Trans Union's privacy protocol, except for documents reflecting, referring or relating thereto which address only security measures available to prevent unauthorized access to Trans Union's databases.

51.   All trial witness lists and trial exhibit lists submitted in the FTC proceeding.

52.   All documents reflecting or referring to the extent of consumers' awareness of their right to opt-out of Trans Union's target marketing lists.

53.   All documents reflecting or referring to Trans Union's efforts to make consumers aware of their right to opt-out of Trans Union's target marketing lists.

Dated:  September 16, 1999          RIGHETTI LAW FIRM


By _____
   Matthew Righetti
   Attorneys for plaintiff

## PROOF OF SERVICE

I, Dawn Taylor, declare that I am employed in the County of San Francisco, California.  I am over the age of eighteen (18) years and not a party to the within cause; my business address is 220 Montgomery St. Suite 1650, San Francisco, California 94104.

On September 20, 1999, I caused to be served the attached:

**PLAINITFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

in said cause, by placing a true copy thereof enclosed in a sealed, envelope addressed as follows:

D Ronald Ryland,  Esq.
John D.  Pernick , Esq.
SHEPPARD, MULLINS, RICHTER & HAMPTON , LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
Fax (415)434-3947

Roger L. Longtin, Esq.
William Campell, Jr. , Esq.
Michael O'Neil , Esq.
Elizabeth R. Bacon Ehlers, Esq.
RUDNICK  & WOLFE
203 North La Salle Street, Suite 1800
Chicago,  Illinois 60601
Fax 312-630-7319

Kevin J. McInerney, Esq.
18124 Wedge Parkway, #503
Reno, NV  89511
Fax (775) 849-3866

Chris Micheletti, Esq
Furth, Fahrner & Mason
Furth Building, Suite 1000
201 Sansome Street
San Francsico, CA 94104
Fax  (415) 982-2076

1

Amy Stewart, Esq.
Rose Law Firm
120 East Fourth St.
Little Rock, AR 72201
Fax (501) 375-1309

(xxxx)     BY MAIL   I placed each such sealed envelope, with postage thereon fully prepaid, for collection and mailing at San Francisco, California, following ordinary business practices. I am readily familiar with the practice of the Righetti Law Firm for processing of correspondence, said correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

(    )    BY PERSONAL SERVICE caused each such envelope to be delivered by hand to the addressee(s) noted above.

(    )    BY FACSIMILE   I caused the contents of said envelope to be delivered by Facsimile machine to the number indicated after the address(es) noted above.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 20, 1999, at San Francisco, California

Dawn Taylor

2