IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: TRANS UNION CORP. PRIVACY ）
LITIGATION, ）
）
_____）　　No.　00 C 4729
）　　MDL Docket No. 1350
THIS DOCUMENT RELATES TO: ）　　Judge Robert W. Gettleman
）
　　　　ALL CASE ）

## MEMORANDUM OPINION AND ORDER

After approximately eight years of litigation, this complicated multi-district case was

settled in September 2008, resulting in a benefit to a national class consisting of all persons who

were damaged by defendants' improper disclosure of their financial information, in violation of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.　In addition to the $75 million

dollar cash fund deposited by defendant Trans Union, the settlement provides for in-kind

services for which claims valued at over $34 million have been made.　In addition, Trans Union

continues to be subject to individual lawsuits by affected consumers.　There is no doubt that the

settlement

resulted in substantial benefits for the plaintiff class.

MDL co-lead counsel, liaison counsel, <u>Frey</u> counsel and Louisiana counsel (collectively "Movants"),[1] along with Texas counsel,[2] have moved for an award of attorneys' fees. Movants have requested a total award of $15.1 million in fees, to be divided pursuant to an undisclosed agreement among them, along with expenses in the amount of $774,664.41. Texas counsel have requested a total fee award of $2,850,000.00, representing a multiplier of 1.77 times a lodestar of $1,613,578.75. Movants and Texas counsel have submitted extensive, yet flawed, documentation and declarations to support their requests for these fees, and urge the court to view the requests either as a percentage of the recovery or under a lodestar basis. A class member, David T. Murray, has filed an objection, contending that a fee award of no more that 10% of the monetary recovery ($75 million) should be awarded. For the reasons discussed below, the court denies both motions and has determined that an award of fees totaling 10% of the benefit to the class is appropriate in this case.

Because the settlement creates a settlement fund in exchange for release of defendants' liability for damages and statutory attorneys' fees, equitable fund principles govern the court's award of fees. See <u>Florian v. Nationsbank of Georgia, N.A.</u>, 34 F.3d 560, 563-564(7th Cir. 1994). Under equitable principles, this court has discretion to use either the lodestar method or a percentage of recovery method to determine an appropriate award.

---

[1]MDL co-lead counsel are Jon W. Borderud of The Borderud Law Group, Joy Ann Bull of Coughlin Stoia Geller Rudman & Robbins LLP and Matthew Righetti of the Righetti Law Firm, P.C. Louisiana counsel are Dawn A. Wheelahan LLC and Herman, Herman, Katz & Cotlar. Liaison counsel is Saunders & Doyle and counsel in the California state court case, <u>Frey v. Trans Union et al.</u>, is Zarian Midgley & Johnson, PLLC.

[2]Texas counsel consists of Caddell & Chapman, as well as Weller, Green, Toups & Terrell, LLP and Edelman, Combs, Latturner & Goodwin, LLC.

Under the lodestar approach, a "lodestar" figure is calculated by multiplying the number of hours expended by each individual attorney's hourly rate. Under the percentage approach, a flat percentage of the settlement fund is awarded as fees. Id. Under either approach, the court's task is to do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market" at the outset of the litigation when the risk of loss still existed. Sutton .v Bernard, 504 F.3d 688, 692 (7th Cir. 2007) (citing In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001)).

Movants' and Texas counsel's requests for fees are unsupportable under either approach. To begin, contrary to Movants' and Texas counsel's arguments, due to the underlying successful action by the FTC against Trans Union,[3] there was very little chance that this litigation would not be successful at some level. The greatest risk posed to plaintiffs' counsel involved structuring the class certification and computing damages. Although, as counsel point out, the court initially denied a national class in this case, there was little question that smaller classes could be certified and administered either in the context of this MDL case or individual state-based litigation. See In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328 (N.D. Ill. 2002); In re Trans Union Corp Privacy Litig., 326 F. Supp. 2d 893 (N.D. Ill. 2004). Therefore, given the fee-shifting provision in the FCRA, there was little risk that plaintiffs' attorneys would not be compensated.

