1

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION


3
   IN RE:   TRANS UNION                )
4  CORPORATION PRIVACY LITIGATION      )
                                       )
5                                      )  No. 00 C 4729
                                       )  Chicago, Illinois
6                                      )  April 14, 2009
                                       )  9:15 a.m.
7                                      )


8
              TRANSCRIPT OF PROCEEDINGS - MOTION
9
          BEFORE THE HONORABLE ROBERT W. GETTLEMAN
10
   APPEARANCES:
11 For the Plaintiffs:      SAUNDERS & DOYLE
                            20 South Clark Street
12                          Suite 1720
                            Chicago, Illinois 60603
13                          BY:  MR. THOMAS A. DOYLE

14 For the Louisiana        MS. DAWN ADAMS WHEELAHAN
   plaintiffs:              650 Poydras Street
15                          Suite 1550
                            New Orleans, Louisiana 70130
16
   For the Texas           CADDELL & CHAPMAN
17 plaintiffs:             1331 Lamar, Suite 1070
                           Houston, Texas 77010
18                         MR. CORY FEIN

19 For the Defendant:      DLA PIPER
                           203 North LaSalle Street
20                         Suite 1900
                           Chicago, Illinois 60601-4001
21                         BY:  MR. MICHAEL C. O'NEIL

22

23 Official Reporter:      JENNIFER S. COSTALES, CRR, RMR
                           219 South Dearborn Street
24                         Room 1706
                           Chicago, Illinois 60604
25                         (312) 427-5351

1      (Proceedings in open court.)

2          THE CLERK:   00 C 4729, In Re:   Trans Union Corporation

3  Privacy Litigation.

4          MS. WHEELAHAN:   Good morning, Your Honor.

5          Dawn Wheelahan for the settlement class.

6          MR. DOYLE:   Good morning, Your Honor.

7          Thomas Doyle, liaison counsel.

8          MR. FEIN:   Good morning.

9          Cory Fein for Texas counsel.

10         MR. O'NEIL:   Your Honor, Michael O'Neil for Trans Union.

11         THE COURT:   You're the only person who doesn't have to

12  be here, right?

13         MR. O'NEIL:   I hope that's true, Your Honor.

14         THE COURT:   Well, I don't see where you're involved.

15  That's one of my problems in this.

16         All right.   Ms. Wheelahan, it's your motion, although

17  you made a mistake here, you noticed up a motion for, to lift

18  protective orders.

19         MS. WHEELAHAN:   I apologize for that, Your Honor.   I

20  thought I noticed up two other motions.

21     (Tendering document.)

22         MS. WHEELAHAN:   I'm sorry for this, Your Honor.   I'm

23  sorry.   We should have two motions up today.

24         THE COURT:   Well, you have three motions, a motion to

25  strike -- I think what you meant on that one was to strike

1  confidential materials, correct?

2          MS. WHEELAHAN:  Yes, Your Honor.

3          THE COURT:  Well, wait.  And then you had a motion for

4  expedited hearing on that.

5          MS. WHEELAHAN:  On the motion to strike.

6          THE COURT:  Then you had a motion for leave to exceed

7  the page limit.  And then you had a motion to amend the judgment.

8          MS. WHEELAHAN:  Yes, Your Honor.

9          THE COURT:  You have four motions, right?

10          MS. WHEELAHAN:  Count them, yes, Your Honor.

11          THE COURT:  Okay.  First of all, as far as the 15-page

12  limit, I've already read your brief, so I'm granting that.

13          The motion to strike, well, is there any reaction from

14  anybody else to any of these motions?

15          MR. FEIN:  Yes, Your Honor, we have a response to that.

16          THE COURT:  You're Texas counsel?

17          MR. FEIN:  Right.

18          THE COURT:  All right.  And your response is?

19          MR. FEIN:  On the motion to strike, we have a case, In

20  Re:  General Motors Corporation Engine that discusses, that

21  basically supports the proposition that the magistrate was

22  absolutely correct in handing over communications from the

23  mediation to the Court.  In a class action situation, the Court

24  does have an interest in settlement negotiations.  It's not the

25  same as a non-class action, because the Court has an interest in

1 │ making sure the attorneys are advocating the interests of the

2 │ absent class members.  The Court's duty to these absent class

3 │ members allows it to inquire into settlement negotiations in a

4 │ class action setting.

5 │        MS. WHEELAHAN:  May I respond to that?

6 │        THE COURT:  Sure.

