IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re TRANS UNION CORP.
PRIVACY LITIGATION

THIS DOCUMENT RELATES TO:

    ALL CASES

Lead Case No. 00 cv 4729
MDL Docket No. 1350
Judge Robert Gettleman

Motion to Stay Disbursements, to Conduct Discovery
With Respect to Demands for Payments for Individual Claims, and
for Court Supervision of the Committee to
Overseeing Disbursements from the Settlement Fund

1.     Introduction and Relief Sought

Louisiana counsel brings this motion on behalf of the national settlement class, and as counsel to the certified Louisiana *Andrews* class that settled together with the MDL actions. We move to stay disbursements from the settlement fund to reimburse payments that may be made to mass joined individual claimants, and in particular, a $45 million dollar payment sought by a Texas lawyer, Jeffrey Weinstein.[1] Weinstein is one of a small group of objector-appellants to whom counsel, except Wheelahan, paid nearly a million dollars to drop their appeals of this court's judgment approving the settlement

---

[1] See Exhibit 1, attached. Parenthetically, the Weinstein demand states that it is "confidential per Fed. R. Evid. 408," but that has no bearing here, because settlement agreements are admissible for purposes other than to prove liability.

Besides a stay of any disbursements to reimburse payments to Weinstein or others with similar uninvestigated mass claims, we also seek discovery with respect to the $900,000 that Weinstein and the other objector-appellants collected, including but not limited to whether any agreements with respect to Post-Settlement claims were made in connection with this payment, and whether any agreements exist to recover, indirectly, from the settlement fund, any part of the $900,000 that counsel and Trans Union paid the objector-appellants.

And we seek the court's assistance with regard to an ambiguity in the stipulation of settlement, and a purported committee formed by Texas counsel and MDL counsel to authorize payments to Weinstein and others like him. The stipulation provides that a committee composed of representatives chosen equally by Trans Union and Settlement Class Counsel shall review reports from Trans Union of individual lawsuits filed against it (for the resolution of which Trans Union is permitted to take reimbursement from the settlement fund). Stipulation, Doc. 462-3, p. 13, Par. 2.1(b)(iv). The stipulation does not, however, contain any provision specifying the nominees from which the representatives shall be chosen (and the natural assumption is that the committee would include at least two trustworthy independents who were not counsel in the settlement).

This ambiguity in the stipulation suggests not that MDL and Texas counsel should unilaterally appoint themselves to serve on the committee, to the exclusion of Louisiana counsel, but instead, that the court should designate independent persons from whom the selection then can be "chosen equally by Trans Union and

Settlement Class Counsel." Such a committee would assure that payments from the settlement fund would be properly scrutinized.

2. **The Back Story: Payments to the Objector-Appellants to Settle Appeals**

Nine objectors filed four appeals of this court's judgment approving the settlement. The Seventh Circuit's conference attorney, Rocco Spagna, almost immediately stayed the briefing, and negotiations to settle the appeals ensued.

For a time, Louisiana counsel, Wheelahan, took the lead in trying to reach an agreement with the appellants. But the payments they sought just didn't jive with the negligible amount of work they had done for their individual clients (to support statutory fees), and the fact that they hadn't secured any additional benefit for the settlement class that could form the basis for a common-benefit fee. Some appellants hadn't even appeared at the fairness hearing, and none had filed a brief in the appeals court; none had participated in any discovery or motion practice; none had ever litigated an FCRA case or served as counsel to any class; and all were serial objectors, who had filed *pro forma* objections that repeated what they'd filed in other cases.[2] In Wheelahan's view, the amounts that the appellants asked for to drop their appeals suggested improper fee sharing, under L.R. 83.51.5.

And after eight months of negotiating, the objector-appellants' demands were still sky-high (because they had a mistaken sense of their own power, arising from their misunderstanding of the settlement structure). So Wheelahan filed a motion

---

[2]See Exhibit 2, Doc. 503-2, which is a chart showing other objections by these same serial objectors.

to dismiss the appeals. Details of that motion are unnecessary here; the thumbnail sketch is that (1) none of the appellants resided in a state for which claims had been preserved by the transferred complaints in the MDL, so their state law claims were barred by statutes of limitations; (2) the appellants couldn't show any injury from the settlement sufficient to support standing, when the settlement preserved, entirely intact, all of their viable individual claims; and (3) the appellants couldn't show sufficient injury to support standing from the settlement's release of their rights to bring joined or class claims, when the settlement was already final as to all other claimants (so the appellants had no one they could join their claims *with*, even if the right were restored to them).

