**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re TRANS UNION CORP. PRIVACY LITIGATION** ) ) ) ) ) **This Document Relates To:** ) ) **ALL ACTIONS.** ) ) | **Lead Case No. 00 C 4729** <br><br>**MDL Docket No. 1350** <br><br>**Judge Robert W. Gettleman** <br><br>**Magistrate Judge Michael T. Mason** |

**COOPER & ELLIOTT'S RESPONSE TO**
**MDL COUNSEL'S MOTION TO "CLARIFY"**
**THE FINAL APPROVAL ORDER**

Cooper & Elliott ("C&E") opposes the motion filed by MDL Counsel (Doc. #821, 823) seeking "clarification" of the Court's Order Granting Final Approval of Settlement and Judgment (Doc. #515). For the reasons discussed below, and in the opposing memoranda filed by Trans Union, LLC ("Trans Union") and by Watts Guerra Craft LLP ("WGC"), the motion is unwarranted and should be denied.

**I.     Introduction**

C&E represents 10,081 individuals who are Settlement Class Members and who timely commenced their individual post-settlement claims ("PSCs") against Trans Union. These individuals are active or retired members of Ohio unions (or related to such active or retired members). Prior to September 17, 2010, C&E presented to Trans Union 10,081 separate demand letters and provided Trans Union with information (names, current and former addresses, dates of birth, and/or social security numbers) for Trans Union to confirm that each person is a Settlement Class Member.

By agreement, C&E has stayed the prosecution of its clients' PSCs and has voluntarily participated in the mediation conducted by Judge Mason. Progress has been made, and C&E hopes that a resolution can be reached. If a settlement cannot be reached, however, C&E will proceed to file 10,081 individual lawsuits against Trans Union in small claims courts throughout Ohio. C&E filed one such suit, but later agreed to voluntarily dismiss the case without prejudice in March 2010.

## II. Argument

### A. Background

Settlement Class Counsel, including MDL counsel and Dawn Wheelahan ("Wheelahan"), represent a class of approximately 160-190 million individuals. The notice of settlement informed Settlement Class Members that if they registered to receive "possible cash benefits" "maybe" they would receive a cash payment. The notice also told Settlement Class Members:

> you can no longer be part of a class action or other group lawsuit against the Defendants involving the claims in this settlement. However, you can still individually sue the Defendants for certain damage claims, as well as attorney fees under the FCRA.

In addition, the notice informed the class that "[i]f you want to be represented by your own lawyer in this case, you may hire one at your own expense."

In response to the notice of settlement, 450,000 people registered on-line in 2008 for the balance, if any, of the Settlement Fund after deduction for the administrator's costs and expenses, Settlement Class Counsel's fees, costs and expenses and Trans Union's efforts, if ever or any, to resolve timely commenced PSCs. Then, 104,000 Settlement Class Members timely commenced their individual PSCs.

The parties agreed to a Settlement Fund in the amount of $75 million. Anticipating, perhaps better than anyone, that a significant number of PSCs would be commenced, Trans

2

Union retained the right to resolve PSCs in its sole discretion and to reimburse itself from the Settlement Fund for any such settlements. Both the Stipulation of Settlement and Final Approval Order reflect a clear understanding that the entire Settlement Fund might be exhausted through reimbursement to Trans Union of monies paid to resolve PSCs (which is why the 450,000 on-line registrants were told only that they might receive a cash payment, not they would receive a cash payment).

The very scenario that Trans Union anticipated has materialized. The settlement forced Settlement Class Members unhappy with free credit services or a remaindermen interest in the Settlement Fund to hire a lawyer and timely commence their individual PSC, and 104,000 Settlement Class Members did so. Understandably, Trans Union wishes to resolve these potentially ruinous PSCs and obtain reimbursement from the Settlement Fund, in accordance with the Stipulation of Settlement and the Final Approval Order.

For whatever reason, MDL counsel and Wheelahan want to disrupt this process. To accomplish their agenda, they seek "clarification" that "virtually all" of the PSCs are "Aggregated Actions" that are precluded by the Stipulation of Settlement and Final Approval Order. (Ironically, when WGC sought clarification of the Final Approval Order approximately a year ago, MDL counsel and Wheelahan argued that "It is too late to change the terms of the settlement now, after the judgment is final, and it would be inequitable to do so." (Doc. #765 at p. 5), "There is nothing unclear or ambiguous about the settlement's language." (Id. at p. 6), and "MDL and Texas Counsel [ ] agree that the Stipulation of Settlement is clear[.]" (Doc. #770 at p. 2)).

MDL counsel and Wheelahan hope that if they can convince the Court that the PSCs are "Aggregated Actions," the Court will not permit Trans Union to obtain reimbursement from the

Settlement Fund for any money Trans Union pays to settle the PSCs. If MDL counsel and Wheelahan are successful, the Settlement Fund will be disbursed to the 450,000 on-line registrants who registered and will not be used to reimburse Trans Unions for any monies paid by Trans Union to the 104,000 PSC Settlement Class Members who timely commenced their PSCs. While this will certainly make the 450,000 on-line registrants happy and far exceed their reasonable expectations, it will undoubtedly force Trans Union to fight each of the 104,000 PSC Settlement Class Members. This presents a clear conflict of interest for MDL counsel and Wheelahan; they are attempting to increase the chances that the 450,000 on-line registrants will receive a cash payment while decreasing the chances that the 104,000 PSC Settlement Class Members will be able to reach a fair and efficient resolution of their PSCs.

