UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) Lead Case No. 00CV4729 ) ) MDL Docket No. 1350 ) |
| This Document Relates To: ALL ACTIONS. | ) ) Judge Robert W. Gettleman ) Magistrate Judge Michael T. Mason ) ) ) |

**TEXAS COUNSEL'S REPLY REGARDING SETTLEMENT AGREEMENT
AND RIPENESS OF REIMBURSEMENT ISSUE**

Texas Counsel file their Reply Regarding Settlement Agreement and Ripeness of Reimbursement Issue, and state as follows:

**I.  SUMMARY OF ARGUMENT**

The Court should refrain from issuing any opinion, or informal guidance, regarding potential future reimbursement claims because the Stipulation of Settlement ("Settlement") and ripeness doctrine expressly preclude any such ruling at this time. In the event Trans Union does obtain reimbursement for a future PSC settlement and a dispute arises, the Court at that time should exercise its role as fiduciary of the class and carefully scrutinize the reimbursement for any settlement that includes the payment of astronomical attorneys' fees to PSC Counsel.

**II.  ARGUMENT**

**A.  The Settlement Precludes "Advisory Opinions" on Hypothetical PSC Settlements**

Counsel for the Settlement Class, Post-Settlement Claimants, and Trans Union have all filed briefs regarding the meaning of "aggregated" in the Settlement for the purpose of obtaining guidance

- 1 -

from the Court regarding what type of potential Post-Settlement Claimant ("PSC") settlements Trans Union may properly be reimbursed for. *See* Dockets 823, 824, 828, 831, 836, and 838-1.

While at some point, the Court may be called upon to rule on the propriety of a reimbursement made to Trans Union from the Settlement Fund, it would contravene the express terms of the Settlement for the Court, at this juncture, to issue an "advisory opinion" regarding any hypothetical future settlement and reimbursement. The Settlement, which Trans Union negotiated, sets forth the appropriate procedure for PSC settlements, as follows:

(1) <u>Settle</u>. First, Trans Union is entitled to "settle any suit or presuit demand, or litigate any suit, involving Post-Settlement Claims" without any involvement or pre-approval of Settlement Class Counsel or the Court;

(2) <u>Reimburse</u>. Second, "Trans Union shall be entitled, without prior approval of the Court or Settlement Class Counsel, to receive reimbursement from the Settlement Fund equal to any amounts paid to satisfy settlements or judgments arising from Post-Settlement Claims, not including any defense costs."

(3) <u>Report</u>. Third, "[O]n a quarterly basis, Trans Union shall report on lawsuits filed asserting these claims to a Committee comprised of representatives chosen equally by Trans Union and Settlement Class Counsel."

(4) <u>Dispute</u>. Fourth, after the report to the Committee, Settlement Class Counsel decide whether they dispute any of the reimbursements taken by Trans Union.

(5) <u>Court Ruling</u>. Finally, if there are any disputes, "the propriety of a reimbursement received by Trans Union shall be resolved by the Court," and if the Court finds any such reimbursement amount improper, Trans Union returns the amount, plus interest to the Settlement Fund.

Stipulation of Settlement, Dkt. 462-3 at 13, ¶ IV 2.1(b)(iv).

Trans Union seeks to subvert this procedure by circumventing steps 1 through 4 and advancing directly to Step 5 in order to obtain an advisory opinion ruling from Judge Mason and/or Judge Gettleman regarding whether a hypothetical reimbursement would be proper, **if** Trans Union enters into a certain settlement, and **if** Trans Union receives reimbursement for the settlement from the Settlement Fund, and **if** there is a dispute about the reimbursement. Not only would this

constitute an impermissible advisory opinion on a hypothetical dispute that does not currently exist, but it would also subvert the above-described and agreed-upon procedure, which is an integral and important component of the Settlement.

