UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) ) ) | Lead Case No. 00CV4729 |
| | ) | MDL Docket No. 1350 |
| This Document Relates To: | ) ) ) | Judge Robert W. Gettleman |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Michael T. Mason |

**TEXAS COUNSEL AND MDL COUNSEL'S REPLY IN SUPPORT OF MOTION FOR REIMBURSEMENT TO THE SETTLEMENT FUND**

Texas Counsel and MDL Counsel, in their role as Reimbursement Committee members, file this joint Reply In Support of Motion for Reimbursement to the Settlement Fund and state as follows:

**A.      Purpose of Settlement is to Compensate Class Members, not Help Trans Union**

In most situations, speculations as to a settlement's "purpose" are irrelevant because the Court merely enforces the terms of the settlement as written without regard to any theories about its underlying purpose. However, in the present case, the parties, in crafting the settlement, left a great deal of discretion in the hands of the Court to oversee Trans Union's depletion of the Settlement Fund to reimburse itself for PSC settlements. As Trans Union correctly points out, the Court's only criteria is to determine whether the reimbursement amounts are "improper." Dkt. 898-1 at 2, citing Stipulation of Settlement, Dkt. 462-3 at 13. Because the parties did not include any guidance to the Court regarding the meaning of an "improper" reimbursement amount, it would seem appropriate for the Court to consider the purposes of the settlement to guide its analysis.

- 1 -

Trans Union, in its response, asserts: "*The sole express purpose of the Settlement Fund*, after payment of notice costs and class counsel fees, *is to help Trans Union obtain releases of claims* asserted by individual class members." Dkt. 898-1 at 2 (emphasis added). Settlement Class Counsel who litigated this case and negotiated this settlement, not surprisingly, do not have the same perspective. We see the primary purpose of the Settlement Fund as, not to help Trans Union, but rather to fairly compensate the victims of Trans Union's wrongful conduct at issue in the litigation being settled. Presumably, the Court would not have approved this settlement if its sole purpose was to help Trans Union, which, after all, is the defendant accused of serious intentional misconduct in this case.

**B.     Court Must Exercise Its Oversight Role to Discourage Bad Faith Settlements by Rejecting Improper Reimbursements**

Settlement Class Counsel certainly acknowledge that Trans Union is entitled to reimburse itself for good-faith, arms-length settlements of PSCs. We also acknowledge that the parties and the Court recognized the possibility that the Fund could be completely depleted by reimbursements to Trans Union for PSC settlements. Nevertheless, these facts do not justify a conclusion that Trans Union should be allowed to reimburse itself for the full amount of any and all PSC settlements without any oversight. Settlement Class Counsel recognized that Trans Union would lack motivation to protect the Settlement Fund from being squandered if its right to reimbursement was unfettered. Absent any oversight, Trans Union would logically give away much or all of the Settlement Fund in order to avoid any out-of-pocket costs to defend cases---simple economics dictates that a logical defendant would not pay its attorneys to defend cases when it can settle them for free. Trans Union has argued that it has motivation to minimize its PSC settlement amounts because it will be liable for all settlement costs incurred after the Settlement Fund is depleted. This alleged motivation is imaginary because Trans Union knows it has no potential exposure---it will be

able to gather all PSC's together and work out an aggregate agreement that will not deplete the Settlement Fund.

Accordingly, there is only one obstacle that stands in the way of Trans Union converting 50% of the remaining Settlement Fund into attorneys' fees deposited into the pockets of the Soliciting Lawyers[1]---that being this Court's discretion to reject reimbursements as "improper." Settlement Class Counsel insisted on the inclusion of this important provision of the Settlement Agreement specifically to ensure the Settlement Fund was not improperly squandered. And make no mistake---the $850,000 reimbursement at issue here is merely a test case. (Trans Union does not dispute this.) If this Court indicates that it will not interfere with Trans Union reimbursing itself in full for this settlement, the floodgates will open and the remainder of the Settlement Fund will quickly vanish, 45-50% of which will go into the pockets of the Soliciting Lawyers.

