UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re TRANS UNION CORP. PRIVACY LITIGATION | ) Lead Case No. 00CV4729 <br> ) <br> ) MDL Docket No. 1350 <br> ) |
| This Document Relates To: <br><br> ALL ACTIONS. | ) Judge Robert W. Gettleman <br> ) Magistrate Judge Michael T. Mason <br> ) <br> ) |

**SETTLEMENT CLASS COUNSEL'S MOTION FOR "COMMON BENEFIT" FEES**

**I. INTRODUCTION**

In May and June 2011, Trans Union entered into settlements with certain Post-Settlement Claimants ("PSCs"), paid large sums into the client trust accounts of the attorneys representing those PSCs, and shortly thereafter obtained reimbursement of that sum from the Settlement Fund. The attorneys representing the PSCs (the "Soliciting Attorneys") are, for the most part, attorneys who solicited via mass advertising a total of about 90,000 persons to assert PSCs. Pursuant to the "common benefit doctrine", Settlement Class Counsel hereby request that the Court order that (1) a portion of the funds earmarked as Soliciting Attorneys' fees (whether the funds are held by Trans Union and yet to be paid, are held in the Soliciting Attorneys' client trust funds, or are yet to be to be reimbursed to Trans Union from the Settlement Fund) be paid to Settlement Class Counsel as a common benefit fee for the work they performed that created the Settlement Fund from which these settlements are being paid; and (2) Soliciting Attorneys retain a minimum of 50% of all funds paid to them by Trans Union in their client trust funds until a Final Decision is rendered by this Court or the Seventh Circuit Court of Appeals regarding Settlement Class Counsel's entitlement to a common benefit fee from these Settlement Funds.

- 2 -

Because the Settlement Fund from which Trans Union has obtained reimbursement for payments made to PSC Counsel was generated entirely by Settlement Class Counsel and its tireless prosecution of these actions from 1998 to 2008, a portion of the funds representing attorneys' fees being held in the Soliciting Attorneys' trust accounts must be paid to the Settlement Class Counsel whose work created the entire Settlement Fund from which the PSCs and their counsel are being paid.

## II. FACTUAL BACKGROUND

In May 2011, Trans Union entered into settlement agreements with at least three major groups of PSC counsel: (1) Cooper & Elliott, Michael Dolan and Timothy Marshall (hereinafter "Cooper Counsel"); (2) Cochran & Cochran and Masters & Sivinski, LLC (hereinafter "Cochran Counsel"); and (3) Watts Guerra Craft LLP (hereinafter "Watts Counsel"). The settlements are attached hereto as Exhibits A, B, and C, respectively. A summary of the settlement amounts is provided below:

| Firm | Settlement Date | Payment per Person | Number of Persons | Total Payment Including Fees |
|---|---|---|---|---|
| Cooper | 5/27/2011 | $300 | 9,467 | $2,840,000.00 |
| Cochran | 5/27/2011 | $300 | 16,562 | $4,968,600.00 |
| Watts | 5/27/2011 | $412 + $31 | 63,083 | $27,945,769.00 |
| **TOTAL** | | | **89,112** | **$35,754,369.00** |

The settlements with Cooper Counsel, Cochran Counsel and Watts Counsel involve a two step process. In those settlements, Trans Union has agreed to pay funds to cover up to 15,250 settlements (*i.e.*, up to 1,000 PSCs each in the Cooper and Cochran settlements, and up to 13,250 in the Watts settlement) and seek reimbursements from the Settlement Fund. Once Trans Union obtains reimbursement, Cooper Counsel, Cochran Counsel and Watts Counsel may distribute

payments to the PSCs.[1]  Trans Union is then required to obtain the Court's approval of these "Initial Settlements" (which motion is expected to be forthcoming shortly) and, upon obtaining such approval, may proceed to pay the remaining settlements (and seek reimbursement from the Settlement Fund) contemplated under the applicable settlement agreement.  Thus, the parties to these PSC settlements acknowledge that this Court has ultimate authority to approve these settlements, as well as ultimate control over payment of funds from the Settlement Fund to resolve PSC claims.

As indicated by the chart above, more than $35.7 million will effectively be taken from the Settlement Fund and deposited into the Soliciting Attorneys' trust accounts.  Because these counsel have 45% or 50% contingency fee agreements, ***between $16 million and $18 million*** of these settlement funds will be paid to Soliciting Lawyers' as attorneys' fees.  This is an outrageous amount of money for a small group of attorneys who simply rounded up individuals on the internet based on an extended statute of limitations they did not create, and who did absolutely nothing to create the common fund from which these attorneys' fees will be paid.  Even more bizarre and absurd, these five small law firms, who did not even appear in the case until well after it was settled and all the work was done, stand to receive millions more than the $14,405,000 in total fees all of the other plaintiffs' counsel received for litigating and settling the case over a ten year period – a group comprised of over thirty-five different law firms and over 150 different lawyers who billed time and worked on the case over a ten year period, and whose combined lodestar was far greater than the total amount they were awarded and received in fees from the common fund they created.