Typically, this court employs the lodestar approach to awards of attorneys' fees, even in common fund cases. In the instant case, however, the court finds that the materials submitted to support the fee petitions are materially inadequate and troubling. Most, but not all of the

---

[3]Trans Union Corp. v. F.T.C., 245 F.3d 809 (D.C. Cir. 2001)

problems arise from the documentation submitted by Louisiana counsel, Dawn Wheelahan. The following is a summary of some of the most troubling aspects of the fee petition and supporting documents:

**Questionable Value Added by Secondary MDL Counsel:**

Twenty-eight law firms submitted requests for fees related to work done on behalf of the MDL plaintiffs. Four of these law firms routinely appeared and filed pleadings before the District Court (the "Primary MDL Counsel"). The remaining twenty-four firms did not (the "Secondary MDL Counsel"). The majority of Secondary MDL Counsel are solo practitioners or small law firms that specialize in class action work. With two exceptions, the Secondary MDL Counsel did not submit time sheets or detailed billing records for the court's review. Rather, they provided declarations describing their class action expertise, firm resumes, and charts summarizing the hours spent in connection with this litigation. The charts do not include a date range. The declarations state the month in which the attorney(s) began working "on behalf of the plaintiffs" - generally sometime between March and September 2000. The chart divides the attorney(s)' time into seven broad categories: (1) investigations, factual research; (2) discovery; (3) pleadings, briefs and pretrial motions; (4) court appearances; (5) settlements; (6) litigation strategy, analysis and case management; and (7) class certification. The fees set forth in the charts submitted by Secondary MDL Counsel total $5,221,214. Aside from the initial state court filings, the court cannot determine the value, if any, added by Secondary MDL Counsel. Moreover, due to the limitations of the supporting documentation, it is impossible to identify duplicative and unnecessary work. See

Heriaud v. Ryder Transp. Servs., 2006 WL 681041, *3 (N.D. Ill. Mar. 14, 2006)

(reasoning that the number of hours reasonably expended on the litigation does not

include those "that are excessive, redundant, or otherwise unnecessary").

**Duplicative Tasks:** Louisiana and Texas counsel seek to recover fees for work related to

the notice program. In late April 2008, the parties requested the assistance of Magistrate

Judge Mason in resolving a dispute as to the necessary participants in communications

with Hillsoft Notifications (the notice provider). It is clear from the parties' time records

and the emails provided to Judge Mason that MDL, Louisiana, and Texas counsel

engaged in duplicative communications with Hillsoft. Thus, many of the hours billed in

connection with Hillsoft's notice program are redundant and/or excessive, and should be

cut.

**Lack of Detail:** Louisiana counsel's time submissions include dozens, if not hundreds, of

hours billed to "teleconf. co-counsel," "meet w/ counsel," or "email couns." without any

further identification of the value added by these tasks. MDL and Liaison counsel did

not provide the court with individual time sheets or daily time logs, but rather provided

summary sheets breaking down each attorney's time, over the course of the entire case,

into seven categories.

**Travel Time:** On at least thirty-two separate occasions, Louisiana counsel Wheelahan

billed twelve hours for "travel time in Chicago" in addition to the time spent traveling to

Chicago and/or working on case-related tasks in Chicago. For example, on

November 27, 2005, counsel billed 7 hours to travel to Chicago and prepare for

conference, 3.5 hours for a meeting, and 12 hours travel time in Chicago, for an

astounding total of 23.5 hours that day. On October 4, 2006, counsel billed 6.5 hours travel to Chicago for a status conference, 12 hours travel time in Chicago, and 3 hours for drafting correspondence and preparing for a conference, for a total of 21.5 hours that day. On August 22, 2007, Wheelahan billed 25.5 hours (4.5 hours for emails, 3 hours for hearing preparation, 6 hours to travel to Chicago, and 12 hours "travel time" in Chicago). The court finds that this time is unacceptable, unsupportable and outrageously overstated.[4]