7 │        MS. WHEELAHAN:  It's inapposite, because this case is

8 │ controlled by Local Rule 82.3.  And this didn't have to do with

9 │ settlement, with the settlement itself.  It had to do with

10 │ attorneys' fees negotiations.  So I think General Motors is

11 │ inapposite.

12 │        THE COURT:  So if it doesn't have anything to do with

13 │ the settlement, it doesn't have anything to do with the local

14 │ rule either.

15 │        This material was given Judge Mason in connection with

16 │ his pretrial work including settlement and everything else, and

17 │ he turned it over to me, because he felt duty bound to do that.

18 │ He considered it to be evidence of an impropriety or at least a

19 │ potential impropriety.

20 │        And I don't know what -- you know, I'm not defining the

21 │ limits of our local rule or the general notion that I absolutely

22 │ agree with that settlement negotiations are confidential and

23 │ generally don't reach the public eye.  But I'd like the cite that

24 │ you have there to that case, not just this second, but you can

25 │ give it to me when we are done here.

1          But I just have a couple of responses, nothing

2  definitive at this point, Ms. Wheelahan.  First of all, if an

3  improper communication is made during a settlement conference,

4  that does not somehow protect or immunize that behavior from

5  further scrutiny.  I'll give you an extreme example that just

6  comes to mind probably to anybody thinking about this.

7          If a lawyer were to offer a bribe to a party, a judge,

8  or a witness or something like that during a settlement

9  conference, there would be no protection for that type of conduct

10 or communication.

11          MS. WHEELAHAN:  Of course that's right, Your Honor.

12          THE COURT:  So that's the extreme.  I'm not saying that

13 this rises to that or sinks to that level.  But it's serious

14 enough for me to have considered this before I put that in my

15 opinion.  And I did not consider this to be the type of

16 communication that was protected.

17          MS. WHEELAHAN:  Here is the problem I have, Your

18 Honor --

19          THE COURT:  No.  Let me finish.  This is a serious

20 matter, and I am very concerned about one thing probably more

21 than anything else in this.  Well, I'm concerned about a couple

22 of things very seriously.  One is we have an unresolved fee

23 petition here that I was hoping to have put behind everybody by

24 now.  Two is the out-of-pocket costs, which I've looked at, and I

25 don't find any real problem with them at this point.  And I will

1  include them, I would like to get to them, actually, and put

2  those out of the way and concentrate on the fees.  So I take your

3  point about those, and maybe we'll even get an order out on the

4  costs.  I didn't include them in the other thing, in my previous

5  order, because I just felt the other issues were so much more

6  important that they attracted all of my attention.

7           Number three, and probably the most important is I have

8  a non-adversarial proceeding in front of me that is quite

9  serious, from your point of view quite serious.  And even though

10  I know Texas counsel and you have a certain adversarial

11  relationship, it's not the type of adversarial relationship that

12  gives me comfort in continuing to manage this particular tail end

13  of the case in the fashion that we've been doing it.

14           And I am strongly considering, and I believe I have the

15  authority to do this, and I think it's what I am going to do, to

16  appoint special counsel to represent the interests of the class

17  here to come in and take a position or at least potentially

18  adversary position with respect to the entire fee petition

19  matter.

20           Right now the class is represented by the lawyers whose

21  fees are being questioned.  Every dollar that those lawyers get

22  comes out of the class recovery.  There is nobody representing

23  the fund as such.  You all want a piece of it.  Somebody should

24  be protecting the class members, and nobody is available in this

25  array of lawyers we have here to do it.

1          So before responding, before deciding the merits of your

2   motion, one, to strike the reference to these communications and,

3   two -- or to remove them from the record, or, two, to alter or

4   amend the judgment, I haven't seen anybody else, nobody else has

5   joined you in that.

6          MS. WHEELAHAN:   I don't think they had time to, Your

7   Honor.  But I would like to --

8          THE COURT:   well, they had time to.

9          MS. WHEELAHAN:   When you are done speaking, I'd like to

10  respond.

11         THE COURT:   Well, no, I'm just telling you what I am

12  going to do.  I'm going to appoint a lawyer --

13         MS. WHEELAHAN:   But may I respond first?

14         THE COURT:   -- to represent the class interests that are

15  not represented.  I don't see, you know, there is anything to

16  argue about, because I'm not reaching the merits.