The Seventh Circuit ordered a response to Wheelahan's motion. But the day before appellants' response was due, Trans Union and settlement counsel, except Wheelahan, agreed to pay $900,000 to appellants to drop their appeals. It is difficult to fathom why they would pay the appellants without waiting to see the outcome of the motion to dismiss: if the court granted the motion, then no payment would be necessary; and if not, all remained as before. (The Seventh Circuit has never reversed a trial court in response to a motion to dismiss an appeal, though it has summarily affirmed, and it dismisses appeals fairly often.)

3. **The $45 million Weinstein Demand**

Now, one of the objector-appellants has sent to his Texas colleagues, Michael Caddell and Mitchell Toups, and to Trans Union, a demand for an additional $45 million, to compensate claims that are unfiled, uninvestigated, and certainly not

4

worth any more than the claims of the other class members to whom the settlement fund belongs.[3] A few highlights of the Weinstein demand are that it contemplates interventions in the dismissed MDL action by thousands of individual claimants–even though this court has advised the MDL panel that it will not accept any more transferred cases–and it contemplates payments to these individual claimants, whose counsel have done nothing to prosecute their claims, without even determining whether the claimants had an active tradeline (which would be the basis of their claims) nearly ten years ago, when Trans Union's target marketing activity ceased. Parenthetically, attorney's fees paid for individual claims are statutory fees payable by Trans Union and not reimbursable from the fund; counsel are entitled to no more for 12,000 claims than for 12, if nothing more is done to collect for the 12,000.

      Louisiana counsel learned of the Weinstein demand when Texas counsel, Michael Caddell, sent out an email that referred to the demand, and purported to convene a committee comprising Texas counsel Caddell and Toups, and two of the MDL counsel, to authorize reimbursement from the settlement fund of payments to Weinstein. Louisiana counsel, Wheelahan, obtained the Weinstein demand from Weinstein, and was told by Trans Union's counsel that Texas counsel had initiated a telephone conference that included Trans Union, but excluded Louisiana settlement counsel, to discuss what Trans Union's counsel described as Texas

---

[3]Exhibit 1, attached.

counsels' unique insights into the Weinstein demand.

4. **The Committee to Review Reimbursements to Trans Union from the Fund**

Texas counsel and MDL counsel misread the stipulation of settlement to permit them to form a committee, unilaterally, which would (1) exclude any oversight by Louisiana's counsel of reimbursement for payments to Weinstein and others from the settlement fund that belongs, in part, to the certified Louisiana class; and (2) allow such payments without the court's knowledge, if the committee chooses to agree to reimbursements for payments to Weinstein, and other mass demands. But, as noted above, the stipulation provides only that Settlement Class Counsel and Trans Union shall equally choose representatives to the committee overseeing reimbursements to Trans Union from the fund; there is no provision in the stipulation specifying the nominees from whom the 'equally chosen' representatives shall be selected. (And such payments as Weinstein seeks are not properly reimbursable from the settlement fund, because the settlement agreement's requirement that individual claims be prosecuted individually, and its bar against joined claims, were meant to discourage mass solicitations of claims, and provide for equitable distribution of the settlement fund to class members.)

5. **Conclusion**

Louisiana counsel respectfully request the court to (1) stay any disbursements from the settlement fund reimbursing payments by Trans Union to individual claimants until a proper committee is formed to review these; (2) allow Louisiana counsel to conduct discovery with respect to post-settlement claims,

including but not limited to those referred to in the Weinstein demand, and any agreements pertaining to the $900,000 paid to Weinstein and other appellants to dismiss their appeals; and (3) order that nominees be suggested, including two parties not counsel in this action, from whom Settlement Class Counsel and Trans Union may equally choose representatives to serve on the committee provided for in the stipulation of settlement, Doc. 462-3, p. 13, Par. 2.1(b)(iv).

        Respectfully submitted:

        **/s/ Dawn Adams Wheelahan**

        **Dawn Adams Wheelahan** (La. Bar No. 19263)
        5528 Loyola Avenue
        New Orleans, Louisiana 70115
        Telephone: 512-689-1153

**CERTIFICATE OF SERVICE**

    Undersigned counsel hereby certifies that a copy of the foregoing has been served on all parties through their Counsel by the Court's ECF system, or by email, this 1st day of April, 2010.
\

        **/s/ Dawn Adams Wheelahan**
        _____
        **DAWN ADAMS WHEELAHAN**