Importantly, this Court knows nothing about the 450,000 on-line registrants except what they chose to disclose in their on-line forms. Neither the Stipulation of Settlement nor this Court's Final Approval Order compel the class administrator to verify anything in connection with such forms. For all we know, some or all of the 450,000 on-line registrants are not even Settlement Class Members, yet MDL counsel and Wheelahan attempt to elevate them above 104,000 PSC Settlement Class Members who have taken the material, affirmative steps necessary to timely commence their PSCs. If MDL counsel and Wheelahan get their way, the administrator may mechanically mail millions (or tens of millions) of dollars to Internet-active teenagers and college students, none of whom are even Settlement Class Members.

C&E's 10,081 PSC Settlement Class Members – all of whom are Settlement Class Members and to each of whom MDL counsel and Wheelahan owe a duty – strenuously object. C&E's 10,081 PSC Settlement Class Members want the Settlement Fund to be available for use by Trans Union in fairly and efficiently resolving their PSCs and not for the benefit of the

450,000 on-line registrants (of unverified origin) who knew when they registered that (a) they could commence an individual PSC and, if they did not, then (b) <u>they may never receive a distribution from the Settlement Fund</u>.

How MDL counsel and Wheelahan can justify this conflict of interest is baffling at best. Tacitly recognizing the conflict, MDL counsel indicate they "might not be opposed to adding the [ ] names [of the PSC claimants] to those already registered" so that the 450,000 on-line registrants and the 104,000 PSC Settlement Class Members could share in a pro rata distribution. This "solution" – to re-write the settlement years after it was approved, in an effort to allow MDL counsel and Wheelahan to skirt their conflict of interest and a potential malpractice claim – is unacceptable.

As discuss below, the relief sought by MDL counsel and Wheelahan is unwarranted and improper. C&E has not commenced any "Aggregated Actions" and does not intend to do so.

### B. <u>C&E Has Not Commenced Any "Aggregated Actions"</u>

Paragraph 16 of the Final Approval Order enjoins all Settlement Class Members from "filing, commencing, prosecuting, intervening, or participating in any claims . . . as either (A) named plaintiffs or Settlement Class Members in any Class Action, (B) plaintiffs in any Joined Actions, or (C) plaintiffs in any Aggregated Action." An Aggregated Action is "any action in which two or more individual plaintiffs assert claims relating to the same or similar alleged conduct." Stipulation of Settlement at ¶IV.1.1.3; Final Approval Order at ¶1(b). Although when the Stipulation of Settlement was drafted MDL counsel failed to define "action", the context makes it clear that "action" means "lawsuit."

C&E has no pending PSC lawsuits on file for its 10,081 PSC Settlement Class Members. Therefore, C&E's 10,081 PSC Settlement Class Members could not have commenced any "Aggregated Actions" against Trans Union; C&E has filed no "actions".

MDL counsel appears to concede that the PSCs that have been commenced through informal demand are not "Aggregated Actions;" section "B" of MDL counsel's argument is titled "Virtually All of the Post-Settlement Claims Are Prohibited Aggregated Actions" and merely discusses the PSCs that have been filed as lawsuits. However, because MDL counsel does not clearly state a position regarding the PSCs that have been commenced but not yet filed, it is necessary to address that as well.

The 10,081 individual PSCs presented by C&E to Trans Union are not an "Aggregated Action." Although the nature of the PSCs is the same – each individual is asserting that Trans Union willfully violated the Fair Credit Reporting Act – each PSC will succeed or fail on its own.

The Court anticipated that individual union members may hire the same attorney to pursue individual PSC lawsuits against Trans Union. The following exchange occurred at the September 2008 fairness hearing:

> MR. BACHARACH: But a group of working class people probably are not going to be able to go together and say: We're the Carpenters Union Local 207, and we'd love to bring a claim and get some money for our members. So I really—
>
> THE COURT: Why couldn't they do the same thing you just described?
>
> MR. BACHARACH: I'm sorry, what?
>
> THE COURT: Why couldn't they do the same thing you just described? If you had a bunch of people with a common interest like a union, for instance, they could hire a lawyer and just file a bunch of lawsuits?
>
> MR. BACHARACH: Sure, but—

6

> THE COURT: And knowing that if they recover, they're going to get their filing fee back and all their costs and attorneys' fees.

(Doc. #708, Tr. 18:4-18). If MDL counsel and/or Wheelahan had a concern or objection about this scenario, they could have asked the Court to revise the settlement terms to preclude multiple individuals from hiring the same attorney or law firm to pursue individual PSCs.

### C.     C&E Will Not Commence Any "Aggregated Actions"

If settlement discussions fail and it becomes necessary to litigate whether Trans Union willfully violated the Fair Credit Reporting Act, C&E will not file any Aggregate Actions. C&E will file an individual lawsuit on behalf of each individual PSC Settlement Class Member, and the lawsuits will be filed in various small claims courts throughout Ohio. This comports with the Stipulation of Settlement and the Final Approval Order.

### III.    Conclusion

For all of the foregoing reasons, and for the reasons set forth by Trans Union and WGC, the motion to "clarify" – change – the terms of settlement should be denied.

Respectfully submitted,

/s/ Charles H. Cooper, Jr.
Charles H. Cooper, Jr.   (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorney for 10,081 Post-Settlement Claimants

7

**CERTIFICATE OF SERVICE**

     I hereby certify that on February 4, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

                                          /s/ Charles H. Cooper, Jr.