The procedure set forth above is critical, not just to avoid wasting the Court's time on hypothetical disputes, but to give Trans Union incentive to avoid entering into any settlements which it cannot defend as legitimate, arms-length, and fair. One much-discussed criticism advanced against the structure of the Settlement was the risk that Trans Union could fritter away the Settlement Fund by agreeing to overly-generous settlements of PSC claims, and then claim a large percentage of the Settlement Fund in reimbursements for these overly-generous settlements (including astronomical attorneys fees for work already done on behalf of the Class by Class Counsel), thereby leaving a minimal amount in the Settlement Fund to be distributed to the 450,000 Registrants.[1] One need not speculate about any secret back-room deals or nefarious kick-back schemes to explain Trans Union's motivation to provide overly-generous settlements to PSCs. Because Trans Union must pay out-of-pocket for the costs of litigating the PSC claims, Trans Union would naturally be willing to agree to overly-generous settlements in order to avoid the costs of litigation, *if it knows in advance* it will be reimbursed from the Settlement Fund for the cost of any PSC settlements.

This is the key point.

If Trans Union *does not know in advance* whether or not its reimbursements will be approved by the Court, it will be appropriately motivated to avoid overly-generous settlements that improperly

---

[1] Texas Counsel use the term "Registrants" to refer to the 450,000 class members who registered to receive cash in this Settlement. Others use the term "remaindermen" in a transparent attempt to minimize the fact that the Registrants, not than the Post-Settlement Claimants, were intended to be the principal beneficiaries of this *Class* Settlement.

dispose of Settlement Fund monies that should go to Registrants, and it will instead—presumptively (which is why the Settlement allows Trans Union to obtain immediate, albeit provisional, reimbursements)—enter into only fair and reasonable settlements. The prophylactic effect of this procedure was to motivate Trans Union to act as it would in litigation where its own money—as opposed to money recovered for the Settlement Class—was at stake, *e.g.*, asserting any applicable defenses, serving discovery requests requiring the production of documents and verified interrogatory responses, noticing depositions, and filing motions to dismiss if applicable (apparently none of which has happened with respect to the PSCs).

If the Court allows the PSC process to play out as intended by both the spirit and letter of the Settlement, Trans Union will presumably act in good faith, deal at arms-length with all PSCs, and not enter into any overly-generous settlements, nearly *half of which* may ultimately go to PSC counsel who had nothing to do with achieving the Settlement Fund and never intended to do anything more than file the same lawsuit 100,000 times over. Undoubtedly, this will lead to no disputes regarding reimbursements, and the Court will not be called upon to get involved in the process. If there are disputes, the Court can get involved at that time. Currently, however, with no settlements, reimbursements, or disputes, it would be extremely premature for the Court to issue any opinions or informal guidance regarding what types of settlements would be appropriate for reimbursement. By enforcing the terms of the settlement agreement as written—and as noticed to the Class and incorporated into the Court's judgment—the Court can ensure (1) that Trans Union acts in good faith in litigating and settling PSC claims, and (2) that the Court avoids wasting resources on unripe hypothetical disputes.

### B. The Court Should Protect the Settlement Fund From Being Wasted on Unconscionable Amounts of PSC Counsel Attorneys' Fees

Without question, what motivated the filing of 100,000-plus lawsuits was the notion that PSC counsel could secure millions for themselves without contributing to the recovery of the Settlement Fund and without this Court's intervention. Seemingly lost on PSC counsel is the critical fact that the funds they seek for themselves are part of a *Class* settlement (and settlement fund). In fact, PSC counsel may dispute this point, arguing that technically they are merely seeking funds from Trans Union and not from the settlement fund. However, the fact that the money will flow first from Trans Union to PSC counsel, and then from the settlement fund to reimburse Trans Union, does not alter the essence of what would be happening here—money from the Class Settlement Fund would be indirectly paid to PSC counsel. Because the funds at issue indisputably derive from the Settlement Fund, this Court has a continuing duty to act as a fiduciary concerning both the PSC settlements *and* the attorneys' fees PSC counsel will receive from such settlements.

Indeed, the special responsibility of a District Court to serve as the guardian of class members is one of the distinctive hallmarks of class settlements. "We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir.2002) *citing Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir.2002); *Stewart v. General Motors Corp.*, 756 F.2d 1285, 1293 (7th Cir.1985); *In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir.2001); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir.1987). Particularly with regard to attorneys' fees to be paid from (or here, reimbursed from) a settlement fund, "a defendant who contributed to the fund will usually have no interest in how the fund is divided between plaintiffs and class counsel [or here, PSC counsel]." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir. 1993). Therefore, it is the Court which

serves as the fiduciary to the Settlement Class concerning all aspects of a class settlement, including distribution of the Settlement Fund. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp.2d 434, 440 (D.Md. 1998) (noting that pursuant to the final judgment approving the settlement, the court, which has a continuing duty to act a as fiduciary to the members of the class, retained jurisdiction over all matters relating to Settlement, including distributions from the fund).