Trans Union describes its efforts to ensure that the settlement it agreed to was fair, stating it would only settle with a "qualified" PSC claimant, which it defined as a person who had not released or assigned his claim and who "was not deceased when their lawsuit was filed against Trans Union." Dkt. 898-1 at 6. This hardly seems to be putting up much of a fight. Critically, Trans Union put up no fight whatsoever regarding the exorbitant attorneys' fee arrangement. If Trans Union was settling these cases with its own money rather than the Class's money, one presumes it could have convinced the Soliciting Lawyers to charge less than their 50% contingency fee for doing nothing more than soliciting clients and filing cases. Surely, Trans Union could have used the leverage of Magistrate Judge Mason and District Court Judge Gettleman (who have been openly critical of the concept of huge portions of the Settlement Fund going to Soliciting Lawyers) to help them in this endeavour.

---

[1] The term "Soliciting Lawyers" is not meant to imply that these attorneys improperly solicited their clients, but rather just to recognize that their involvement in this case was merely to solicit thousands of clients and use them to obtain money from the Settlement Fund.

**C.      Negotiating Attorneys' Fees with Soliciting Lawyers Would Not Constitute Tortious Interference**

Trans Union argues that it was precluded from negotiating with the Soliciting Lawyers on attorneys' fees for fear of being accused of tortuous interference with the Soliciting Lawyers' contracts with their clients. *Id.* at 15-17.  This argument is not only wrong; it is disingenuous.  Trans Union's support for this proposition consists entirely of cases where defense counsel attempted to circumvent plaintiff's counsel and negotiate directly with plaintiffs.  Nobody in this case is suggesting Trans Union negotiate directly with the Soliciting Lawyers' clients.  *Id.*  Experienced attorneys, like Trans Union's, are well aware that settlement negotiations in complex litigation frequently include negotiation regarding the lowering of attorneys' fees.  Certainly, in class action settlement agreements, the amount of attorneys' fees is always subject to negotiation regardless of the terms of class counsel's fee agreement with their clients.

**D.      Court has Power to Indirectly Discourage Excessive Fees to Soliciting Lawyers' by Exercising Power to Reject Improper Reimbursements**

Trans Union makes other arguments which border on the disingenuous.  Trans Union argues that the "Settlement does not authorize this Court to determine the fees of PSC counsel." *Id.* at 10-12.  Settlement Class Counsel acknowledge the fact that this Court's leverage and ability to impact the fees of the Soliciting Lawyers is not direct, but instead is by means of a two-step process.  To clairfy, Settlement Class Counsel do not ask this Court to enter an Order mandating the Soliciting Lawyers take less than their full contractual fee; nor do we request that the Court place any limitation on Trans Union's ability to settle with the Soliciting Lawyers on any terms it chooses.  We ask only that the Court find that Trans Union's payment of settlements, without any reduction in the Soliciting Lawyers' full 45% or 50% fees, constitutes a bad-faith squandering of the Settlement Fund such that full reimbursement to Trans Union would be improper, and order that an appropriate amount of the reimbursements be repaid by Trans Union to the Settlement Fund.   A ruling requiring

a partial repayment of the reimbursement for this 3,400-person settlement should have an impact on

the settlements Trans Union reaches with the remaining 100,000 PSC's, and give Trans Union some

motivation to avoid entering into any future settlements where it does not even try to negotiate for a

reduction of the attorneys' fees. For example, Trans Union knows, or should know, that if it made a

non-negotiable final offer to the Soliciting Lawyers to settle all their 100,000 cases for $150 each

with a maximum fee of 10%, the Soliciting Lawyers would likely accept the $15 million settlement

plus filing fees, $13.5 million going to their clients and $1.5 million plus filing fees going to them.

However, Trans Union apparently will not be motivated to make such a hard demand unless and

until this Court demonstrates that the Settlement provision mandating it reject improper

reimbursements has some teeth and Trans Union will not receive full reimbursement for settlements

that are improperly and unreasonably generous to Soliciting Lawyers. Likewise, the Soliciting

Lawyers would certainly have no interest in considering such an offer so long as Trans Union is

offering money "with no strings attached" as to fees and they see a potential that this Court may, like

Trans Union, not interfere with the Soliciting Lawyers skimming 50% of the settlements into their

personal coffers.