The Soliciting Attorneys who are to receive these enormous amounts in attorneys' fees

---

[1] Trans Union has provided notice that it received reimbursement of $300,000 for the Cooper PSCs covered by the "Initial Settlements" in the Cooper Counsel settlement, and $300,000 for the Cochran PSCs covered by the "Initial Settlements" in the Cochran Counsel settlement.

.

performed little or no work for these fees; they neither investigated nor litigated the PSC cases in any fashion. Instead, they simply adopted the allegations of the Second Amended Complaint filed by MDL Counsel in this action many years ago. *See* Sample Petitions filed by Soliciting Attorneys, Dkt 892-3, at pp. 71-77; *see also* Memorandum Opinion and Order dated March 14, 2011 (Dkt. No. 873), p. 6 (noting that "[v]irtually all of [the] . . . PSCs have adopted or incorporated the second amended consolidated complaint filed in this MDL by reference"). Soliciting Attorneys may have devoted time to devising and implementing their PSC solicitation scheme, but attorney time spent soliciting clients is not compensable under well-settled law. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 435 (11th Cir. 1999); *Parks v. Eastwood Ins. Services, Inc.*, Case No. SA CV 02-507-GLT, 2005 WL 6007833 at *5 (C.D.Cal. 2005). This is particularly true where, as here, the Court has already recognized that Soliciting Attorneys made misleading statements in their solicitations. *See* March 14 Order at 5 n.6 (noting the Heenan firm's inaccurate representations on its website regarding claims against the Settlement Fund).

### III. ARGUMENT

A common concern among district courts acting as fiduciaries over large settlements is that individuals or entities, like the Soliciting Attorneys, who have not made a contribution to creating the "common benefit" will attempt to "free-ride" on the efforts of those who did create the common benefit or fund. To avoid this problem the U.S. Supreme Court has developed the "common benefit doctrine," which "provides that when the efforts of a litigant or attorney create, preserve, protect, increase, or discover a common fund, ***all who benefit from that fund must contribute proportionately to the costs of the litigation***." *See Turner v. Murphy Oil*, 422 F. Supp. 676, 680 (E.D.La. 2006) (citing *Boeing v. Van Gamert*, 444 U.S. 472, 478-79 (1980))(emphasis added).

Thus, for example, district courts may use the common benefit doctrine to sequester a portion of any recovery obtained to account for the benefit obtained from the class discovery. American

Law Institute, Principles of the Law of Aggregate Litigation § 2.07, cmt. g (2010); *see also In re Everglades Air Crash Disaster*, 549 F. 2d 1006, 1016 and 1019 (5th Cir. 1977) ("district court had the power to direct that the Committee and its counsel be compensated and that requiring the payment come from other [non-member] attorneys was permissible"). In sum, the common benefit doctrine is an equitable doctrine that enables district courts to protect settlement funds (*i.e.*, the common benefit) from late-comers to the litigation whose primary goal is to use that benefit to garner additional attorneys' fees for themselves rather than add any real value to the case or the common fund that was already created by others.

Many of the cases discussing the common benefit doctrine involve plaintiffs that opted-out of class actions and who individually settled with the named defendants. The attorneys for these "opt-out" plaintiffs typically rely on work performed by class counsel that was intended to create a common benefit (*e.g.*, a settlement fund) for all class members. The *Linerboard* case is one example.

*Linerboard* was a multi-district antitrust class action where a settlement fund was created on the basis of work performed by lead counsel in the case, the so-called "Common Benefit Attorneys." *Linerboard Antitrust Litigation*, 292 F. Supp. 2d 644, 649-50 (E.D.Pa. 2003). After the classes were certified and certain defendants had settled, a number of large linerboard purchasers "opted out" of the class and chose to pursue their claims on an individual basis. *Id*. The court identified these actions as the "tag along" actions. *Id*. The Common Benefit Attorneys moved for an order "sequestering a certain percentage of funds from settlements or judgments in the tag-along actions" because the tag-along plaintiffs were free-riders and had "obtained substantial benefits from [the Common Benefit Attorneys'] work in managing the litigation." *Id*. at 652. After reviewing the contributions to the litigation made by the Common Benefit Attorneys, the *Linerboard* court granted the motion, reasoning that their work "benefited all litigants in the class action and the tag-along

actions." *Id*. at 657, 658-662. The *Linerboard* court ordered that a portion of the attorney's fees paid to the opt-out plaintiffs be sequestered and made available to pay attorneys' fees to the Common Benefit Attorneys. *Id*. at 668-669. *See also In re Diet Drugs Prods. Liab. Litig.*, 2001 U.S. Dist. LEXIS 5927, MDL No. 1203, at *2 (E.D. Pa. May 9, 2001) (ordering sequestration of a percentage of all payments made by defendants to opt-out plaintiffs—which funds are to be deducted, not from the opt-out plaintiffs' recoveries, but from their counsel's fees—for use in compensating "Plaintiffs Management Committee" for their work that was used by opt-out counsel in the individual actions); *In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, 2002 U.S. Dist. LEXIS 26861, MDL No. 1387, 2002 WL 31834446 (D. Md. Apr. 12, 2003); *In re Rezulin Products Liability Litig.*, MDL No. 1348, 2002 WL 441342 (S.D.N.Y. Mar. 20, 2002); and *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1998 U.S. Dist. LEXIS 21857, MDL No. 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998).