**Administrative Tasks:** It is incumbent upon the district court to disallow hours expended by counsel on tasks that are easily delegable to non-professional assistants, such as administrative tasks. <u>Spegon v. Catholic Bishop of Chicago</u>, 175 F.3d 544, 553 (7th Cir. 1999). Louisiana counsel routinely billed between .4 and .8 hours time towards making travel arrangements (8/22/05, 10/19/05, 12/10/05, 12/21/05, 3/7/06, 8/21/06, 11/17/06, 12/29/06, 2/22/07, 7/3/07, 7/25/07, 8/4/07, 8/27/07, 9/12/07, 12/7/07, 1/5/07, 1/15/08, 3/19/08, 4/19/08, 5/20/08, 10/15/08 and 11/1/08). Louisiana counsel also seeks fees for time spent reviewing and archiving email correspondence (4/27/06, 5/6/06, 5/12/06, 5/17/07, 9/7/07, 2/26/08 and 6/9/08) and for downloading, filing, mailing and organizing documents (8/27/08, 9/5/07, 9/10/07, 9/29/07, 10/2/07, 10/25/07, 11/12/07, 1/5/08, 1/10-12/08, 1/21/08, 1/26/08, 2/14/08, 4/13/08, and 6/25/08). The number of hours, if any, that MDL counsel claims for clerical tasks cannot be determined. Texas Counsel did not include administrative tasks in their fee request.

---

[4]Attached as Appendix A is a summary of Louisiana counsel's travel time entries.

**Time Spent Working on Fee Submissions/ Fee Issues:** Liaison counsel excludes time spent on preparing the fee submission and working on fee issues.  See In re Abbott Labs Omniflox Prod. Liab. Litig., 1997 U.S. Dist. LEXIS 3679 at *14 n.8 (N.D. Ill. Mar. 6, 1997).  There is no indication that MDL, Louisiana or Texas counsel did the same.

**Unrelated Tasks** (other cases and/or practice related): Louisiana counsel Wheelahan seeks fees for various tasks related to her decision to "attend FCRA Safeco arg in S.Ct." on 1/2/05 and "S.Ct. argu on willfulness standard" on 11/15/06.  This includes 12 hours "travel time in DC" on both 11/15/06 and 11/16/06.  Observing Supreme Court arguments on other cases is not compensable in the instant case.

**Unsuccessful Tasks:** Plaintiffs' counsel devoted significant time to tasks that were ultimately unsuccessful.  The most obvious example is the first unsuccessful attempt at settlement.  Louisiana counsel also seeks fees for a number of pleadings stricken by the court.

- Motion for class certification [208], stricken on 2/8/06 [Doc. No. 217]

- Motion to compel compliance [230] stricken 3/13/06 [233]

- Motion for hearing, stricken 3/24/06  [242]

- Opposition to preliminary approval [316], stricken on 1/23/07 [317, 318]

- First amended complaint against insurers, court declined to exercise jurisdiction and dismissed complaint on 9/18/07 [377].

- Motion to lift stay and compel production [376], stricken without prejudice on 9/18/07 [374]

Although, as described above, most of the problems the court has encountered are with the time entries by Louisiana counsel Wheelahan, all the attorneys seeking fees are tarred with

this sorry brush. The Movants included Ms. Wheelahan's time in their submission, and Texas counsel's separate submission for fees acknowledges (indeed, is based on) their cooperation and efforts undertaken with Wheelahan.

In perhaps the most unpleasant and unprofessional aspect of the fee petition submissions, Texas counsel and Wheelahan have engaged in a series of filings attacking each other's credibility, professionalism and honesty. As part of this unseemly spat, Texas counsel submitted to the magistrate judge a series of emails from Wheelahan to Mitch Toups, one of the Texas attorneys, that seem to express an intention to manipulate the court proceedings in connection with the settlement for the sole purpose of augmenting the fee award. A copy of these email communications is attached as Appendix B. This court finds this type of behavior to be reprehensible.

The court is not unmindful of the benefit to the class achieved through the efforts of Movants and Texas counsel. Defendants are out of the case and have no incentive to and did not object to any fee request. As noted, only one class member has objected to the fee requests, leaving little adversary procedure. Because the amount of fees awarded directly impacts the amount of funds available to distribute to class members, the burden falls on the court to exercise heightened vigilance and strict direction in keeping counsel honest. <u>See In re Continental Ill. Sec. Litig.</u>, 962 F.2d 566, 573 (7th Cir. 1992).

Because the court lacks all faith in the veracity of the hours billed, the court rejects the lodestar approach and adopts a percentage of recovery, the method recommended by the Seventh Circuit in both <u>Florian</u> and <u>In re Continental Ill. Sec. Litig.</u> Reconstructing the market rate <u>ex ante</u> is always difficult. Reconstructing it at this time, eight years after the start of the litigation,

is nearly impossible. It is made more difficult in cases, such as the instant case, where there is statutory fee shifting. The existence of the fee shifting statute means that plaintiffs' lawyers who typically bring these cases, either one-on-one or for a potential class, do not need to negotiate a fee up front. Thus, there are no fee contracts to guide the court. Nor would examining fee awards in consumer class actions be particularly useful, since those awards are typically based on a lodestar approach, which this court has rejected.