17         MS. WHEELAHAN:   May I respond?

18         THE COURT:   Go ahead.

19         MS. WHEELAHAN:   Okay.  The communications that came to

20  you were ex parte communications.  I did not have a chance to

21  offer any explanation.  That is my problem with them.   I agree

22  with the Court that anything that has the taint of being improper

23  is properly communicated to the Court.  The problem is those were

24  ex parte communications communicated by one side to enhance its

25  own interests.  That's the problem I have with those.

1         With respect to what you said about protecting the
2   class, Your Honor, I think that what protects the class is the
3   case law that comes out of the Seventh Circuit that tells this
4   court what it should do with respect to an attorney's fee in a
5   common fund situation.
6         I think that the confusion, and this is an important
7   point, I think the confusion might have come with respect to
8   assigning fees from this common fund as if this is such an
9   unusual settlement, because Trans Union did not bargain for
10  dismissal of damages claims.  What Trans Union bargained for in
11  this settlement, and it comes at paragraph 2.83 of the release, 2
12  point -- those three dots, I don't know what those numbers are
13  called.  Trans Union bargained for class -- for release of class
14  claims, and the class retains its damages claims.
15        So if anyone wants to file a lawsuit for individual
16  damages claims, those come under private fee shifting, under fee
17  shifting principles.
18        I think that what protects the class here is the Seventh
19  Circuit's case law that tells you how to assign the fees, and I
20  think it's clear.  And, frankly, I think that there is a great
21  deal of study out there that I hope that I've given to you in my
22  brief that explains why fees are assigned from a common fund in
23  the way that they are.
24        I think that a lot of what came in your order -- and I'd
25  like to say this, after practicing for 20 years all over this

1  country, the last court where I would have expected to be treated

2  unfairly is this one.  And I think that order was unjust, I

3  really do.  I think that it tarnishes my reputation in a way that

4  is not justified.

5        I think that I handed over to you under seal some

6  individual -- some incredible billing detail, and I explained

7  when I gave it to you that I had not gone through and redacted

8  confidential materials.  So there might have been some errors in

9  it, some typographical errors and so forth.

10       THE COURT:  That's not what we're talking about here,

11  Ms. Wheelahan.

12       MS. WHEELAHAN:  Okay.  What we're talking about --

13       THE COURT:  I don't want to go into, you know, any more

14  detail.  I gave this an awful lot of thought.  I looked at it

15  very carefully as you can tell, and I found some serious, serious

16  problems with it.

17       I don't care whether you're billing portal to portal or

18  not, 23 hours a day of billing time is too much.

19       MS. WHEELAHAN:  Can I explain that, Your Honor?

20       THE COURT:  No.  You're going to have a chance to

21  explain it, but you're going to have a chance to explain it in an

22  adversary proceeding, not in a unilateral proceeding.

23       MS. WHEELAHAN:  When I'm out of my office for two

24  days --

25       THE COURT:  Excuse me, Ms. Wheelahan.  Ms. Wheelahan,

1 let me just tell you something, you presented this fee petition

2 in the manner you did, all of you.  You know, the original class

3 counsel joined with you and submitted these papers to me to

4 review.  I reviewed them in the manner that you gave them to me,

5 and I reached the conclusions I did.

6          If you think I enjoyed doing that, you're wrong.  I'll

7 say this again, as I said it in that opinion, you contributed a

8 great deal to this case, you really did.  You and Texas counsel

9 both came in and were, you know, you sort of muscled your way in,

10 but you definitely led or helped lead to the settlement of this

11 very difficult case, and I congratulate you for that.

12          But when it came right down to it, I ordinarily prefer a

13 lodestar fee award, and that's what I had begun to determine when

14 I looked at your papers originally.  But because of the matters

15 that I identified in my opinion, I lost total faith in a lodestar

16 award, because I lost faith in the integrity of the time sheets.

17          So I came out to the result that I came out to, which

18 wasn't very pleasant from your point of view, I'm sure.  And if,

19 you know, you accepted that with a percentage recovery that I

20 suggested with an allocation that you all could agree to, I would

21 consider that a fair and reasonable settlement, and that would

22 have been the end of it.

23          Absent that type of agreement on allocation, then, and I

24 suggested in the opinion, I was thinking of appointing a special

25 master to go back and look through everybody's time sheets, not

1  just in this case, but in other cases.

2       When you start billing for attending Supreme Court

3  arguments, I mean, I hope you had a good time there, but that's

4  not billable time.

5       MS. WHEELAHAN:  They attended, Your Honor.

6       THE COURT:  I don't care.  Their client can agree to pay

7  them anything they want.