Under the foregoing legal principles, given that the PSC counsel's fees and expenses (a significant portion of which is due to advertising) will be reimbursed from a Class Settlement Fund, the fees they seek under their contingent contracts should be submitted to the Court for approval. Moreover, even if their fees were not to be reimbursed from a class settlement fund, such fees should be significantly reduced because (1) the recovery for their clients is due to other lawyers' efforts and (2) the recovery set aside for the Class (which necessarily includes PSCs as they are also members of the Class) has already been taxed by Settlement Class Counsel's fees and expenses—that is, PSCs should not be required to "pay twice" for the ultimate recovery (here, the Settlement Fund). This precise concern is often played out in multi-district litigation where a core group of counsel perform the critical work (typically referred to as "common benefit work" leading to a recovery) while other counsel do relatively little other than seek to obtain their contracted-for contingent fee. In these situations, the district court often overrides the individual contingent fee contracts by capping fees to prevent "double dipping," meaning requiring the Client to pay an unconscionable fee. *See In re Vioxx Products Liability Litigation*, 2010 WL 5576193 (E.D. La.) at *9 (Noting capping of individual fees in various mass actions and stating: "But it is not double dipping because the common benefit fee will not come from any client. Instead it will come from the [individual] attorneys, most of whom have not done any common benefit work but have received enormous benefit from it."). Interestingly, district courts overseeing coordinated litigation of individual cases

have deemed such mass litigation as "quasi-class actions subject to the general equitable powers of the court," which includes the "the power to require reasonable fees:"

> A district court has the explicit power to require reasonable fees in class actions. While the settlement in the instant action is in the nature of a private agreement between individual plaintiffs and the defendant, it has many of the characteristics of a class action and may be properly characterized as a quasi-class action subject to general equitable powers of the court. The large number of plaintiffs subject to the same settlement matrix approved by the court; the utilization of special masters appointed by the court to control discovery and to assist in reaching and administering a settlement; the court's order for a huge escrow fund; and other interventions by the court, reflect a degree of court control supporting its imposition of fiduciary standards to ensure fair treatment to all parties and counsel regarding fees and expenses. No one except the trial judge, assisted by special masters, can exercise the ethical control of fees effectively. . . . [P]laintiffs' counsel have a built-in conflict of interest; and the defendant is buying peace and is generally disinterested in how the fund is divided so long as it does not jeopardize the settlement.

*In re Zyprexa Products Liability Litigation*, 424 F.Supp.2d 488, 491 (E.D.N.Y. 2006) (citations omitted). In *Zyprexa*, borrowing from the class action paradigm, the Court highlighted its "supervisory power to ensure that fees are in conformance with codes of ethics and professional responsibility even when a party has not challenged the validity of the fee contract." *Id.* at 492. Without question, here, the Court has the authority, if not the duty, to review (and likely reduce) PSC counsel's contingent fee interest and ensure that it is not "unfair or excessive under the circumstances of [this] case." *See id*.

- 8 -

Respectfully submitted,

By:    /s/  Michael A. Caddell
      Michael A. Caddell
      Cynthia B. Chapman
      Cory S. Fein
      Caddell & Chapman
      1331 Lamar, Suite 1070
      Houston TX 77010-3027
      Telephone:  (713) 751-0400
      Facsimile:  (713) 751-0906

      Settlement Class Counsel and Counsel for Texas Plaintiff Donald Jowers


      Mitchell A. Toups
      Weller, Green, Toups & Terrell,  L.L.P.
      2615 Calder St., Suite 400
      Beaumont TX 77010-3027
      Telephone:  (409) 838.0101
      Facsimile:  (409) 832.85577

      Counsel for Texas Plaintiff Donald Jowers

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that a copy of the foregoing has been filed on the Court's ECF system on February 9, 2011, and thereby served on all counsel of record.

                                             /s/  Cory S. Fein
                                             Cory S. Fein