**E.      The Court Has Authority and Duty to Protect Against Unreasonable Amount of Class
         Action Settlement Fund Being Paid as Attorneys' Fees**

         The Court has the authority and, in fact, the duty to exercise its oversight role actively and

zealously. The inescapable fact is that the fees sought by the Soliciting Lawyers are part of a ***Class***

***Action*** settlement (and settlement fund). Although the Soliciting Lawyers are technically seeking

funds from Trans Union and not directly from the settlement fund, the fact that the money will flow

first from Trans Union to the Soliciting Lawyers, and then from the settlement fund to reimburse

Trans Union, does not alter the essence of what would be happening here—money from the Class

Settlement Fund is being indirectly paid to the Soliciting Lawyers. Because the funds at issue

indisputably derive from the Class Action Settlement Fund, this Court has a continuing duty to act as

- 5 -

a fiduciary concerning the money being paid from the Settlement Fund to Trans Union which, via this two-step process will end up in the Soliciting Lawyers' pockets.

Indeed, the special responsibility of a District Court to serve as the guardian of class members is one of the distinctive hallmarks of class settlements. "We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir.2002) *citing Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir.2002); *Stewart v. General Motors Corp.*, 756 F.2d 1285, 1293 (7th Cir.1985); *In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir.2001); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir.1987). Particularly with regard to attorneys' fees to be paid from (or here, reimbursed from) a settlement fund, "a defendant who contributed to the fund will usually have no interest in how the fund is divided between plaintiffs and class counsel [or here, Soliciting Lawyers]." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir. 1993). Therefore, it is the Court which serves as the fiduciary to the Settlement Class concerning all aspects of a class settlement, including distribution of the Settlement Fund. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp.2d 434, 440 (D.Md. 1998) (noting that pursuant to the final judgment approving the settlement, the court, which has a continuing duty to act a as fiduciary to the members of the class, retained jurisdiction over all matters relating to Settlement, including distributions from the fund).

Under the foregoing legal principles, given that the Soliciting Lawyers' fees and expenses (a significant portion of which is due to advertising) are being paid via a two-step process from a Class Settlement Fund, the Court must exercise its oversight role to control the amount of the Settlement Fund paid as fees especially where, as here, the recovery for their clients is due to other lawyers' efforts and the recovery set aside for the Class (including the PSCs) has already been taxed by Settlement Class Counsel's fees and expenses. In other words, the PSCs should not be required to

pay two levels of fees for the ultimate recovery (here, the Settlement Fund). This precise concern is often played out in multi-district litigation where a core group of counsel perform the critical work (typically referred to as "common benefit work" leading to a recovery) while other counsel do relatively little other than seek to obtain their contracted-for contingent fee. In these situations, the district court often overrides the individual contingent fee contracts by capping fees to prevent "double dipping," meaning requiring the Client to pay an unconscionable fee. *See In re Vioxx Products Liability Litigation*, 2010 WL 5576193 (E.D. La.) at *9 (Noting capping of individual fees in various mass actions and stating: "But it is not double dipping because the common benefit fee will not come from any client. Instead it will come from the [individual] attorneys, most of whom have not done any common benefit work but have received enormous benefit from it."). Interestingly, district courts overseeing coordinated litigation of individual cases have deemed such mass litigation as "quasi-class actions subject to the general equitable powers of the court," which includes the "the power to require reasonable fees:"

> A district court has the explicit power to require reasonable fees in class actions. While the settlement in the instant action is in the nature of a private agreement between individual plaintiffs and the defendant, it has many of the characteristics of a class action and may be properly characterized as a quasi-class action subject to general equitable powers of the court. The large number of plaintiffs subject to the same settlement matrix approved by the court; the utilization of special masters appointed by the court to control discovery and to assist in reaching and administering a settlement; the court's order for a huge escrow fund; and other interventions by the court, reflect a degree of court control supporting its imposition of fiduciary standards to ensure fair treatment to all parties and counsel regarding fees and expenses. No one except the trial judge, assisted by special masters, can exercise the ethical control of fees effectively. . . . [P]laintiffs' counsel have a built-in conflict of interest; and the defendant is buying peace and is generally disinterested in how the fund is divided so long as it does not jeopardize the settlement.