Here, the Soliciting Attorneys are clearly free-riding on the work of Settlement Class Counsel who actually litigated and settled the case and created the Settlement Fund and all of the Settlement's related benefits, including the Settlement Fund and the PSC benefits which the PSC and their attorneys are now claiming. As a result, under well-established legal authority, the Court should order that a percentage of the funds earmarked as attorneys' fees for the Soliciting Attorneys be paid over to Settlement Class Counsel.[2] The percentage should be calculated in an amount that recognizes Settlement Class Counsel's overall contribution to the litigation and the creation of the Settlement Fund and Settlement benefits.

Attorneys within the Settlement Class Counsel filed these cases over 10 years ago, litigated motions to dismiss, dispositive motions and class certification motions, performed extensive

---

[2] As was done in the *Linerboard* and *Diet Drugs* cases, payment of funds should not reduce the PSCs recoveries, but should only be deducted from the fees to be paid to the Soliciting Attorneys.

discovery, engaged in settlement negotiations, performed numerous other litigation tasks and ultimately created the $75 million Settlement Fund and Settlement benefits. A key factor in the *Linerboard* decision was the fact that the tag-along plaintiffs opted out of the class in the final days before the opt-out deadline after "a substantial portion of discovery had already taken place in the class litigation." *Id*. at 662. The *Linerboard* court found that in carrying out their duties, the Common Benefit Attorneys had "done much to craft the case against defendants," and that the work performed by these attorneys "benefited all litigants in the class action and the tag-along actions," which were filed five years after the appointment of lead counsel. *Id* at 657. Over this five-year period, the Common Benefit Attorneys participated in regular status conferences before the court; advocated for all plaintiffs on a variety of legal issues; advised the court of important developments in the litigation; developed the relevant evidence and coordinated case-wide discovery for all plaintiffs in the litigation; took depositions; prepared and served discovery requests on defendants and third parties; conducted meet and confer sessions to narrow and resolve discovery disputes; sought judicial resolution of such disputes when necessary; obtained relevant documents; and maintained electronic and other document depositories, among numerous other tasks.

Here, Settlement Class Counsel not only did all of the above, but actually negotiated the settlement that generated the $75 million Settlement Fund and other Settlement benefits from which Soliciting Attorneys and their clients are now taking advantage of, and from which they are being indirectly paid.

In fact, Settlement Class Counsel negotiated the Settlement Agreement term that effectively extended the FCRA statute of limitations which permitted the Soliciting Attorneys to make their claims nearly ten years after Trans Union discontinued the conduct at issue. *See* Settlement Agreement ¶2.4. Soliciting Attorneys did no more than solicit Settlement Class members and adopt Settlement Class Counsel's complaint. Settlement Class Counsel, on the other hand, are responsible

for creating all of the benefits being conferred upon the PSC and their attorneys who have received payments via the PSC Settlements; it was Settlement Class Counsel who litigated the entire case and generated the fund from which Trans Union is now making these settlement payments. Indeed, the Court has already recognized that while Settlement Class Counsel "were instrumental in fashioning . . . an exceptionally fair and reasonable settlement[,] [t]he same cannot be said of the lawyers for the PSCs, who joined the feeding frenzy late in the game." March 14 Order, Dkt. 873 at 10.

## IV. CONCLUSION

In order to avoid a gross injustice and the unjust enrichment of a few free-riding attorneys, and consistent with the approach taken by the district court in *Linerboard* (292 F.Supp.2d at 669), and in other cases, Settlement Class Counsel request that the Court award them a percentage of the fees earmarked to go to Soliciting Attorneys as common benefit fees, and order that a minimum of 50% of all funds paid, or to be paid, by Trans Union to Soliciting Attorneys, be held in their trust funds pending a final determination from this Court, or the Seventh Circuit Court of Appeals, regarding Settlement Class Counsel's entitlement to common benefit fees.

DATED: July 1, 2011

/s/ Cory S. Fein
CADDELL & CHAPMAN
MICHAEL A. CADDELL
CORY S. FEIN
1331 Lamar, #1070
Houston, TX 77010
Telephone: 713/751-0400

MITCHELL A. TOUPS
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
P.O. Box 350
Beaumont, TX 77704
Telephone: 409/838-0101

- 8 -

ROBBINS GELLER RUDMAN
& DOWD LLP
JOY ANN BULL
ERIC I. NIEHAUS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

RIGHETTI LAW FIRM
MATTHEW RIGHETTI
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415/683-0900

Settlement Class Counsel's Representatives
of the Reimbursement Committee

**CERTIFICATE OF SERVICE**

 Undersigned counsel hereby certifies that a copy of the foregoing has been served via the Court's ECF system and/or by email on all parties this 1st day of July, 2011.

     /s/ Cory S. Fein
     Cory S. Fein