Because the risk of no recovery was virtually nonexistent due to the FTC action, and given the potentially enormous statutory damage recovery, the court concludes that a sliding percentage is appropriate, with a lesser percentage attached to the monetary recovery for the class, which was predictable and more easily achieved, and a greater percentage attached to the in-kind relief, the recovery of which required greater creativity by the lawyers. Therefore, the court awards fees in the total sum of 9% of the $75 million cash award and 12% of the $34 million in-kind benefits, for a total award of $10,830,000. The court notes that this amounts to approximately 10% of the total benefits to the class, an award that the court concludes is both fair and reasonable.

The court directs Movants and Texas counsel to meet and confer to determine whether they can agree on an allocation between them in light of this opinion. Absent such an agreement on allocation, which will be included in the public record in this case, this court will appoint a special master under Fed. R. Civ. P. 53 to determine the appropriate allocation. The special master's fees and expenses will be taken from the total fee award eventually approved.

The court directs Movants and Texas counsel to submit, in writing, a report on fee allocation consistent with this memorandum opinion and order on or before April 27, 2009. The court will set a hearing or status date thereafter.

**ENTER:** **April 6, 2009**

Robert W. Gettleman
United States District Judge

## Travel Time Billed by Louisiana Counsel

4/11/05 (5.5 hours to "Travel to Chicago for remand hearing," 4.5 hours to "Meet w/ counsel" and 12 hours for "Travel time in Chicago").

9/5/05 (5.5 hours to "Travel to Chicago for status conference," 3.5 hours to "review decisions," and another 12 hours for "Travel time in Chicago").

10/4/05 (6 hours to travel to Chicago, 3.8 to study pleadings, and 12 hours travel time in Chicago)

11/7/05 (5.5 hours to travel to Chicago, 2.9 hours to review materials, and 12 hours travel time in Chicago)

11/27/05 (7 hours to travel to Chicago and prepare for conference, 3.5 hours for a meeting, and 12 hours travel time in Chicago)

1/11/06 (6 hours travel to Chicago, 4.8 hours to study documents, and 12 hours travel time in Chicago)

11/13/06 (8 hours to attend settlement conference, 12 hours travel time in Chicago)

2/7/06 (6.5 hours travel to Chicago, 3.5 hours to review materials, and 12 hours travel time in Chicago)

2/21/06 (6.5 hours travel to Chicago, 3.5 hours for "further prep" and 12 hours travel time in Chicago)

2/27/06 (12 hours travel time in Chicago, 4 hours to attend hearing, and 6.5 hours to travel home)

3/13/06 (7.4 hours to attend settlement conference and 12 hours travel time in Chicago)

4/12/06 (6.5 hours travel to Chicago, 1.9 hours of emails, 12 hours travel time in Chicago)

7/27/06 (6 hours travel to Chicago, 4 hours to review previous correspondence, and 12 hours travel time in Chicago)

8/30/06 (3 hours to attend hearing, 6.9 hours to review documents, 12 hours travel time in Chicago)

8/31/06 (7.2 hours to prepare for and attend deposition, 12 hours travel time in Chicago)

10/4/06 (6.5 hours travel to Chicago for status conference, 12 hours travel time in Chicago, 3 hours drafting correspondence and preparing for conference)

**\*\*\* Nov 07 - travel in DC \*\*\*** (11/15/06 and 11/16/06, 12 hours "travel time in DC" in addition to time billed to attending Supreme Court argues in unrelated case).