8       MS. WHEELAHAN:  But, Your Honor, the settlement was not

9  negotiated.

10      THE COURT:  You know, when I argued a case in the --

11 excuse me.  When I argued a case in the Supreme Court, there were

12 a dozen of lawyers sitting there listening to the argument, I

13 remember, and they were all being paid by their clients to do so,

14 I guess, or maybe they were there because they thought it was

15 something that they could find useful in their practices.

16      If you were to take a course in class action litigation,

17 would you bill your client for that?  There is no difference.

18 It's not billable time.  I'll never ever approve that type of

19 time.

20      MS. WHEELAHAN:  But this was a common fund case, Your

21 Honor.

22      THE COURT:  Ms. Wheelahan, I'm talking.

23      MS. WHEELAHAN:  That time --

24      THE COURT:  Ms. Wheelahan Ms. Wheelahan, you said

25 something, now I'm saying something.

1       It's that type of billing practice that destroys any
2   confidence I have in the integrity of the time sheets that you
3   submitted to me, and that leaves open the entire issue of fees.
4   I propose, if you will, or I made a determination that a 10
5   percent fee of the total award, including the in kind services
6   that were provided in the settlement would be a fair and
7   appropriate amount for all of you.
8       If you're not willing to live with that, then I'm going
9   to appoint counsel.  And I may actually have to appoint a special
10  master ultimately depending on what comes out of an adversary
11  proceeding in this regard.  But that's where I'm at.  I'm not at
12  the point of arguing with you about the propriety of looking at
13  that e-mail.  It was in my file.  I had to look at it.  I
14  couldn't pretend it wasn't there.  Could I have given you time to
15  explain what it meant?  I suppose I could have.  I think I know
16  what it means.
17          MS. WHEELAHAN:  But why should an ex parte communication
18  come to a trial court?  Why should an ex parte communication come
19  to you?
20          THE COURT:  Because it was, if you really want to know,
21  it was an attempt to manipulate the proceedings in order to
22  enhance your fees.
23          MS. WHEELAHAN:  No, it wasn't, Your Honor.
24          THE COURT:  That's why.
25          MS. WHEELAHAN:  It was not.

1          THE COURT:  Well, that's the way it reads.

2          MS. WHEELAHAN:  It was not.  It was not.

3          THE COURT:  You'll have a chance to tell me.

4          MS. WHEELAHAN:  It was not.

5          THE COURT:  You'll have a chance to tell me.  And you

6   may have to give a deposition.  And you may have to also explain

7   how, you know, you billed other clients or other, you know, other

8   class action fee petitions in connection with some of these

9   things you were doing, like attending Supreme Court arguments.

10  If you were to bill somebody else for that time, I would be very

11  disappointed and certainly very interested.

12          MS. WHEELAHAN:  Your Honor, my fees are assessed on a

13  percentage basis.  That time comes at my expense.

14          THE COURT:  It certainly didn't seem like that to me.

15          MS. WHEELAHAN:  We keep those hours so that we have them

16  to present to the Court, Your Honor.  But I would ask that you --

17  I don't mean to be disrespectful.

18          THE COURT:  As well as your -- and while we're -- wait.

19          MS. WHEELAHAN:  But I would ask that you read the

20  Supreme Court opinion.

21          THE COURT:  Excuse me, Ms. Wheelahan.  While we're at

22  it, your billing rate seems to be quite different from a case

23  that was decided by the Eastern District of Louisiana in 2005,

24  which I'm sure you're aware of, the Imperial --

25          MS. WHEELAHAN:  If you look at that opinion, Your Honor,

1  the Judge stated in that opinion that the rate is for this

2  district, because rates are determined by the district in which

3  the work occurs.

4          THE COURT:  And where did you do all your work?

5          MS. WHEELAHAN:  And also that work --

6          THE COURT:  Where were you when you were doing the work?

7          MS. WHEELAHAN:  The rates are determined by the place

8  where the case is situated, Your Honor.

9          THE COURT:  Well, we could go --

10         MS. WHEELAHAN:  The rates in Louisiana were for a case

11  that went on for ten years, and they were determined during the

12  life of the case.

13         THE COURT:  All right.

14         MS. WHEELAHAN:  For ten years long, but --

15         THE COURT:  We'll have a chance, we'll have a chance to

16  look at that and what reasonable rates are in this town, which I

17  know are far less --

18         MS. WHEELAHAN:  We gave you those, Your Honor.  We gave

19  you those.