*In re Zyprexa Products Liability Litigation*, 424 F.Supp.2d 488, 491 (E.D.N.Y. 2006) (citations omitted). In *Zyprexa*, borrowing from the class action paradigm, the Court highlighted its "supervisory power to ensure that fees are in conformance with codes of ethics and professional

responsibility even when a party has not challenged the validity of the fee contract." *Id*. at 492. Accordingly, the Court here has the authority, if not the duty, to prevent an excessive amount of the Settlement Fund being paid as attorneys' fees by exercising its oversight role, established by the Settlement Agreement, to prevent improper reimbursement amounts, thus ensuring that total amount of the Settlement Fund paid (directly and indirectly) as fees is not "unfair or excessive under the circumstances of [this] case." *See id.*

## F.     Duty of Good Faith Creates Obligation on Trans Union Not to Unreasonably Squander Settlement Fund on Fees Paid to Soliciting Lawyers

Trans Union argues that the duty of good faith does not apply because the covenant of good faith and fair dealing is not an independent source of duties, but only guides the construction of explicit terms in an agreement. Dkt. 898-1 at 12-14. Trans Union ignores the fact that the Settlement Agreement *does* include an explicit term---the term permitting the Court to force repayment of "improper" reimbursements. In interpreting this term, the Court should be guided by the concept of good faith and fair dealing and find that reimbursement amounts are improper when they reimburse payments resulting from settlement agreements that were not reached in a good faith effort to avoid unreasonably squandering the Settlement Fund on excessive attorneys' fees.

As this Court is well aware, substantial effort and expense went into establishing and enacting the procedure of registering more than 400,000 individuals (whom the Soliciting Lawyers dismissively refer to as "remaindermen") to share in the Settlement Fund, after subtracting the PSC reimbursements. The Court's power to reject reimbursements as "improper" is an important feature of the Settlement to ensure that this entire registration process was not an exercise in futility and a waste of time and money. Without the Court fulfilling its role of rejecting improper reimbursements, Trans Union could (and presumably would) squander the entire Settlement Fund to avoid incurring any costs of defending PSCs. Because the Settlement provides no guidance as to what would make a reimbursement amount "improper," the Court should construe that term in light of the duty of good

faith and fair dealing and find that reimbursement of settlement payments is improper when the payments were made pursuant to settlement agreements reached in bad faith. As argued above, Settlement Class Counsel contend that settlements that result in Settlement Fund moneys being paid 45 or 50% to Soliciting Lawyers are not good faith settlements and any resulting reimbursements should accordingly be denied as improper.

## G. Conclusion

Because Trans Union agreed to the Bingham and Heenan Settlements with no effort to protect against an excessive portion of the payment going to attorneys' fees, this Court should exercise its oversight function and rule that Trans Union's full reimbursement of this settlement was improper and that an appropriate amount of the reimbursement should be repaid to the Settlement Fund.

Respectfully submitted,

By:    /s/ Michael A. Caddell
     Michael A. Caddell
     Cynthia B. Chapman
     Cory S. Fein
     Caddell & Chapman
     1331 Lamar, Suite 1070
     Houston TX 77010-3027
     Telephone: (713) 751-0400
     Facsimile: (713) 751-0906

     Settlement Class Counsel, Counsel
     for Texas Plaintiff Donald Jowers,
     and Reimbursement Committee
     member

By:    /s/ Mitchell A. Toups
     Mitchell A. Toups
     Weller, Green, Toups & Terrell, L.L.P.
     2615 Calder St., Suite 400
     Beaumont TX 77010-3027
     Telephone: (409) 838.0101
     Facsimile: (409) 832.85577

     Counsel for Texas Plaintiff Donald
     Jowers and Reimbursement
     Committee member

Joy Ann Bull
Eric I. Niehaus
Robbins Geller Rudman & Dowd
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423

Jon W. Borderud
Law Offices of Jon W. Borderud
2831 South Holt Avenue
Los Angeles, CA 90034
Telephone: 310/621-7004
310/207-2748 (fax)

Matthew Righetti
Righetti Law Firm
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415/983-0900

Co-Lead Counsel for Plaintiffs


## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel hereby certifies that a copy of the foregoing has been filed on the Court's ECF system on May 17, 2011, and thereby served on all counsel of record.

　　/s/  Cory S. Fein　　　　
Cory S. Fein