 4/23/07 (5.5 hours travel to Chicago, 12 hours travel time in Chicago)

5/13/07 (5.5 hours travel to Chicago, 12 hours travel time in Chicago)

6/27/07 (6 hours travel to Chicago, 12 hours travel time in Chicago)

6/29/07 (4 hours to attend status hearing, 12 hours travel time in Chicago)

7/11/07 (9.5 hours to meeting with counsel, 12 hours travel time in Chicago)

**8/22/07 (4.5 hours for emails, 3 hours hearing prep, 6 hours travel to Chicago, 12 hours travel time in Chicago)**

8/29/07 (7.5 hours travel to Chicago, 12 hours travel time in Chicago)

9/17/07 (6 hours travel to Chicago, 1.5 hours meeting with counsel, 12 hours travel time in Chicago)

1/14/08 (5.5 hours travel to Chicago, 12 hours travel time in Chicago)

3/4/08 (3 hours to attend hearing, 6.9 hours of meetings and emails, 12 hours travel time in Chicago)
3/18/08 (10 hours travel to Chicago, 12 hours travel time in Chicago)
4/18/06 (12 hours travel time in Chicago, 3 hours drafting, 8.5 hours travel home)
4/24/08 (8.5 hours attending status hearings, 2.5 hours studying revised settlement proposal, 12 hours travel time in Chicago)
10/15/08 (12 hours travel time in Chicago, 4 hours preparing for and attending status hearing, 1.9 hours emails and teleconference)
10/31/08 (7.5 hours travel home and 12 hours travel time in Chicago)

**Cory S. Fein**

| | |
|---|---|
| **From:** | Mitch Toups [matoups@wgttlaw.com] |
| **Sent:** | Thursday, November 20, 2008 9:52 AM |
| **To:** | Michael A. Caddell; Cynthia B. Chapman; Cory S. Fein |
| **Subject:** | Fw: Fwd: Fw: |

Fyi
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: DWheelahan@aol.com <DWheelahan@aol.com>
To: Mitch Toups <matoups@wgttlaw.com>
Sent: Wed Nov 19 23:47:29 2008
Subject: Fwd: Fw:


    And the more I think about this, the better it's looking to me. The 7th rejects the settlement, on a motion to dismiss, and there are then no live class claims that can be certified, because the statute has run on them. LA asserts additional claims that relate back to our original filing in 2002 for the co-extensive LA class, and we settle with TU for around 40M. TU saves a pile of money, and we get paid in a very friendly LA court, 25% of 40M. So my LA co-counsel get 3M, and I get 7M. And TU saves 35M, and their lawyer looks great. And the MDL counsel who abandoned the statutory damages claims, and failed to certify the punitives, are left with an Illinois class of firm offer claims that they cannot prove up, bec they are not and never were classwide violations--and TU will not settle them. Tell me why 4.5M shd look better to me than that scenario?


From: dwheelahan@AOL.com
To: DWheelahan@aol.com
Sent: 11/19/2008 10:26:50 P.M. Central Standard Time
Subj: Fw:


Sent via BlackBerry by AT&T

-----Original Message-----
From: dwheelahan@AOL.com

Date: Thu, 20 Nov 2008 03:55:58
To: Mitch Toups<matoups@wgttlaw.com>
Subject: Fw:


But here's what can happen. The 7th van find that class claims for statutory. Damages were abandoned after cert denied in 2002 when MDL coins didn't move to certify them, and cert of the punitives was denied in 2005. Leaving no live class claims. Then i'll amend my LA suit to add FCRA claims and settle w TU for less than 75M but plenty. More to me than 4.5
Sent via BlackBerry by AT&T

-----Original Message-----
From: dwheelahan@AOL.com

Date: Thu, 20 Nov 2008 03:25:50
To: Mitch Toups<matoups@wgttlaw.com>
Subject: Fw:


My la co-counsel, who certified our class w me, are accepting a million. I don't see why TX shd get more. I'd rather just litigate it than are everyone but me walk away w more than they shd have, and more than the 7th will give them, at my expense.

Sent via BlackBerry by AT&T

-----Original Message-----
From: dwheelahan@AOL.com

Date: Thu, 20 Nov 2008 03:20:26
To: Mitch Toups<matoups@wgttlaw.com>

Mitch , I don't understand why TX thinks I will take LESS than my lodestar, while TX gets
more than theirs when they carried less risk for less time. Can you explain what justifies
that?
Sent via BlackBerry by AT&T

———

One site has it all. Your email accounts, your social networks, and the things you love.
Try the new AOL.com <http://pr.atwola.com/promoclk/100000075x1212962939x1200825291/aol?
redir=http://www.aol.com/?optin=new-dp%26icid=aolcom40vanity%26ncid=emlcntaolcom00000001>
today!