20         THE COURT:  Well, they're less than you're asking from

21  my experience.

22         MS. WHEELAHAN:  We gave you those.

23         THE COURT:  But that's why we need an adversary

24  proceeding here if you're not willing to work something out along

25  the lines that I've suggested.

1          MS. WHEELAHAN:  Your Honor, the Seventh Circuit said in
2     Synthroid that even a 15 percent fee is improper.
3          THE COURT:  Well, you'll have a chance to tell them.
4          MS. WHEELAHAN:  Maybe we will, Your Honor.
5          But what I would like to say is that one of the cases
6     that I was reading in doing that motion for you talks about the
7     Court's job is not to make a moral decision about whether it's
8     better for lawyers to make more than school teachers or ball
9     players to make more than anybody.  It's to assign the fee
10    according to what the Seventh Circuit says we're entitled to
11    have.  So maybe you think that we're only entitled to 10 percent,
12    but that isn't, that isn't what the market rate is.
13         And if we were to have a discussion about whether school
14    teachers should get more than lawyers or whether ball players
15    should get more than all of us, that's a different thing.  But
16    with all due respect, that isn't your job.
17         THE COURT:  With all due respect, that isn't the job I
18    did.  I have nothing at all in this case about school teachers or
19    ball players.
20         MS. WHEELAHAN:  But the Seventh Circuit says to look at
21    the market rate, Your Honor, for percentage fees if that's what
22    you are going to do.  And I agree that that's the best thing to
23    do, I agree.  But it's to look at the market percentage.
24         We've worked on this case for ten years.  We have
25    advanced a million dollars out of our pockets, without which a

1  very good settlement that has been universally praised would not
2  have happened.  We got this money for the class members that they
3  would not have without us.  We're entitled to be paid for what we
4  did.
5          MR. FEIN:  Can I respond?
6          THE COURT:  Very briefly.
7          MR. FEIN:  Your Honor, on behalf of Texas counsel, we
8  don't agree with much Ms. Wheelahan says.  The one thing we do
9  agree with is that reducing the percentage to 10 percent based on
10 the risk that was involved, we think that we disagree with the
11 Court's finding on the risk that was involved.
12         As far as the Court's finding on Ms. Wheelahan's billing
13 practices, we don't disagree with the Court on that.  The one
14 thing that bothered me in the order is that the Court said that
15 Texas counsel is going to be tarred with a broad brush I believe
16 was the Court's language.  As you know, the Texas counsel did not
17 submit a fee brief jointly with Ms. Wheelahan.  When she
18 mentioned that she had 7,000 hours billed to this case, we never
19 saw the time records the Court saw, but we knew 7,000 hours
20 sounded very wrong to us.
21         MS. WHEELAHAN:  We haven't seen their time records at
22 all.
23         MR. FEIN:  We distanced ourselves from Louisiana counsel
24 at that point and filed our own billing records.  I believe our
25 highest biller had about one-tenth the number of hours that

1  Ms. Wheelahan had.

2       When Ms. Wheelahan made the threat to damage the class's

3  interest in order to increase her fee, we brought it to the

4  magistrate's attention.  We think that during the time we were

5  cooperating with Ms. Wheelahan, it was always to benefit the

6  class.  Once we saw or we had suspicions about billing

7  activities, once we saw this threat to damage the class in order

8  to increase our fee, we brought those to the Court's attention.

9       So we think in those circumstances tarring everyone with

10  a broad brush is improper.  And one can't help but get the

11  feeling that the 10 percent award in the Court's order was

12  largely -- I know the Court found that the risk was not as much

13  as we thought it was, but we can't help but get the feeling that

14  one reason the percentage was as low as it was was because of

15  Ms. Wheelahan's billing practices and the secondary MDL counsel

16  who didn't contribute to the case or who didn't demonstrate their

17  contribution to the case.

18       We think those factors are proper to determine

19  allocation, but not to lower the percentage for everyone when not

20  everyone were involved in those practices.

21       MS. WHEELAHAN:  You haven't seen Texas's bill.  They

22  came in in 2003.

23       THE COURT:  No, I haven't.  And, no, what you are saying

24  --

25       MS. WHEELAHAN:  You haven't seen their numbers.

1           THE COURT:  What the two of you are saying just confirms

2   my conclusion that I think we need an independent counsel.

3           MS. WHEELAHAN:  Or you could do a percentage, percentage

4   recovery, which would take the Court right out of --

5           THE COURT:  I've already told you what my feeling is.

6   You know, those cases that you talk about don't involve a case

7   where a lawyer submits a fee petition that I consider to be very

8   questionable and not entitled to a great deal of reliance.

9           So I'm going to stop this right now.  I'm appointing

10  special counsel for the class.  You may be right.  I may totally

11  agree with Texas counsel here that they deserve the fee, I'm not

12  sure I would give a multiplier or not, but that you deserve a

13  perfect lodestar fee.

14          You may be right that a lot of the conclusions I reach

15  or some of the conclusions I reach I will readjust on

16  reconsideration.  It's possible.  But I need an adversarial

17  proceeding.  That's how we deal with things in this court.  We

18  don't deal unilaterally with these things.

19     ⸺     Trans Union dumped $75 million into the fund, and

20  they're out.  They don't have any stake in this case at all.

21  This is not like a negotiation --

22          MS. WHEELAHAN:  No, no, no, no, no.  They're not out,

23  Your Honor.

24          THE COURT:  Yeah, but they've made their deal.

25          MS. WHEELAHAN:  They're not out.

1          THE COURT:  They'll take their one-on-one cases and deal

2    with those things.  And they are out.  As far as this fund is

3    concerned, as far as this dispute is concerned, they're out of

4    it.

5          Don't you agree, counsel?

6          MR. O'NEIL:  Yes, Your Honor.

7          THE COURT:  So I have no adversary to you or to Texas or

8    to class counsel or anyone else.  I have basically a squabble

9    between lawyers.  But you're all seeking a part of a fund.  And

10   every dollar you get is a dollar less in the fund for the class.

11         MS. WHEELAHAN:  May I suggest something, Your Honor?

12         THE COURT:  And that money is actually going into

13   people's pockets.  I know that the difference between what you

14   think I should award and what I have told you that I would be

15   willing to award isn't going to result in anybody's going out and

16   being able to buy a new refrigerator.  But it does mean money

17   into the pockets of the class, and it affects the fairness of the

18   class.

19         MS. WHEELAHAN:  We got that money for them, Your Honor.

20   We did.  But may I --

21         THE COURT:  No, no, no.

22         MS. WHEELAHAN:  May I suggest --

23         THE COURT:  No, Ms. Wheelahan.  I'm done.  I'm taking

24   this under advisement.  I'm going to appoint an independent

25   counsel for the class.  I have several people in mind.  And I

1 will talk to them and see if they can take the case.  And you

2 will hear from me in due course when that process is finished.

3 That's all I'm going to do today.

4         MS. WHEELAHAN:  May I say one more thing, Your Honor?

5         THE COURT:  No.

6         MS. WHEELAHAN:  Please?

7         THE COURT:  No.  That's it.  The motions are taken under

8 advisement except for the page limitation.  The expedited hearing

9 is denied.

10         MR. FEIN:  Can I give you that case citation?

11         THE COURT:  Yes.  Drop it off with my law clerk here,

12 please.

13         Have a good day, Ms. Wheelahan.

14         MS. WHEELAHAN:  Can I make one suggestion?

15         THE COURT:  You will have a chance to respond, believe

16 me.

17         MS. WHEELAHAN:  But it might, it might solve this for

18 us.

19         THE COURT:  How can it solve this?

20         MS. WHEELAHAN:  Can I tell you?

21         THE COURT:  I really don't want to do anything else.

22         MS. WHEELAHAN:  If the lawyers had a percentage that was

23 a percentage we could live with, we might still have a fight

24 among ourselves, but we would at least have a percentage.  There

25 are two steps to this, it's assigning a percentage, and then it

1   is having the lawyers allocate among themselves.

2           THE COURT:  I'm not prepared to agree to anything you

3   suggest today without the procedure that I just described.

4           MS. WHEELAHAN:  I understand.  I understand.  But if you

5   look at the cases that I gave you, Your Honor, you'll have what

6   you need.

7           THE COURT:  All right.  Thank you, Ms. Wheelahan.

8       (Proceedings concluded.)

9                   C E R T I F I C A T E

10          I, Jennifer S. Costales, do hereby certify that the

11  foregoing is a complete, true, and accurate transcript of the

12  proceedings had in the above-entitled case before the Honorable

13  ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,

14  Illinois, on April 14, 2009.

15

16                          */s/ Jennifer Costales, CRR, RMR*

17                          Official Court Reporter

18                          United States District Court

19                          Northern District of Illinois

20                          Eastern Division

21

22

23

24

25